UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MIROSLAW GORTAT, HENRYK BIENKOWSKI, GRZEGORZ
DRELICH, MIROSLAW FILIPKOWSKI, ARTUR LAPINSKI
and JAN SWALTEK, on behalf of themselves and on behalf
of all others similarly situated,

                                Plaintiffs,        **Docket No.:07-cv-3629**
                                                          **(ILG) (SMG)**

        – against –


CAPALA BROTHERS, INC., PAWEL CAPALA
and ROBERT CAPALA

                                Defendants.
-----------------------------------------------------------------X

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
OBJECTIONS TO PART OF THE MAGISTRATE JUDGE'S ORDER**


                                                                 ROBERT WISNIEWSKI (RW-5308)
                                                                 ROBERT WISNIEWSKI P.C.
                                                                  Attorney for Plaintiffs
                                                                  225 Broadway, Suite 612
                                                                  New York, NY 10007
                                                                  Tel. (212) 267-2101

INTRODUCTION

This is an action by immigrant construction workers for underpayment of wages by their employers under, among other statutes, the Fair Labor Standards Act and the New York Labor Laws. Plaintiffs contend that they, and all other employees, received part payment in cash and undocumented workers who were employed by the Capala Brothers, Inc. received all their wages in cash. Under the FLSA, the proper overtime rate should be based on the regular rate "actually paid" and this should take into consideration all wages made to Plaintiffs, including cash payments. Plaintiffs object to the Magistrate Judge's Order requiring Plaintiffs to produce their personal tax returns or, if they did not report the income on their tax returns, to make a sworn statement that they failed to report any cash income. Plaintiffs respectfully contend that the Magistrate Judge's Order requiring the production of tax returns or an affidavit admitting their alleged failure to report said cash income was erroneous and should be reversed.

Courts generally order the production of income tax returns only when the returns are relevant and the requesting party can exhibit a compelling need. The "quasi-privilege" that tax returns enjoy is a result of a balance between protecting the producing party's privacy needs against the requesting party's need for the documents. When the information contained in the tax returns is available from other sources, courts typically refuse to order production of the tax returns.

This case is a classic situation where ordering the production of tax returns would be highly prejudicial to the producing party. First of all, the tax returns' relevancy is questionable. Defendants admit to paying Plaintiffs in cash, but claim those payments were made by the Individual Defendants in their individual capacity. The tax returns will not show whether the

payments were made by the Individual or Corporate Defendants. Moreover, production of income tax returns is especially unnecessary when the information is attainable by a variety of other means. At bar, there are a number of alternative sources for the information. First, the Magistrate Judge required Plaintiffs and Defendants to agree on procedures for extracting data regarding cash payments from the Corporate Defendants' computer. Whether Defendants paid Plaintiffs in cash can be determined by the records on Corporate Defendants' computer. Also, an officer of the company will testify regarding procedures for storing information on the Corporate Defendant's computer and will be able to answer whether cash payments were paid to Plaintiffs. Further, the Court ordered Plaintiffs to produce their bank statements, and those bank statements serve as another means to acquire the information contained in the tax returns. Last, Plaintiffs have not been deposed and Defendants can ask these Plaintiffs about whether they reported these cash payments at the depositions.

Furthermore, public policy concerns weigh heavily against requiring production. It is common knowledge in New York that many construction workers are paid a part or all of their salary "under the table" by means that allows their employers to circumvent many of the Federal and State labor laws. Ordering construction workers to provide their tax returns would deter a large percentage of workers from bringing actions for unpaid wages and overtime and would negate the purpose of the FLSA and New York Labor Law, which is to ensure that all workers receive proper wages.

The limited relevancy, the alternative means to acquire the necessary information and the public policy considerations, all taken together support the conclusion that the Court should not have ordered their production or required Plaintiffs to make a sworn statement regarding the

contents of the tax returns.

