UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
MIROSLAW GORTAT, HENRYK BIENKOWSKI,
GREGORZ DRELICH, MIROSLAW FILIPKOWSKI,
ARTHUR LAPINSKI and JAN SWALTEK, on behalf
of themselves and on behalf of all other situated,    MEMORANDUM AND
                                                       ORDER
                Plaintiffs,
                                                       07 CV 3629 (ILG)
   -against-

CAPALA BROTHERS, INC., PAWEL CAPALA and
ROBERT CAPALA,

                Defendants.
-------------------------------------------------------------------x
GLASSER, United States District Judge:

      On October 16, 2008, Chief Judge Magistrate Gold conducted a conference in this matter during which a number of topics were discussed, one of which is the subject of this defendants' objection. A motion was made by defendants seeking an Order that would disqualify plaintiffs' counsel and an extensive presentation was made at that conference in support of and in opposition to the motion. Tr. pages 10-23. Judge Gold then, in measured tones, recited the legal principles that inform a court's decision of a motion to disqualify counsel, reciting by name and citation the authorities in which those principles have been discussed and declared:

> Courts do not automatically disqualify attorneys even when they have violated applicable standards of professional conduct. In preserving professional standards, the district court is not interested in policing the ethics rules. Riley versus Computer Associates, 423 F.Supp.2d 5 at 9.

> Disqualification is a drastic measure. Our legal system affords considerable deference to a party's right to select counsel of his or her choice. Ibid at page 8. These principles are also repeated in Fulfry versus Manchester (ph), reported at 945 F.Supp.2d 768, a 1996 Southern District court case, at page 770.

      To think that counsel should be disqualified over a miscommunication with a non-English speaking client, over the scheduling of a deposition that ultimately went forward is inconsistent with these principles. To consider disqualification based upon factual discrepancies as to the quantum of damages or the means in which they are calculated rather than the underlying core of the claim is inconsistent with these principles.

      To think that counsel should be disqualified because of disputes over who returns phone calls and whether someone's name is spelled correctly and whether the word "ornery" is used in a brief as a play on someone's name is inconsistent with these principles. The motion to disqualify is denied.

      With respect to the motion for sanctions, I am concerned about the allegation that a deposition adjournment request was opposed on the grounds that a plaintiff had an employment commitment and the fact alleged that the plaintiff was unemployed for a lengthy period of time and had many meetings with plaintiff's counsel during business hours which should have alerted counsel to that. With respect to the charts, I am concerned that plaintiffs' depositions went forward and that new calculations were produced in discovery only thereafter.

      Mr. Wisniewski, you may respond within a week on those issues, and if the defendants press their claim for sanctions, they may submit a reply a week thereafter.

      MR. WISNIEWSKI:      Thank you, your Honor.

      THE COURT:      The motions are in all other respects denied.

Tr. 25-26.

A studied reading of the defendants' "Objections to Nondispositive and Dispositive matters Order of Magistrate Dated October 17, 2008," and the subsequent "Reply Declaration of Felipe ("Philip") Orner, Esq. in Support of Defendants' Motion to Disqualify Plaintiffs' Attorney to Issue a Court Ordered Subpoena on Him, to Impose Costs and Sanctions Against Plaintiffs and Against Him," reflects tediously long submissions replete with <u>ipse dixit</u> assertions of error and an avoidance of the legal

2

principles upon which Judge Gold denied the disqualification motion. The gravamen of the defendants' objections regarding Judge Gold's pretrial management determinations of discovery and other non-dispositive matters, is that he abused his discretion in making them. In essence, his contention that Judge Gold abused his discretion is that he disagrees with him. See Friendly, Indiscretion About Discretion, 31 Emory L.J. 747, 754 (1982), who observed, and here I paraphrase, that a trial judge abuses his discretion when an appellate court simply disagrees with him. A magistrate judge's determination of non-dispositive matters are not clearly erroneous and contrary to law because the disappointed or disgruntled litigant disagrees with him. The defendants' objections are denied.

I am constrained to add that the tenor of the Objections is not only discourteous and undignified but, coupled with the statements as recorded in the transcript, might themselves have been the subject of censure. On page 2 of their Objections an egregiously baseless charge is made that Judge Gold engaged in "improper ex parte conduct . . . clearly against the defendants' interests, prejudicial and reflects on the long pattern of discovery prejudice the defendants have been subjected to. . . . It is inconceivable how a Court can therefore properly address the level of fraud on the court perpetrated by a party . . . when the Magistrate in this case improperly extends the time to answer the motion."

The snippet of the transcript which is cited as evidencing Judge Gold's ex parte communication is remarkable for its failure to convey a suggestion of impropriety and egregious for its carelessness in making the claim.

Their objections to Judge Gold's rulings as reflected in the transcript are of a piece with their Objections. For example: "What kind of Court is this;" "it's hard to focus on the merits when the process is aborted like it is here." (Tr. at 31, 33).

The submissions and the transcript are a testament to the patience, courtesy and judicial temperament of a very conscientious and able Magistrate Judge.

SO ORDERED.

Dated:   Brooklyn, New York
         January 9, 2009

                                                    / S/
                                              I. Leo Glasser