UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
MIROSLAW GORTAT, et al.,

                             Plaintiffs,

   -against-

CAPALA BROTHERS, INC., et al.,

                         Defendants.
------------------------------------------------x

**MEMORANDUM AND ORDER**
07 CV 3629 (ILG)

GLASSER, United States Senior District Judge:

## INTRODUCTION

This case arose from a dispute over wages between six construction workers and their employers. The workers brought claims against Capala Brothers, Inc., Robert Capala, and Pawel Capala (collectively, the "defendants") for violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, the Portal-to-Portal Act, 29 U.S.C. § 254, and New York State Labor Laws. On February 4, 2009, the defendants filed numerous motions pursuant to, *inter alia*, Fed. R. Civ. P. 56 and Fed. R. Civ. P. 23 (hereinafter the "Feb. 4 motions").[1] On February 13, the plaintiffs filed a brief in opposition to the Feb. 4

---

[1] The Feb. 4 motions were: (1) motion for summary judgment on the plaintiffs' claim that they worked more hours than they were compensated for in violation of the FLSA and Portal-to-Portal Acts; (2) motion to deny the certification of the class because the plaintiffs are not sufficiently numerous and do not adequately represent the class; (3) motion to dismiss the claim for attorney's fees pursuant to New York Labor Law § 198, as that statute has been preempted by federal law; (4) motion to strike the plaintiffs' reply to the defendants' first counterclaim for conversion because the reply was not timely; (5) motion for summary judgment on the claim that the plaintiffs received compensation below the minimum wage established by the FLSA and New York minimum wage laws; (6) motion to amend the case caption because plaintiff Grzegorz Drelich has withdrawn from the case; (7) motion for leave to amend the counterclaims to include claim for indemnification and contribution liability against the plaintiff foremen; (8) motion to compel two of the plaintiffs and one non-party witness to consent to the New York State Department of Labor's release of their unemployment insurance applications; and (9) motion to dismiss the causes of action against the individual defendants Robert and Pawel Capala on the basis that the complaint fails to state a claim against them on the theory of piercing the corporate veil.

1

motions in which they cross-moved for partial summary judgment.[2]  On February 28, the defendants' filed their reply in support of the Feb. 4 motions.  That reply consisted of a 29 page brief, the 63 page affidavit of the defendants' counsel, and 35 exhibits which spanned over 500 pages (hereinafter, the "Defendants' Reply").  The plaintiffs now request the entry of an order striking the Defendants' Reply and sanctioning the defendants' counsel, Mr. Felipe "Philip" Orner, pursuant to 28 U.S.C. § 1927, Fed. R. Civ. P. 16, and the Court's inherent power.  The plaintiffs complain that the Defendants' Reply includes numerous ad hominem attacks against them and their counsel, Mr. Robert Wisniewski, and, in so doing, has violated two orders issued by the magistrate judge that the parties must cease all ad hominem attacks.  In the alternative to the motion to strike, the plaintiffs request the Court's leave to file a sur-reply so that they may respond to the assertions made in the Defendants' Reply.

For the reasons set forth below, the motion to strike the Defendants' Reply and the motion for leave to file a sur-reply are denied as moot insofar as the Feb. 4 motions have been disposed of by order of this Court dated May 5, 2009.  The motion to sanction defendants' counsel pursuant to Rule 16(f) and the Court's inherent power is granted.

## FACTS

This case was initially brought by five foremen and one laborer who claim that the defendants had inadequately compensated them for the number of hours of work they performed in violation of federal and state labor laws.  The defendants, in turn,

---

[2] The plaintiffs sought partial summary judgment on two issues: (1) that Robert and Pawel Capala are "employers" under the FLSA and New York Labor Law, and (2) that there was insufficient evidence to maintain the defendants' first counterclaim against plaintiff Lapinski for conversion of a logbook.

brought a number of counterclaims against the plaintiffs including tortious interference with contract and conversion.[3]  Although the claims and counterclaims raise many factual and legal issues for the parties to dispute, the most contentious aspects of this litigation thus far have had little to do with the merits of those causes of action.  A review of the pertinent procedural history reveals that the ad hominem attacks in the Defendants' Reply were only the most recent illustration of the incivility that has plagued this litigation.

### 1.      Discovery motions

The plaintiffs filed their complaint on August 29, 2007.  By April 2008, the parties were engaged in discovery.  In a status conference held on April 17, 2008, Magistrate Judge Steven Gold ordered the parties to meet and confer in order to resolve all outstanding issues regarding interrogatories and document demands.  The parties met to discuss outstanding discovery issues on May 7.  On May 14, defendants' counsel, Mr. Orner, filed a motion to compel the plaintiffs to individually answer the defendants' interrogatories.   He also moved for sanctions against the plaintiffs and their counsel, Mr. Wisniewski, see Docket No. 25, complaining that Mr. Wisniewski was not properly dressed at their May 7 meeting and that a letter Mr. Wisniewski drafted following that meeting contained false statements.  That motion reads in part as follows:

> I agreed to meet with plaintiffs' legal counsel on May 7, 2008, at his office.  Though the physical conditions of such meeting were not conducive to such meeting at his reception area with no desk to rest my files at, and in the presence of secretaries and clients of his while he was dressed informally with a mock black tee shirt with

---

[3] The defendants also brought counterclaims for breach of fiduciary duty and negligence.  The plaintiffs' motion to dismiss those claims with prejudice was granted by order of this Court dated November 12, 2008.

3

> short sleeves while I was dressed appropriately with a suit and tie. .
> . . Mr. Wisniewski continued his abuse of this legal counsel by
> stating that I had no experience, that he asked around the judges he
> knows and no one replied with any knowledge to my existence, that
> while he has been published in court decisions he could not find one
> with my name on it and then asked me how many ethical
> complaints had been filed against me. . . .

> . . . He did sent [*sic*] a letter on May 9, 2008 misstating the facts of
> the meeting and instead writing that ". . . you refused to engage in a
> discussion in good faith, claiming instead that my discovery
> demands violated Rule 11, as well [as] my ethical obligations."  Mr.
> Wisniewski falsely makes these statements, for which he must be
> sanctioned as well as for the entire meeting which he frustrated.

Id. at 1.  In opposition to this motion, the plaintiffs submitted a letter to Judge Gold in

which Mr. Wisniewski disagreed with Mr. Orner's recollection of the meeting.  See

Docket No. 28.

