UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
MIROSLAW GORTAT, et al.,

                Plaintiffs,

      -against-                    REPORT AND RECOMMENDATION
                                     ON MOTION FOR
                                     CLASS CERTIFICATION

                                     MEMORANDUM AND ORDER
CAPALA BROTHERS, INC., et al.,          ON MOTION FOR APPROVAL AS A
                                     <u>COLLECTIVE ACTION</u>
                                     07-CV-3629(ILG)(SMG)

                Defendants.
-----------------------------------------------------x
*GOLD, S., United States Magistrate Judge*:

**<u>Introduction</u>**

      Plaintiffs, on behalf of themselves and others similarly situated, bring this action under

the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*., the Portal-to-Portal Act, 29

U.S.C. § 254, and New York state labor law ("NYLL"), seeking to recover unpaid wages, unpaid

overtime compensation, and statutory damages resulting from defendants' alleged labor law

violations.  Plaintiffs filed concurrent motions on June 11, 2009 seeking orders: (1) certifying

their New York state law wage and overtime claims as a class action pursuant to Federal Rule of

Civil Procedure 23(b)(3) and appointing Miroslaw Gortat, Henryk Bienkowski, Miroslaw

Filipkowski, Artur Lapinski, Jan Swaltek, Edmund Kisielewicz, Henryk Stoklosa and Artur

Kosiorek as class representatives and Robert Wisniewski as class counsel; (2) authorizing their

FLSA claims to proceed as collective action pursuant to 29 U.S.C. § 216(b);[1] (3) approving notice of the collective action and class action, and authorizing such notice to be mailed to all putative class members as well as published in Nowy Dziennik, a New York-based Polish language newspaper for five consecutive weekends; and (4) compelling defendants to produce a complete list of their employees during the six years preceding the filing of the complaint.

By order dated July 9, 2009, the Honorable I. Leo Glasser referred plaintiffs' motion for class certification to me for a report and recommendation. Docket Entry 166. A motion to proceed as a collective action may be decided by a Magistrate Judge. *See Mazur v. Olek Lejbzon & Co.*, 2005 WL 3240472, at *2 n.1 (S.D.N.Y. Nov. 30, 2005). *See also Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 265-66 (E.D.N.Y 2005). Accordingly, and for the reasons set forth below, I respectfully recommend that Judge Glasser approve plaintiffs' motion for class certification, and I grant plaintiffs' motion to proceed as a collective action.

## Discussion

Senior United States District Judge Glasser has already issued a detailed decision in this case addressing a variety of motions. *See Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353 (E.D.N.Y. 2009). Familiarity with that decision, and thus with the facts of the case and its procedural history, is presumed.

---

[1] While NYLL § 663 permits private causes of action for unpaid wages to be brought as a class action, FLSA authorizes only a collective action procedure for private causes of action pursuant to 29 U.S.C. § 216(b). *See Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353, 361 n.6 (E.D.N.Y. 2009).

1. <u>Class certification</u>

Plaintiffs move for class certification of their state law unpaid wage and unpaid overtime compensation claims pursuant to Rule 23(b)(3). Plaintiffs propose to certify a class defined as follows:

> All employees of the Defendants during the six years immediately preceding the initiation of this action [filed on Aug. 29, 2007] up to the date of this decision, who performed work as roofers, bricklayers, masons, building laborers, drivers, foremen and other manual workers with the same or similar duties who are entitled to compensation from the Defendants for unpaid minimum wages, and/or overtime premium wages, and/or spread-of-hours wages, and/or other wages, and who are asserting claims under the New York State Labor Law, including without limitation, Sec. 190 *et seq.* and Sec. 650 *et seq.* as well as the wage orders promulgated thereunder.

Pl. R. 23 Mem. at 1.[2]

Plaintiffs bear the burden of establishing the four prerequisites of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) fair and adequate representation of the class. A plaintiff must also qualify under one of the subdivisions of Rule 23(b). *See Marisol A. v. Giuliani*, 126 F.3d 372, 375-76 (2d Cir. 1997). When considering a class certification motion, the allegations in the complaint are accepted as true. *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 85 (S.D.N.Y. 2001) (internal quotation marks omitted). Although a court may consider material outside the pleadings to determine whether to certify the class, it "must not consider or resolve the merits of the claims of the purported class." *Id.* (internal quotation marks omitted). "The Second Circuit has emphasized that Rule 23 should be 'given liberal rather than restrictive construction,' . . . and 'it seems beyond peradventure that the Second

---

[2] "Pl. R. 23 Mem." refers to Plaintiffs' Memorandum of Law in Support of Motion for Class Certification, Docket Entry 143.

Circuit's general preference is for granting rather than denying class certification.'" *Gortat*, 257 F.R.D. at 361-62 (internal citations omitted).

Several of the issues raised by plaintiffs' motion for class certification have already been decided. Earlier in this litigation, defendants moved to dismiss plaintiffs' class action claims on the grounds that plaintiffs had failed to establish the numerosity and adequate representation requirements of Rule 23(a).[3] On May 5, 2009, Judge Glasser denied defendants' motion. *Id.* at 365. The rulings Judge Glasser made in the course of denying defendants' motion to dismiss plaintiffs' class action claims are the law of the case.

