UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------x

MIROSLAW GORTAT, et al.,

                                    Plaintiffs,

        -against-                                    MEMORANDUM AND ORDER
                                                     07-CV-3629 (ILG)

CAPALA BROTHERS, INC., et al.,

                                    Defendants.

-------------------------------------------------x

GLASSER, United States Senior District Judge:

        Defendants object to a combined report and order by Magistrate Judge Steven M. Gold

certifying a collective action under the Fair Labor Standards Act ("FLSA") and recommending

that the Court certify a class action for claims under the New York State Labor Law ("NYLL").

For the reasons stated below, the Court overrules defendants' objections to Magistrate Judge

Gold's report and recommendation, adopts the report and recommendation substantially in its

entirety, and grants plaintiffs' motion for class certification pursuant to Rule 23 of the Federal

Rules of Civil Procedure.  For the reasons stated below, the Court also overrules defendants'

objections to Magistrate Judge Gold's order certifying the collective action and directing

plaintiffs to submit a proposed notice of the collective and class actions.

## FACTS & PROCEDURAL HISTORY

        Plaintiffs are laborers and foremen formerly employed by Capala Brothers, Inc.

("Capala"), a construction firm.  They allege that they were illegally underpaid and bring claims

against Capala and its principals, Pawel and Robert Capala, under the Fair Labor Standards Act

1

("FLSA"), 29 U.S.C. §§ 201 et seq., the Portal-to-Portal Act, 29 U.S.C. § 254, and the New York

State Labor Law ("NYLL").  On June 11, 2009, plaintiffs filed separate motions asking the Court

to certify a class action with respect to the NYLL claims and to certify a collective action with

respect to the FLSA claims.[1]  On October 16, 2009, Magistrate Judge Gold issued a single

opinion ("Order & Report") which both authorized plaintiffs to proceed on the FLSA collective

action and recommended the certification of the NYLL class action.[2]  In addition to certifying

the collective action and recommending class certification, Magistrate Judge Gold issued

instructions regarding the proposed notice to be sent to putative members of the collective and

class actions.  On October 28, 2009, defendants filed objections to Magistrate Judge Gold's order

("Defs.' Objs. to Collective Action"), contesting both the certification of the collective action

and the form and contents of the proposed notice.  On November 3, 2009, defendants filed

objections to Magistrate Judge Gold's recommendation of class certification ("Defs.' Objs. to

Class Cert.").  Plaintiffs have not responded to either set of objections.  The Court assumes

familiarity with this litigation generally, and with Magistrate Judge Gold's October 16, 2009

Order & Report specifically.

## DISCUSSION

### 1. Class Action

#### a. Standard of Review

---

[1] FLSA claims may not be brought as part of a Rule 23 class action, but rather the FLSA provides for a special opt-in collective action procedure.  See Alleyne v. Time Moving & Storage Inc., No. 08CV1356ENVSMG, 2010 WL 322882, at *2 (E.D.N.Y. Jan. 28, 2010) ("FLSA claims are ineligible for certification under Rule 23 and can only be certified as 'collective actions' pursuant to 29 U.S.C. § 216(b)").

[2] A magistrate judge has the authority to authorize an FLSA collective action.  Mazur v. Olek Lejbzon & Co., No. 05 Civ. 2194(RMB)DF, 2005 WL 3240472, at *2 n.1 (S.D.N.Y. Nov. 30, 2005).  A class action must be certified by the district court judge, 28 U.S.C. § 636(b)(1)(A), but the Court, on July 9, 2009, referred the class certification motion to Magistrate Judge Gold for a report and recommendation.

Under 28 U.S.C. § 636(b)(1)(A), a magistrate judge may not decide a motion "to dismiss or to permit maintenance of a class action." The district judge may, however, refer such a motion to the magistrate judge for a report and recommendation. 28 U.S.C. § 636(b)(1)(B). When a magistrate judge issues a report and recommendation regarding such a dispositive motion, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. Proc. 72(b)(3).

### b. Ascertainability

Defendants first challenge the class certification on the grounds of ascertainability. Although it is not one of the formal prerequisites for class certification defined in Rule 23(a) of the Federal Rules of Civil Procedure, "courts have held that in order for a class to be certified, the named plaintiffs must demonstrate that there is an 'identifiable class.'" Cortigiano v. Oceanview Manor Home For Adults, 227 F.R.D. 194, 207 (E.D.N.Y. 2005) (quoting In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 209 F.R.D. 323, 336 (S.D.N.Y. 2002)). This standard, however, is not demanding. It is designed only to prevent the certification of a class whose membership is truly indeterminable. See, e.g., Rios v. Marshall, 100 F.R.D. 395, 403 (S.D.N.Y. 1983) (narrowing class definition when proposed class would require determination of the state of mind of numerous putative class members). It does not require that every class member be identifiable prior to class certification. See Ashe v. Bd. of Elections in New York, 124 F.R.D. 45, 47 (E.D.N.Y. 1989); Somerville v. Major Exploration, Inc., 102 F.R.D. 500, 503 (S.D.N.Y. 1984). Rather, the Court need only "be able to ascertain the general boundaries of the proposed class." In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 241 F.R.D. 185, 194 (S.D.N.Y. 2007) (internal quotations omitted). Here, plaintiffs' proposed class is limited to

persons employed by the defendants during a definite period of time. This easily satisfies the ascertainability requirement.

### c. Numerosity

Defendants next challenge the magistrate judge's finding of numerosity. According to records submitted by defendants, seventy-four foremen and laborers were employed by Capala during the relevant time period.[3] Under Second Circuit case law, a presumption of numerosity arises when a putative class contains at least forty members. Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995). The primary area of contention is the significance of affidavits submitted by defendants purporting to demonstrate that forty-one of the potential class members are not properly within the class. The affidavits, characterized by defendants as "nonjoinder affidavits," are largely identical and contain the following language:

1. I [was/am] an employee of defendant in this action, Capala Brothers, Inc and I am aware of the litigation started in Federal Court by my former co-employees in this action claiming unpaid hours and wages from my employer.

2. With such awareness and knowledge of these claims by them, I hereby provide notice of my knowledge of such litigation, the types of claims presented and what they are for, and declare that I do not join in claiming any unpaid hours or wages from the defendants in this action.

It is well-settled that prior to the certification of a class action, a defendant may seek settlements with potential class members. Weight Watchers of Philadelphia, Inc. v. Weight Watchers Int'l, Inc., 455 F.2d 770, 773 (2d Cir. 1972). This is so even if the settlements might have the effect of destroying numerosity and thus preventing class certification. Id. There is a "strong judicial policy in favor of settlements, particularly in the class action context," In re

---

[3] Plaintiffs have alleged that there were additional cash employees paid off the books who would also be members of the proposed class. Defendants vehemently deny this allegation. Because the seventy-four employees identified by defendants are sufficient to support numerosity, the existence of any such employees is irrelevant to the Court's numerosity determination.

Painewebber Ltd. P'ships Litig., 147 F.3d 132, 138 (2d Cir. 1998). This policy applies with equal force to settlements entered into prior to class certification.

