```
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK
 2

 3    --------------------------------X
                                      :
 4    MIROSLAW GORTAT, et al.,        :
                                      :   07-CV-03629
 5                 Plaintiffs,        :
                                      :
 6                 v.                 :
                                      :   225 Cadman Plaza East
 7    CAPALA BROTHERS, INC., et al.,  :   Brooklyn, New York
                                      :
 8                 Defendants.        :   May 5, 2010
      --------------------------------X
 9
                  TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE
10                BEFORE THE HONORABLE STEVEN M. GOLD
                   UNITED STATES CHIEF MAGISTRATE JUDGE
11

12    APPEARANCES:

13    For the Plaintiffs:        ROBERT WISNIEWSKI, ESQ.
                                 Robert Wisniewski & Associates, PC
14                               225 Broadway - Suite 1020
                                 New York, New York  10007
15

16    For the Defendants:        FELIPE E. ORNER, ESQ.
                                 72-79 137th Street
17                               Flushing, New York  11367

18

19

20    Court Transcriber:         RUTH ANN HAGER
                                 TypeWrite Word Processing Service
                                 211 N. Milton Road
21                               Saratoga Springs, New York  12866

22

23

24

25


      Proceedings recorded by electronic sound recording, transcript
      produced by transcription service
```

2

1 (Proceedings began at 4:04 p.m.)

2        THE COURT:  All right.  This is <u>Gortat, et al. v.</u>

3 <u>Capala Brothers, et al.</u>, 07-CV-03629.

4        For the plaintiff?

5        MR. WISNIEWSKI:  Robert Wisniewski, W-I-S-N-I-E-W-S-

6 K-I, for all plaintiffs.

7        THE COURT:  And for the defendants?

8        MR. ORNER:  Felipe Orner for all the defendants.

9 Good afternoon, Your Honor.

10        THE COURT:  Good afternoon.

11        MR. ORNER:  Good afternoon.

12        THE COURT:  Well, our litigation has proceeded to

13 the point where Judge Glasser has affirmed my decision that

14 the case should go forward under 216(b), has ruled that the

15 case should go forward as a class action under Rule 23, and

16 has defined the class for Rule 23 purposes.  I asked the

17 parties to draft a notice in the event Judge Glasser so ruled

18 and to articulate any difficulties with that notice, and set

19 this conference to review the proposal and any objections to

20 it.  In fact, what I asked was that the parties try to agree

21 on a notice, but apparently that was not possible.

22        Mr. Wisniewski submitted a notice that he proposed

23 to the Court and the defendants elected not to file any

24 objections to it then and I propose we go through it page by

25 page now and get it into final shape.

3

1          Is there anything either side has on the first page?

2     Not hearing anything.

3          On the second page there are two dates that need to

4     be filled out.  Assuming that the notice is approved today

5     in -- with changes and I will be making some changes -- what

6     is your -- I seem to recall that the plaintiffs asked for

7     leave to publish in a newspaper.

8          MR. WISNIEWSKI:  Correct.

9          THE COURT:  And I granted that application but

10    further ordered that the plaintiffs would bear the cost of

11    publication and Judge Glasser approved that ruling over

12    defendants' objection.

13         MR. WISNIEWSKI:  Correct.

14         THE COURT:  So given that what mechanisms of notice

15    do you intend to follow, Mr. Wisniewski, and how long will it

16    take to accomplish it.  I ask these questions in the context

17    of setting a date for responses that are called for on page 2.

18         MR. WISNIEWSKI:  Your Honor, we -- you approved the

19    publication of the notice in five consecutive weekend editions

20    of a Polish language daily in the New York City area.  If it

21    were to be published not this weekend, but the next weekend,

22    so that would -- only because they have certain deadlines --

23         THE COURT:  Oh, of course.

24         MR. WISNIEWSKI:  -- that they need to receive

25    documents.

4

1          THE COURT:  So it would take us almost to the end of

2  June.

3          MR. WISNIEWSKI:  I would think.

4          THE COURT:  So if we set this date as the first

5  Monday in August it would probably be an appropriate response

6  time?

7          MR. WISNIEWSKI:  I think so.

8          THE COURT:  Mr. Orner, anything to add?

9          MR. ORNER:  I've stated all my objections on the

10 record, Your Honor, and they've been overruled by you and

11 Judge Glasser.  There's nothing additional.  As we go through

12 the notice I have an objection on page 3, but you want to hear

13 the objection of my page 3 or do you want --

14         THE COURT:  No.  Right now we're talking about

15 whether that's a reasonable time frame.

16         MR. ORNER:  Reasonable time frame?  Yes.

17         THE COURT:  Thank you.  Let's find out what exactly

18 the first Monday in August is.  That would be August 2nd, so

19 we'll -- are both dates appropriately set as the same?  I

20 think so.

