UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
MIROSLAW GORTAT, et al.,

              Plaintiffs,

   -against-

CAPALA BROTHERS, INC., et al.,

             Defendants.
-------------------------------------------------------x

MEMORANDUM
AND ORDER
07-CV-3629(ILG)(SMG)

*GOLD, S., United States Magistrate Judge*:

## Introduction

On October 16, 2009, I issued a Report recommending that a Rule 23 class be certified and a Memorandum and Order that a collective action pursuant to 29 U.S.C. § 216(b) be authorized. ("Order & Report"), Docket Entry 184. Senior United States District Judge I. Leo Glasser affirmed my order and adopted my recommendation by Memorandum and Order on April 9, 2010. *See generally Gortat v. Capala Bros., Inc.*, 2010 WL 1423018 (E.D.N.Y. Apr. 9, 2010).

On May 5, 2010, after Judge Glasser's ruling was issued, I held a conference. The purpose of the conference was to review plaintiffs' proposed notice directed to class members and those eligible to join in the collective action pursuant to the Fair Labor Standards Act. The conference also addressed the propriety of defendants' and defense counsel's contacts with the now certified class.

The court was first alerted to defendants' contacts with class members when defendants, in support of their opposition to class certification, submitted a number of affidavits from putative class members expressing a lack of interest in participating in this action. I was so concerned about these contacts that I directed defendants to show cause, in writing, by October

30, 2009, why an Order should not be entered limiting defendants' and defense counsel's contacts with putative class members. Docket Entry 184, at 23. Defendants filed a Memorandum in response on October 29, 2009. Docket Entry 186. I reserved decision pending Judge Glasser's ruling on defendants' appeal and objections to my Order & Report.

The issue of defendants' and defense counsel's contacts with class members was again raised during the conference on May 5, 2010. One of the topics discussed at the conference was the date by which class members seeking to opt out of the class would be required to submit a written request to be excluded. When a date of August 2, 2010 was proposed, counsel for defendants objected on the ground that this left him with insufficient time to "work on . . . possible exclusions." Tr. of 5/5/10, Docket Entry 199, at 18-19. I understood counsel's statement to mean that he intended to contact class members and attempt to persuade them to opt out of the class action. I reacted by expressing concern about whether such efforts by defendants' counsel would be proper. Defense counsel responded by asserting his belief that he is "allowed" to communicate with class members about opting out of the class action absent an Order to the contrary. Tr. of 5/5/10 at 19.

I stated during the conference that I would issue an Order limiting such contacts and indicated the terms the Order would include. I now have the benefit of written submissions by the parties following the conference, see Def. 5/5/10 Ltr., Docket Entry 198; Pl. 5/6/10 Ltr., Docket Entry 200, as well as my own research. For the reasons stated below, I now issue an Order with somewhat different terms than indicated during the conference.

## Discussion

As discussed in my Order & Report, a court, even before certification, may regulate communications by parties and their counsel with putative class members. *See* Docket Entry 184, at 9-10, 21-23. *See also In re Initial Pub. Offering Sec. Litig.*, 499 F. Supp. 2d 415, 418 n.13 (S.D.N.Y. 2007) (citing *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 252-53 (S.D.N.Y. 2005)). Indeed, in *Gulf Oil Company v. Bernard*, the Supreme Court recognized that, "[b]ecause of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." 452 U.S. 89, 100 (1981). *See also Erhardt v. Prudential Group Inc.*, 629 F.2d 843, 846 (2d Cir. 1980) ("It is the responsibility of the court . . . to safeguard [class members] from unauthorized, misleading communications from the parties or their counsel."). The *Gulf Oil* Court also specified that any order limiting communications "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." 452 U.S. at 101.