STATEMENT OF FACTS

Plaintiffs, on behalf of themselves and others similarly situated, brought the instant action to recover unpaid wages, unpaid overtime wages, liquidated damages and reasonable attorneys' fees and costs under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201, et seq.) ("FLSA"), the Portal-to-Portal Act of 1947, §4(a)(1,2) , 29 U.S.C.A.§ 254 (a)(1,2) ("Portal to Portal Act"), the New York Minimum Wage Act (New York State Labor Law Articles 6 and 19) ("NYMWA"), New York State Labor Law ("Labor Law") § 198-b, §193, and New York state common law. The Individual Defendants are the officers, shareholders, managers and/or majority owners of the Corporate Defendant, which provides services in the area of construction within the tri- state area.  Plaintiffs were employed by the Corporate Defendant as manual workers, tradesmen and other laborers, who regularly worked over 40 hours per week, but were not compensated properly for the hours they worked, including the overtime hours.

Plaintiffs allege that Defendants paid Plaintiffs a specific rate by check, but supplemented the amount by cash payments. Defendants failed to pay overtime for any overtime hours worked according to the rate required under the FLSA and New York Labor Law. Defendants dispute any cash payments made on behalf of the Corporate Defendant, but the Individual Defendants admit to paying Plaintiffs cash payments for personal jobs unrelated to work for the Corporate Defendants.

 On April 22, 2008, Defendants served on Plaintiffs a request for their personal income tax returns or, if they failed to report the cash income, to provide an affidavit stating that they failed to report any cash payments they received from Defendants on their income tax returns.

Plaintiffs, arguing that personal income tax statements are quasi-privileged, objected to Defendants' demand. On May 7, 2008, Plaintiffs provided for inspection a number of handwritten paper slips by Defendants that recorded cash to payments to Plaintiffs (See, Plaintiffs' motion to compel attached as Exhibit **3** at Exhibits 1, 2, 3). On May 16, 2008, Defendants and Plaintiffs served concurrent motions to compel, in which Plaintiffs requested access to Defendants' computers for the purpose of acquiring evidence of cash payments made by the Corporate Defendant and Defendants moved to compel Plaintiffs to provide, *inter alia*, these tax returns or an affidavit admitting failure to report the income as well as copies of Plaintiffs' driver's licenses. Defendants' alleged need for the tax returns was that "[t]he only verification of [cash] income would be [Plaintiffs'] income tax returns or lack thereof."

In the same motion, Defendants also demanded Plaintiffs' bank statements, arguing that these statements would be evidence that Plaintiffs did not receive cash payments from the Defendants. Defendants implied that if the bank accounts failed to record deposits of payments of the amounts alleged by Plaintiffs, then a finder of fact could reasonably infer that Plaintiffs did not, in fact, receive such payments.

After a hearing, in an Order dated June 25, 2008 ("<u>Order</u>") (Exhibit **1**), Magistrate Judge Gold required Plaintiffs to produce their income tax returns or an affidavit stating that they failed to report cash income, expressly denying Plaintiffs' claim of quasi-privilege. The Court also ordered Plaintiffs to provide bank statements for their accounts or an account number that would allow Defendants to subpoena Plaintiffs' bank records. However, Judge Gold also required Individual Defendant Robert Capala to sit for a limited deposition regarding the payment of cash payments to Plaintiffs by the Corporate Defendants, and denied Defendants' request for

Plaintiffs' driver's licenses. The parties were then to agree on procedures that a computer expert would use to extract information regarding cash payments made to Plaintiffs from Defendants' computer. Defendants, at that conference, also admitted that the Individual Defendants paid the Plaintiffs in cash for various jobs. Pursuant to Fed. R. Civ. P. 72(a), Plaintiffs respectfully move to appeal with regard to the part of the Order requiring the production of Plaintiffs' income tax returns or if the income was not reported on the tax returns, affidavits admitting that Plaintiffs did not report the cash income.