On May 16, the plaintiffs had filed their own motion to compel, seeking discovery

of the Capala Bros.' computer files.  Docket No. 26.  Mr. Orner submitted a letter in

opposition to that motion in which he asserted that Mr. Wisniewski "continues . . . to

conduct himself outside the normal rules of civility, professionalism and propriety.  He

has made it a systematic practice of his in this action to cite cases for holdings which he

mischaracterizes and misquotes."  Docket No. 27.

During a discovery conference on June 24, Judge Gold disposed of the respective

motions to compel and denied the defendants' motion for sanctions against Mr.

Wisniewski.  He expressed his disapproval of the uncivil tenor of the parties' filings:

> The Court:   The motions for sanctions are denied . . . .   I appreciate the civility
> that attended this conference, but the letter writing was quite
> distressing.

I was recently invited to speak at a ceremony in honor of magistrate judges hosted by the Brooklyn Bar Association, and I was pleased to tell everybody who was assembled there that being a magistrate judge is a terrific job, and it's largely because of the members of the bar.  The time I spent reading these letters, unfortunately, didn't fall into that category.

I have never in fifteen years on the bench read a letter in which one lawyer complained of another's attire.  I have not often read correspondence where lawyers question each other's credibility and ethics and brag about whether or not they've been sanctioned by other judges or the number of judges they appear before, and cannot recall their remarks to each other in anything that seems anything like what their adversary recalls.

So although you [Mr. Orner] don't embrace Mr. Wisniewski's enthusiasm or optimism about a refreshed take on how the two of you might manage the progress of this litigation more effectively, and I'm willing to accommodate that skepticism by giving you specific dates [for depositions].  I will ask both sides to try to take a step away and a deep breath and start over again, not only because your calling as a professional really requires it but also because at some point, there may be an award of fees in this case, and if there is, it's going to be a much larger award than it would otherwise have to be, because of the time we spend bickering instead of focusing on the substantive issues.

See Tr. of Civil Cause for Discovery Conference, dated June 24, 2008, at 41:9-42:15.

## 2.    Defendants' opposition to plaintiffs' letter requesting modification of a discovery order

On July 23, Mr. Wisniewski notified Judge Gold by letter that the plaintiffs were withdrawing their allegation that the defendants had paid some wages in cash to keep those wages off their books.  Because this allegation was withdrawn, Mr. Wisniewski requested that Judge Gold modify a previous order that required the plaintiffs to produce their income tax returns and bank statements.  See Docket No. 44.  Mr. Orner

filed a response to that request on August 4.  A substantial portion of Mr. Orner's letter
merits inclusion here:

> The conduct of Plaintiffs' legal counsel, as documented on the
> record, is truly deplorable and worthy of sanctions. . . . [H]is motion
> [consisting] of alleged cash payments . . . he now conveniently
> withdraws due to the huge lack of credibility of his clients . . . he has
> filed a class action with six plaintiffs over a year ago, and instead of
> adding to the number of plaintiffs, he just lost one, and he . . . has
> falsely alleged that other than the additional Portal-to-Portal Act
> additional hours his clients were paid under the minimum wages on
> the pleadings.  All of these misrepresentations as well as several
> other material misrepresentations on the record . . . have
> contributed to the great prejudice to the defendants and [have]
> misled the Court . . . .  How long will this Court tolerate such
> inexcusable course of conduct by this legal counsel?

Docket No. 46.  Notwithstanding Mr. Orner's objections, Judge Gold revoked his prior
order directing plaintiffs to disclose their tax returns and bank statements during a
telephone conference call on August 7.

### 3. Defendants' motions to disqualify Mr. Wisniewski and for sanctions

On September 29, the defendants filed motions to disqualify of Mr. Wisniewski as
plaintiffs' counsel and to sanction him pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. §
1927.  Docket No. 48.  Mr. Orner's allegations are, in pertinent part, included here:

> Plaintiffs' attorney, Robert Wisniewski, has, since the beginning of
> this litigation, pursued a course of conduct disregarding the rules of
> this Court, distorting the truth, delaying the conduct of depositions
> for months . . . [he] pursued frivolous theories of law in the pursuit
> of this litigation, has committed fraud on the court by falsely stating
> that the plaintiff's deposition (Lapinski) of September 9, 2008
> needed to be pursued as scheduled, provided false verified table of

6

damages for his clients for causes of action not even stated on the complaint, provided false verifications by his clients that they understood their own individual tables of damages . . . has falsely cited cases on point on previous motions and applications to this Court and systematically and continuously provided false information and facts to this Court, thus delaying the proceedings and harassing the defendants.

Declaration of Felipe ("Philip") Orner, Esq. in Support of Defendants' Motion, dated Sept. 29, 2008, ¶ 3.  At a status conference held on October 16, Judge Gold allowed Mr. Orner to argue further in support of his motion to disqualify and his motion for sanctions:

> Mr. Orner:  I have been practicing law for about twenty years and I have never found an attorney whom I have to bring a motion like this before. It's not like I make a habit of it.  But the bottom line, the conclusion is, I must say, Mr. Wisniewski lacks any credibility as to whatever he says to me or to the Court.
>
> The Lapinski deposition was a perfect example, your Honor.  He . . . told not the truth on a conference call to your Honor as to [Lapinski being employed] and having a schedule that he had to comply with. In the mean time, his client was unemployed for four months before.  Either he knew or should have known about it.
>
> I have never had a situation like that before, where an attorney totally misrepresents the truth, not only to opposing counsel but to the judge.
> . . .
>
> There is nothing Mr. Wisniewski says about me that is true, and I can support it on my affidavits, on my third party documents. There is nothing that he can show about me not being truthful and there is no record whatsoever of me not being truthful.  But I can show that Mr. Wisniewski is untruthful.
>
> Now how can we go to trial, create a trail of discovery leading to trial, where nothing I can possibly believe Mr. Wisniewski says or offers?  . . . I have never seen a case where there is such a lack of credibility of opposing counsel.

Tr. of Status Conference, dated Oct. 16, 2009, at 11:10-13:23.  After Mr. Wisniewski was

given the opportunity to argue in his own defense, Mr. Orner stated further that "the

untrue statements continue here as we speak."  Id. at 21:22-3.

Judge Gold denied the defendants' motion to disqualify Mr. Wisniewski, finding

that the movant's heavy burden was not met, see id. at 23:18-26:4, and directed Mr.

Wisniewski to respond to the motion for sanctions in writing.  The defendants appealed

the order denying the motion to disqualify to this Court, reasserting misconduct by Mr.