"[L]aw of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983) (citation omitted); *see also Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 7-8 (2d Cir. 1996) (noting that the "doctrine is admittedly discretionary"). A prior decision should not be re-examined "absent cogent or compelling reasons," *Pescatore*, 97 F.3d at 8 (internal quotation marks and citation omitted), such as "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks and citation omitted).

Defendants contend that the doctrine is not appropriately applied here because Judge Glasser's decision was based upon a different legal standard than the one applicable to

---

[3] Although the parties stipulated that plaintiffs' certification motion would be stayed pending resolution of their respective summary judgment motions, defendants nevertheless brought a motion to deny class certification along with their motion for summary judgment. *See Gortat*, 257 F.R.D. at 361.

4

plaintiffs' motion. More specifically, defendants assert that Judge Glasser's decision placed the burden on them as movants, see Def. R. 23 Opp. Mem. at 42-43,[4] whereas, as noted above, plaintiffs bear the burden on the instant motion. Defendants' contention that Judge Glasser's decision placed the burden on them is incorrect. To the contrary, Judge Glasser made it clear that, although defendants were the movants, the burden remained with plaintiffs. *See Gortat*, 257 F.R.D. at 361 ("Even where defendant moves for denial of class certification before plaintiff has sought certification, *the burden of establishing the propriety of a class action remains with the plaintiff . . . .*") (internal quotation marks omitted) (emphasis added). Accordingly, plaintiffs' burden with respect to the pending motion is not a basis for overcoming the effect of Judge Glasser's prior rulings.

With the weight of Judge Glasser's prior decision resolved, I now turn my attention to the requirements for class certification imposed by Rule 23.

a. *Numerosity*

Plaintiffs must show that "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Courts in the Second Circuit presume numerosity when the putative class has at least forty members. *Gortat*, 257 F.R.D. at 362 (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). In the proceedings before Judge Glasser, plaintiffs demonstrated that the class would be comprised of seventy-four foremen and laborers based on an employee list produced by defendants. Judge Glasser thus held that plaintiffs have established numerosity. *Id*. at 362-63. Furthermore, Judge Glasser found that joinder would be

---

[4] "Def. R. 23 Opp. Mem." refers to Defendants' Memorandum in Opposition to Plaintiffs' Motion for Class Certification, Docket Entry 168.

impracticable because some of the putative members are presently employed by defendants and are thus unlikely to bring claims on their own, and that "many if not most of the purported class members are persons with inadequate resources to exercise their rights by prosecuting their own claims." *Id*. at 363.

Defendants contend they have produced new evidence that requires re-examination of Judge Glasser's ruling. In support of their motion to deny certification, defendants submitted affidavits from seventeen current and/or former Capala Brothers employees purportedly disclaiming interest in joining the litigation. *Id*. at 362. Judge Glasser did not discuss the merits of the affidavits but rather held that, "[e]ven if the Court were to subtract . . . those who have purportedly disclaimed any interest in taking part in this litigation, the purported class would remain presumptively numerous." *Id*.

Defendants have now submitted twenty-four additional affidavits, and argue that forty-one of the seventy-four employees have now indicated that they will not join the lawsuit. Orner R. 23 Aff., Exs. H & Z.[5] The affidavits are substantially identical, and state the following:

> I was an employee of . . . Capala Brothers, Inc. and I am aware of the litigation started in Federal Court by my former co-employees in this action claiming unpaid hours and wages from my employer. With such awareness and knowledge of these claims . . . [I] declare that I do not join in claiming any unpaid hours or wages from the defendants in this action.

*See id*., Ex. H.

Defendants advance two arguments with respect to these affidavits. First, defendants contend that the affidavits constitute valid and enforceable releases of the affiants' NYLL claims

---

[5] "Orner R. 23 Aff." refers to defense counsel Felipe Orner's Affidavit in Opposition to Plaintiffs' Motion to Certify a Class Action under Fed. R. Civ. P. 23(b)(3), Docket Entry 170.

and bar the affiants from joining the class.[6]  *See* Def. R. 23 Opp. Mem. at 33-34.  Defendants'

argument fails as a matter of law.

New York courts "will enforce valid releases that are clear and unambiguous on their

face and which were knowingly and voluntarily entered into and were not 'the product of

fraud, duress or undue influence.'"  *Hummel v. AstraZeneca LP*, 575 F. Supp. 2d 568, 570

(S.D.N.Y. 2008) (citing *Skluth v. United Merch. & Mfr., Inc.*, 559 N.Y.S.2d 280, 282 (1st Dep't 1994)

(citation omitted)).  Although courts regularly enforce agreements that release NYLL wage and

overtime claims, see *Defilippo v. Barclays Capital, Inc.*, 552 F. Supp. 2d 417, 426 (S.D.N.Y. 2008),

the affidavits submitted by defendants do not resemble the releases contemplated by existing

case law.  *See, e.g., Wright v. Brae Burn Country Club, Inc.*, 2009 WL 725012, at *4 (S.D.N.Y. Mar.