In this case, however, the nonjoinder affidavits do not purport to be releases or to otherwise settle the claims that are the subject of this proposed class action. Defendants are quite clear about this, stating that "the 41 (forty-one) submitted nonjoinder affidavits . . . do not constitute either a stipulation, or a settlement or any waiver of any statutory rights."[4] Defs.' Objs. to Class Cert. 15; see also id. at 10 ("[T]he affidavits executed retained legal rights for such affiants."). Rather, defendants are attempting via these affidavits to preemptively and vicariously opt these potential plaintiffs out of any class action that might be certified. Defendants have cited no precedent for such an approach and this Court is aware of none.[5] See 5 Newberg on Class Actions § 15:19 (4th ed.) ("Generally, affidavits of noninterest are inappropriate at the class certification hearing."); see also Fed. R. Civ. Proc. 23(c)(2)(B)(vi) (implicitly authorizing the court to define "the time *and manner* for requesting exclusion" (emphasis added)). Not only would giving effect to these nonjoinder affidavits fail to serve the purposes behind the courts' preference for settlements, but it would be contrary to the policy

---

[4] Defendants actually attempt to have it both ways, referring to the affidavits as "releases" and citing settlement cases in support of defendants' right to negotiate settlements with plaintiffs prior to class certification, Defs.' Objs. to Class Cert. 11–12 ("[T]he Second Circuit does favor settlement of claims by putative class members before the class action is certified."), while at the same time distinguishing cases in which the court exercised supervisory authority over such negotiations on the ground that in this case no rights are being waived by prospective plaintiffs, Defs.' Objs. to Class Cert. 9–10, 15. In the most extreme example, defendants endorse both of these contradictory positions within a single sentence. Defs.' Objs. to Class Cert. 16–17 (". . . despite that this is not a stipulation and settlement agreement between the parties as to disputed claims between the affiants and the defendants, and despite that the release provisions of a sworn statement must be honored and respected . . ." (emphasis omitted)).

[5] Magistrate Judge Gold stated that "when asked during oral argument to identify any precedent addressing the effect of affidavits like the ones presented here, defendants were unable to do so," Order & Report 9. Defendants characterize this statement as "disregard[ing] the existing case law and the Second Circuit's [s]tated preference to allow settlements of putative class members' claims before the class is certified," Defs.' Objs. to Class Cert. 11–12. But the magistrate judge was requesting precedents regarding an "affidavit of non-participation" in a class action, specifically distinguishing it from a "release of a Minimum Wage Act claim under New York State Law." Tr. of 9/10/09, at 6–8. The oral argument transcript is crystal clear on this point. Defendants' only response was that "[t]here is no case law to the contrary to exclude them either," id. at 7; see also id. at 8. Their attempts to now argue otherwise are disingenuous.

behind "the liberal provisions of the Federal Rules of Civil Procedure for joinder of parties and claims," Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 581 (2005). This policy favoring the resolution of related claims in a single litigation also lies behind the availability of "opt out," but not "opt in" class actions under Rule 23, see Kern v. Siemens Corp., 393 F.3d 120, 124-25 (2d Cir. 2004). Defendants ask this Court to endorse a novel procedure which undermines these policies.

It is for this Court, not the defendants, to designate the appropriate means by which class members may opt out of a certified class action. The Federal Rules of Civil Procedure provide for court-approved notice to class members informing them not only of their right to opt out, but also of the nature of the action and their right to participate in it. See Fed. R. Civ. Proc. 23(c)(2)(B). The district court has broad supervisory authority over class actions, which extends even to communications with potential class members before an action has been certified. See In re Currency Conversion Fee Antitrust Litig., 361 F. Supp. 2d 237, 252 (S.D.N.Y. 2005). It is certainly within this Court's discretion to disregard affidavits purporting to opt potential plaintiffs out of a class action when this Court had no role in supervising the communications that led to their creation.

Finally, the mere possibility that members of a potential class may choose to opt out in the future is not enough to preclude a finding of numerosity. See Sunrise Toyota, Ltd. v. Toyota Motor Co., 55 F.R.D. 519, 533 (S.D.N.Y. 1972) ("Defendants' suggestion that many members of the class will elect to opt out after notice offers no basis for declining to make the class determination now."). Plaintiffs have met their burden of showing that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. Proc. 23(a)(1).

### d. Typicality and Commonality

Defendants also challenge the magistrate judge's findings of typicality and commonality. Defendants' primary concern is the potential inclusion of cash employees within the certified class. As an initial matter, because numerosity can be satisfied on the basis of the seventy-four on-the-books employees acknowledged by defendants, findings of typicality and commonality with respect to hypothetical cash employees are not necessary for class certification. Nevertheless, whether typicality and commonality are satisfied with respect to cash employees' claims may be relevant to the scope of the class defined by the Court.

Defendants argue that cash employees cannot be included within the class certified by the court on two related grounds: (1) defendants would have defenses to the claims of cash employees not applicable to the named plaintiffs; and (2) plaintiffs do not have standing to raise claims by cash employees. Neither of these arguments has merit.

First, while it is true that unique defenses may preclude a particular plaintiff from serving as a class representative, Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 59 (2d Cir. 2000), Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990), there is no requirement that all members of a class be subject to the same defenses, In re Nassau County Strip Search Cases, 461 F.3d 219, 225 (2d Cir. 2006). Rather, to establish typicality plaintiffs need only show that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 35 (2d Cir. 2009) (quotations omitted). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality

requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." Robidoux v. Celani, 987 F.2d 931, 936–37 (2d Cir. 1993). The NYLL claims of cash employees, if any such employees exist, are fairly encompassed within the class action brought by the named plaintiffs.

Second, in order to have standing to bring claims on behalf of a class, it is necessary only that at least one named plaintiff have standing to bring each separate claim. Comer v. Cisneros, 37 F.3d 775, 788 (2d Cir. 1994) ("For federal courts to have jurisdiction over any of these claims, only one named plaintiff need have standing with respect to each claim."). In order for standing to exist, three elements must be present: "(1) an injury in fact, by which is meant an invasion of a legally protected interest; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision." Fulton v. Goord, 591 F.3d 37, 41 (2d Cir. 2009) (internal quotations omitted). If potential class members allege the same injury as a named plaintiff, *i.e.* an invasion of the same legal right, caused by the same conduct, then the named plaintiff has standing to bring claims on their behalf in a class action. There is no requirement that the precise factual circumstances of each class plaintiff's claim be shared by a named plaintiff. In this case, if any cash employees exist, as long as they have claims under the same provisions of New York law for substantially similar conduct by defendants, the named plaintiffs have standing to represent them.

Defendants' argument that recent employees cannot be part of the same class action fails for the same reasons. Defendants argue that because recent employees have signed an employment contract, defendants would have "separate and distinct defenses against these

employees," which would prevent them from being part of a single class with named plaintiffs.[6]

Defs.' Objs. to Class Cert. 4. As noted above, the existence of different defenses to the claims of different class members will not preclude a finding of typicality.