21         MR. WISNIEWSKI:  Yes.

22         THE COURT:  Okay.  So those dates will be August

23 2nd.  On page 3 I have some comments.  Maybe they will address

24 Mr. Orner's objection; maybe not.  I'm starting five lines of

25 text above the class action under New York state law and I'm

5

1   focused on the sentence that says, "The lawsuit seeks back

2   pay."  There is a reference there to statutorily provided

3   liquidated damages, which by virtue of its placement in the

4   notice could be read to suggest that it applies to everything

5   that follows when as is made clear below to a sophisticated

6   reader but perhaps less clear to an unsophisticated one it

7   does not.  And I would propose that the sentence be amended to

8   read, "The lawsuit seeks back pay and other damages as well as

9   costs and attorney's fees so as not to confuse the reader

10  below."  Is that acceptable to the plaintiff?

11          MR. WISNIEWSKI:  Yes.

12          THE COURT:  So we would take out the word "statutory

13  provided liquidated" and replace it with "and other."

14          The next sentence that I would propose an amendment

15  to is the last sentence of that paragraph which I hesitate to

16  amend because I believe it tracks precisely the case that I

17  suggested counsel look to for guidance.  And yet, upon reading

18  it I found that to me it didn't do justice to the defendant's

19  position in the case and I would propose that it be amended to

20  say "The defendants deny the plaintiff's allegations" as it

21  says now and then I would insert the following, "contend that

22  they paid their employees the wages to which they were

23  entitled by law" and then the rest of the sentence.

24          And just to repeat that for everybody's convenience,

25  I would add the phrase after the expression "plaintiffs'

6

1   allegations" and before "and deny that they are liable" I

2   would add the phrase, "contend that they paid their employees

3   the wages to which they were entitled by law."  And I do

4   understand that correctly to be the defendants' contention,

5   Mr. Orner.

6              MR. ORNER:  Yes, Your Honor.

7              THE COURT:  Is there anything else you had you on

8   page 3, Mr. Orner?

9              MR. ORNER:  Yes, Your Honor.

10             THE COURT:  What is it?

11             MR. ORNER:  It is clear from Judge Glasser's

12  decision to me and even though it's referred to have above is

13  that the only class action claim here is a half an hour

14  between 7:00 a.m. and 7:30 a.m. pay, nothing else.

15             THE COURT:  Why do you say that?  What portion of --

16             MR. ORNER:  That's --

17             THE COURT:  -- Judge Glasser's opinion would you

18  point me to that would support that?

19             MR. ORNER:  I do not have his decision to point Your

20  Honor to, but I would submit that this case has nothing but

21  the half an hour from class action.  The foremens -- the

22  foremens do not constitute a class action.  There are only 12

23  of them and whatever claim they have for pay after 4:00 p.m.,

24  that's not part of a class action.  So I would say -- I would

25  suggest that the position of the class be limited with a half-

7

1   hour claim.

2          THE COURT:  Well --

3          MR. ORNER:  All the evidence in the record indicates

4   that.  There is nothing to the contrary.

5          MR. WISNIEWSKI:  Your Honor, I have Judge Glasser's

6   decision.  Maybe coun -- if I give it to counsel maybe he can

7   point to --

8          THE COURT:  I have it.

9          MR. WISNIEWSKI:  Oh.

10          THE COURT:  I don't think it's really necessary.

11   I'm focused on pages 9 and 15.  On page 9 Judge Glasser wrote

12   "Finally, defendants argue" -- and this is in connection with

13   the class certification discussion -- that because the foremen

14   claim they were not paid for hours at the end of the workday.

15   While the laborers claim only unpaid time in the morning there

16   is insufficient commonality to allow the claims to be brought

17   as a single class."  And then he goes on to write, "This court

18   has previously addressed this issue."  He quotes a portion of

19   a prior decision where he concluded that "any individualized

20   questions regarding the number of hours that a specific

21   employee worked will not predominate over questions of fact

22   and law relevant to all members of the purported class."  And

23   he concludes, "Typicality is satisfied, especially in light of

24   the fact that both foreman and laborer are among the named

25   plaintiffs."  He then goes on on page 15 to adopt a definition

8

1   of the certified class that explicitly states that it includes

2   "All persons employed by defendants as roofers, brick layers,

3   masons, building laborers, drivers, foremen and other manual

4   workers."

5           So not only did Judge Glasser certify a class that

6   includes the foremen but he did so after considering, but

7   finding unpersuasive, the effort by the defendants to remove

8   from the class the foremen because of their claim that they

9   had afternoon responsibilities that the laborers do not claim.

10          MR. ORNER:  Maybe it's semantics, Your Honor.  We're

11  not trying to remove the foremen from the half an hour in the

12  morning.  It's the same class.  We agree they're the same

13  class.  We're talking about the claim of the so-claimed unpaid

14  afternoon hours.

15          THE COURT:  Yes, I understand.

16          MR. ORNER:  The four men are part of the same class

17  as the laborers for the first half an hour in the day.  There

18  is no argument as to that.  But the claims in this

19  litigation -- there are two claims in this litigation, Your

20  Honor, as you well know, the half an hour in the morning and

21  the afternoon time is only claimed by the foremen.