Upon class certification, the rules governing communications with class members are heightened because they "apply as though each class member is a client of the class counsel." MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.33 (2004) (citing *In re Sch. Asbestos Litig.*, 842 F.2d 671, 679-83 (3d Cir. 1988) and *Erhardt*, 629 F.2d at 845). In other words, class certification gives rise to an attorney-client relationship between potential class members and class counsel. *Tedesco v. Mishkin*, 629 F. Supp. 1474, 1483 (S.D.N.Y. 1986). A number of courts have held that this relationship arises once the class has been certified and not only at the end of the opt-out phase. *See, e.g., Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1207

n.28 (11th Cir. 1985) (finding that "[a]t a minimum, class counsel represents all class members as soon as a class is certified . . . if not sooner") (citing *Van Gemert v. Boeing Co.*, 590 F.2d 433, 440 n.15 (2d Cir. 1978) (internal citations omitted)); *Fulco v. Continental Cablevision, Inc.,* 789 F. Supp. 45, 47 (D. Mass. 1992) (citing cases and finding that the relationship arises upon an order certifying a class); *Tedesco*, 629 F. Supp. at 1483 (noting that the relationship arises "at least for the limited purpose of aiding prospective class members in deciding whether or not to join in the class action" (internal quotation marks omitted)). Therefore, upon certification, defense counsel is bound by New York Rule of Professional Conduct 4.2(a), which provides that "a lawyer shall not communicate or cause another to communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the other lawyer or is authorized to do so by law." *See Kleiner*, 751 F.2d at 1206-07 (holding that "defense counsel had an ethical duty to refrain from discussing the litigation with members of the class as of the date of class certification, if not sooner"); *Fulco*, 789 F. Supp at 47 (finding that, after certification, "defendants' counsel must treat the unnamed class members as 'represented by' the class counsel for purposes of DR 7-104"); *Tedesco*, 629 F. Supp. at 1483 (finding that defense counsel violated DR 7-104(A) by communicating with class members after certification); *Resnick v. Am. Dental Ass'n*, 95 F.R.D. 372, 376-77 (N.D. Ill. 1982) (finding that DR 7-104 applies once the class has been certified).[1]

Where defense counsel has violated this ethical rule and solicited or advised clients to solicit class members to opt out, courts have imposed a variety of remedies, ranging from requiring a new opt-out phase to assessing attorney's fees or imposing punitive fines. *See, e.g.,*

---

[1] Rule 4.2 of the New York Rules of Professional Conduct, Communication with Person Represented by Counsel, is substantively the same as its predecessor, Disciplinary Rule 7-104 ("DR 7-104") of the New York Code of Professional Responsibility.

*Kleiner*, 751 F.2d at 1207-10 (affirming district court's disqualification of lead defense counsel and issuance of a $50,000 fine where defense counsel violated ethical rule and court order limiting communications with class members by *advising defendants* to solicit members to opt out of the class action); *Tedesco*, 629 F. Supp. at 1487 (ordering attorney who circulated misleading communications to class members to mail a letter and a copy of the court's order to class members to clarify any misimpressions, to reimburse plaintiffs' counsel for the cost of mailing the notice, to pay plaintiffs' attorney's fees incurred in uncovering the misleading communications, and to pay a punitive sanction in the amount of $10,000).

As noted in my Order & Report, defendants submitted forty-one affidavits from putative class members purportedly disclaiming any interest in joining this action. In my decision, I cited several of the cases discussed above, expressed my concern about the propriety of defense counsel's unsupervised communications with putative class members, and recommended to Judge Glasser that the affidavits be disregarded on the ground that, among other things, they were procured in violation of the policies underlying Rule 23. Docket Entry 184, at 8-10. Judge Glasser agreed, noting that "[i]t is for this Court, not the defendants, to designate the appropriate means by which class members may opt out of a certified class action." *Gortat*, 2010 WL 1423018, at *3. He further held that it is within the court's "broad supervisory responsibility over class actions" to disregard such affidavits, particularly when giving effect to them would undermine the policies behind the rules governing joinder of parties and class actions. *Id*.