## ARGUMENT

### 1. Standard For Appeal

Under Fed. R. Civ. P. 72(a) and the Federal Magistrates Act, 28 U.S.C. §§ 636(b)(1)(A) (2002), a party can move to appeal a Magistrate Judge's decision to the District Court Judge within ten (10) days of receiving the Magistrate Judge's Order. Non-Dispositive rulings can be reversed if found to be "clearly erroneous." *Lyondell-Citgo Refining, LP v. Petroleos de Venezuela, S.A.*, 2005 WL 1026461 (S.D.N.Y., May 2, 2005). Plaintiffs respectfully contend that the Magistrate Judge's decision failed to take into account important matters that would have likely led to a different conclusion and was therefore erroneous.

### 2. Tax Returns Are Quasi-Privileged

In the Order, the Magistrate Judge required Plaintiffs to provide their personal income tax returns, and explicitly overruled Plaintiffs' assertion of quasi-privilege (Exhibit **2**, Tr. 4). Plaintiffs respectfully contend that the Magistrate Judge clearly erred by failing to take into consideration other available means of acquiring the requested information, the limited relevancy of the tax returns in this case, and the likely harm to an entire class of potential Plaintiffs.

Plaintiffs assert that the Order was mistaken since this case provides a classic situation where tax returns are protected inasmuch as a plethora of other means of acquiring the information are available to Defendants.

### A. *Courts Are Reluctant to Order Production of Personal Tax Returns*

"Although income tax returns are not inherently privileged, courts are typically reluctant to compel their disclosure because of both the private nature of the sensitive information contained therein and the public interest in encouraging the filing by taxpayers of complete and accurate returns." ***Carmody v. Village of Rockville Centre***, 2007 WL 2042807 (E.D.N.Y., July 13, 2007) (Boyle, J.) (internal quotations omitted). Court will only require their production if they pass a two prong test: "(1) the returns must be relevant to the subject matter of the action and (2) there must be a compelling need for the returns because the information is not otherwise readily obtainable." ***Id.*** at *2, ***Barkley v. Olympia Mortg. Co.***, 2007 WL 656250 at *7 (E.D.N.Y., February 27, 2007) (Matsumoto. J.), ***Ellis v. City of New York***, 243 F.R.D. 109 (S.D.N.Y., 2007) (Ellis, J.). Further, the modern trend is to require the requesting party to bear the burden of proving both relevancy and the inability to acquire the information via other means. ***Carmody***, supra at *2. These two prongs, relevancy and compelling need, work together to balance the litigation interests of the requesting party with the privacy interests of the producing party. ***See***, ***Cooper v. Hallgarten & Co.***, 34 F.R.D. 482,484 (S.D.N.Y., 1964).

### 1. *Where There Are Alternative Means of Obtaining the Information Sought By the Requesting Party, the Balance Tilts in Favor of the Producing Party's Privacy Rights*

#### a. *Pursuant to the Individual Defendants' Admission that They Paid Plaintiffs in Cash, the Relevancy of the Plaintiffs' Tax*

Page 7 of 13

*Returns is Limited*

While the tax returns are relevant in a limited number of cases for unpaid wages, the relevancy of the tax returns at bar is attenuated. In this case, the Individual Defendants admit to having paid Plaintiffs in cash as individuals (Exhibit **2**, tr. 14-5), but did not provide Plaintiffs with W-2 forms for the work that they did. Plaintiffs claim they received cash income from officers of the Corporate Defendants, and not the Individual Defendants and produced handwritten paper slips written by the Defendants recording cash payments to the Plaintiffs. There is no dispute, therefore, whether Plaintiffs were paid in cash by the Defendants, but only in what capacity the Defendants paid Plaintiffs and how much. If Plaintiffs reported this income on their tax returns, their returns would not distinguish any income they received from the Corporate Defendants that was not included on the W-2 forms provided by the Corporate Defendant from the income they received from the Individual Defendants. The tax returns, therefore, do not contain any information useful to determine Defendants' liability and are therefore of limited relevance.