Wisniewski and also implying that Judge Gold engaged in improper *ex parte* contact.

See Docket No. 58.  After reviewing the defendants' objections, this Court issued a

Memorandum and Order on January 9, 2009, stating:

> I am constrained to add that the tenor of the Objections is not only
> discourteous and undignified but, coupled with the statements as
> recorded in the transcript, might themselves be the subject of
> censure.  On page 2 of their Objections an egregiously based charge
> is made that Judge Gold engaged in "improper *ex parte* conduct . . .
> clearly against the defendants' interests, prejudicial and reflects on
> the long pattern of discovery prejudice the defendants have been
> subjected to. . . .  It is inconceivable how a Court can therefore
> properly address the level of fraud on the court perpetrated by a
> party . . . when the Magistrate in this case improperly extends the
> time to answer the motion."

> The snippet of the transcript which is cited as evidencing Judge
> Gold's *ex parte* communication is remarkable for its failure to
> convey a suggestion of impropriety and egregious for its
> carelessness in making the claim.

> Their objections to Judge Gold's rulings as reflected in the
> transcript are of a piece with their Objections.  For example: "What
> kind of Court is this;" "it's hard to focus on the merits when the
> process is aborted like it is here." (Tr. At 31, 33).

See Memorandum and Order, dated Jan. 9, 2009, at 3-4.  The Court denied the defendants' objections.

Regarding the defendants' motion for sanctions, Mr. Wisniewski submitted his opposition in writing.  In a Memorandum and Order dated December 18, 2008, Judge Gold denied sanctions pursuant to Rule 11, § 1927, and the court's inherent power to sanction.  See Docket No. 75.  Judge Gold also reprimanded counsel for both parties for the continuing incivility.

> I take this opportunity to note, as I have previously, that counsel in this action have filed numerous letters and motions concerned with petty issues and riddled with ad hominem attacks.  *Counsel are hereby admonished that further motion practice and correspondence in the same vein may result in the imposition of sanctions.*  Counsel should strive to work together in a professional manner, recognizing that each is advocating for an adverse party, and should focus their efforts more sharply on presenting the merits of the case rather than making repeated challenges to the good faith and professionalism of opposing counsel.

Memorandum and Order (hereinafter "Mag. Order 1"), dated Dec. 18, 2008, at 7-8 (emphasis added).  The defendants appealed the order, and this Court denied the defendants' objections, holding that Judge Gold's order "persuasively marshal[ed] the applicable authorities and their teachings of the prerequisites to be satisfied before sanctions should be imposed whether pursuant to Rule 11, Fed. R. Civ. P. or 28 U.S.C. § 1927.  His thoroughly clear explication of those teachings compels the conclusion that his Memorandum and Order was plainly not clearly erroneous or contrary to law."  Memorandum and Order, dated Jan. 8, 2009, at 2.

4.      **Defendants' response to plaintiffs' second motion to compel discovery**

On February 19, 2009, the plaintiffs filed a motion to compel responses to their interrogatories and document requests concerning the defendants' counterclaims.  See Docket No. 105.  On February 26, Mr. Orner filed a letter addressed to Mr. Wisniewski in response to the plaintiffs' motion to compel.  See Docket No. 106.  That letter was replete with ad hominem attacks.  Mr. Wisniewski was accused of misrepresenting the content of a telephone conservation between the attorneys, was accused of filing the motion to compel "in bad faith for ulterior purpose," and was described as having a "unique devious manner."  Judge Gold was also accused of condoning Mr. Wisniewski's "flagrant acts of misconduct and unethical behavior."  Id. at 1-3.

On the same day, Judge Gold issued an order holding the defendants' letter could not properly constitute opposition to the motion because of a number of procedural and substantive defects.  Judge Gold also censured Mr. Orner for his invective.

> Finally, the letter is replete with personal attacks upon the integrity of plaintiffs' counsel.  This is not the first time such attacks have been made, nor is it the first time I have been forced to caution counsel to refrain from making such attacks.  In fact, I have repeatedly urged counsel – on at least one occasion in writing – *to cease making personal attacks, and warned that sanctions would be imposed if the attacks continued*.  I note that plaintiffs' letter dated February 19, 2009 makes no similar attacks upon counsel for the defendants.

Memorandum and Order (hereinafter "Mag. Order 2"), dated Feb. 26, 2009, at 1 (emphasis added).  Judge Gold ordered the defendants to file a proper opposition and

warned that any submission containing ad hominem attacks would not be considered.
Id. at 2.

### 5.     Defendants' Reply in support of the Feb. 4 motions

Two days after Judge Gold issued that order, Mr. Orner filed the voluminous Defendants' Reply in support of the Feb. 4 motions in which Judge Gold's admonition is blatantly ignored.  Mr. Orner's 63 page affidavit submitted with the Defendants' Reply contained many personal attacks against Mr. Wisniewski, including allegations of impropriety that the defendants had already asserted in their motions to disqualify and to sanction Mr. Wisniewski.  A recitation of the pertinent accusations is merited here:

> 20.     Mr. Wisniewski has repeatedly provided false statements to this Court . . . .  Mr. Wisniewski has served . . . a frivolous personal subpoena on my office . . . .  Mr. Wisniewski's office has falsely presented statements to this Court . . . .  Mr. Wisniewski has drafted, prepared and executed affidavits of all five remaining plaintiffs which he either knew or should have known to be false. Yet this Court has not seen fit to disqualify Mr. Wisniewski . . . .   In that respect, plaintiffs chose well an attorney who follows their own set of conducts and lack of ethics.

> 21.     Plaintiffs' legal counsel has continuously dawdled on this case, to the extent of having requested the extension of discovery deadlines on three different such deadlines.  And now, in light of his excuses of vacations, personal reasons and office management, which has proven to be false again, still assigns responsibility for his lackadaisical mismanagement of this case on the defendants.

> 22.     . . . This is again further evidence of the lack of ethics of Mr. Wisniewski.  But seeking sanctions in this Court for such conduct has proven to be fruitless, and such will not be sought at the present time.

> 23.     Yet, because of such unethical practices of Mr. Wisniewski, this legal counsel has had no other recourse but require that all

communications between the parties, including conferences and scheduling, be in writing.

. . .

27.     Continuing his deliberate false representations to this Court, Mr. Wisniewski then purposely misstated the significance of the produced purchase orders . . . .