20, 2009) (holding that a release of NYLL claims in settlement of a dispute by former employee

represented by counsel did not violate public policy where the employee was no longer

working for his employer when he signed the release and therefore did not contract away his

basic labor rights); *Hummel*, 575 F. Supp. 2d at 569-71 (holding that a broadly worded agreement

was valid to release defendant from liability for NYLL claims in exchange for payment of

$13,077); *Defilippo*, 552 F. Supp. 2d at 427 (enforcing release of NYLL overtime claims where the

employee signed a severance agreement expressly releasing his employer from "any and all

causes of action" in exchange for $53,000 in severance compensation); *Simel v. JP Morgan Chase*,

2007 WL 809689, at *1-3, 5 (S.D.N.Y. Mar. 19, 2007)(enforcing a mutual release between

---

[6] Defendants also claim to present new evidence that nineteen workers hired in 2007 do not qualify as
part of the class.  Def. R. 23 Opp. Mem. at 16; Orner R. 23 Aff., Ex. I.  After the complaint was filed,
defendants claim that they required new hires to sign "regulations of employment" acknowledging that
the workday began at 7:30 a.m.  To the extent defendants argue that these "regulations" are the
equivalent of a release, this argument is rejected for the reasons stated in the text.

employee and employer, which included a release of the employee's NYLL claims, to resolve disputed claims between the parties).

The affidavits here do not evince a clear and unambiguous agreement to release Capala Brothers from liability for NYLL violations. They are not styled as releases and they do not contain language explicitly releasing claims. Rather, they state only that the affiants choose not to "join in claiming any unpaid hours or wages from the defendants." Moreover, these purported releases from putative plaintiffs—many of whom are recent immigrants dependent on defendants for employment—were obtained without the benefit of independent advice from counsel or even notice of the plaintiffs' claims in a form approved by the court. As such, the proposition that they were knowingly and voluntarily made is suspect. Finally, while a release will not be considered invalid for lack of consideration, see *Simel*, 2007 WL 809689, at *2 (quoting N.Y. GEN. OBLIG. § 15-303 (McKinney 2001)), in each of the cases cited above the employees involved released their claims either in exchange for a severance package or to settle a dispute. *See supra.* Here, there is no indication that the employees received anything in return for executing the affidavits. Accordingly, the affidavits are not valid and enforceable releases of the affiants' NYLL wage and overtime claims.

Second, defendants contend that, even if the affiants did not release their underlying claims, they must be excluded from any numerosity determination because they have already expressed their lack of interest in joining the litigation. The affidavits, however, are not a reliable indicator of a lack of interest in joining the class. The class has yet to be certified, and a court-approved notice has yet to be sent to putative members. Moreover, as discussed above, it is entirely unclear what type of "notice" the affiants received and thus which claims they do not

intend to bring.[7]  Finally, when asked during oral argument to identify any precedent

addressing the effect of affidavits like the ones presented here, defendants were unable to do so.

*See* Tr. of 9/10/09, Docket Entry 183, at 6-8.  This court's independent research has not yielded

any such authority either.  Accordingly, to the extent defendants argue that these affidavits

constitute "opt outs" from the class action, or that they should be given any weight when

determining numerosity, their argument is rejected.

To the contrary, these affidavits appear to have been procured in a manner that is

inconsistent with the policies behind Rule 23.  In *Gulf Oil Company v. Bernard*, the Supreme

Court recognized that, "[b]ecause of the potential for abuse, a district court has both the duty

and the broad authority to exercise control over a class action and to enter appropriate orders

governing the conduct of counsel and parties."  452 U.S. 89, 100 (1981).  *See also* FED. R. CIV. P.

23(d).  A court possesses such supervisory authority even before a class is certified.  *See In re*

*Initial Pub. Offering Sec. Litig.*, 499 F. Supp. 2d 415, 418 n.13 (S.D.N.Y. 2007) (citing *In re Currency*

*Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 252-53 (S.D.N.Y. 2005)).

Numerous courts have found that contacts with putative class members warranted

judicial intervention.  *See, e.g., In re Sch. Asbestos Litig.*, 842 F.2d 671, 682-83 (3d Cir. 1988)

(affirming district court's order requiring defendants to disclose their involvement in the

lawsuit when communicating directly with class members, where such communications were

found to be factually and legally incomplete); *In re Initial Pub. Offering Sec. Litig.*, 499 F. Supp. 2d

at 421 (ordering plaintiff's-intervener's counsel to submit class-wide communication to the

---

[7] Plaintiffs also point out that when defendants' former employees received notice about this action
through subpoenas to testify at a deposition, they chose to join the lawsuit as class representatives.  *See*
Combined Reply Memorandum of Law in Support of Plaintiffs' Motion for Approval of Collective Action
Notice and to Certify a Class under Rule 23(b)(3), Docket Entry 178, at 8-9.

court for *in camera* review before disclosure to the class where counsel had, *inter alia*, issued press releases soliciting clients and sent an *ex-parte* letter to the court). In the case of *In re Currency Conversion Fee Antitrust Litigation*, the court held that arbitration clauses were unenforceable because "defendants' unsupervised communications . . . sought to eliminate putative class members' rights in this litigation." 361 F. Supp. 2d at 254. The court ruled, in language equally applicable here, that, "when a defendant contacts putative class members for the purpose of altering the status of a pending litigation, such communication is improper without judicial authorization." *Id*. at 253.