Finally, defendants argue that because the foremen claim they were not paid for hours at the end of the work day, while the laborers claim only unpaid time in the morning, there is insufficient commonality to allow the claims to be brought as a single class. The Court has previously addressed this issue:

> Lastly, the defendants argue that the foremen and laborers cannot comprise the same class because the foremen seek compensation for the work they did between 4:00 p.m. and 5:30 p.m., a claim that the laborers do not make. These arguments are not persuasive. . . . As to the distinctions between . . . the claims of the foremen and the laborers, the complaint and the proffered evidence suggest that any individualized questions regarding the number of hours that a specific employee worked will not predominate over the questions of fact and law that are relevant to all members of the purported class, including when and where the workday began.

Gortat v. Capala Bros., Inc., 257 F.R.D. 353, 362 (E.D.N.Y. 2009) (citations omitted).

Typicality is also satisfied, especially in light of the fact that both foremen and a laborer are among the named plaintiffs.

---

[6] Defendants accuse the magistrate judge of mischaracterizing their argument:
> Footnote 6 of the [Order & Report] incorrectly asserts that defendants assert that employees who had been hired after the complaint filed [sic] are not part of this potential class action because they signed newly [sic] employer-employee regulations and policies stating clearly that work begins at 7:30 A.M., instead of the 7:00 A.M. claimed by the instant plaintiffs.

Defs.' Objs. to Class Cert. 4. In fact, this is precisely what defendants argued in their brief opposing class certification:
> [S]uch workers signed receipts of policy and procedures acknowledging that work started at 7:30 A.M., even though they might have hired [sic] in 2007 before the complaint was served in August of 2007. The existence of these signed policy and procedures documents excludes these individuals from being in the same potential class as the present plaintiffs.

Defs.' Br. in Opp. to Class Cert. 16–17 (citation omitted). Magistrate Judge Gold stated:
> After the complaint was filed, defendants claim that they required new hires to sign "regulations of employment" acknowledging that the workday began at 7:30 a.m. To the extent defendants argue that these "regulations" are the equivalent of a release, this argument is rejected for the reasons stated in the text.

Order & Report 7 n.6. There is no misrepresentation in the magistrate judge's opinion. Defendants' characterization of the argument as concerning *defenses* is new to their objections.

### e. Adequacy of Representation

Defendants also challenge the named plaintiffs' ability to adequately represent the class, alleging "extensive evidence of perjury" by several of the plaintiffs. Defendants provide the Court with a laundry list of incidents of alleged perjury. The Court has already addressed many of these allegations.[7] See Gortat, 257 F.R.D. at 363–65. The Court will not indulge defendants by examining each of these allegations in detail; it suffices to note that most of them can be grouped into a few categories.

First, defendants allege perjury by plaintiffs on the basis of supposed inconsistencies in their testimony that, upon further examination, are revealed to be inconsequential or even non-existent. For example, defendants allege that plaintiff Filipkowski "committed perjury at his deposition when he testified that he never saw anybody else drink alcoholic beverages at the job." Defs.' Objs. to Class Cert. 22. Defendants assert that this contradicts another signed statement by Filipkowski. Id. But the deposition transcript reveals that Filipkowski was asked "Did you ever see anybody else *drink at the job* at Capala Brothers?" and answered "No." Deposition of Miroslaw Filipkowski, dated Sept. 12, 2008, at 48:4–7 (Dkt. No. 173, Ex. V) (emphasis added); see also id. 49:17–24. The signed statement, on the other hand, recounts Filipkowski's "impression" that a co-worker "was under the influence of alcohol." Filipkowski

---

[7] In its earlier opinion, the Court noted that:

> To substantiate their argument, the defendants highlight the allegations in their amended third counterclaim against the plaintiffs for tortious interference, the allegations that some of the plaintiffs have filed false unemployment insurance applications, and the fact that plaintiffs Filipkowski and Lapinski invoked their Fifth Amendment right against self-incrimination during their depositions. In addition, the defendants proffered affidavits from their employees that, in the defendants' words, "indicate the level of violence and threats that most of these plaintiffs have imposed on the workers who after one and half year [sic] of litigation have resisted their unsuccessful attempts to have them join this litigation."

Gortat, 257 F.R.D. at 363 (footnote and citations omitted, alteration in original opinion). Defendants raise all of these arguments again in their opposition to class certification.

Statement, dated Mar. 14, 2005 (Dkt. No. 171, Ex. B).  There is no inconsistency or contradiction whatsoever between these two statements.

In another example, discussed by Magistrate Judge Gold, defendants describe plaintiff Lapinski's testimony regarding the employees' morning routine as "conflicting and contradictory" because he inconsistently described preliminary activities as taking thirty, twenty, or fifty minutes to complete.  Defs.' Objs. to Class Cert. 22.  In fact, in Lapinski's declaration, he says the preliminary activities "would take around half an hour to finish," Declaration of Artur Lapinski, dated Jan. 14, 2009, at ¶ 7 (Dkt. No. 85), while at his deposition he testified that they typically left the shop between 7:20 and 7:50 a.m.,[8] *i.e.* twenty to fifty minutes, Deposition of Artur Lapinski ("Lapinski Dep."), dated Sept. 15, 2008, at 87:19–21 (Dkt. No. 173, Ex. U).  As Magistrate Judge Gold noted, "[t]here is no meaningful inconsistency here."  Order & Report 14. See also Lapinski Dep. 160:6–161:7.

Second, defendants allege perjury on the basis of factual disputes between plaintiffs' and defendants' affidavits.  As this Court has already noted, to the extent that these disagreements are not related to the matter in dispute in this case, they are not relevant to the adequacy analysis. "Whether the Court should examine the named plaintiffs' overall character or should restrict its inquiry to their credibility, it is clear that the Court may not find them inadequate for conduct that does not touch upon the central issues in this litigation."  Gortat, 257 F.R.D. at 364.

---

[8] The full exchange was as follows:
> Q:      So what time on the average was it, on the average, that you left the shop?
> A:      At times, 7:20, other times ten or 15 to 8:00.
> Q:      So somewhere between 7:20 and 7:50 a.m.?
> A:      Approximately.
> Q:      Most of the times it was 7:20 or closer to 7:50?
> A:      I don't remember.

Lapinski Dep. 87:14–24.

On the other hand, a factual dispute between the parties, even when the dispute does touch upon "central issues" in the litigation, merely serves to demonstrate the existence of a genuine issue of material fact. <u>See</u> Order & Report 13 n.9. Resolving such disputes is the very reason trials exist and the trial process cannot be circumvented by characterizing these factual disputes as concerns about plaintiffs' credibility.

Third, defendants allege perjury solely on the basis of statements by plaintiffs that defendants regard as implausible. For example, defendants dispute the time that it would take to load vans in the morning, not on the basis of any testimony to that effect, but on the bare assertion that it "could not possibly take the three to five men crew 30 minutes to load and unload" and the complaint that "[i]t is truly incomprehensible how such false testimony can be given any plausible weight at all." Defs.' Objs. to Class Cert. 22. Similarly, defendants dispute Lapinski's testimony concerning the existence of cash employees, arguing that "it is inconceivable" that he would not remember their names, because it was "not that long ago" that his employment ended. <u>Id.</u> A credibility determination based solely on the alleged implausibility of a witness's statements of memory is a matter for the jury at trial.