22          THE COURT:  Yes.

23          MR. ORNER:  This is an over broad notice.

24          THE COURT:  I understand your argument.  I believe

25  Judge Glasser has already considered it and rejected it twice

1   and he did so on page 9 of his April 9, 2010, decision which

2   is docket entry 196.  And he did so by quoting an earlier

3   decision that he rendered reported in FRD.  And in both cases

4   he concluded that "The fact that the foremen make a claim as

5   class members for the afternoon hours does not render the

6   class representatives atypical or the class incapable of being

7   certified."  He didn't say, because I will only certify those

8   claims of the foremen relating to the hour in the morning or

9   half-hour in the morning that they claim in common with

10  laborers; he said that these differences in the scope of their

11  claims are insufficient to defeat the typicality requirements

12  that the plaintiff has otherwise met.  So I read it

13  differently and I'm approving the notice in that regard.

14          MR. ORNER:  One final note on that and I -- I'm not

15  rearguing or anything --

16          THE COURT:  That's fine.

17          MR. ORNER:  -- that I said.  Then why is not -- if

18  that is correct why doesn't the composition of the class then

19  indicate the limitations as to the half an hour in the morning

20  and the afternoon pay for everybody, for the foremen, so that

21  when somebody -- somebody is going to pick this newspaper ad,

22  it's over broad right now what composition of the class it is,

23  even though it's noted before on the noted as to the

24  composition of the class itself.  You can have -- I'm going to

25  have any kind of bogus claims from people going from right

10

1   field and the left field while the only two claims in this

2   litigation are the half an hour on the claim in the morning

3   and the afternoon hours by foremen only.

4           THE COURT:  But, Mr. Orner, the definition of the

5   class is taken directly from Judge Glasser's decision defining

6   the class.  The language of the class definition has already

7   been so ordered by Judge Glasser.  The description that

8   precedes the class definition makes clear, as I think in

9   response to your well-taken point and at my instruction and

10  response to you having made that point, that how narrow the

11  claims are and it's the immediately preceding paragraph.

12          So I mean, if you would like I think your point

13  continues to have some merit and I think perhaps we should

14  take those sentences that describe the claims and put them in

15  bold if you think that would be helpful.

16          MR. ORNER:  That would -- and I would start by --

17          THE COURT:  But I'm not going to change the

18  definition of the class that Judge Glasser has --

19          MR. ORNER:  No.  I don't --

20          THE COURT:  -- already rendered.

21          MR. ORNER:  I don't ask that you change the

22  definition of the class.  I'd just like to alert to anybody

23  who is picking up this notice what the claims are within the

24  class.

25          THE COURT:  All right.

11

1        MR. ORNER:  And if you want to put it in bold I'd

2   appreciate it if you -- if the notice stated in bold --

3        THE COURT:  All right.

4        MR. ORNER:  -- is part of the composition class.

5        THE COURT:  That -- well, I think the portion that

6   should be in bold is the preceding language that begins "In

7   particular the lawsuit alleges" up through "from mandatory

8   work performed after 4:00 p.m."  That's the point you want

9   emphasized.  Right, Mr. Orner?

10        MR. ORNER:  Yes, Your Honor.

11        THE COURT:  And I think if that language is bolded

12   you're quite correct that people who claim that they worked 80

13   or 90 hours a week will understand that this case is not one

14   that involves their contention.

15        Mr. Wisniewski, do you wish to be heard before we

16   make that a so-ordered change?

17        MR. WISNIEWSKI:  No.

18        THE COURT:  Okay.

19        MR. WISNIEWSKI:  I mean, except that if someone does

20   claim hours which may add up to substantial hours, I think --

21   no, I don't.  I think it is clear from bolding this that there

22   were certain positions that plaintiffs were taking with

23   respect to certain hours and I think it -- since it does

24   address Mr. Orner's concerns then I have no problem.

25        THE COURT:  Thank you.

1          MR. WISNIEWSKI:  I -- so just to be clear, the only

2  sentence that is bolded on this page is the one that begins

3  with "in particular" --

4          THE COURT:  Yes.

5          MR. WISNIEWSKI:  -- and ends with "after 4:00 p.m."

6          THE COURT:  That was my intention.

7          MR. WISNIEWSKI:  Okay.

8          THE COURT:  Mr. Orner, that's your understanding?

9          MR. ORNER:  Yes, Your Honor.

10          THE COURT:  Excellent.  We're on the -- I was going

11  to say we're on the same page, but that would be a pun in this

12  context and I don't wish to make one.  I'm ready to move to

13  the following page if you are.

14          On the following page I have more of a question than

15  a change with respect to the first paragraph about the

16  attorneys representing plaintiffs being paid on a contingency

17  fee basis.

18          MR. ORNER:  Correct.

19          THE COURT:  Here's my question and forgive me if it

20  reflects a lack of savvy on my part about how this actually

21  works in practice.  My concern when I first read this,

22  Mr. Wisniewski, was that the statement which I think is

23  important to alert class members to is placed in the context

24  of the class action but not the 216(b) discussion and I was

25  thinking about whether it should be moved to apply to both.