Despite the concerns raised by Judge Glasser and the undersigned, defense counsel contends that, even after certification, he is "allowed" to contact class members and attempt to dissuade them from participating in this action absent an Order preventing it. In fact, defense

5

counsel indicated that he plans an effort to "work" on "exclusions" so substantial that ninety days is an insufficient amount of time in which to accomplish it. For the reasons discussed above and in my Order & Report, such contacts are prohibited by Rule 23 and by Rule of Professional Conduct 4.2(a). Accordingly, defense counsel is directed not to communicate or cause his clients to communicate with class members on any matter related to this litigation unless prior consent is obtained by the Court or by class counsel.[2] Although it should be clear and obvious, I stress that this Order prohibits defense counsel from attempting to persuade class members directly or through his clients to opt out of the class action. Nothing in this Order prohibits defendants from communicating with class members on matters unrelated to this litigation.

I now turn to the written and oral objections raised by defendants. In objecting to my original proposed Order, defendants raised the following grounds: 1) a Magistrate Judge does not have the authority under 28 U.S.C. § 636 to issue such an Order; 2) the Order is overbroad and violates defendants' First Amendment rights; and 3) the Order violates defendants' due process rights in the absence of an evidentiary hearing demonstrating coercion.[3] *See generally* Docket Entry 186.

First, while the Order at issue here could arguably be viewed as an injunction and thus beyond the scope of my authority to enter as a Magistrate Judge, I conclude that it is more

---

[2] I note that plaintiffs' counsel does not "technically" represent the individuals who have not yet opted in to the FLSA collective action. This distinction, however, is irrelevant in light of the fact that the class definition covers anyone who would be eligible to join the collective action. *See Gortat*, 2010 WL 1423018, at *8 (class definition). My Order, therefore, applies to communications with any individual covered by the class definition and any individual who may opt in to the FLSA collective action.

[3] Defendants also objected to my Order on the ground that it prohibited them from negotiating a settlement with putative class members in violation of Second Circuit precedent allowing for settlements prior to class certification. Docket Entry 186, at 13-14. My Order contemplated no such restrictions. Moreover, a class has now been certified.

properly characterized a case management order and that its entry is therefore well within my authority.[4] *See, e.g.,* FED. R. CIV. P. 23(d); *Kleiner*, 751 F.2d at 1201 (finding that the district court's orders limiting defendants' contacts with class members were properly "characterized . . . as directives to counsel in their capacity as officers of the court, pursuant to the court's inherent power to manage its cases" as opposed to injunctions pursuant to Federal Rule of Civil Procedure 65); MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.33 n.917 (2004) (citing cases and noting that an order of curative notice under Rule 23(d)(2) is considered "an exercise of the court's case-management authority" and does not require issuance of a formal injunction). *See also E.E.O.C. v. Morgan Stanley & Co.*, 206 F. Supp. 2d 559, 563 (S.D.N.Y. 2002) (Order of Magistrate Judge Ellis regulating communications between defendant and potential class members). I therefore enter my ruling as an Order rather than as a Report and Recommendation.

Second, as to defendants' objection that the Order violates their First Amendment rights, this argument is rejected with respect to defense counsel now that the class has been certified and Rule 4.2(a) is in force. As indicated above, and as recognized by the Supreme Court, "the rules of ethics properly impose restraints on some forms of expression." *Gulf Oil*, 452 U.S. at 104 n.21 (citing ABA Code of Professional Responsibility, DR 7-104 (1980)). *See also Kleiner*, 751 F.2d at 1206-07 (finding that an order restricting defense counsel's communications with class members regarding the litigation did not violate counsel's First Amendment rights "[s]ince defense counsel had an ethical duty to refrain from discussing the litigation with members of the class as of the date of class certification, if not sooner").