### b. There is No Compelling Need Since The Information is Readily Available By Other Means

Assuming, *arguendo*, that Plaintiffs' tax returns are relevant, Defendants must also show that there is a compelling need for these tax returns. Defendants have failed to prove a compelling need by showing that the requested information is not acquirable by other means. *Carmody*, supra at *2. Defendants did not fulfill their burden of showing that the requisite evidence could not be acquired by less intrusive means.

It is important to clarify the exact purpose of Defendants' request for Plaintiffs' tax

returns. As noted above, Defendants claim that these tax returns are the only evidence that Plaintiffs actually received cash payments. Further, the Magistrate Judge stated that Defendants "[are] entitled to question the credibility of [Plaintiffs'] claim that they received this cash income by pointing out to a finder that they [did not report it] on the income taxes...." (Exhibit **2**, Tr. 4) The purpose of producing these tax returns, therefore, is to generate a negative inference against Plaintiffs' claim to having receive cash payments by showing that Plaintiffs did not report this income on their tax returns.

While the failure to report this cash income would be evidence against Plaintiffs' claim of having received cash income, Defendants incorrectly claim that the income tax returns are the only means by which they can validate Plaintiffs' claims of receiving cash payments. In fact, the Order itself provided a number of alternative means. First, Robert Capala is required to testify regarding how these cash payments to Plaintiffs were recorded. Robert Capala's testimony that the Corporate Defendant did or did not pay cash payments to Plaintiffs is a means of determining whether these cash payments to Plaintiffs were actually made.

Moreover, the computer records regarding cash payments will be another method of determining whether the Corporate Defendants made cash payments to Plaintiffs. Defendants admit that the Individual Defendants paid the Plaintiffs partly in cash. (Exhibit **2**, Tr. 23). The extracted computer files will show whether Plaintiffs received this cash income from the Corporate Defendant and will serve as evidence in favor or against the proposition that Plaintiffs received cash payments from the Corporate Defendants.

Third, the Order required the production of Plaintiffs' bank statements. Plaintiffs must provide their bank statements or a sworn affidavit that they did not deposit any cash in their bank

accounts. Either the bank statements or the Plaintiffs' affidavit denying ever depositing the cash payments in their bank account is evidence of the payment or nonpayment of these cash payments to Plaintiffs by the Corporate Defendant.

Last, Defendants have not deposed Plaintiffs. Depositions are an excellent means of acquiring any sought after information regarding lost wages. As one Court noted, "[t]he Defendants are free to address questions concerning Plaintiffs' claims of lost income and lost future earnings as well as questions pertinent to Plaintiffs' income for the period at issue during the examination of these witnesses." **Raba v. Suozzi**, 2007 WL 81932 *2 (E.D.N.Y., January 09, 2007) (Tomlinson, J.). Further, the deposition is a sufficient mechanism to determine whether Plaintiffs did, in fact, receive cash payments from the Corporate Defendant. **See**, **Sabatelli v. Allied Interstate, Inc.**, 2006 WL 2620385 (E.D.N.Y., September 13, 2006) (Lindsay, J.), **Cooper v. Hallgarten & Co.**, 34 F.R.D. 482, 484, (S.D.N.Y., 1964).

These alternative means of acquiring evidence are far less prejudicial than tax returns and do not implicate any public policy considerations that support affording tax returns a quasi-privilege.

        **c.**    **Public Policy Considerations Weigh Heavily Against the Production of Tax Returns Where the Information is Available Through Other Means**

Public policy might support the production of tax returns where their relevancy is clear and the information requested cannot be obtained through any other means. But that is not the case at bar. As noted above, there are myriad alternative means for Defendants to obtain their desired evidence. Where the relevancy is attenuated, and the need is not compelling, courts will

generally refuse ordering production of tax returns.