28.     . . . [P]laintiffs' legal counsel has rejected [a third party's] proposed affidavit explaining these documents.  It is obvious that such rejection is only to further obstruct the truth of these documents by plaintiffs to this Court and to further mislead this Court.

. . .

35.     Mr. Wisniewski then additionally falsely states in his affidavit that the plaintiffs filled up the gas tanks of the three vans they drove "routinely."

. . .

38.     The shocking false declaration by Mr. Wisniewski just follows the same pattern of his disregard for the truth in this litigation, which this Court has condoned to this date.

. . .

40.     The declaration of Glenn Pannenborg, an accountant hired by the plaintiffs, submitted by the plaintiffs in support of their motion . . . is similarly flawed as was his testimony.  He admitted that the schedule and computations [regarding the plaintiffs' pay] are based on assumptions provided to him by Mr. Wisniewski himself for which to this date he has failed to provide any support at all.  While on direct, Mr. Pannenborg testified that he had produced his entire file for deposition, which lacked any written evidence at all for any of the assumptions alleged by the plaintiffs, he recanted his testimony after taking a break and walking out of the deposition room at the same time that Mr. Wisniewski took a break as well. When the deposition resumed, Mr. Pannenborg changed his testimony to state that contrary to the subpoena instructions and the testimony he previously provided, some documents had not been brought to the deposition.

. . .

147.    Mr. Wisniewski has deliberately and unnecessarily prolonged the discovery stage of these proceedings, with three (3) extensions of deadlines established by this Court.  Obviously, the business side of his vested interest on this litigation bars him from now proclaiming that he can independently and properly represent the interests of the putative potential class.

. . .

151.  In addition, this litigation has already a proven procedural history . . . of Mr. Wisniewski acting unethically on several instances and on several different aspects of this litigation.  Though such improper conduct has not risen to the level of imposing costs and sanctions as this Court has already determined, or even disqualifying him due to high bar set by the precedents cited on the previous court orders, the morality and ethical necessary to be a class action legal counsel does not rise to that high level of the bar.

152.    Mr. Wisniewski has repeatedly provided false representations to this Court . . . .  The previous motions on sanctions are replete with a long list of such unethical conduct by this legal counsel.

Reply Affidavit by Defendants' Legal Counsel in Support of Defendants' Motion and in Opposition to Plaintiffs' Cross-Motion, dated Feb. 25, 2009.  The brief submitted as part of the Defendants' Reply refrained from leveling similar personal attacks.

**6.    The plaintiffs' motion to strike the Defendants' Reply and for sanctions against Mr. Orner**

The plaintiffs filed the present motions on March 13, 2009, and the defendants filed their opposition on April 17.  <u>See</u> Docket Nos. 118-20, 126.  The defendants again argued that "the plaintiffs have engaged in systematic, continuous pattern of submission of misleading and untruthful declarations to this Court in these proceedings." Memorandum of Law by Defendants in Opposition to Plaintiffs' Motion to Strike ("Def.

13

Mem."), dated April 14, 2009, at 3.[4]  The crux of Mr. Orner's argument against sanctions is that his allegations of Mr. Wisniewski's misconduct are true and therefore are not sanctionable.  In his affidavit in support of his opposition to the motion, Mr. Orner stated:

> The plateaus of all ironies has now been reached by plaintiffs' filing of the instant motion because, after their legal counsel is proven to have submitted false and misleading declarations . . . plaintiffs still find the audacity to even seek costs and sanctions against the parties reporting to the Court such continuous and systematic breach of ethical conduct by said legal counsel. . . .
>
> In all my years of practicing law and participating in litigation, this legal counsel has not read, heard and seen the level of lack of respect for the truth as plaintiffs' legal counsel has shown in this proceeding.  As described below, he has thwarted it, misrepresented it, mislead it and has embarked in a clear harassment of the defendants with long litigation schedules and protracted discovery just to "shake the tree" long and hard enough for the defendants to cave in to the frivolous and unsupported litigation by his clients . . . regardless of whether such truth are in effect true ad hominem attacks on plaintiffs' legal counsel . . . .  [I]t is the obligation of every legal counsel to report to the Court when opposing counsel breaches the Cannons [*sic*] of Ethics and when his clients are prejudiced by said legal counsel who thwarts, manipulates, distorts, misleads the truth and this Court and utterly presents patently false statements . . . .

Affidavit of Felipe ("Philip") Orner, Esq. in Opposition to Plaintiffs' Motion to Strike, dated April 14, 2009, ¶¶ 3-4.  After a status conference before this Court on April 20, Mr. Orner submitted a supplementary brief that presented arguments in opposition the

---

[4] Mr. Orner also suggests that the Court should sanction the plaintiffs and Mr. Wisniewski *sua sponte* pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927.  See Def. Mem. at 13.  He does not, however, move for sanctions.  The Court is fully aware that it is permitted to impose sanctions upon a party *sua sponte* for violation of a Federal Rule or violation of a federal statute.  The Court nevertheless declines to do so.

plaintiffs' motion for sanctions imposed pursuant to 28 U.S.C. § 1927.  See Docket No. 127.

On April 24, the parties appeared before this Court to argue their respective positions regarding the defendants' Feb. 4 motions and the plaintiffs' cross-motions for partial summary judgment.  Thereafter, the Court heard argument regarding the plaintiffs' motions to strike the Defendants' Reply and for sanctions.  Mr. Wisniewski clarified that the plaintiffs were seeking sanctions against Mr. Orner alone and not his clients.  Tr., dated April 24, 2009, at 44:18-19.  Mr. Orner was allowed a full and fair opportunity to argue in opposition to the motion for sanctions against him.  Portions of Mr. Orner's argument warrant inclusion here.

| | |
|---|---|
| Mr. Orner: | Mr. Wisniewski just makes up things.  I've never seen such a thing.  [The Court] told me on Monday, 62 [*sic*] years on the Court you've never seen such ad hominem attacks, invectives, it is because I've never seen such making up of facts either on my tens of thousands of hours of litigation, I've never seen such shocking presentation of false evidence and I just have an obligation to present it to the Court. |
| | He put himself in the front stage of this litigation, Your Honor.  He's front stage.  He's not a lawyer.  He does this like an assembly line.  He has lots of cases, he specializes in [Fair Labor Standards Act] cases and when I deposed his clients – |
| The Court: | Excuse me.  I would suggest, Mr. Orner, you think very, very carefully before making some of the statements you're making now. |
| Mr. Orner: | I can back them up. |
| The Court: | I'm not asking you whether you can back them up or not.  I'm not going to conduct an evidentiary hearing.  I'm just suggesting, Mr. Orner, that you might consider the statements that you're making now as being appropriate.  It is a very serious, serious offense, professional offense, to charge another lawyer with making things |

15

up here in open court.  I would suggest you rethink that kind of thing before you utter it.  Now, if you want to proceed, go ahead.