Here, defendants' unsupervised communications sought to limit the rights of putative class members without the benefit of court-approved notice about the pending class action. Accordingly, considering these affidavits when determining numerosity would legitimize conduct that Rule 23 deems inappropriate. It would also provide an incentive for defendants in this case, and in other cases, to engage in improper and potentially coercive communications with members of a putative class.

In sum, I find that these affidavits are insufficient to release defendants from liability for the putative class members' NYLL claims. Moreover, the affidavits are not reliable evidence of the affiants' lack of interest in joining the class action. Finally, the affidavits were procured in disregard of the policies underlying Rule 23. Accordingly, the affidavits provide no basis for overcoming Judge Glasser's determination that plaintiffs have established numerosity.

b. *Commonality*

Rule 23(a)(2) requires a showing that "there are questions of law or fact common to the class." Judge Glasser has already found that "any individualized questions regarding the

number of hours that a specific employee worked will not predominate over the questions of law and fact that are relevant to all members of the purported class . . . ." *Gortat*, 257 F.R.D. at 362. Although Judge Glasser was not explicity addressing the requirement of commonality, his analysis demonstrates that plaintiffs have met their burden of showing that their grievances derive from common questions of law or fact.[8] *See Marisol*, 126 F.3d at 376. *See also Becher v. Long Island Lighting Co.*, 164 F.R.D. 144, 150 (E.D.N.Y. 1996) ("Rule 23(a)(2) requires only that questions of law or fact be shared by the prospective class. It does not require that *all* questions of law or fact raised be common.")(internal quotation marks omitted).

Defendants have not presented any new arguments or evidence that warrant a re-examination of Judge Glasser's ruling. Accordingly, common questions of law and fact exist as to whether plaintiffs were denied pay by defendants for regular and overtime hours they claim to have worked. *See, e.g., Jankowski v. Castaldi*, 2006 WL 118973, at *2-3 (E.D.N.Y. Jan. 13, 2006)(finding commonality among the plaintiffs who alleged that they had been denied overtime wages pursuant to defendants' policy).

c. *Typicality*

"Typicality . . . requires that the claims of the class representatives be typical of those of the class, and 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Marisol*, 126 F.3d at 376 (internal citations omitted). "The commonality and typicality

---

[8] Defendants argue, as they did before Judge Glasser, that the laborers and foremen cannot comprise the same class because they are claiming compensation for different hours of the workday. Judge Glasser rejected this argument. *Gortat*, 257 F.R.D. at 362. Judge Glasser also held "that the foremen [are] not employers for the purposes of FLSA," *Gortat*, 257 F.R.D. at 367, and noted that "the test for an 'employer' is essentially identical under federal and state law," *id.* at n.13. These findings lend further support to plaintiffs' claim that the putative class members share common factual circumstances.

requirements tend to merge into one another, so that similar considerations animate" the analysis of each. *Id*. Named plaintiffs allege that they each performed similar work for defendants and that, like other members of the class, they were never compensated for all the hours they worked "as a result of Defendants' common scheme to deprive employees of pay for all hours worked." Pl. R. 23 Mem. at 21. Defendants present the same arguments in opposition to a finding of typicality as they do to commonality. For the reasons stated in Judge Glasser's opinion and above, these arguments are without merit, and I therefore find that plaintiffs meet this requirement.

    *d.  Adequate representation*

Rule 23(a)(4) requires plaintiffs to demonstrate that the named plaintiffs and class counsel will fairly and adequately protect the interests of the class. Judge Glasser has already held that "the evidence clearly shows that the plaintiffs' interests in obtaining the requested relief are not antagonistic to those of the other class members [and that, as a result,] the plaintiffs are adequate class representatives." *Gortat*, 257 F.R.D. at 365. In addition, Judge Glasser found plaintiffs' counsel to be qualified and able to represent the class. *Id*.

Defendants spend a substantial portion of their motion papers denigrating class representatives and class counsel, *see, e.g.*, Def. R. 23 Opp. Mem. at 13-14, 16, 19-27, even though Judge Glasser unequivocally rejected these same attacks, *see Gortat*, 257 F.R.D. at 363-65. The only ground raised by defendants in opposition to the pending motion that was not presented to Judge Glasser is defendants' argument that inconsistencies in plaintiffs' deposition

testimonies regarding when the workday began render them improper class representatives.[9]

*See, e.g.*, Orner R. 23 Aff. ¶¶ 7, 45.  The inconsistencies pointed out by defendants, however, to the extent they exist, are trivial.  For example, defendants note that, although plaintiff Miroslaw Filipkowski testified that his co-employees changed into their work clothes before 7:00 a.m., Filipkowski also admitted to sometimes arriving after 7:00 a.m.  *Id*. ¶ 83; Filipkowski Dep. at 41, 43-55, 110-12.[10]  Defendants contend that this establishes that Filipkowski's testimony is contradictory, rendering him an improper class representative.  Orner R. 23 Aff. ¶ 83.  However, it is not inconsistent to testify that, as a general matter, employees changed into their work clothes before 7:00 a.m., Filipkowski Dep. at 111, and to acknowledge being late and arriving after 7:00 a.m. approximately once every two weeks, *id*. at 44.