Finally, it is worth noting that while defendants' allegations frequently provide tendentious interpretations of affidavits or deposition testimony without directly quoting that testimony, occasionally they cross into what is difficult to regard as other than intentional misrepresentation. For example, defendants assert that plaintiffs' counsel has admitted knowledge of incidents in which Filipkowski threatened a former plaintiff with physical violence. Defs.' Objs. to Class Cert. 26. The affidavit to which defendants cite, however,

explicitly and unequivocally denies that the alleged incidents occurred. Declaration of Robert

Wisniewski ("Wisniewski Decl."), dated Jan. 15, 2009, at ¶ 24 (Dkt. No. 86).[9]

### f. Class Definition

Rule 23(c)(1)(B) directs that as part of class certification, the district court must define

the class and appoint class counsel. Magistrate Judge Gold's recommendation of certification

does not explicitly define the class being certified, so this Court must do so in the first instance.[10]

Plaintiffs propose the following class definition in their motion for certification:

> all employees of the Defendants during the six years immediately preceding the initiation
> of this action up to the date of this decision, who performed work as roofers, bricklayers,
> masons, building laborers, drivers, foremen and other manual workers with the same or
> similar duties who are entitled to compensation from the Defendants for unpaid minimum
> wages, and/or overtime premium wages, and/or spread-of-hours wages, and/or other
> wages, and who are asserting claims under the New York State Labor Law, including
> without limitation, Sec. 190 et seq. and Sec. 650 et seq. as well as the wage orders
> promulgated thereunder.

Memorandum of Law in Support of Motion for Class Certification ("Pls.' Br. for Class Cert."),

dated June 11, 2009, at 1. Defendants argue that this class definition is inappropriate because it

defines the class to include spread-of-hours wage claims, which are not supported by the

plaintiffs' factual allegations.

This argument has some force. Under New York State labor law, a "spread-of-hours"

regulation requires in some cases the payment of an additional hour's wage to any employee who

works in excess of ten hours in a single day. 12 N.Y.C.C.R. § 142-2.4. Aside from the proposed

---

[9] The declaration states, in relevant part:
> Realizing that they needed evidence of threats of physical violence, and having identified Plaintiff
> Filipkowski as the alleged ringleader of Plaintiffs' alleged conspiracy to interfere with Defendants'
> contracts, Defendants, upon information and belief, apparently convinced former Plaintiff Drelich, as well
> as one of his colleagues, to file fraudulent criminal complaints against Plaintiff Filipkowski for harassment.

Wisniewski Decl. ¶ 24.
[10] The magistrate judge quotes the class definition proposed by plaintiffs but never explicitly adopts that definition.
Order & Report 3.

class definition, plaintiffs' motion for class certification mentions explicitly only unpaid wages and overtime wages, not spread-of-hours claims. In this case, plaintiffs were paid wages for eight hours of work per day, but allege that they were actually required to work an additional half hour in the morning, and the foremen were required to work up to an additional hour-and-a-half at the end of the day. Defendants argue that, because even the foremen's claims would amount to no more than ten hours per day, plaintiffs' allegations do not implicate the spread-of-hours requirements.

In response, plaintiffs argue that, although they agree with defendants that they were paid for eight hours of work per day, they dispute precisely which eight hours they were paid for. Defendants argue that they paid plaintiffs for the hours of 7:30 AM to 4:00 PM, with an unpaid thirty minute lunch. Plaintiffs describe the disagreement as follows:

> Plaintiffs claim that Defendants' employees were obligated to report to Defendants' company shop at 7:00 am and foremen were required to return for a meeting at Defendants' company shop until 5:30 pm. While Defendants allege that they paid Plaintiffs for 7:30 am until 4:00 pm, Plaintiffs dispute that Defendants paid them for those particular hours. It is unclear whether Defendants promised to pay their employees for the half an hour lunch period and, accordingly, it remains an open question for which particular eight (8) hours Defendants paid their employees.

Combined Reply Memorandum of Law in Support of Plaintiffs' Motion for Approval of Collective Action Notice and to Certify a Class under Rule 23(b)(3) ("Pls.' Reply Br."), dated August 12, 2009, at 12–13. This, however, stands in stark contrast to plaintiffs' earlier statements waiving any claim to payment for the lunch break. See Pls.' Br. for Class Cert. 5 n.1 ("Although some plaintiffs recall it being Defendants' policy to pay their employees for the half an hour lunch break, plaintiffs are forgoing any claims for the lunch break."); id. at 17 n.2 ("Although a number of plaintiffs recall being promised pay for lunch, for simplicity's sake, Plaintiffs are waiving claims for the half an hour lunch break."). This Court cannot see any way

of reconciling these statements with the argument that payment for the lunch break is still in dispute.  Furthermore, plaintiffs have not alleged that any other potential plaintiffs worked different or longer hours that might entitle them to spread-of-hours wages.  See Pls.' Reply Br. 2 ("[A]ll of Defendants' manual laborers worked on similar construction sites, performing similar work, for virtually the same hours.").

The Court adopts the following modified definition for the certified class:

All persons employed by Defendants as roofers, bricklayers, masons, building laborers, drivers, foremen and other manual workers with the same or similar duties during the six years immediately preceding the initiation of this action up to the date of this decision who are asserting claims under the New York State Labor Law for unpaid minimum wages or overtime premium wages.

In addition, the Court appoints plaintiffs' counsel, Mr. Wisniewski, as class counsel pursuant to Rule 23(g).  See Gortat, 257 F.R.D. at 365 ("[T]he Court finds further that plaintiffs' counsel is qualified and able to represent the class and has demonstrated his willingness to do so.").

## 2. Collective Action

### a. Standard of Review

A magistrate judge has the authority to rule on nondispositive issues.  Fed. R. Civ. Proc. 72(a).  A motion to authorize a collective action is such a nondispositive action.  Mazur v. Olek Lejbzon & Co., No. 05 Civ. 2194(RMB)DF, 2005 WL 3240472, at *2 n.1 (S.D.N.Y. Nov. 30, 2005).  When objections are filed to orders of the magistrate judge, the district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. Proc. 72(a).

### b. Heightened Scrutiny

Defendants argue that, because the motion for collective action certification was made after discovery had already taken place, the magistrate judge should have applied a heightened level of scrutiny to the certification decision. The magistrate judge did in fact refer to this heightened level of scrutiny. Order & Report 17 ("Where, as here, plaintiffs move to proceed as collective action post-discovery, courts apply heightened scrutiny to this inquiry as compared to pre-discovery." (internal quotations omitted)). Defendants give no explanation as to why certification is inappropriate under this heightened scrutiny, and thus have not shown that the magistrate judge's decision was clearly erroneous or contrary to law. In addition, for the reasons that follow, the Court finds that such heightened scrutiny is not appropriate in this case.