13

1       It then occurred to me that the 216(b) plaintiffs

2  will be opt-in plaintiffs, not op-out plaintiffs and from that

3  I inferred that you would be their lawyer as an individual and

4  not only through a representative and that you would have a

5  direct retainer arrangement with them that made this explicit.

6  I don't know if that's an accurate inference or not.

7       MR. WISNIEWSKI:  No, Your Honor.  As part of joining

8  this case they will fill out a consent to joinder form in

9  which they also appoint the main plaintiffs as representatives

10 and the consent amongst others to be questions concerning

11 attorney's fees.

12      I also should like to point out that both in class

13 actions and in collective actions, even though there is a

14 retainer agreement, if I submit my hours I believe the trend

15 nowadays is to award fees based on a contingency -- on a

16 percentage basis and I think it's something you addressed in

17 one of the recent decisions in which you, I think, dealt with

18 my application in a different case.

19      So my understanding is that I will be filing an

20 application and at that time I will expect the Court to award

21 the attorney's fees from the defendants.

22      THE COURT:  Yeah, I understand that.  What I'm

23 concerned about is that when people opt in they understand

24 that if there's a settlement a portion of it will be paid to

25 you and because it may lead them to want to discuss with an

14

1  attorney whether there's an advantage to be represented

2  individually.  Given the placement of the discussion it

3  creates the impression to the reader that this only applies to

4  the Rule 23 claim and not to the 216(b) claim.  That's my

5  point.  I --

6          MR. WISNIEWSKI:  Is there a place you --

7          THE COURT:  Well, there is actually.  I was

8  wondering if we should take that portion, that is to say, the

9  first sentence of the first full paragraph on page 4 from "The

10  attorneys representing plaintiffs up until in favor of all

11  members of the class," and if we should move it to right after

12  your name and address under Section 5 on page 8.  Do you see

13  where I'm saying?

14          MR. WISNIEWSKI:  Are you -- since the -- are you

15  referring to the page 8 of 9, document number one --

16          THE COURT:  Yes, I am.

17          MR. WISNIEWSKI:  And I'm sorry I missed --

18          THE COURT:  I thought maybe we could take that

19  sentence, "The attorneys representing plaintiffs" and put it

20  as the first sentence after your name and address in Section 5

21  of the notice.

22          MR. WISNIEWSKI:  Oh, okay.

23          THE COURT:  Why don't you take a minute, both of

24  you, and see how you think that flows.  That seems to be where

25  we're talking about attorney's fees and costs in

1  Mr. Wisniewski's role in the case and that's why I thought it

2  might fit better over there.

3          MR. WISNIEWSKI:  I have no problem.  I think it does

4  make sense.

5          THE COURT:  Mr. Orner, anything to add about that?

6          MR. ORNER:  Why wouldn't it be the same for the

7  second sentence?

8          THE COURT:  Well --

9          MR. WISNIEWSKI:  Your Honor, I think the second

10  sentence refers to a situation where someone participates in a

11  class action lawsuit and has his own attorney -- his or her

12  own attorney.

13          THE COURT:  He means the second sentence on page 4.

14  You mean, the second sentence on page 8.

15          MR. ORNER:  Yes.

16          THE COURT:  I think.

17          MR. ORNER:  Yes, I mean -- yeah, I meant the second

18  sentence on --

19          MR. WISNIEWSKI:  Oh, okay.

20          MR. ORNER:  -- page --

21          MR. WISNIEWSKI:  I'm sorry.

22          THE COURT:  That's okay.

23          MR. ORNER:  Yes.

24          THE COURT:  Well, I think that's -- I think the

25  concept of a class action is very important to explain in this

16

1  specific discussion of class action whether we should make

2  sure that there's something comparable.

3           MR. WISNIEWSKI:  I'm sorry.  Mister -- Your Honor,

4  do you mean you want to repeat this sentence on page 8 as

5  well?

6           MR. ORNER:  Just didn't mean to repeat it.  Since

7  we're moving the first sentence of the paragraph I think that

8  the second sentence flow of the first sentence and both

9  sentences should be on page 8.

10          THE COURT:  No, I'm not going to do that because I

11 think that the opt-in notice will advise the 216(b)

12 plaintiffs.  In fact, it does.  The consent to become a party

13 plaintiff form has that language and I think, Mr. Orner, that

14 it dilutes the important message that by joining a class you

15 are delegating responsibility to class representatives to act

16 on your behalf and you shouldn't do it unless you're prepared

17 to do that.

18          MR. ORNER:  I am not talking about --

19          THE COURT:  To move it.

20          MR. ORNER:  -- if it remain a class -- I'm sorry.  I

21 didn't mean to interrupt.  I'm sorry.

22          THE COURT:  No, that's all right.  Go ahead.

23          MR. ORNER:  I didn't mean the sentence where if you

24 remember a class member.  I meant --

25          THE COURT:  Oh, you said the next sentence.

1          MR. ORNER:  "If there is a recovery" --

2          THE COURT:  Oh, yes.  Those two sentences should be

3    moved together.