---

[4] Defendants also make much of the fact that it is beyond my authority to issue a "*sua sponte*" Order. Defendants, however, point to no restrictions on the authority of the court to issue Orders to Show Cause why counsel should not conduct himself in accordance with applicable rules. Moreover, the Supreme Court has recognized a court's "duty and . . . broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil*, 452 U.S. at 100.

The court, however, is sensitive to the First Amendment rights of defendants and their practical need to communicate with the class members they presently employ. Given that Rule 4.2 applies only to lawyers, and the fact that there is insufficient evidence of interference on the part of defendants, I decline to impose the Order on defendants at this time.

I do, however, remain concerned about the manner in which the affidavits were obtained, and my concern is heightened by defense counsel's brazen assertion in court that, in the absence of an Order, nothing prohibits him from obtaining exclusions. I therefore direct defense counsel's attention to cases where improper communications by defendants or other objectors to the class action have led courts to impose curative measures as well as other sanctions. *See, e.g., Georgine v. Amchem Prod. Inc.*, 160 F.R.D. 478, 501-02, 518-19 (E.D. Pa. 1995) (invalidating opt outs and ordering new notice and opt-out phase where objectors to class settlement sent misleading communications to class members urging them to opt out); *Tedesco*, 629 F. Supp. at 1485-86 (using the court's "inherent power to levy monetary sanctions against a party" to impose on defendant, among other things, plaintiffs' attorney's fees and costs and a punitive sanction in the amount of $10,000 for sending misleading communications to class members); *Impervious Paint Industries, Inc. v. Ashland Oil*, 508 F. Supp. 720, 722-24 (W.D. Ky. 1981) (ordering corrective notice and a new opt-out period where defendant contacted class members to encourage them to opt out). For example, the district court in *Kleiner* found that defendants, acting upon the advice of their counsel, engaged in a coercive campaign to solicit exclusion requests in violation of court orders and Rule 23. 102 F.R.D. 754, 767 (N.D. Ga. 1983). As a result, the court held that all exclusions would be voidable at the request of the individuals who excluded themselves. In addition, the court used "its inherent power to levy . . . a sanction

against a party" and charged defendants and their counsel with plaintiffs' costs in preparing and mailing the notice and other attorney's fees.[5] *Id.* at 774-76. *See also Kleiner*, 751 F.2d at 1206 (finding that the district court's order regulating defendants' contacts with class members did not violate the First Amendment where defendants' telephone campaign to solicit exclusions was coercive and abusive).

I urge defense counsel to alert his clients to the facts and holdings in these cases. Moreover, I make this decision not to expand my Order to defendants without prejudice to plaintiffs' right to seek an evidentiary hearing and a more restrictive ruling if plaintiffs have a good faith basis to believe that improper conduct has taken place. In the event that such a hearing is held, defendants will be presumed to be familiar with the facts and holdings I have cited in this Memorandum and Order.

Third, defendants contend that the issuance of this Order deprives them of due process because there has been no evidentiary hearing on the issue of whether they coerced putative class members to sign the affidavits.[6] My Order, however, is not based on a finding that defendants coerced class members to sign the affidavits, but rather on the ground that the affidavits evinced a *serious potential* for coercion. *See In re Sch. Asbestos Litig.*, 842 F.2d at 683 ("Rule 23(d) does not . . . require a finding of *actual* harm; it authorizes the imposition of a restricting order to guard against the '*likelihood* of serious abuses.'" (quoting *Gulf Oil*, 452 U.S. at 104)); *Bielski v. Royal Plumbing & Heating Corp.*, No. 06-CV-6542 (E.D.N.Y.) (Order dated 12/11/2009

---

[5] By the time the district court's decision was appealed, the case had settled. The settlement encompassed the district court's order with respect to the voidable exclusions and attorney's fees. *Kleiner*, 751 F.2d at 1199.