The remedial nature of the FLSA warrants an expansive interpretation of its provisions so that they will have "the widest possible impact in the national economy." ***Carter v. Dutchess Community College***, 735 F.2d 8 (2nd Cir. 1984). The FLSA's reach is so vast that it covers undocumented workers as well. ***Patel v. Quality Inn South***, 846 F.2d 700 (11th Cir., 1988) (recognizing that the FLSA applies to undocumented workers). It is common knowledge in New York that many, if not most, construction workers are not properly paid via official procedures – through taking withholdings and recording the employee's complete wages on his W-2 – and receive most of their wages in cash.  If these workers were required to produce their tax returns, many would simply forgo bringing an action to recover unpaid wages. The fear of being ordered to produce potentially inaccurate tax returns would create a chilling effect against bringing actions to recover lost wages.

The same policy concerns underpin the general trend of not requiring parties to disclose their immigration status and was presumably the basis of the Magistrate Judge's sustaining Plaintiffs' objection to Defendants' request for Plaintiffs' drivers' licenses (Exhibit **2**, Tr.14-5). Courts almost exclusively deny requests for plaintiffs' immigration status. ***See***, ***Liu v. Donna Karan Int'l, Inc***. 207 F. Supp.2d 191 (S.D.N.Y., 2002) (holding that plaintiffs' immigration status was not relevant to their claims under the FLSA that they had been paid less than the minimum wage for work performed); ***Avila-Blum v. Casa de Cambio Delgado, Inc.***, 236 F.R.D. 190, 191-92 (S.D.N.Y., 2006) (finding plaintiff's immigration status to be irrelevant and noting prejudice that stems from inquiry into such status). Like immigration status, tax returns are protected information because public policy weighs against disclosing information,

which might deter potential plaintiffs from bringing claims to enforce the FLSA. When the tax returns are clearly relevant, and the requesting party possess no other means to acquire the desired information, tax returns should be produced. But where their relevancy is limited, other means are available, and ordering production would limit enforcement of the FLSA, the calculus weighs heavily against requiring production of tax returns.

### 3. *The Court's Alternative is Highly Prejudicial*

The Order accorded Plaintiffs an alternative to providing the documents: if they failed to report the cash payments they received from Defendants, they could make a sworn statement that they did not report the cash payments on their tax returns. In that hypothetical situation, if they were to openly admit that they did not report all their income on their tax returns, their character would come into question, which would likely prejudice a trier of fact. Even if the hypothetical Plaintiffs were to assert their Fifth Amendment Privilege rather than stating that they failed to report the cash income they received from Defendants, jurors will most likely infer Plaintiffs' bad character and their perceptions will be colored by Plaintiffs' alleged illicit actions, which are unrelated to the question of whether Defendants made cash payments to Plaintiffs. The tax returns or any statement regarding their contents are highly prejudicial and their probative value is minimal given that alternative means of acquiring evidence are available to Defendants. Plaintiffs therefore respectfully contend that the Magistrate Judge erred in requiring Plaintiffs to make these statements despite their prejudicial effect.

Plaintiffs further suggest that any affidavit suggesting that Plaintiffs did not report cash payments on their tax returns be subject to a protective order under Fed. R. Civ. P. 26(c), a motion for which will be submitted to Magistrate Judge Gold shortly.

## CONCLUSION

Plaintiffs respectfully contend that the Magistrate Judge clearly erred by requiring the production of income tax returns when the information requested by Defendants was of limited relevancy and was available by less intrusive means. Public policy concerns also weigh heavily against producing tax returns when the result will be to deter workers from bringing actions to enforce the FLSA and New York Labor Laws.  The Order required the a search of the Corporate Defendant's computer and that search, the Plaintiffs' bank records, the Corporate Defendants' officer's testimony and depositions are alternative means that should obviate the need to provide the income tax returns or require Plaintiffs to make a prejudicial statement regarding their compliance with Federal tax law.


Dated: New York, NY
      July 10, 2008

                                    Respectfully submitted,
                                    --------------/s/--------------------------

                                    Robert Wisniewski (RW- 5308)
                                    Attorney for Plaintiffs
                                    Robert Wisniewski P.C.
                                    225 Broadway - Suite 612
                                    New York, New York 10007
                                    Tel. (212) 267-2101