Mr. Orner:   Yeah, I'll proceed and what I've said so far I have no problem whatsoever with, Your Honor.

Tr. at 54:23- 55:23.

## DISCUSSION

The plaintiffs have made three motions.  First, they move to strike the Defendants' Reply in support of the Feb. 4 motions.  Second, as an alternative to the motion to strike, they move for leave to file a sur-reply in order to respond to the allegations in the Defendants' Reply.  Third, they move for sanctions against defendants' counsel pursuant to Fed. R. Civ. P. 16, 28 U.S.C. § 1927, and the Court's inherent power. The motion to strike and the alternative motion for leave to submit a sur-reply were rendered moot by the Court's Memorandum and Order dated May 5, 2009, which disposed of the Feb. 4 motions.  The only question remaining is whether Mr. Orner's persistent and unapologetic vituperation in violation of two orders of the magistrate judge is worthy of sanctions.  The Court holds that it is.

## A.     Applicable law governing sanctions

Section 1927 of Title 28 was intended to deter attorneys from unnecessarily delaying litigation.  <u>Oliveri v. Thompson</u>, 803 F.2d 1265, 1273 (2d Cir. 1986).  The statute states that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct."  An award under this statute "is proper when the attorney's actions are so

completely without merit as to require the conclusion that they must have been undertaken from some improper purpose such as delay." Oliveri, 803 F.2d at 1273. Stated differently, the imposition of sanctions pursuant to § 1927 requires a showing of subjective bad faith of the attorney facing sanctions, and the Court must consider in detail the conduct of counsel that satisfies the bad faith requirement. MacDraw, Inc. v. CIT Group Equip. Fin., Inc., 73 F.3d 1253, 1262 (2d Cir. 1996).

Fed. R. Civ. P. 16 ("Rule 16") governs pretrial conferences, scheduling, and case management. Rule 16(f)(1)(C) permits the Court "on motion or on its own" to "issue any just orders" if a party or attorney "fails to obey a scheduling or other pretrial order." The rule requires the Court to order the party, the attorney, or both to pay the reasonable expenses incurred because of the failure to obey the pretrial order, unless that failure was substantially justified or the award of expenses and fees would otherwise be unjust. Rule 16(f)(2).

Lastly, in addition to sanctions permitted by rule and statute, "[c]ourts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum[] in their presence, and submission to their lawful mandates." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (quoting Anderson v. Dunn, 6 Wheat. 204, 227, 5 L.Ed. 242 (1821)). The power of courts to manage their own affairs "to achieve the orderly and expeditious disposition of cases," id. (quoting Link v. Wabash R. Co., 370 U.S. 626, 630-31 (1962)), reaches not only conduct before the court but also conduct "beyond the court's confines," for the inherent power of federal courts derives in part from concern regarding "disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial." Id. at 43-

17

44 (quoting <u>Young v. United States ex rel. Vuitton et Fils S.A.</u>, 481 U.S. 787, 798 (1987)).

It is a potent power, one that must be exercised with restraint and discretion.  <u>Id.</u> at 44;

<u>see also</u> <u>Schlaifer Nance & Co., Inc. v. Estate of Andy Warhol</u>, 194 F.3d 323, 334 (2d Cir.

1999) ("although the decision to impose sanctions is uniquely within the province of the

district court, we nevertheless need to ensure that any decision is made with restraint

and discretion").

The Supreme Court in <u>Chambers</u> discussed three grounds upon which the so-

called "American Rule" prohibiting fee shifting may yield to a federal court's inherent

power to assess attorney's fees: first, when a party's efforts directly benefitted others in

the litigation (known as the common-fund exception to the American Rule); second,

when counsel willfully disobeyed an order of the court; and third, when a party has

"acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  <u>Id.</u> at 45-46.

## B.    Due process considerations

Although this issue was not raised by either party, the Court would be remiss if it

failed to analyze the due process requirements that must be satisfied in order to impose

sanctions.  The Second Circuit has held that:

> [a]n attorney whom the court proposes to sanction must receive
> specific notice of the conduct alleged to be sanctionable and the
> standard by which that conduct will be assessed, and an
> opportunity to be heard on that matter, and must be forewarned of
> the authority under which sanctions are being considered, and
> given a chance to defend himself against specific charges.

<u>Sakon v. Andreo</u>, 119 F.3d 109, 114 (2d Cir. 1997).  Proper notice requires, at a

minimum, that Mr. Orner be informed of (1) the source of authority for the sanctions

18

being considered and (2) the specific conduct or omission for which the sanctions are being considered so that he may prepare a defense.  See Schlaifer Nance & Co., 194 F.3d at 334.  The opportunity to be heard does not necessarily entitle Mr. Orner to an evidentiary hearing, but it does entitle him to submit written briefs if not also "the opportunity to speak to the very court that is about to pronounce judgment."  Id. at 335.

Here, the plaintiffs filed their motion for sanctions on March 13, 2009, see Docket No. 118, in which they laid out their argument for sanctions against Mr. Orner pursuant to Rule 16(f), § 1927, and the Court's inherent power.  They specified that the sanctionable conduct was Mr. Orner's violation of two court orders, Mag. Order 1 and 2, see supra, instructing the parties to cease all ad hominem attacks or risk incurring sanctions.  Mr. Orner filed his response to the plaintiffs' motion for sanctions on April 17, and he also submitted a supplementary brief in opposition on April 22.  Mr. Orner was given further opportunity to be heard on the matter during oral argument on April 24.  The Court finds that Mr. Orner has had adequate notice and opportunity to be heard.

## C.   Arguments and analysis

The plaintiffs' argument is twofold.  First, Mr. Orner violated two orders issued by Judge Gold that the parties are not to engage in ad hominem attacks.  See Plaintiffs' Memorandum of Law in Support of Motion to Strike ("Pl. Mem."), dated March 13, 2009, at 2; see also Tr. at 44:6-22.  Second, Mr. Orner unnecessarily multiplied the litigation by submitting many motions, each of which were supported by hundreds of pages of exhibits that were often irrelevant, and by frivolously appealing a number of Judge Gold's orders.  See Tr. at 45:25-46:10.  As to the second argument, the Court finds

that Mr. Orner's many motions and appeals do not warrant sanctions when considered cumulatively.  While the defendants' motions have indeed been voluminous, and while the appeals of the magistrate judge's determinations have largely been poorly veiled attempts to reargue issues, the Court cannot point to any evidence that clearly suggests bad faith on the part of Mr. Orner.  As to the plaintiffs' first argument, the Court finds that Mr. Orner's use of ad hominem attacks in the Defendants' Reply and during oral argument violates Judge Gold's previous orders and therefore merits sanctions.