Defendants similarly accuse plaintiff Artur Lapinski of having provided conflicting sworn testimony.  Orner R. 23 Aff. ¶ 64.  Again, however, any inconsistency is insignificant.  In his affidavit in support of plaintiffs' motions, Lapinski states he would spend "around half an hour" to load the company vans with tools and materials in the morning.  Lapinski Aff. ¶ 7.[11]

---

[9] Defendants also proffer affidavits from neighbors of the Capala Brothers' shops and from managers of construction projects stating that the workday did not commence before 7:30 a.m. as alleged by plaintiffs. *See, e.g.*, Orner R. 23 Aff., Exs. P & R.  At least one such affidavit was part of the record before Judge Glasser.  Docket Entry 95, Ex. O.  These affidavits do not demonstrate plaintiffs' lack of credibility. Rather, the affidavits demonstrate that there is a material issue of fact as to when the workday began, which is precisely why Judge Glasser denied defendants' motion for summary judgment.  *See Gortat*, 257 F.R.D. at 361 ("Because defendants' evidence suggests that the workday started at the work sites in Manhattan and the plaintiffs' evidence suggests that the workday started at 7:00 a.m. at the Greenpoint shop, there is a question of fact that requires the Court to deny the defendants' motion for summary judgment.").

[10] "Filipkowski Dep." refers to excerpts from plaintiff Miroslaw Filipkowski's deposition transcript, Orner R. 23 Aff., Ex. V, Docket Entry 173.

[11] "Lapinski Aff." refers to plaintiff Artur Lapinski's affidavit in support of Plaintiffs' Motion for Class Action Certification, Docket Entry 142.

At his deposition, Lapinski testified that he left the shop, on average, between 7:20 a.m. and 7:50 a.m., presumably after beginning to load the vans at or shortly after 7:00 a.m. Lapinski Dep. at 87.[12] There is no meaningful inconsistency here.

Defendants also argue that plaintiff Miroslaw Gortat provided inconsistent testimony when he first stated that he arrived at job sites in Manhattan at 8:00 a.m., Gortat Dep. at 156,[13] and later stated that construction noise could start only at 8:30 a.m. or 9:00 a.m., *id*. at 158. *See* Orner R. 23 Aff. ¶ 109. Gortat's testimony, however, is not inconsistent: he first stated that he usually arrived at job sites about 8:00 a.m., Gortat Dep. at 156, l. 11; then stated that construction at certain smaller sites could start as early as 8:00 a.m., *id*. at 156, ll. 14-20; and then stated that construction started later at larger sites, *id*. at 156, ll. 22-23; 158, l. 5.

As these examples make plain, defendants have not established that plaintiffs have provided materially false testimony about the "central issues in this litigation." *Gortat*, 257 F.R.D. at 364. More importantly, they have not demonstrated that the "plaintiffs' interests in obtaining the requested relief are . . . antagonistic to those of the other class members." *Id*. at 365. Accordingly, as Judge Glasser has already held, plaintiffs have demonstrated that they are adequate class representatives and that Mr. Wisniewski is qualified and able to represent the class.

---

[12] "Lapinski Dep." refers to excerpts from plaintiff Artur Lapinski's deposition transcript, Orner R. 23 Aff., Ex. U, Docket Entry 173.

[13] "Gortat Dep." refers to excerpts from plaintiff Miroslaw Gortat's deposition transcript, Orner R. 23 Aff., Ex. X, Docket Entry 173.

*e. Rule 23(b)(3) requirements*

Plaintiffs seek certification under Rule 23(b)(3), which requires a demonstration that "questions of law or fact common to class members predominate" over questions affecting only individual class members. "[T]o meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks omitted). "The predominance criterion is, in effect, a stricter version of the commonality requirement of Rule 23(a)(2)." *Ansoumana*, 201 F.R.D. at 89.

Judge Glasser found that common questions of law and fact that are relevant to all class members predominate over individualized issues. *Gortat*, 257 F.R.D. at 362. Thus, while some plaintiffs are laborers and others are foremen, some were paid by check while others were paid in cash, and some worked more hours than others, these differences do not predominate over the main issue: plaintiffs' allegation that defendants paid all of these employees for fewer hours than they claim to have worked. Defendants have not presented any evidence since Judge Glasser's opinion to the contrary. Accordingly, I find that plaintiffs have shown that common questions of law or fact predominate over any individualized issues.