The process of certifying an FLSA collective action is not specified by the statute itself, which only provides, in relevant part, that:

> An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). To implement this standard, courts have developed a two-stage process. [11]

Morales v. Plantworks, Inc., No. 05 Civ. 2349(DC), 2006 WL 278154, at *1 (S.D.N.Y. Feb. 02, 2006). First, plaintiffs may move to certify a collective action. Id. This preliminary certification allows notice to be sent to potential similarly situated plaintiffs inviting them to opt in to the collective action. Id. Second, after discovery is complete, defendants may move the court to decertify the collective action. Id.

---

[11] Technically speaking, there is no statutory requirement that a court "certify" a collective action under the FLSA. See 29 U.S.C. § 216(b). A court must, however, determine whether to permit notice to potential plaintiffs and must determine whether opt-in parties satisfy the statute's "similarly situated" requirement. This Court will follow the common usage of other courts in using the language of "certification" to refer to these determinations.

Defendants misconceive the function of this two-stage process. Because the statute of limitations for FLSA claims continues to run for each individual plaintiff until he or she opts in, see 29 U.S.C. § 256(b), early certification and notice are favored in order to protect plaintiffs' rights. Thus, only a minimal evidentiary burden is imposed in order to satisfy the "similarly situated" requirement. Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 262 (S.D.N.Y. 1997) ("[C]ourts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management."); see also Krueger v. N. Y. Tel. Co., Nos. 93 CIV. 0178 (LMM), 93 CIV. 0179 (LMM), 1993 WL 276058, at *2 (S.D.N.Y. July 21, 1993) (discussing the benefits of "reaching out to potential plaintiffs"). Because the putative "similarly situated" plaintiffs have not yet been joined, and may not even be known, the certification is viewed as preliminary and subject to revisitation by the court. Bowens v. Atlantic Maint. Corp., 546 F. Supp. 2d 55, 82 (E.D.N.Y. 2008) ("FLSA's opt-in provision merely provides an opportunity for potential plaintiffs to join and is only a preliminary determination as to which potential plaintiffs may in fact be similarly situated.").

In each of the cases cited by defendants it is clear that the court envisions the heightened standard applying not only after discovery, but also *after notice and opportunity to opt-in*. See Sipas v. Sammy's Fishbox, Inc., No. 05 Civ. 10319(PAC), 2006 WL 1084556, at *2 n.1 (S.D.N.Y. Apr. 24, 2006) ("If the Court finds that the plaintiffs are not similarly situated, the Court will decertify the collective action and *the claims of the opt-in plaintiffs will be dismissed before trial*." (emphasis added)); Laroque v. Domino's Pizza, LLC, 557 F. Supp. 2d 346, 352 (E.D.N.Y. 2008) ("After discovery, a second inquiry begins, generally precipitated by a defendant's motion for decertification, in which the court examines with a greater degree of scrutiny whether the members of the plaintiff class — *including those who have opted in* — are

similarly situated." (emphasis added)); <u>Sobczak v. AWL Indus., Inc.</u>, 540 F. Supp. 2d 354, 362–63 (E.D.N.Y. 2007) ("It also does not prejudice defendants because the determination to certify the class and *to permit notice to be sent* is merely preliminary." (emphasis added)); <u>Valcho v. Dallas County Hosp. Dist.</u>, 574 F. Supp. 2d 618, 621 (N.D. Tex. 2008) ("[T]he court reexamines the class *after notice, time for opting in, and discovery has taken place*, typically in response to defendant's motion.  If it finds that the class is no longer made up of similarly-situated persons, it decertifies the class." (citations omitted and emphasis added)); <u>Guzman v. VLM, Inc.</u>, No. 07-CV-1126 (JG)(RER), 2007 WL 2994278, at *2 (E.D.N.Y. Oct. 11, 2007) ("Due to the conditional nature of the certification contemplated *at the notice stage*, the burden on plaintiffs is not a stringent one, and the court need only reach a preliminary determination that potential plaintiffs are similarly situated." (internal quotations omitted and emphasis added)); <u>see also</u> <u>Patton v. Thomson Corp.</u>, 364 F. Supp. 2d 263, 268 (E.D.N.Y. 2005) ("It may be revisited if it later appears, after appropriate discovery, that *the additional plaintiffs who opt to join the lawsuit*, if any, are not similarly situated to [plaintiff]." (emphasis added)).[12]

     This case is unusual in that a motion for collective action certification did not occur much earlier, before discovery.  Thus, unlike the situation in a typical decertification motion, the identities of potential "similarly situated" opt-in plaintiffs are still unknown, as no notice has yet been issued.  The heightened scrutiny standard is only appropriate after the opt-in period has

---

[12] In one case cited by the magistrate judge, <u>Torres v. Gristede's Operating Corp.</u>, No. 04 Civ. 3316(PAC), 2006 WL 2819730, at *9 (S.D.N.Y. Sept. 29, 2006), the court explicitly endorsed the application of heightened scrutiny in a post-discovery, but pre-notice, context.  <u>Torres</u> adopts this standard without discussion, and the case cited in support, <u>Harrington v. Educ. Mgmt. Corp.</u>, No. 02 Civ. 0787 (HB), 2002 U.S. Dist. LEXIS 8823, at *4–5 (S.D.N.Y. May 17, 2002), holds only that "[i]t is only later down the road that the court need engage in a second more heightened stage of scrutiny as to whether the plaintiffs are similarly situated for the purposes of maintaining the collective action," and citing in turn two cases more consistent with the view that heightened scrutiny is appropriate only after notice and opportunity to opt in.  <u>See Jackson v. N. Y. Tel. Co.</u>, 163 F.R.D. 429, 431 (S.D.N.Y. 1995) ("The inquiry at the inception of the lawsuit is less stringent than the ultimate determination that the class is properly constituted."); <u>Rodolico v. Unisys Corp.</u>, 199 F.R.D. 468, 480 (E.D.N.Y. 2001) (distinguishing the lenient standard "at the notice stage" from the second stage when "the case is ready for trial").  This Court declines to follow <u>Torres</u>.

ended and the court is able to examine whether the *actual* plaintiffs brought into the case are similarly situated. See Davis v. Lenox Hill Hosp., No. 03 Civ.3746 DLC, 2004 WL 1926086, at *7 (S.D.N.Y. Aug. 31, 2004) ("The test is whether there is a 'factual nexus' between the claims of the named plaintiff and those who have chosen to opt-in to the action."); Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101, 105 (S.D.N.Y. 2003) ("Should it become clear later that the parties who have opted-in are not similarly situated to the Plaintiff here, I will make any rulings that are necessary and appropriate to ensure that the case is properly formed."); see also Chowdhury v. Duane Reade, Inc., No. 06 Civ. 2295(GEL), 2007 WL 2873929, at *3 (S.D.N.Y. Oct. 02, 2007) (discussing deposition of opt-in plaintiffs as part of discovery).[13] It would not sensibly serve the purposes of the two-step scheme to impose on plaintiffs a heightened burden of proving that as-yet-unknown plaintiffs are similarly situated.

Additionally, in this case, plaintiffs initially filed a motion for certification of the collective action on January 15, 2009, prior to the completion of discovery. On January 25, 2009, defendants moved to stay the determination of the collective action motion pending the resolution of defendants' own summary judgment motion, and ultimately, on February 12, 2009, entered into a stipulation with plaintiffs pursuant to which the motion for collective action certification was voluntarily dismissed. Defendants received the benefit of delaying the collective action certification and cannot now use that very delay as a weapon to defeat the certification.