4          MR. ORNER:  That's what --

5          THE COURT:  I'm sorry.

6          MR. ORNER:  Yes.

7          THE COURT:  You're absolutely right.  I treat -- did

8    I say one sentence?

9          MR. ORNER:  Yes.  You said once in the beginning.

10         THE COURT:  I meant the first two sentences.  I

11   apologize.  I had it circled as one sentence and I just didn't

12   see that it was two.

13         MR. ORNER:  Yes.

14         THE COURT:  Thank you for clarifying, Mr. Orner.

15   Mr. Wisniewski?

16         MR. WISNIEWSKI:  Yeah, yeah.  I -- that's where I

17   intended to move.

18         THE COURT:  Yeah.

19         MR. WISNIEWSKI:  I didn't realize these were two

20   sentences --

21         THE COURT:  I didn't either.  You and I made the

22   same mistake and I'm sure you made it because I led you down

23   the path.

24         In the next -- then I think we can move on.  In the

25   next paragraph I -- this is a pure grammatical or style issue.

1  I found the expression "If you do not wish to be excluded from

2  the class" a little bit confusing and I thought we might

3  change that and explain how important it is that they act in

4  order not to waive their right to liquidated damages, that we

5  say "Unless you exclude yourself from the class" --

6          MR. WISNIEWSKI:  I'm sorry, but where are we?

7          THE COURT:  Oh.  I'm back on page 4.  I'm in the

8  next paragraph after the one we were just talking about, the

9  one that begins "New York State law" --

10         MR. WISNIEWSKI:  I see.  Okay.

11         THE COURT:  -- and I am troubled by the phrase "If

12  you do not wish to be excluded from the class" both because

13  it's awkward and because it's not exactly accurate because

14  they may wish -- not wish to be excluded from the class but if

15  they don't do something they will be part of the class.  I

16  would rather it say, if we all agree, "Unless you exclude

17  yourself from the class you will have waived these liquidated

18  damages under New York law" and there is a typographical error

19  in that "liquidates."  Should be "liquidated."  Is that change

20  acceptable to the plaintiffs?

21         MR. WISNIEWSKI:  Yes.

22         THE COURT:  To the defendants?

23         MR. ORNER:  No objection, Your Honor.

24         THE COURT:  Then we need a date for exclusion.  I

25  think -- is there any reason it shouldn't be the same August

19

1    2nd date?

2            MR. ORNER:  Your Honor, I need more time to work on

3    that.

4            THE COURT:  More time to work on what?

5            MR. ORNER:  On possible exclusions.

6            THE COURT:  You're not allowed to exclude.

7            MR. ORNER:  I'm allowed to contact people unless

8    there's an order to show cause, which you haven't ruled on

9    yet.

10           THE COURT:  You are not to contact people about

11   excluding themselves from the class.  The Court controls the

12   notice.  You are not to contact people in connection with

13   excluding themselves from the class.  Now I've ruled.

14           MR. ORNER:  Your Honor --

15           THE COURT:  August 2, 2010 for exclusions.

16           MR. ORNER:  Will Your Honor rule -- have a written

17   decision on the order *sua sponte* --

18           THE COURT:  I'll put it right in the minute entries.

19           MR. ORNER:  *Sua spon* -- you haven't *sua sponte* order

20   to show cause and I have opposition.  We haven't ruled since

21   October.

22           THE COURT:  I'm ruling now.

23           MR. ORNER:  Just like that.

24           THE COURT:  Just like that.  I explained the reasons

25   for it.  Judge Glasser explained the reasons for it.  I'm

20

1    stunned that you could think after those orders that you have

2    the right to continue contacting the members of the class

3    about excluding.

4             MR. ORNER:  Judge Glasser did not say anything

5    negatively --

6             THE COURT:  Fine.

7             MR. ORNER:  -- about contacting any class members

8    and getting the affidavits.

9             THE COURT:  Okay.

10            MR. ORNER:  Didn't say anything negatively.  If you

11   can point it out in his opinion I would appreciate it.

12            THE COURT:  Well, maybe we'll take it up when we're

13   done.  Let's go to page 5.

14            MR. ORNER:  Can we have a written decision on that

15   so I can file my objection?

16            THE COURT:  Absolutely.  Your exclusion request must

17   be postmarked on or before -- and I guess August 2nd is the

18   appropriate date for that as well.  Right?

19            MR. WISNIEWSKI:  Yes, Your Honor.

20            THE COURT:  On page 6 we have a date August 2nd.  If

21   anybody has objections to the terms of the notice, let me --

22            MR. ORNER:  I would like to have it September 2nd,

23   Your Honor.

24            THE COURT:  Denied.  I think 30 days is ample time.

25   Not to mention that it's not only 30 days from -- it's not 30

21

1   days.  August 2nd is almost 90 days.  The additional time is

2   only to allow the publication of the notice.  Your request for

3   additional time is to try to talk people out of joining the

4   class and if you had such a right you would have had 90 days

5   to exercise it.