[6] In fact, defendants contend that the issuance of the Order to Show Cause deprived them of due process. Since the Order to Show Cause did not limit defendants in any way or impose upon them any obligation other than to submit a response, this argument is entirely without merit.

prohibiting defense counsel from initiating *ex parte* communications with class members, and noting that, "[a]lthough the Court certainly trusts that defendants' counsel would not seek to coerce or intimidate class members during the opt-out period, the possibility for implicit coercion, particularly since many of the plaintiffs are current employees of the defendant company, is too great."). More importantly, any need for an evidentiary hearing was obviated by defense counsel's statements on May 5, 2010, asserting his view that he is allowed to contact class members to obtain exclusions unless prohibited by an Order of the Court. Tr. of 5/5/10 at 18-19. In light of defense counsel's stated intention to "work on . . . exclusions," there is no dispute of fact and therefore no need for an evidentiary hearing prior to entry of an Order.[7]

Defendants raised additional issues during the May 5, 2010 conference and in a letter following the conference. First, defendants contend that any restrictions on communications with class members should apply with equal force to plaintiffs' counsel's communications with class members. Tr. of 5/5/10 at 31-32. For the reasons discussed above, and articulated in plaintiffs' counsel's letter, Pl. 5/6/10 Ltr., this request is denied. Plaintiffs' counsel represents the class members and may therefore communicate with members about matters relating to the litigation. However, I note that during the opt-out phase, the contours of the attorney-client relationship are not fully formed, and that contacts by plaintiffs' counsel may be limited by the

---

[7] The impropriety of defense counsel's stated intention is starkly illustrated by the fact that cases have held that even less prejudicial communications are prohibited by the ethical rules. *Cf. In re Nassau County Strip Search Cases*, 2009 WL 1456011, at *1-2 (E.D.N.Y. May 20, 2009) (Order denying defense counsel's request to conduct *ex parte* interviews with class members in order to ascertain whether they should appear as witnesses at trial); *Bielski v. Royal Plumbing & Heating Corp.*, No. 06-CV-6542 (E.D.N.Y.) (same). Here, defense counsel is not seeking to communicate with class members in order to ascertain pertinent information for trial, but rather for the clearly improper purpose of persuading them to opt out of the litigation.

rules governing solicitation. *See* New York Rule of Professional Conduct 7.3. *See also Tedesco*, 629 F. Supp. at 1483; *Impervious Paint Industries, Inc.*, 508 F. Supp. at 722.

Second, defendants request that defense counsel be allowed to communicate with class members about whether or not they have executed an opt out in order to ensure that all opt outs are accounted for. This request is denied for the following reasons. First, there is no reason to suspect that plaintiffs' counsel will fail to account properly for all opt outs received. Second, the purpose of the right to opt out from a class is not to protect defendants, but rather to protect those plaintiffs who wish to bring their own claim and not be bound by the result of the class action. *See* MCLAUGHLIN ON CLASS ACTIONS § 5:75 (6th ed.). Third, any prejudice to defendants would arise only if a class member who originally opted out sought to participate in a settlement or judgment in the future. Accordingly, if there is any reason to believe that an individual who opted out is seeking to participate in this action or in any judgment or settlement that may be entered in plaintiffs' favor, defendants may raise the matter at that time.

Finally, defendants request that the court provide an "official Polish translator" to translate the court-approved class action notice into Polish. This request is denied. The court does not have an official Polish translator on staff. Moreover, the court's translation services are available only for criminal matters. Defendants are free to have a Polish translator of their choice review plaintiffs' translation and to seek amendments to the translation of the notice if necessary.

## **Conclusion**

For all of the reasons discussed above, it is hereby ORDERED that:

defense counsel may not communicate or cause his clients to communicate with class members on any matter related to this litigation unless prior consent is obtained by the Court or by class counsel.

                                              SO ORDERED.

                                       /s/
                                       Steven M. Gold
                                       United States Magistrate Judge

Brooklyn, New York
May 10, 2010

U:\IRM 2008-2009\Gortat v. Capala Bros\gortat v. capala bros_order.doc