### i.    Section 1927

The Court does not find § 1927 to be the appropriate authority for the imposition of sanctions here.  Section 1927 is aimed at deterring unnecessary delays in litigation. Oliveri, 803 F.2d at 1273.  The plaintiffs' do not assert that Mr. Orner is engaging in dilatory tactics; rather, the gravamen of the plaintiffs' motion is that Mr. Orner's advocacy is violative of two orders demanding the civility of the litigants.[5]

### ii.    Rule 16(f)

Rule 16(f) permits the Court to sanction Mr. Orner for violation of a pretrial order.  Subsection (f)(2) of that rule specifies the relief the Court must impose: "the court must order the party, the attorney, or both to pay the reasonable expenses – including attorney's fees – incurred because of any noncompliance with this rule . . . ." The magistrate judge in the case of Koehl v. Greene, No. 06 Civ. 0478 (LEK/GHL), 2008

---

[5] The Court does recognize the Second Circuit's observation that the only meaningful difference between § 1927 and a district court's inherent power to sanction is that awards under § 1927 are made exclusively against those authorized to practice before the courts while awards under the Court's inherent power may be made against an attorney, a party, or both.  See Oliveri, 803 F.2d at 1273.  Notwithstanding that fact, the Court looks to the purpose behind § 1927 when making its determination that sanctions pursuant to the Court's inherent power are more appropriate.

WL 2690268, at *5 (N.D.N.Y. June 30, 2008), faced circumstances similar to those at bar.  He had warned the plaintiff to refrain from using foul and abusive language in his submissions to the court.  The plaintiff ignored that admonition, and as a result, the magistrate sanctioned him pursuant to, *inter alia*, Rule 16(f).  <u>See</u> <u>id.</u>

Mr. Orner has not disputed in his papers or during oral argument that the magistrate judge had issued two orders that directed each attorney to cease ad hominem attacks against his adversary and that he was bound by those orders.  The first order was issued on December 18, 2008, in which Judge Gold held that "[c]ounsel are hereby admonished that further motion practice and correspondence in the same vein may result in the imposition of sanctions."  <u>See</u> Mag. Order 1, *supra*.  The second order, issued on February 26, 2009, struck a letter submitted by Mr. Orner from the record that was replete with personal attacks on Mr. Wisniewski.  Judge Gold held that:

> [t]his is not the first time such attacks have been made, nor is it the first time I have been forced to caution counsel to refrain from making such attacks.  In fact, I have repeatedly urged counsel – on at least one occasion in writing – to cease making personal attacks, and warned that sanctions would be imposed if the attacks continued.

<u>See</u> Mag. Order 2, *supra*.  Those orders were clear and unambiguous.  Mr. Orner nevertheless proceeded to lambast Mr. Wisniewski in the Defendants' Reply, and he continued in the same vein during oral argument when asserting that Mr. Wisniewski was not an attorney but instead operated an "assembly line," the implication being that he manufactures labor compensation lawsuits for his personal enrichment.  <u>See</u> Tr. at 55:5-8.  His conduct was in violation of the magistrate judge's orders and is therefore sanctionable pursuant to Rule 16(f).

### iii.    The Court's inherent power

To the extent that it is a question whether Judge Gold's order to refrain from ad hominem attacks is the kind of pretrial order embraced by Rule 16(f), this Court may rely on its inherent power to impose sanctions.  See Chambers, 501 U.S. at 50 (holding that when, "in the discretion of the court, neither [§ 1927] nor the Rules are up to the task, the court may safely rely on its inherent power."); see also MacDraw, 73 F.3d at 1262 (holding that sanctions are permitted – and a district court need not hesitate to impose them – "where an attorney's conduct degrades the legal profession and disserves justice.").  Although Mr. Orner did not directly address the Court's inherent power to sanction in his briefs or during oral argument, he did argue that sanctions were not appropriate for two distinct reasons: because his allegations against Mr. Wisniewski were colorable and because he never acted in subjective bad faith.

### a.)    Colorability

During oral argument, Mr. Orner stated that this Court must evaluate the facts supporting his allegations of Mr. Wisniewski's misconduct before imposing sanctions because his "claims" (as he refers to them) are colorable and therefore not sanctionable. See Tr. at 50:8-15; see also Defendants' Supplementary Memorandum of Law ("Def. Supp. Mem."), dated April 22, 2009, at 9.  While the Second Circuit has indeed held that a district court must find that "the challenged claim was without a colorable basis" before imposing sanctions pursuant to its inherent power, see, e.g. Schlaifer Nance & Co., 194 F.3d at 336, that precedent is inapplicable here.

When the Second Circuit has required that a claim be completely without color for it to be sanctionable, it has done so when considering whether to sanction a party or attorney for bringing a frivolous cause of action. Mr. Orner cites to five Second Circuit cases in his supplementary brief that illustrate this point. See Def. Supp. Mem. at 7-8. In Schlaifer Nance & Co., the plaintiff had been sanctioned by the district court for bringing a fraud claim against the defendant that the court believed was completely without a colorable basis. 194 F.3d at 327. The panel reversed the district court's order of sanctions in part because it found that the fraud claim was colorable. Id. at 337. In Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 82 (2d Cir. 2000), the court reversed the district court's judgment imposing sanctions against the plaintiffs attorney. The court held that the claims pursued by the sanctioned attorney "on Revson's behalf were not 'entirely without color'. . . ." Id. In Umego v. Barden Corp., 307 F. App'x 514, 517 (2d Cir. 2009) (summary order), the court vacated the district court's order sanctioning the plaintiffs' attorney for asserting meritless claims against the defendant. In Oliveri, the Second Circuit reversed a judgment imposing sanctions on a plaintiff's attorney for initiating and pursuing frivolous civil rights claims against a number of police officers. See 803 F.2d at 1271-73. In Numeroff v. Abelson, 620 F.2d 339, 348 (2d Cir. 1980), the court held that sanctions against Numeroff and his counsel were inappropriate in part because their securities fraud claims were not entirely without color at the time the action was commenced. In sum, this precedent does not speak of "claims" in the sense of allegations, as it appears Mr. Orner is using the word, see Tr. at 50:14-15, but in the sense of causes of action.[6] The challenged conduct at issue here is not the filing of a

---

[6] See also Black's Law Dictionary 264 (8th ed. 2004) (defining "claim" as "1. The aggregate of operative facts giving rise to a right enforceable by a court . . . . 2. The assertion of an existing right; any right to repayment or to an equitable remedy, even if contingent or provisional . . . . 3. A demand for money,

frivolous suit but the use of ad hominem remarks in violation of two orders of the magistrate judge.