Rule 23(b)(3) also requires a finding that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." As noted above, questions that are relevant to all members of the class predominate over individualized issues, supporting the superior efficiency of the class action form. More importantly, Judge Glasser also found that putative members presently employed by defendants are unlikely to risk retaliatory action by

defendants by bringing claims on their own, and that "many if not most of the purported class members are persons with inadequate resources to exercise their rights by prosecuting their own claims." *Gortat*, 257 F.R.D. at 362. In addition, plaintiffs allege that some of the putative class members possess relatively small claims and would thus be discouraged from spending the money to litigate individually. Pl. R. 23 Mem. at 26. For all these reasons, a class action is superior to other methods for efficiently adjudicating this controversy.

Accordingly, I respectfully recommend that Judge Glasser grant plaintiffs' motion for class certification of their New York state law wage and overtime claims pursuant to Rule 23(b)(3).

2. Collective action

"Under the FLSA, employers are required to compensate covered employees for all the work performed, including overtime . . . ." *Bowens v. Atl. Maint. Corp*., 2008 WL 1827439, at *23 (E.D.N.Y. Apr. 23, 2008). Employees may bring an action against the employer to "'recover unpaid overtime compensation and liquidated damages from employers who violate the Act's overtime provisions.'" *Id*. (quoting *Hoffmann v. Sbarro*, Inc., 982 F. Supp. 249, 260 (S.D.N.Y. 1997)).

Section 216(b) of the FLSA provides that "one or more employees" may move to have their case certified as a collective action "for and in behalf of . . . themselves and other employees similarly situated." *See also Gjurovich v. Emmanuel's Marketplace, Inc*., 282 F. Supp. 2d 101, 103 (S.D.N.Y. 2003). Upon granting conditional certification, the court may authorize an FLSA plaintiff to provide written notice to potential plaintiffs of their right to join in the action. *Id*. at 104. After receiving the written notice, employees who seek to join the collective action

"must 'opt in' and consent in writing." *Morales v. Plantworks, Inc.*, 2006 WL 278154, at *1

(S.D.N.Y. Feb. 2, 2006). Unlike a class action under Rule 23, "only potential plaintiffs who 'opt-

in' can be 'bound by the judgment' or 'benefit from it.'" *Gjurovich*, 282 F. Supp. 2d at 104.

To proceed with a collective action, "[t]he named plaintiff must . . . show that he is

similarly situated to the prospective plaintiffs who would benefit from notice of the right to

join." *Bowens*, 2008 WL 1827439, at *22. Although neither the FLSA nor its implementing

regulations define the term "similarly situated," courts in this Circuit "have held that plaintiffs

can meet this burden by making a modest factual showing sufficient to demonstrate that they

and potential plaintiffs together were victims of a common policy or plan that violated the law."

*Morales*, 2006 WL 278154, at *2 (quoting *Hoffmann*, 982 F. Supp. at 261). Where, as here,

plaintiffs move to proceed as collective action post-discovery, courts apply "heightened

scrutiny to this inquiry as compared to pre-discovery." *Torres v. Gristede's Operating Corp.*, 2006

WL 2819730, at *9 (S.D.N.Y. Sept. 29, 2006).

In assessing the viability of a collective action, courts consider "'(1) disparate factual and

employment settings of the individual plaintiffs; (2) defenses available to defendants which

appear to be individual to each plaintiff; and (3) fairness and procedural considerations

counseling for or against notification to the class.'" *Laroque v. Domino's Pizza LLC*, 2008 WL

2303493, at *5 (E.D.N.Y. May 30, 2008)(quoting *Guzman v. VLM, Inc.*, 2007 WL 2994278, at *3

(E.D.N.Y. Oct. 11, 2007)). Notably, a collective action under Section 216(b) requires no formal

showing of numerosity, typicality, commonality, or representativeness. *See Lynch v. United*

*Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 369 (S.D.N.Y. 2007).

While certification as a collective action does not require that the elements of Rule 23 be satisfied, the discussion above of plaintiffs' motion for class certification strongly supports permitting plaintiffs to proceed with a collective action. First, plaintiffs easily meet their burden of demonstrating that defendants' employees are similarly situated. Plaintiffs' claims raise the same core questions of law and fact. *See supra* section 1(b). This is demonstrated by plaintiffs' affidavits, which allege similar facts and circumstances in support of plaintiffs' claims that they were deprived of wages and overtime compensation due under the FLSA. *See* Docket Entry 145. *See also Sobczak v. AWL Industries, Inc.*, 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007) ("Courts regularly grant motions for approval of a collective action notice 'based upon employee affidavits setting forth a defendant's plan or scheme to not pay overtime compensation and identifying by name similarly situated employees.'") (internal citation omitted). Though foreman and laborer plaintiffs performed different duties, were paid at different rates and worked different hours, these minor factual disparities do not defeat plaintiffs' motion to proceed as a collective action, nor do they render the class unmanageable. *See Gortat*, 257 F.R.D. at 362. Moreover, defendants have not articulated any individualized defenses. Thus, "on balance, the policy objectives of reducing cost and increasing efficiency are best furthered by granting collective action . . . ." *Torres*, 2006 WL 2819730, at *11.