---

[13] Even in cases with language suggesting that the second stage review might occur prior to opt in, see, e.g., Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 369 (S.D.N.Y. 2007) ("If the fruits of full discovery reveal that plaintiffs are not, in fact, 'similarly situated' to defendants' other employees, or that only employees who worked at the same facility or engaged in a particular job are 'similarly situated,' I may later decertify the class or divide it into subclasses, if appropriate."), it is clear, reading the opinions in their entirety, that the court expected the second review to occur after opt in, id. at 367 ("If the claimants are indeed similarly situated, the collective action proceeds to trial, and if they are not, the class is decertified, *the claims of the opt-in plaintiffs are dismissed* without prejudice, and the class representative may proceed on his or her own claims." (emphasis added)). See also Lynch v. United Servs. Auto. Ass'n, 491 F.Supp.2d 357, 368, 369 (S.D.N.Y. 2007).

### c. Lack of Proof of Additional Plaintiffs

Defendants also object to the certification of the collective action, arguing that plaintiffs provided insufficient proof of the existence of similarly situated plaintiffs. Specifically, they argue that plaintiffs have failed to show that any of the proposed similarly situated plaintiffs "desire to opt in" to the action. Defs.' Objs. to Collective Action 10. In support of this argument, defendants cite cases following the Eleventh Circuit's decision in Dybach v. State of Florida Department of Corrections, 942 F.2d 1562, 1567–68 (11th Cir. 1991), which required the district court to find that potential plaintiffs exist "who desire to 'opt-in' and who are 'similarly situated.'" Although some district courts outside of the Eleventh Circuit have adopted Dybach's "desire to opt in" requirement,[14] no other Circuit Court has done so, and it is not the law of this Circuit. Moreover, this requirement has been strongly criticized by several courts outside the Eleventh Circuit. See Delgado v. Ortho-McNeil, Inc., No. SACV07-263CJCMLGX, 2007 WL 2847238, at *2 (C.D. Cal. Aug. 07, 2007) ("The Dybach court provided no explanation for requiring plaintiffs to show that other class members desire to opt in, nor does the County indicate why this Court should adopt such a rule. The Court finds the Dybach rule inappropriate at the 'notice stage.' Conditional certification at this stage is designed to provide notice to potential plaintiffs specifically because they might not yet be informed of the action or their ability to participate in it."); Heckler v. DK Funding, LLC, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007) ("Defendants' proposed rule does not make sense. It would essentially force plaintiffs or their attorneys to issue their own form of informal notice or to otherwise go out and solicit other plaintiffs. This would undermine a court's ability to provide potential plaintiffs with a fair and accurate notice and would leave significant opportunity for misleading potential plaintiffs. That

---

[14] See, e.g., Parker v. Rowland Express, Inc., 492 F.Supp.2d 1159, 1164–66 (D. Minn. 2007) (defending the "desire to opt in" requirement and citing cases from outside the Eleventh Circuit applying it).

aside, the logic behind defendants' proposed procedure — requiring [plaintiff] to show that others want to join in order to send them notice asking if they want to join — escapes the Court. Requiring a plaintiff to make an advance showing that others want to join would undermine the 'broad remedial goal' of the FLSA."); Reab v. Elec. Arts, Inc., 214 F.R.D. 623, 629 (D. Colo. 2002) ("The cited language in Dybach . . . appears to conflict with United States Supreme Court's position that the Act should be liberally 'applied to the furthest reaches consistent with congressional direction.'" (quoting Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 296 (1985))); Reab, 214 F.R.D. at 629 ("requiring plaintiffs in § 216(b) actions to have some unknown number of persons decide whether to opt in places plaintiffs in the position of communicating with potential litigants without court supervision or guidance, leaving plaintiffs subject to allegations of improper solicitation and 'tainting' of the putative class."). This Court similarly rejects the "desire to opt in" requirement, and follows the overwhelming majority of district courts outside of the Eleventh Circuit in requiring only a showing of similarly situated persons.

Furthermore, even were this Court to adopt the Dybach standard, plaintiffs in this case have made an adequate showing. First, this case was not brought by a single plaintiff, but rather by a group of similarly situated plaintiffs, which is suggestive of a greater degree of interest in participation by similarly situated persons. See Simmons v. T-Mobile USA, Inc., Civil Action No. H-06-1820, 2007 WL 210008, at *9 (S.D. Tex. Jan. 24, 2007) (explaining that this issue has not reached the Fifth Circuit "presumably because generally there are *multiple plaintiffs* or several current or former employees that seek to join the suit" (emphasis added)). Second, and more importantly, in the course of this litigation, three additional plaintiffs joined the action after being subpoenaed for depositions. See Amended Complaint, dated Feb. 13, 2009, Ex. 1; Pls.' Reply Br. 8–9. This lends significant weight to the idea that other similarly situated persons

would also choose to opt in if given notice.  See <u>Dumitrescu v. Mr. Chow Enters., Ltd.</u>, No. 07 Civ. 3601(PKL), 2008 WL 2600667 (S.D.N.Y. June 30, 2008) (holding that "plaintiffs have adequately demonstrated that there is a class of people potentially interested in joining the collective action" by presenting evidence of "at least fifty other tipped employees who were subjected to the same policies as plaintiffs, two of whom have already come forth expressing interest in joining the suit.").

### d.  Individualized Defenses

Defendants also argue that the magistrate judge failed to consider their individualized defenses against different plaintiffs in certifying the collective action.  As an initial matter, defendants failed to make this argument in their brief opposing certification of the collective action, Memorandum in Opposition to Plaintiffs' Motion for Notice under Collective Action under 29 U.S.C.A. Sec. 216(B), dated June 30, 2009, and thus the argument is waived here.  The Court is satisfied, however, that certification of the collective action would be appropriate even if individualized defenses were considered.

Defendants suggest that they would have distinct defenses against two groups of potential plaintiffs: (1) cash employees, if any exist;[15] and (2) more recent employees who allegedly signed an employment agreement which explicitly addresses their working hours.[16]  The key issue in dispute in this action, which is relevant to the claims of all potential plaintiffs, is whether Capala had a policy of routinely paying wages to employees for fewer hours than they were required to be present at work.  The Court is satisfied that these core issues common to all plaintiffs are sufficient to make them similarly situated for purposes of the FLSA.  See <u>Torres v.</u>

---

[15] See <u>Defs.' Objs. to Collective Action</u> 8.
[16] See <u>Defs.' Objs. to Class Cert.</u> 4.