6            At the bottom of page 6 I'm concerned about the

7   phrase "such determination" because there is no reference back

8   to the word "determination" and it's sort of a legal

9   expression and I would like to propose that the sentence be

10  amended to "any decision about whether your claim is valid or

11  not must be made by the Court."  Would you like that repeated,

12  Mr. Wisniewski?

13           MR. WISNIEWSKI:  I'll read it because I noted it.

14  "Any decision whether your" --

15           THE COURT:  "About whether your claim is valid or

16  not."  Is that acceptable to you?

17           MR. WISNIEWSKI:  Yes.

18           THE COURT:  Mr. Orner?

19           MR. ORNER:  No, it's not but it doesn't make a

20  difference, does it?

21           THE COURT:  Mr. Orner, what's objectionable to you

22  about it?

23           MR. ORNER:  Your Honor, you're on page 6?

24           THE COURT:  Yes, sir.

25           MR. ORNER:  The collective action.  The collective

22

1   action does not give limitations to class action as to the

2   times between the 7:00, 7:30, and the after 4:00 p.m.

3            THE COURT:  Neither does the class definition.  That

4   language appears before the definition of either the class

5   action or the collective action and by the organization of the

6   document applies to both.

7            MR. ORNER:  It's confusing to me, Your Honor.  I

8   don't see it.

9            THE COURT:  Okay.  Let's not --

10           MR. ORNER:  If somebody can read the papers -- I'm a

11  lawyer and it's confusing to me.  I can't imagine what it's

12  going to be to a Polish worker.

13           THE COURT:  It's not confusing at all to me.  It's

14  the language your -- that we just doled [ph.] is in the

15  heading "Description of the lawsuit" which precedes the two

16  discussions of the class action and the certifications --

17  certified fair labor standards action.

18           All right.  Let's move forward from that.  Did

19  you -- my question to you was what your objection was to the

20  change I proposed to the bottom of page 6.  Do you have one or

21  not?

22           MR. ORNER:  At the bottom of page 6.  What

23  paragraph?

24           THE COURT:  I just suggested at the bottom of page 6

25  that the paragraph that begins, "This notice does not mean

1 that you have a valid claim or that you are entitled to any

2 monetary recovery." I would like to see the words "any such

3 determination" changed to "any decision about whether your

4 claim is valid or not." Do you have an objection?

5        MR. ORNER: "Any such determination"? Any such

6 court determination. I still -- I'm sorry. I'm not following

7 you.

8        THE COURT: I would like to change the sentence,

9 "Any such determination must still be made by the court" --

10       MR. ORNER: Yes.

11       THE COURT: -- to the sentence, "Any decision about

12 whether your claim is valid or not must still be made by the

13 court."

14       MR. ORNER: That's fine, Your Honor.

15       THE COURT: Thank you. Is there any reason we

16 shouldn't use the same August 2nd date in paragraph (c) on

17 page 7? Hearing none, that's what we'll do. Or on the --

18 "even if defendants contacted you" paragraph on page 8, on

19 that page, the last sentence of the bolded and underlined

20 language, Mr. Wisniewski, it says, "The Court has determined

21 that any such affidavit has no legal effect on whether you can

22 join this case." I guess that's technically true, but it is

23 arguably a little bit of an overstatement in the sense that we

24 don't know if these -- I don't want to commit to the fact that

25 these affidavits can have no conceivable ramification at

24

1  trial, such as use for cross-examination, and I was going to

2  suggest that we alter that in that light to say, "The Court

3  has determined that any such affidavit does not preclude you

4  from joining this case."  I think it means the same thing, but

5  it says less.

6          MR. WISNIEWSKI:  Yes.

7          THE COURT:  Mr. Orner, do you have any comment on

8  that particular proposal?

9          MR. ORNER:  Not on the particular proposal, Your

10 Honor.  Obviously, the proposal bears in mind that we could

11 use those affidavits for cross-examination.

12         THE COURT:  I didn't say you could; I said that the

13 original language --

14         MR. ORNER:  But the --

15         THE COURT:  -- says you can't and I don't think

16 that's been decided yet.

17         I believe that that is all I have.  Do you have

18 anything else, Mr. Wisniewski?

19         MR. WISNIEWSKI:  No, Your Honor.

20         THE COURT:  Is there anything else I should address

21 today or should we just go forward with the notice and see

22 what happens?

23         MR. WISNIEWSKI:  Your Honor, two things: Firstly, we

24 would request that the defendants provide not only the hard

25 copy employee list but also the electronic version.  I know

25

1    that they print this list from a -- from some electronic

2    database and it would just assist us or save time for us to

3    print out envelopes.

4              THE COURT:  Mr. Orner, is there an objection to

5    that?

6              MR. ORNER:  Oh, yeah.  There's a big objection.

7              THE COURT:  You understand that if Mr. Wisniewski

8    incurs this cost and he prevails in the case he'll seek to

9    recover it from the defendants and if the cost is less

10   there'll be less to recover?

11             MR. ORNER:  I understand that, Your Honor.

12             THE COURT:  How many plaintiffs are we talking

13   about, Mr. Wisniewski?

14             MR. WISNIEWSKI:  We believe there are about 80.  At

15   least 80.