Moreover, the colorability inquiry serves only to inform the bad faith inquiry.  <u>See In re Ormond Beach Assoc. Ltd. P'ship</u>, 65 F. App'x 340, 342 (2d Cir. 2003) (summary order) ("The finding of bad faith 'requires both [1] clear evidence that the challenged actions are [a] entirely without color, and [b] are taken for reasons of harassment or delay or for other improper purposes, and [2] a high degree of specificity in the factual findings of the lower courts" (quoting <u>Revson</u>, 221 F.3d at 78) (alterations in the original) (internal quotation marks omitted)).  Because the Court is not required to find Mr. Orner acted in bad faith, <u>see</u> *infra*, it does not need to find that his actions are entirely without color.[7]

### b.)    Bad faith

A court is not required to make an explicit finding of bad faith to impose sanctions pursuant to the Court's inherent power for violation of a court order.  <u>United States v. Seltzer</u>, 227 F.3d 36, 41-42 (2d Cir. 2000).  The court in <u>Seltzer</u> considered whether sanctions ordered by this Court against an attorney for violation of a court order should be reversed because this Court did not make an explicit finding that the attorney acted in bad faith.  <u>Id.</u> at 39.  The panel first recognized that the Second Circuit had repeatedly held that a party's or attorney's bad faith must be clearly established in

---

property, or a legal remedy to which one asserts a right . . . . 4. An interest or remedy recognized at law; the means by which a person can obtain a privilege, possession, or enjoyment of a right or thing; cause of action."

[7] If an inquiry as to colorability had been required here, the Court would have no difficulty concluding that ad hominem attacks such as these are completely without color.  <u>See also</u> <u>Blum v. Schlegel</u>, 91 Civ. 633 (WMS), 1996 WL 925921, at *7 (W.D.N.Y. May 9, 1996) (holding that personal attacks against opposing counsel were entirely without color).

order to impose sanctions pursuant to a court's inherent power.  See id. at 40 (citing

DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 136 (2d Cir. 1998); Sakon, 119

F.3d at 114; Milltex Indus. Corp. v. Jacquard Lace Co., 55 F.3d 34, 41 (2d Cir. 1995); and

Oliveri, 803 F.2d at 1272).  The panel then observed that, in each of the cases in which

the Circuit considered bad faith a prerequisite, "the court sanctioned an attorney by

reason of excesses in conduct of the sort that is normally part of the attorney's legitimate

efforts at zealous advocacy for the client."  Id.  A finding of bad faith in these contexts is

necessary "to strike a balance between the vigorous pursuit of litigation and the right to

be free of litigation that is taken 'in bad faith, vexatiously, wantonly, or for oppressive

reasons.'"  Id. (quoting Oliveri, 803 F.2d at 1272).  The panel distinguished those cases

from the circumstances before them, namely that "Seltzer allegedly had disrupted and

delayed the proceedings and violated a prior order of the court."  Id. at 40-41.  The

sanctions imposed on Seltzer involved her "negligent or reckless failure to perform . . .

her responsibility as an officer of the court" and therefore were justified absent a finding

of bad faith because the court had the inherent power to "manage its own affairs so as to

achieve the orderly and expeditious disposition of cases."  Id. at 41 (quoting Chambers,

501 U.S. at 43) (alteration and internal quotation marks omitted).

        The court held that a finding of bad faith was required to impose sanctions on an

attorney pursuant to a court's inherent power if the behavior at issue was (1) conduct

that led to the lawsuit or took place during litigation and (2) was taken on behalf of the

client.  See id. at 41-42.  "But, when the district court invokes its inherent power to

sanction misconduct by an attorney that involves *that attorney's violation of a court

order* or other misconduct that is not undertaken for the client's benefit, the district

court need not find bad faith before imposing a sanction under its inherent power." Id. at 42 (emphasis added).

Here, Judge Gold issued two orders that directed the attorneys in this litigation to conduct themselves as officers of the Court should: with civility towards one another. Defendants' counsel violated those orders in the Defendants' Reply and during oral argument.  No finding of bad faith is required to sanction such conduct pursuant to the Court's inherent power.

### iv.    Conclusion

Persistent, virulent accusations of attorney misconduct have a deleterious effect on a district court's ability to orderly and expeditiously manage litigation, and they have thus far served only to distract from the important issues of fact and law in this case. With that said, the Court certainly does not suggest that an attorney may never accuse his or her adversary of misconduct.  Indeed, attorneys are equally responsible for reporting the misconduct of other attorneys as they are for refraining from engaging in misconduct themselves.  See New York Rules of Professional Conduct, Rule 8.3(a); Rule 8.4(h) (2009).[8]  The legal profession itself relies on such self-governance.[9]  Mr. Orner's allegations, however, were not in keeping with the spirit of a lawyer's responsibilities. Rather than making casual and inflammatory accusations of misconduct, a more

---

[8] Rule 8.3 (a) states, "[a] lawyer who knows that another lawyer has committed a violation of the Rules of Professional conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer shall report such knowledge to a tribunal or other authority empowered to investigate or act upon such violation."  Rule 8.4(h) states "[a] lawyer or law firm shall not (h) engage in any other conduct that adversely reflects on the lawyer's fitness as a lawyer."

[9] Paragraph 5 of the preamble to the New York Rules of Professional Conduct states "[t]he relative autonomy of the legal profession carries with it special responsibilities of self-governance.  Every lawyer is responsible for observance by other lawyers.  Neglect of these responsibilities compromises the independence of the profession and the public interest that it serves."

appropriate tack would have been for Mr. Orner to have focused the Defendants' Reply on the merits of the Feb. 4 motions and to have made a separate application for an inquiry into the alleged misconduct.  Mr. Orner did take just such an approach earlier in this litigation when moving to disqualify and to sanction Mr. Wisniewski.  Those motions were denied.  A similar application would now be frivolous if, rather than presenting new evidence of misconduct, it merely reargued the allegations and evidence that have already been considered and rejected by both the magistrate judge and this Court.