Defendants argue that, because there is "widespread knowledge" of the litigation and forty-one putative members have already "opted out" by signing the affidavits described above, plaintiffs' motion to proceed as a collective action should be denied. Def. Section 216(b) Opp.

Mem. at 5-6, 22-24.[14] Defendants' argument is meritless. Section 216(b) does not have a numerosity requirement, making the number of putative members interested in joining the collective action irrelevant. More importantly, the FLSA "expressly prohibits" settlement of a claim for unpaid wages or unpaid overtime without the supervision of the Secretary of Labor, or pursuant to judicially supervised stipulated settlements. *Simel*, 2007 WL 809689, at *4 (citing 29 U.S.C. § 216(c) and collecting cases). Thus, the affidavits procured by defendants do not constitute effective waivers of FLSA claims or otherwise preclude certification as a collective action.

Accordingly, plaintiffs' motion to proceed with their FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b) is granted.

3. Notice

Plaintiffs have submitted a proposed notice of the class action lawsuit. *See* Docket Entry 142, Exs. 7 & 8. They have not submitted a proposed notice of the collective action. During the time my report and recommendation is pending before Judge Glasser, counsel are directed to draft a proposed notice under the following guidelines, so that notice may be promptly circulated in the event that my recommendation to certify the class is adopted by Judge Glasser.

During oral argument, I recommended that plaintiffs draft one notice that includes information about both the class action and the collective action in order to minimize the cost of mailing and to avoid the likely confusion that would result if class members were to receive

---

[14] "Def. Section 216(b) Opp. Mem." refers to Defendants' Memorandum in Opposition to Plaintiffs' Motion for Notice under 29 U.S.C. § 216(b), Docket Entry 163.

multiple notices.[15]  Tr. of 9/10/09 at 20-22.  With respect to the substance of the notice, counsel are directed to review the transcript of 9/10/09, Docket Entry 183, at 15-22, and consider my recommendations, and to consult *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 105-08 & Ex. B (S.D.N.Y. 2003), for a detailed discussion of the proper form and substance of a collective action notice.

Counsel shall submit a proposed notice for my review by November 4, 2009.  In the event that the parties are unable to agree on a proposal, plaintiffs shall submit their proposed notice by November 4, 2009, and defendants will file objections one week thereafter.

In addition to mailing the notice to putative members, plaintiffs seek to publish it in Nowy Dziennik, a New York-based Polish language newspaper for five consecutive weekends. I recommend that, given the thoroughness of defendants' production with respect to the names of putative class members, and the lack of concrete information about there being additional employees, plaintiffs should pay for publication of the notice as a taxable expense.  However, if a significant number of class members who were not on defendants' list of seventy-four

---

[15] Defendants argue that it would be prejudicial to send one notice to all members because of the different statutes of limitations applicable to FLSA claims (three years) and NYLL claims (six years), and urge that the collective action notice not be sent to any former employees who do not have claims beginning from three years before the initiation of this action.  Although defendants cite precedents for the proposition that notice should be sent only to individuals they employed no earlier than three years prior to the filing of this lawsuit, Def. Section 216(b) Opp. Mem. at 15-16, none of the cases defendants rely upon involved motions to certify a Rule 23 class pursuant to NYLL.  *See, e.g., Jemine v. Dennis,* 2009 WL 837802, (E.D.N.Y. Mar. 26, 2009); *Suarez v. S&A Painting & Renovation Corp.,* 2008 WL 5054201 (E.D.N.Y. Nov. 21, 2008); *Summa v. Hofstra Univ.,* 2008 WL 3852160 (E.D.N.Y. Aug. 14, 2008); *Dumitrescu v. Mr. Chow Enterprises, Ltd.,* 2008 WL 2600667 (S.D.N.Y. June 30, 2008); *Laroque v. Domino's Pizza,* 557 F. Supp. 2d 346 (E.D.N.Y. 2008); *Sobczak v. AWL Indus., Inc.,* 540 F. Supp. 2d 354 (E.D.N.Y. 2007);  *LeGrand v. Educ. Mgt. Corp.,* 2004 WL 1962076 (S.D.N.Y. Sept. 2, 2004).  Moreover, any potential confusion or prejudice can be mitigated by including information about the limitations periods in the notice.

employees join the class after publication, plaintiffs may seek to have the cost of publication shifted to defendants.

4. Discovery

Plaintiffs allege that defendants' employee list does not contain the names and addresses of all persons who have been employed by Capala Brothers since August 29, 2001, or during the six years preceding the filing of this lawsuit. Pl. R. 23 Mem. at 16, 31; Filipkowski Aff. ¶ 18.[16] During oral argument, defendants represented that they have current contact information for every full-time and part-time employee who worked for Capala Brothers over the last six years, except for one. *See* Tr. of 9/10/09 at 18. To the extent defendants have not provided contact information for each full-time and part-time employee who worked for Capala Brothers at any time on or after August 29, 2001, defendants are directed to do so by October 30, 2009.