Gristede's Operating Corp., No. 04 Civ. 3316(PAC), 2006 WL 2819730, at *11 n.10 (S.D.N.Y. Sept. 29, 2006) ("[T]he standard of proof and required evidence under FLSA is not an individualized inquiry but one based on policy, practice, and conduct." (internal quotations omitted)).  Furthermore, the Court is empowered to revisit this issue should substantially different defenses arise.  At that point, with knowledge of the identities and circumstances of the plaintiffs who have actually chosen to join the action, the Court can dismiss dissimilar opt-in plaintiffs or subdivide the collective action as appropriate.  See Ayers v. SGS Control Servs., Inc., No. 03 Civ. 9077 RMB, 2007 WL 646326, at *6 (S.D.N.Y. Feb. 27, 2007) ("[T]o the extent Defendants present individual defenses, the Court may grant collective action and bifurcate trial, as necessary, to address those defenses." (internal quotations omitted)); accord Torres, 2006 WL 2819730, at *11 n.10.

### 3.  Notice to Potential Plaintiffs

#### a.  Standard of Review

The form and content of notices to be issued to class members or potential collective action opt-in plaintiffs is a nondispositive matter upon which a magistrate judge may rule.  See, e.g., Jemine v. Dennis, No. CV 2008-3072(RRM)(MDG), 2009 WL 837802 (E.D.N.Y. Mar. 26, 2009).  The district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. Proc. 72(a).

#### b.  Objections to Contents of Notice

Defendants raise various objections to Magistrate Judge Gold's determinations regarding the notice to be sent to members of the class action and to potential opt-in plaintiffs in the collective action.  Some of these objections are directed at the content of the notice.  Specifically,

defendants argue that (1) the proposed notice does not sufficiently define those employees who are members of the class or are eligible to join the collective action, and (2) the proposed notice inappropriately fails to adequately advise class members or potential opt-in plaintiffs of their legal rights, including rights related to legal representation and legal fees.

These objections are premature. Magistrate Judge Gold's Order & Report, to which defendants object, did not approve plaintiffs' proposed notice, and in fact, instructed plaintiffs to submit a new proposed notice, after considering the magistrate judge's suggestions and the case law. At the time defendants filed these objections, plaintiffs' proposed notice had yet to be filed,[17] and as of now, Magistrate Judge Gold has not yet approved any specific notice language. Until Magistrate Judge Gold actually approves specific notice language there is simply nothing to which Capala can object.[18] This Court takes no position on the merits of defendants' arguments at this time, leaving it to the magistrate judge in the first instance to approve appropriate notice.[19]

### c. Objections to Form of Notice

In addition to the objections to the content of the proposed notice, defendants object to the form of the notice approved by the magistrate judge. Specifically, defendants argue that (1) published notice is inappropriate given the small number of known potential plaintiffs, and (2) a

---

[17] Plaintiffs subsequently filed a proposed combined notice on November 4, 2009.

[18] To the extent defendants object to Magistrate Judge Gold's rulings and recommendations regarding the form, as opposed to the content, of the notice, these objections are addressed below.

[19] The magistrate judge instructed the parties as follows:

> Counsel shall submit a proposed notice for my review by November 4, 2009. In the event that the parties are unable to agree on a proposal, plaintiffs shall submit their proposed notice by November 4, 2009, and defendants will file objections one week thereafter.

Order & Report 20. Although plaintiffs submitted their proposed notice on November 4, 2009, defendants have submitted no objections in response. The Court leaves it to the magistrate judge in the first instance to determine whether defendants have waived their opportunity to object, or whether their objections to the Order & Report might be construed as in response to plaintiffs' proposal.

single notice for both the collective and class actions is inappropriate. The Court will address these objections in turn.

In addition to sending a notice to employees on the list provided by defendants, plaintiffs proposed publishing the notice for five consecutive weekends in *Nowy Dziennik*, "a New York-based Polish language newspaper." Order & Report 20. The magistrate judge approved of this publication, but, due to the "lack of concrete information" about additional employees, he held that plaintiffs should bear the cost of publication unless a significant number of additional plaintiffs are identified as a result of the notice.[20] Order & Report 20–21. Defendants argue that because plaintiffs have not provided sufficient proof of other potential plaintiffs, this published notice is inappropriate. The cases cited give little support for this argument.[21] For example, defendants cite Rubery v. Buth-Na-Bodhaige, Inc., 569 F. Supp. 2d 334 (W.D.N.Y. 2008), for the proposition that newspaper publication is inappropriate unless plaintiffs can show that mailed or posted notice is insufficient. But Rubery did not involve newspaper publication, but rather publication in the *company newsletter*. Id. at 338. The court's reasoning was made clear in

---

[20] The magistrate judge held as follows:
> [i]f a significant number of class members who were not on defendants' list of seventy-four employees join the class after publication, plaintiffs may seek to have the cost of publication shifted to defendants.

Order & Report 20–21. The notice is directed at both members of the class action and potential collective action opt-in plaintiffs. Although the magistrate judge appears to be referring only to opt-in plaintiffs in the quoted language, the Court believes that cost-shifting would be appropriate if the notice results in a significant number of *either* new collective action opt-in plaintiffs *or* previously unidentified members of the class action, whether or not such persons choose to opt out of the class.

[21] Amazingly, defendants cite an American Law Reports annotation, Wesley Kobylak, Annotation, *Notice to potential class members of right to "opt-in" to class action, under § 16(b) of Fair Labor Standards Act (29 U.S.C.A. § 216(b))*, 67 A.L.R. Fed. 282 (1984), for the proposition that there is a circuit split concerning whether courts have the authority to authorize collective action notice. The Supreme Court definitively resolved this split in favor of allowing notice *over twenty years ago*. See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165 (1989). Defendants have inexplicably failed to notice that this ALR annotation was originally published in 1984, and that all of the cases disapproving of notice cited therein predate Hoffmann-La Roche. Similarly, defendants cite Montalto v. Morgan Guaranty Trust Co., 83 F.R.D. 150, 152 (S.D.N.Y. 1979), wherein the district court held that "[n]o notice appears to be required by 29 U.S.C. s 216(b) and it would be inappropriate for the court to stimulate litigation by giving its imprimatur to any such procedure," while completely ignoring the Supreme Court's statement in Hoffmann-La Roche holding "that district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs," Hoffmann-La Roche, 493 U.S. at 169.

Sherrill v. Sutherland Global Services, Inc., 487 F. Supp. 2d 344, 351 (W.D.N.Y. 2007), the case upon which Rubery relied, which grounded this limitation on notice in "minimizing any disturbance to [the] workplace." Despite this concern with avoiding workplace disruption, in both Rubery and Sherrill, the court did require employers to prominently post the notice on company bulletin boards. In this case, plaintiffs proposed newspaper notice does not require any affirmative steps by defendants or the commandeering of company resources.[22] Such notice is appropriate, and in any event, is not clearly erroneous or contrary to law.

Defendants also argue that it is inappropriate to issue a single notice for both the class action and collective action, arguing that it is prejudicial due to the different statutes of limitations governing each of the claims. Because the statute of limitations for FLSA claims is only three years while the NYLL claims have a six-year limitations period, some plaintiffs may be members of the class action, but ineligible to join the collective action. Defendants argue that the inclusion of both claims in a single notice would cause confusion. The magistrate judge found, and this Court agrees, that more confusion is likely if two separate notices are sent concerning claims based on the same underlying facts.[23] Furthermore, it is difficult to see how defendants are seriously prejudiced if such a combined notice is received by a person who has claims that are more than three but less than six years old. Such a person would be entitled to notice of the class action and, if he attempts to opt in to the collective action, could simply be informed that he is ineligible.