16             THE COURT:  I don't think that's so big that I care

17   to embroil myself in this dispute.  Eighty is a manageable

18   number by hard copy.  What's next?  Typing 80 labels isn't

19   overwhelming.  That's what we're talking about, right, address

20   labels --

21             MR. WISNIEWSKI:  Right.

22             THE COURT:  -- on letters?  You can type in 80 names

23   and addresses in an hour or two.

24             MR. WISNIEWSKI:  The defendants' rebuttal expert

25   requested a change of date of the deposition from May the

1  11th, which is within the discovery time, concerning the

2  counterclaims to May the 18th.  We have no problem --

3          MR. ORNER:  17th.  I thought it was the 17th.

4          MR. WISNIEWSKI:  17th.  Fine.  I apologize.

5          MR. ORNER:  17th.

6          MR. WISNIEWSKI:  The 17th.  We have no problem if

7  you -- but you just need to extend the time.

8          THE COURT:  Any objection, Mr. Orner?

9          MR. ORNER:  No.

10          THE COURT:  So ordered.

11          MR. WISNIEWSKI:  Your Honor, since we intend to send

12  the transcript to the rebuttal expert and under the rules he

13  has 30 days to review it could you please take into account

14  that in your discovery deadline?

15          THE COURT:  Yes, I'll -- discovery is reopened for

16  the sole purpose of plaintiffs' deposition of the defendants'

17  expert, Mister?

18          MR. WISNIEWSKI:  I forget.

19          MR. ORNER:  Friedman [Ph.].  Harold Friedman.

20          THE COURT:  Mr. Friedman to be held on May 17th or

21  shortly thereafter as counsel are able, plus 45 days for the

22  sole purpose of obtaining a transcript and its signature by

23  the witness.

24          MR. WISNIEWSKI:  Thank you.

25          THE COURT:  Okay.

27

1          MR. ORNER:  I'd just like to alert the Court that

2   I'm going to use my own stenographer for that deposition.

3          THE COURT:  When you say your own you mean you're

4   bringing a second court reporter at your own expense?

5          MR. ORNER:  Correct, correct.

6          THE COURT:  All right.  I don't believe that that

7   should work any prejudice to the plaintiff, nor do I believe

8   that that transcript will have any practical benefit, but

9   you're certainly entitled if you'd like to have somebody else

10  there taking it down to do it.

11         MR. ORNER:  Thank you.

12         THE COURT:  You can even make a tape-recording of it

13  if you like.  Might be less expensive.

14         MR. ORNER:  I'll take a stenographer, Your Honor.

15         THE COURT:  Is there anything either side would like

16  to raise?  Maybe we should set a control date in early

17  September after all of the opt-outs, if any, and consents to

18  join have been filed.

19         MR. WISNIEWSKI:  Your Honor, would it not make sense

20  to then engage now in class discovery in terms of documents

21  and so on and so forth from the defendants?  That would at

22  least -- we could use up the waiting time.

23         THE COURT:  Yes.  I understand your point.

24  Mr. Orner?

25         MR. ORNER:  I object, Your Honor.  I don't know --

28

1          THE COURT:  Basis.

2          MR. ORNER:  I don't know who's going to respond to

3    the class action yet, who's going to opt out, who's going to

4    opt in.  I think we should wait to see what's going to happen

5    with the notices.  It's going to be an excess legal time span.

6    Could be wasted.

7          MR. WISNIEWSKI:  I think counsel seems a little

8    confused.  The class has been certified, so the only persons

9    who can opt out are people -- the only persons who can take an

10   action with respect to the class are those who decide to opt

11   out.  And in that case, the fact that we receive documents for

12   people who later decide to opt out is not much of a -- how

13   shall I say -- prejudice to the defendants, whilst in the

14   meantime we can progress.  This case has taken a long time --

15         THE COURT:  Yes.  The reason --

16         MR. WISNIEWSKI:  -- given the number of --

17         THE COURT:  -- Mr. Orner's point that if you

18   propound demands for documents that are individualized to the

19   different AD individuals on the list, for example --

20         MR. WISNIEWSKI:  Yes.

21         THE COURT:  -- and they are produced or they go

22   through the effort of producing them and 30 of them opt out

23   they will have had to make production as to 50 class members

24   instead of eight.

25         MR. WISNIEWSKI:  Your Honor, then it will be a

29

1  statistical miracle if 40 percent of the class opt out.  And I

2  will then have serious questions as to how that miracle has

3  occurred.

4          MR. ORNER:  No, it's not a miracle because we've got

5  41 affidavits of people already said they don't want to be

6  part of the class.  It's not a miracle.  It's not a miracle.

7  And there is also confidential information, Social Security

8  numbers, and all that information of people who are going to

9  be disclosed who might not want to be disclosed.

10         MR. WISNIEWSKI:  Your Honor, I am obligated under

11 the court rules to keep such confidential information even

12 without the confidentiality order.