In sum, the Court holds that Mr. Orner's conduct violated two court orders and is therefore sanctionable under Rule 16(f) and the Court's inherent power.

## D.    Civility and advocacy

A final word regarding civility is merited, specifically regarding its relation to advocacy.  Defendants' counsel contends that his conduct is permissible given his duty to advocate zealously on behalf of his client and that sanctions would therefore serve only to hamstring attorneys who seek to advocate for their clients' interests fully and effectively.  See Def. Supp. Mem. at 10-11.

The suggestion that it would somehow negatively impact the zealousness of legal representation if adversaries conducted themselves with civility is utterly specious. Zealousness does not entail being abusive or using inflammatory language.  Far too often is the phrase "zealous advocacy" used as a shield to defend discourteous or combative litigation tactics from censure when, in truth, incivility vitiates effective advocacy.  As Justice Sandra Day O'Connor once observed:

> incivility disserves the client because it wastes time and energy: time that is billed at hundreds of dollars an hour, and energy that is better spent working on the client's case than working over the opponent. . . . It is enough for the ideas and positions of the parties to clash; it is wasteful and self-defeating for the lawyers to do so as well.

Sandra Day O'Connor, Professionalism, 78 Or. L. Rev. 385, 389 (1999).

The legal profession itself demands that each lawyer be both zealous and civil. The New York Lawyer's Code of Professional Responsibility[10] included the following three duties as "ethical considerations": the duty "to represent the client zealously within the bounds of the law,"[11] the duty to "be courteous to opposing counsel,"[12] and the duty to abstain from making "unfair or derogatory personal reference to opposing counsel."[13]  Rule 3.3(f)(2) of the new Rules of Professional Conduct also states as an imperative that "[i]n appearing as a lawyer before a tribunal, a lawyer shall not engage in undignified or discourteous conduct."  Thus, it is hardly controversial for this Court to expect attorneys appearing before it to be capable of tenaciously representing their clients while also refraining from "haranguing and offensive tactics" that "interfere with the orderly administration of justice and have no proper place in our legal system."  See supra n. 13.

---

[10] The Code was effective throughout most of this litigation until the new Rules of Professional Conduct became effective April 1, 2009.

[11] EC 7-1, which states in full:  "The duty of a lawyer, both to the client and to the legal system, is to represent the client zealously within the bounds of the law, which includes the Disciplinary Rules and enforceable professional regulations."

[12] EC 7-38, which states in full:  "A lawyer should be courteous to opposing counsel and should accede to reasonable requests regarding court proceedings, settings, continuances, waiver of procedural formalities, and similar matters which do not prejudice the rights of the client.  A lawyer should follow local customs of courtesy or practice, unless he or she gives timely notice to opposing counsel of the intention not to do so.  A lawyer should be punctual in fulfilling all professional commitments."

[13] EC 7-37, which states in full:  "In adversary proceedings, clients are litigants and though ill feeling may exist between clients, such ill feeling should not influence a lawyer's conduct, attitude, and demeanor towards opposing lawyers.  A lawyer should not make unfair or derogatory personal reference to opposing counsel.  Haranguing and offensive tactics by lawyers interfere with the orderly administration of justice and have no proper place in our legal system."

These rules reflect a truth regarding advocacy, one that may be underemphasized in the legal profession: the best attorneys are the most civil.  As Chief Justice Warren Burger once commented:

> A truly qualified advocate –like every genuine professional – resembles a seamless garment, in the sense that legal knowledge, forensic skills, professional ethics, courtroom etiquette and manners are blended in the total person.  There are some lawyers who scoff at the idea that manners and etiquette form any part of the necessary equipment of the courtroom advocate.  Yet if one were to undertake a list of the truly great advocates of the past 100 years, I suggest he would find a common denominator: They were all intensely individualistic but each was a lawyer for whom courtroom manners were a key weapon in his arsenal.

Warren E. Burger, The Special Skills of Advocacy: Are Specialized Training and Certification of Advocates Essential to Our System of Justice?, 42 Fordham L. Rev. 227 (1973) (recording the John F. Sonnett Memorial Lecture delivered on Nov. 26, 1973).

Setting advocacy aside, civility is a worthy end in itself.  "The lawyer . . . who tramples on civility undercuts belief in the law.  The litigator need not hug an adversary.  But to treat an adversary with advertent discourtesy – let alone with calumny or derision – is a form of incivility that rends the fabric of the law."  Louis H. Pollack, Professional Attitude, 84 A.B.A. J. 66, 66-67 (Aug. 1998).  All attorneys are engaged in the administration of justice, and civility to one's adversary is recognition of this common undertaking.

## CONCLUSION

The ad hominem attacks against plaintiffs' counsel that were included in the Defendants' Reply and echoed by defense counsel during the oral argument on this

motion constitute sanctionable conduct insofar as they are in clear violation of Judge Gold's orders to cease ad hominem attacks. The motion to impose sanctions on Mr. Orner is therefore GRANTED.

This Court may only award fees and expenses attributable to the offensive conduct. See Ostano Commerzanstalt v. Telewide Sys., Inc., 880 F.2d 642, 650 (2d Cir. 1989); Rule 16(f)(2) ("the court must order the party, its attorney, or both to pay the reasonable expenses – including attorney's fees – incurred because of any noncompliance with this rule"). The plaintiffs are ordered to file an application for costs and fees via ECF in 10 days. That submission must include an affidavit incorporating time sheets and other appropriate exhibits that fully accounts for and itemizes all attorneys' fees and reasonable expenses that were directly incurred by prosecuting the present motions to strike the Defendants' Reply and for sanctions.

The motion to strike the Defendants' Reply and the motion for leave to submit a sur-reply are DENIED as moot.

SO ORDERED.

Dated:        Brooklyn, New York
             June 3, 2009


                              _____/s/_____
                              I. Leo Glasser
                              United States Senior District Judge

**Copies of the foregoing memorandum and order were electronically sent to:**

<u>Counsel for Plaintiffs</u>:

Robert Wisniewski, Esq.
*Robert Wisniewski & Associates P.C.*
225 Broadway, Suite 612
New York, New York 10007


<u>Counsel for Defendants</u>:

Felipe E. Orner, Esq.
72-29 137th Street
Flushing, New York 11367