5. Order to show cause

As discussed above, a district court has both the authority and the duty to scrutinize communications between counsel and putative class members. Indeed, a court may limit communications between counsel and putative class members to protect the class from misleading information, including communications that "omit[] critical information," "that threaten the choice of remedies available to class members," or that otherwise "abuse the rights of the members of the class." *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d at 252-53 (collecting cases). An order limiting communications "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential

---

[16] "Filipkowski Aff." refers to the affidavit of plaintiff Miroslaw Filipkowski in Support of Plaintiffs' Motion for Class Action Certification, Docket Entry 142.

interference with the rights of the parties." *Gulf Oil Co.*, 452 U.S. at 101-02. Such intervention

"should result in a carefully drawn order that limits speech as little as possible, consistent with

the rights of the parties under the circumstances." *Id.*

Plaintiffs have not made a motion to limit communications between defendants and

putative class members. Nevertheless, as discussed above, defendants' unsupervised contacts

with putative class members, which resulted in those members signing affidavits expressing a

lack of interest in participating in this action without the advice of independent counsel or the

benefit of a court-approved notice, are cause for serious concern. *See, e.g., Cobell v. Norton*, 225

F.R.D. 4, 7 (D.D.C. 2004) (finding that the court may act *sua sponte* to limit communications

between defendants and class members when it is in the best interests of the class). *See also*

*Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985) (pointing out that

"[u]nsupervised, unilateral communications with the plaintiff class sabotage the goal of

informed consent by urging exclusion on the basis of a one-sided presentation of the facts,

without opportunity for rebuttal."); *Ralph Oldsmobile Inc. v. Gen. Motors Corp.*, 2001 WL 1035132,

at *4 (S.D.N.Y. Sept. 7, 2001) (finding potential for abuse sufficient to warrant court intervention

where putative members purportedly released claims against defendants without knowing

about the pending litigation).

Defendants' conduct is especially troublesome with respect to those employees who still

work for Capala Brothers. Where, as here, putative class members are involved in an ongoing

business relationship with defendants, and those members are dependent on defendants for

employment, the potential for coercion suggests that limitations may be warranted. *See, e.g.,*

*E.E.O.C. v. Morgan Stanley & Co.*, 206 F. Supp. 2d 559, 563 (S.D.N.Y. 2002)(ordering limits on

communications between employer and employees because of the possibility of coercion); *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d at 253 (collecting cases for the proposition that there is sufficient potential for coercion to justify limitations where the parties are engaged in an ongoing business relationship).

Accordingly, defendants are ordered to show cause, in writing, by October 30, 2009, why this court should not enter an order directing that defendants and their counsel either (1) refrain from communicating with any putative class member about the substance of this case or, (2) provide notice to any putative class member who contacts them, or who defendants contact, about this litigation, that it is proceeding as a collective action, that an application to certify a class of which the employee may be a member is pending, that the putative class is represented by Robert Wisniewski, (and to provide Mr. Wisniewski's address and phone number), and that they may wish to consult with Mr. Wisniewski or their own attorney before deciding whether to opt in to the collective action or opt out of the class action if it is certified. In addition, if my recommendation to certify the class is adopted by Judge Glasser, defendants are ordered to show cause why this court should not enter an order directing that defendants and their counsel provide a copy of the court-approved notice to any class member who contacts them, or who defendants contact, about this litigation. *See Sorrentino v. ASN Roosevelt Ctr. LLC*, 584 F. Supp. 2d 529, 533 (E.D.N.Y. 2008) (finding that although the court could not regulate the content of defendants' settlement offer to the putative class, it would require defendants to mail their offer together with a position letter from plaintiffs' counsel "to ensure that the parties make an informed decision" and so that the potential class need not be "reliant on defendants' notice for information about the litigation").

## Conclusion

For the reasons discussed above, I respectfully recommend that Judge Glasser grant plaintiffs' motion to certify their New York state law wage and overtime claims as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3). I also recommend that Judge Glasser approve the named plaintiffs as class representatives and appoint Mr. Wisniewski as class counsel. Any objections to this Report and Recommendation must be filed within ten days of this Report and in any event no later than November 4, 2009. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

In addition, I grant plaintiffs' motion to proceed with their FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b).

Counsel are directed to meet and confer and submit a proposed notice of the class action and collective action by November 4, 2009. In the event that counsel are unable to agree on a proposal, plaintiffs shall submit their proposed notice by November 4, 2009, and defendants will file any objections one week thereafter.

To the extent they have not done so already, defendants are directed to provide the contact information for every full-time and part-time employee who worked for Capala Brothers at any time on or after August 29, 2001, by October 30, 2009.

Finally, defendants are directed to respond to the order to show cause by October 30, 2009.

_____/s_____
Steven M. Gold
United States Magistrate Judge

DATED:   October 16, 2009
          Brooklyn, New York

U:\IRM 2008-2009\Gortat v. Capala Bros\gortat v. capala bros_certification motion_v4.docx