---

[22] And, as noted above, defendants will not even bear the costs unless a significant number of additional plaintiffs are identified as a notice.

[23] Defendants' argument that it would be less confusing to publish two separate notices in the newspaper rather than a single combined notice is nonsensical. Since the newspaper advertisement isn't targeted to specific individuals, it would serve no purpose to separate the claims. Rather, it would increase the likelihood that former employees might fail to read one of the two notices.

Defendants cite four cases in which courts limited notice of FLSA claims to claims within the past three years. None of these cases supports their demand for separate notices of the class and collective actions. In each of these cases, the dispute concerned whether persons with claims between three and six years old should receive any notice whatsoever. Here, defendants concede, as they must, that once a class action has been certified notice is perfectly appropriate for the state law claims for the full six year period. These cases are not relevant to the question of whether a single combined notice is appropriate. In <u>Summa v. Hofstra University</u>, No. CV 07-3307(DRH)(ARL), 2008 WL 3852160 (E.D.N.Y. Aug. 14, 2008), plaintiffs brought no state law claims. The dispute regarding the temporal scope of the notice related only to the availability of equitable tolling. In <u>Sobczak v. AWL Industries, Inc.</u>, 540 F. Supp. 2d 354 (E.D.N.Y. Oct. 22, 2007), and <u>LeGrand v. Education Management Corp.</u>, No. 03 Civ.9798(HB)(HBP), 2004 WL 1962076 (S.D.N.Y. Sept. 02, 2004), the courts declined to extend the notice period to cover state law claims, finding that no class action was available for the state law claims and thus notice was not appropriate for those claims. That is obviously inapplicable here where a class action has been certified on the state law claims. Finally, in <u>Suarez v. S & A Painting & Renovation Corp.</u>, No. 08-CV-2984 (CPS)(JO), 2008 WL 5054201 (E.D.N.Y. Nov. 21, 2008), the magistrate judge cited his lack of authority to certify a class action as precluding the authorization of notice regarding the state law claims. Again, in this case, where a class action has been certified by the Court, there is no such barrier to approving notice of the state law claims.[24]

---

[24] Defendants mischaracterize the magistrate judge's opinion, claiming that he "states that these cases did not involve claims for years 3 through 6 by employees which would be covered by a class action pursuant to NYLL." Defs.' Objs. to Collective Action 9. In fact, the magistrate judge stated, accurately, that "none of the cases defendants rely upon involved motions to certify a Rule 23 class pursuant to NYLL." Order & Report 20 n.15.

In addition, several courts have approved a single notice of both FLSA and state law claims, covering the full six-year state law limitations period, even when no class action had yet been certified for the state law claims.  See Jemine, 2009 WL 837802;[25] Guzman, 2007 WL 2994278; Wraga v. Marble Lite, Inc., No. 05-CV-5038 (JG)(RER), 2006 WL 2443554 (E.D.N.Y. Aug. 22, 2006); Harrington v. Education Management Corp., No. 02 Civ. 0787(HB), 2002 WL 1343753 (S.D.N.Y. June 19, 2002); Realite v. Ark Restaurants Corp., 7 F. Supp. 2d 303 (S.D.N.Y. 1998).  In this case, where both the class and collective actions have been certified, notice covering the full six-year period is clearly appropriate.

### 4. Motion for Recusal

In their objections to the magistrate judge's Report, defendants accuse the Court of a "lack of objectivity and fairness" and ask leave of the Court to file a motion for recusal.  Defs.' Objs. to Class Cert. 32.  Defendants made a similar request in a submission to Magistrate Judge Gold.[26]  Memorandum of Law in Opposition to Magistrate's Sua Sponte Order to Show Cause ("Defs.' Br. in Opp. to Show Cause Order"), dated October 29, 2009, at 19.  No leave is required

---

[25] Defendants completely misrepresent the holding in Jemine, stating that "separating the collective action notice from the class action, that Magistrate reserved the class action notice for years 3–6 and addressed them on a separate notice."  Defs.' Objs. to Collective Action 8–9.  This description bears absolutely no resemblance to the actual holding of Jemine in which the magistrate judge approved a single notice for both the FLSA collective action and state claims Rule 23 class action, stating:

> [T]he notice sent to putative plaintiffs should clearly distinguish between the time periods applicable to the federal law claim and the New York law claim and explain that plaintiffs may have claims under the FLSA if they worked more than forty hours per week during the last three years and/or claims under New York law if they worked more than forty hours per week or more than 10 hours per day during the last six years. The notice should further advise that failing to file a consent form affects only the FLSA portion of the case.  Relatedly, the notice should provide that only the employees who worked for some time during the last three years may join the collective action.  Finally, the notice should provide that those plaintiffs who have claims under New York law and join the collective action may waive their right to liquidated damages under New York state law and that they may want to contact plaintiffs' counsel or another attorney.

Jemine, 2009 WL 837802, at *2.  This is entirely consistent with Magistrate Judge Gold's Order.

[26] In their brief objecting to class certification, defendants state that "leave is requested for recusal by the Court and/or change of venue."  Defs.' Objs. to Class Cert. 32.  In the filing before Magistrate Judge Gold, defendants state more clearly that they are requesting "leave and adequate time to file a motion for recusal and/or change of venue."  Defs.' Br. in Opp. to Show Cause Order 19.  Because the language in their brief objecting to class certification is unclear, the Court will construe it consistently with their brief to the magistrate judge, filed only five days earlier, as requesting leave to file a motion, rather than actually making that motion.

to file a recusal motion.  See Morisseau v. DLA Piper, 532 F. Supp. 2d 595, 622 (S.D.N.Y. 2008).  If defendants wish to file such a motion, they may do so.

On the other hand, while defendants surely have a right under 28 U.S.C. § 455 to request recusal, casting aspersions on this Court's integrity while holding out the threat of a recusal motion is wholly inappropriate.[27]  If defendants have concerns about the impartiality of this Court, those concerns should be raised in a proper recusal motion, or not at all.

## CONCLUSION

For the aforementioned reasons, defendants' objections to the magistrate judge's certification of the collective action are OVERRULED, defendants' objections to the magistrate judge's recommendation of class certification are OVERRULED, and plaintiffs' motion for class action certification is GRANTED.

SO ORDERED.


Dated:          Brooklyn, New York
                April 9, 2010




                                        _____/s/_____
                                        I. Leo Glasser
                                        United States Senior District Judge




---

[27] It is worth noting however, that months have passed since defendants requested from Magistrate Judge Gold time to file a motion for recusal, and no recusal motion has been forthcoming.

**Copies of the foregoing memorandum and order were electronically sent to:**

**<u>Counsel for the Plaintiffs</u>**

Robert Wisniewski
Robert Wisniewski & Associates P.C.
225 Broadway
Suite 1020
New York, NY 10007

**<u>Counsel for the Defendants</u>**

Felipe E. Orner
Felipe E. Orner, Esq.
72-29 137th Street
Flushing, NY 11367