13         THE COURT:  Okay.  If there are demands that are

14 generic demands applicable to all plaintiffs that would have

15 to be answered the same way whether we have ten opt-outs, 20

16 opt-outs or 50 opt-outs you can propound them.  If there are

17 individual specific demands, we'll await the opt-out period.

18         MR. WISNIEWSKI:  Thank you.

19         THE COURT:  Thank you.

20         MR. ORNER:  Thank you, Your Honor.

21         THE COURT:  Wait.  I'm setting a control date.

22         MR. ORNER:  Oh.

23         THE COURT:  August 12th, 4:00 p.m.

24         MR. WISNIEWSKI:  Your Honor, I would like to get

25 a --

1          MR. ORNER:  I'm sorry, but that's in the middle of

2   my vacation time, Your Honor.

3          THE COURT:  When are you away?

4          MR. ORNER:  That's the last part of August.  That's

5   my vacation.

6          THE COURT:  It's the first half of August.  August

7   12th.

8          MR. ORNER:  Well, August 12th -- I'm getting -- the

9   last couple days I'm getting here for my vacation, Your Honor.

10  I've already got my schedule booked.

11         THE COURT:  August 10th.  10th at 4:00 p.m.  How --

12  is that better?

13         MR. ORNER:  August 10th.  Okay.

14         THE COURT:  I'm sorry.  Mr. Wisniewski, go ahead.

15         MR. WISNIEWSKI:  Your Honor, I wish to get a

16  clarification whether your order covers not only counsel but

17  also the defendants and I'm referring to the --

18         THE COURT:  Yes.

19         MR. WISNIEWSKI:  -- contacting of --

20         THE COURT:  There's to be no discussion about opting

21  out of the class.  The notice is carefully tailored to control

22  the communication with absent class members.  To encourage

23  people to opt out of the class is inappropriate in my

24  judgment, contrary to my order, and could result in further

25  proceedings.  I understand you have to interact with people at

1 work, but you're not to talk to them about the class action.

2 That's why we have these notices.  That's exactly what Judge

3 Glasser discussed.  And I will, Mr. Orner, as you requested,

4 point you to the language where he does so.

5    MR. ORNER:  Your Honor, this is a *sua sponte* order

6 to show cause --

7    THE COURT:  It is not a sua --

8    MR. ORNER:  Yes.  Yes, it was a *sua sponte* order to

9 show cause.  It was a *sua sponte*.  That's a fact, Your Honor.

10 There was no obligation from the plaintiffs.  It was *sua*

11 *sponte* order to show cause and to deny my clients the right to

12 talk to their own ex-employees about the class action deprives

13 their Constitutional rights.  There is no precedent for it,

14 Your Honor.  There is no precedent as I cited on my opposition

15 to the *sua sponte* order to show cause.  Your decision stands

16 all by itself without any support.

17    THE COURT:  Thank you.  I refer you to the portion

18 of Judge Glasser's opinion that I had in mind appears on pages

19 5 and 6.

20    MR. ORNER:  Your Honor, your --

21    THE COURT:  Docket entry 196.

22    MR. ORNER:  Your Honor, you're going to allow the

23 plaintiffs to talk to their -- to the potential class in

24 actions?

25    THE COURT:  No.  Why -- I do not expect

1  Mr. Wisniewski to be contacting the class members or the

2  plaintiffs to be discussing joinder or nonjoinder of the class

3  with the plaintiffs --

4          MR. ORNER:  Shouldn't the order apply then both

5  to --

6          THE COURT:  Fine.

7          MR. ORNER:  -- plaintiffs and defendants?

8          THE COURT:  Fine.  Mr. Wisniewski, is there any

9  objection to that?

10          MR. WISNIEWSKI:  Your Honor, in a way that --

11  technically I represent the class and they are my clients.

12  It's hard for me to be prevented from representing people.

13          THE COURT:  You cannot initiate a conversation with

14  absent class members about that -- about encouraging them to

15  join the class until they have contacted you or have consented

16  to opt into the certification.  How's that?

17          MR. WISNIEWSKI:  During that --

18          THE COURT:  Yeah.  Between now and August 2nd.

19          MR. WISNIEWSKI:  Until August the 2nd.  Okay.

20          THE COURT:  That's all.

21          MR. WISNIEWSKI:  No problem.

22          MR. ORNER:  And the plaintiffs themselves cannot

23  have any conversations until the --

24          THE COURT:  That to encourage --

25          MR. ORNER:  -- potential --

33

1          THE COURT:   -- or discourage joinder of the class.

2   I will say all counsel and parties are not to engage in

3   discussions with absent class members about joining or not

4   joining the class unless that conversation is initiated by the

5   absent class member or occurs after the absent class member

6   files a consent to join the collective action.

7          MR. ORNER:   Thank you, Your Honor.   Are we finished?

8          THE COURT:   Yes.

9          MR. ORNER:   Thank you.

10          (Proceedings ended at 4:48 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

34

1          I certify that the foregoing is a court transcript from

2     an electronic sound recording of the proceedings in the above-

3     entitled matter.

4

5

6     _____

7                                   Ruth Ann Hager

8     Dated:   May 6, 2010