UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
MIROSLAW GORTAT, et al.

                Plaintiffs,

   -v.-

CAPALA BROTHERS, INC., et al.

                Defendants.
-------------------------------------------------x

MEMORANDUM AND ORDER

07 Civ. 3629 (ILG) (SMG)

GLASSER, Senior United States District Judge:

On February 13, 2009, plaintiffs Miroslaw Gortat, Grzegorz Drelich, Henryk Bienkowski, Miroslaw Filipkowski, Artur Lapinski, Jan Swaltek, Edmund Kisielewicz, Artur Kosiorek, and Henryk Stoklosa ("plaintiffs"), on behalf of themselves and others similarly situated in this collective and class action, filed an amended complaint against their former employer defendant Capala Brothers, Inc. ("Capala Brothers"), a construction services company, and its shareholder officers, Robert and Pawel Capala (together "defendants"). Amended Complaint dated February 13, 2009 (Dkt. No. 104). Plaintiffs allege breach of contract and violations of (1) New York's minimum wage act, N.Y. Lab. Law § 650 et seq.; (2) the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"); and (3) the Portal-to-Portal Act, 29 U.S.C. § 254(a)(1)-(2). Am. Compl. ¶¶ 44-57.

Plaintiffs filed their original complaint on August 29, 2007, and defendants on October 18, 2007 filed their answer, along with counterclaims against plaintiffs Gortat, Lapinski, Filipowski, Swaltek, and Bienkowski (the "counter-defendants") alleging claims for conversion, negligence, tortious interference with contract, and breach of fiduciary duty. Answer & Counterclaims dated Oct. 17, 2007 ("Answer & Countercl.")

1

(Dkt. No. 6).  The Court on November 12, 2008 granted the motion to dismiss defendants' claims for negligence, breach of fiduciary duty, and tortious interference with contract but granted defendants leave to replead their tortious interference claim.  See Gortat v. Capala Bros., Inc., 585 F. Supp. 2d 372, 376-77 (E.D.N.Y. 2008) ("Gortat I").  Defendants did so on December 8, 2008.  Am. Third Counterclaim filed Dec. 8, 2008 ("Third Countercl.") (Dkt. No. 69).  On May 5, 2009, the Court granted the counter-defendants' motion for summary judgment on a portion of the first counterclaim pertaining to conversion of a logbook but left intact defendants' counterclaim for conversion of tools belonging to Capala Brothers.  Gortat v. Capala Bros., Inc., 257 F.R.D. 353, 369 (E.D.N.Y. 2009) ("Gortat II").  Accordingly, defendants' counterclaims for conversion and for tortious interference remain outstanding.

Currently before the Court are (1) the counter-defendants' motion for summary judgment on these claims; (2) plaintiffs' motion for leave to amend its complaint to specify that the class will seek to recover liquidated damages on the New York Labor Law claims; and (3) defendants' motion to amend the class action notice of exclusion to include three additional people.

For the following reasons, the counter-defendants' motion for summary judgment is denied; plaintiffs' motion for leave to amend is granted; and defendants' motion to amend the notice of exclusion is granted.

## I.  BACKGROUND

The factual background and procedural history to this action is set out more fully in the Court's previous decisions, see, e.g., Gortat II, 257 F.R.D. at 356-57; Gortat I, 585 F. Supp. 2d at 374-75, and familiarity with the facts underlying this action is assumed.

The Court will recite only those facts that are necessary for purposes of deciding this motion.

Capala Brothers employed plaintiffs as construction workers or foreman until early 2007 when each of them decided to leave the company.  Plaintiffs' Local Rule 56.1 Statement ("Pls.' 56.1 Statement") ¶¶ 1-2 (Dkt. No. 240).  Defendants allege that counter-defendants Bienkowski, Gortat, and Lapinski failed to return tools belonging to Capala Brothers upon their departure from the company, Answer & Countercl. ¶ 40, and have submitted evidence from Robert Capala and his brother, Piotr, substantiating this allegation.  Defendants' Opposition to Plaintiffs' Motion for Summary Judgment dated June 13, 2011 ("Defs.' Opp'n") Ex. E (Robert Capala Dep.), at 48-51; id. Ex. C (Piotr Capala Decl.) ¶ 4.  Plaintiffs dispute this allegation and have submitted evidence that Bienkowski, Gortat, and Lapinski did indeed return the tools at the end of their employment.  Pls.' 56.1 Statement ¶ 32.

Defendants also allege that after leaving Capala Brothers the counter-defendants threatened defendants' employees with physical harm if they continued their employment at Capala Brothers or aided defendants in any respect with this ligation.  Third Countercl. ¶¶ 50-52.  This interference, defendants aver, caused their employees to suffer low morale and impaired their productivity, ultimately causing damage to Capala Brothers through the loss of contracts that it would have obtained had the employees been more productive.  Id. ¶ 59.  Defendants have provided the Court with evidence that they contend supports their claims.  For example, Oldrich Humpolik ("Humpolik"), a Capala Brothers foreman, testified that counter-defendant Swaltek on Thanksgiving Day in 2007 physically threatened him and told him not to aid defendants

in this litigation.  Plaintiffs' Motion for Summary Judgment dated Mar. 11, 2011 ("Pls.' Mot.") Ex. 20 (Deposition of Oldrich Humpolik on June 8, 2009), at 33-38.  Humpolik also states that plaintiffs made harassing calls to him and physically threatened him.  Id. Ex. 9 (Humpolik Aff.) ¶ 35.  While the counter-defendants acknowledge that Swaltek threatened Humpolik on Thanksgiving Day in 2007, they emphasize that Humpolik also stated that he did not take the threat seriously and that both he and Swaltek had been drinking alcohol at the time of the threat.  Pls.' 56.1 Statement ¶ 5; Plaintiffs' Memorandum of Law in Support of Summary Judgment dated Mar. 11, 2011 (Dkt. No. 243) ("Pls.' Mem.") at 9.  Janusz Drozdal, another Capala Brothers foreman, also complained of threats of physical violence by counter-defendants Swaltek and Lapinski. Pls.' Mot. Ex. 11 (Drozdal Aff.) ¶ 36 ("When I refused to join the case against the Capala [sic], I was informed that if I ever testify in their case, they told me that they have connections with afro-Americans who would break my arms and legs and I would be found in the car trunk."); Pls.' Mot. Ex. 19 (Drozdal Dep.), at 103.

With respect to the injury caused by the counter-defendants' alleged threats to Capala Brothers' employees, defendants have provided the Court with evidence that their employees suffered low morale and decreased productivity such that jobs that typically would take them 30 days to complete instead took them 45 days.  Defs.' Opp'n Ex. E (Robert Capala Dep.) at 29-30, 249; Defs. Opp'n Ex. C (Piotr Capala Decl.) ¶ 5. Plaintiffs respond that this evidence is incredible and that the Court should disregard it because (1) no affiant or deponent remembered having worked more slowly as a result of any alleged threats; and (2) defendants have failed to offer to the Court any objective evidence measuring morale or work pace.  Pls.' Mem. at 19.

## II. DISCUSSION

### A. Motion for Summary Judgment

#### 1. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "'An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  A fact is material if it might affect the outcome of the suit under the governing law.'" Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010) (quoting Roe v. City of Waterbury, 542 F.3d 31, 35 (2d Cir. 2008)).

The moving party bears the burden of establishing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim.  Id. at 322-23.  To defeat a motion for summary judgment, the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,'" Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)), and cannot "'rely on conclusory allegations or unsubstantiated speculation.'"  Id. (quoting Fed. Deposit Ins. Corp. v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010)).

A court deciding a motion for summary judgment must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw

all reasonable inferences against the movant.'"  Brod v. Omya, Inc., 653 F.3d 156, 164 (2d Cir. 2011) (quoting Williams v. R.H. Donnelley Corp., 368 F.3d 123, 126 (2d Cir. 2004)).   Moreover, "'[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Kaytor v. Electric Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).

Counter-defendants move for summary judgment on defendants' counterclaims (1) against them for tortious interference with business relations between defendants and their employees; and (2) against counter-defendants Gortat, Lapinski, and Bienkowski for conversion of tools belonging to Capala Brothers.  The Court will apply the principles above to each of these claims in turn.

### 2.  Tortious Interference With Business Relations

The crux of defendants' amended third counterclaim is that the counter-defendants interfered with the employment of defendants' at will employees by threatening them with physical harm if they continued their employment for defendants or aided defendants in any respect with this ligation.  Third Countercl. ¶¶ 50-52.  This interference, defendants allege, caused their employees to suffer from low morale impairing their employees' productivity and ultimately causing damage to defendants' business through the loss of contracts that they would have obtained had their employees been more productive.  Id. ¶ 59.

"Under New York law, the elements of a tortious interference with contract claim are: (a) that a valid contract exists; (b) that a 'third party' had knowledge of the contract;

(c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff." Albert v. Loksen, 239 F.3d 256, 274 (2d Cir. 2001) (quoting Finley v. Giacobbe, 79 F.3d 1285, 1294 (2d Cir. 1996)).[1] Where, as here, the relevant employees are at will, the nature of the contractual relationship between the employees and their employer is prospective. See, e.g., Gortat I, 585 F. Supp. 2d at 376 (quoting Smith v. Meridian Tech., Inc., 52 A.D.3d 685, 861 N.Y.S.2d 687 (2008)). "As compared to the tort of tortious interference with contract, '[w]here there has been no breach of an existing contract, but only interference with prospective contract rights . . . plaintiff must show more culpable conduct on the part of the defendant.'"[2] Discover, 333 F. Supp. 2d at 86 (quoting NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc., 87 N.Y.2d 614, 621, 641 N.Y.S.2d 581 (1996)).

Accordingly, in order to sustain a claim of tortious interference with business relations, defendants must show that (1) they had a business relationship with a third party (i.e., their employees), (2) the counter-defendants interfered with the relationship, (3) the counter-defendants acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the interference caused injury to the relationship. See Catskill, 547 F.3d at 132.

---

[1] The parties' briefs assume that New York law controls. "Such implied consent . . . is sufficient to establish choice of law." See, e.g., Motorola Credit Corp. v. Uzan, 388 F.3d 39, 61 (2d Cir. 2004) (internal quotation marks omitted).

[2] The tort of interference with business relations is also sometimes known as interference with prospective contractual relations or interference with prospective economic advantage. Catskill Dev., L.L.C. v. Park Place Entm't Corp., 547 F.3d 115, 132 (2d Cir. 2008) (citations omitted); see also Discover Grp., Inc. v. Lexmark Int'l, Inc., 333 F. Supp. 2d 78, 86 n.3 (E.D.N.Y. 2004) (citation omitted).

The counter-defendants maintain that defendants have failed to establish the third element of this claim and have come forward with no evidence establishing that they used any improper means or acted with any wrongful purpose to interfere with defendants' relationships with their employees. Pls.' Mem. at 15-19. The counter-defendants also maintain that defendants have suffered no damages as a result of their alleged interference. Pls.' Mem. at 19-21. Defendants respond, among other things, that the evidence in the record of threats by the counter-defendants against defendants' employees establish disputed issues of material fact as to whether the counter-defendants employed wrongful means or acted with a wrongful purpose to harm defendants and that therefore summary judgment is inappropriate. Defs.' Mem. at 11-17. The Court agrees, and the counter-defendants' motion for summary judgment on the third amended counterclaim is therefore denied.

Using wrongful or improper means generally amounts to conduct "that amount[s] to a crime or an independent tort," Carvel Corp. v. Noonan, 3 N.Y.3d 182, 190, 785 N.Y.S.2d 359 (2004), including "'physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure,'" id. at 191 (citing Guard-Life Corp. v. S. Parker Hardware Mfg. Corp., 50 N.Y.2d 183, 191, 428 N.Y.S.2d 628 (1980). Threats also constitute wrongful or improper means. Guard-Life, 50 N.Y.2d at 196. Moreover, as the parties recognize, Carvel intimates that "extreme and unfair" economic pressure may constitute "wrongful means" satisfying the third element of tortious interference, 3 N.Y.3d at 192-93, but such pressure would only suffice here if its "sole purpose" was to injure defendants, see Catskill, 547 F.3d at 137; Pls.' Mem. at 17; Defs.' Mem. at 15.

8

Similarly, acting with a "wrongful purpose" means engaging in conduct for the "sole purpose of inflicting intentional harm on the [defendants]." Catskill, 547 F.3d at 137 (citations omitted). Actions motivated by economic self-interest are not actions taken with a wrongful purpose. Carvel, 3 N.Y.3d at 191 (noting that "[w]here the parties are not [business] competitors, there may be a stronger case that the defendant's interference with the plaintiff's relationships was motivated by spite"); see also Semple v. Eyeblaster, Inc., No. 08 Civ. 9004 (HB), 2009 WL 2709281, at *4 (S.D.N.Y. Aug. 27, 2009) ("[I]t is well-settled that where a party acts, at least in part, in accordance with its normal economic self-interest, it cannot be found to have acted solely out of malice for the purpose of a tortious interference claim.").

With respect to wrongful means, defendants have submitted, among other pieces of evidence, an affidavit from Drozdal, a Capala Brothers foreman, establishing that counter-defendants Swaltek and Lapinski threatened to have his arms and legs broken if he testified in this action. Pls.' Mot. Ex. 11 (Drozdal Aff.) ¶ 36; Pls.' Mot. Ex. 19 (Drozdal Dep.), at 103.[3] Defendants have also submitted deposition testimony from Humpolik that establishes that Swaltek on Thanksgiving Day 2007 threatened him with physical violence if he in any way aided defendants in this litigation. Humpolik testified as follows:

Q.   Can you tell us what, if anything, happened . . . for Thanksgiving 2007?

---

[3] Although Drozdal states in his affidavit that Swaltek, Lapinski, and Filipkowski threatened him, Pls.' Mot. Ex. 11 (Drozdal Aff.) ¶ 36, he testified during his deposition that he "may have made an error with the name contained [in the affidavit]. It wasn't Filipkowski, but, rather, Swaltek and Lapinski," Pls.' Mot. Ex. 19 (Drozdal Dep.), at 103.

A.      Swaltek, Jan began to make threats that if we say anything against them.

Q.      Well, so what specific words did Swaltek use?

A.      That we will regret it, that they will find us. . . .

Q.      So Mr. Swaltek, just out of the blue, says you will regret it if you testify and so on and so forth, or was there a discussion, if any, about the lawsuit and his working for Capala Brothers?

A.      Yes, there was a discussion about Capala Brothers, how much we are earning and what we do. . . .

Q.      What did you understand them to be, who specifically?

A.      Meaning he wasn't talking in one person, he was talking in plural.  I'll give you an example.  He would say we will show you.

Q.       Did you take it as a physical threat?

A.      Yes.

Q.      Were you afraid?

A.      When he said it, I was not afraid.  I didn't take it to heart. . . .

Pls.' Mot. Ex. 20 (Deposition of Oldrich Humpolik on June 8, 2009), at 33-38.  Physical threats of violence such as those against Humpolik and Drozdal constitute wrongful or improper means.  Guard-Life, 50 N.Y.2d at 196.

Additionally, a reasonable jury could draw the inference that Swaltek's use of the plural in his statement to Humpolik referred to the other counter-defendants in this action.  Humpolik's statement that "[plaintiffs] made harassing calls and threatened . . . that they would hurt [him]" also could support such an inference.  Pls.' Mot. Ex. 9

10

(Humpolik Aff.) ¶ 35.  Though it is true, as the counter-defendants argue, that both Humpolik and Swaltek had been drinking alcohol when Swaltek threatened Humpolik and that Humpolik acknowledged during his deposition that "people say all kinds of things when drunk," id. Ex. 20 at 39, the weight to accord the evidence of Swaltek's threats in light of his intoxication is a question for the jury, not for the Court.

The counter-defendants also argue that the proffered evidence does not create an issue for the jury because "Defendants must establish that [the counter-defendants'] alleged threats were designed to force their employees to quit their jobs with Defendants not merely to refrain from testifying against Plaintiffs."  Pls.' Reply at 5.  However, this is not the test for tortious interference with business relations; defendants need only establish that the counter-defendants' interference caused injury to the relevant relationship (here, the relationship between defendants and their employees), not necessarily that the injury caused their employees to quit.⁴ See Catskill, 547 F.3d at 132; PPX Enters., Inc. v. Audiofidelity Enters., Inc., 818 F.2d 266, 270 (2d Cir. 1987)  ("[A] claim of tortious interference with prospective economic advantage usually involves interference with a business relationship not amounting to a contract, resulting in a breach, or severance of the relationship itself, or at least some injury to that

---

⁴ The cases the counter-defendants rely on in support of their contention are inapposite.  Unlike here, each involves an at will employee's suit against a third-party for procuring the employee's discharge through allegedly improper means.  The cases merely reflect application of a narrow exception to the rule that "New York has adamantly refused to allow employees to evade the employment at-will rule and relationship by recasting [a] cause of action in the garb of tortious interference with . . . employment."  Locksen, 239 F.3d at 274 (citation and internal quotation marks omitted).  Moreover, the fact that it is "extremely rare" for employers to bring such a claim, Pls.' Mem. at 9, does not necessarily mean that it is unavailable to employers, and the New York Court of Appeals has not addressed the question.

relationship." (internal citation and quotation marks omitted) (emphasis added)),

abrogated on other grounds by Hannex Corp. v. GMI, Inc., 140 F.3d 194, 206 (2d Cir.

1998).

Defendants allege that the counter-defendants' threats caused injury to their

relationship with their employees that manifested itself in the form of low employee

morale and productivity, ultimately resulting in damage to the business through the loss

of potential contracting jobs.  Am. Countercl. ¶ 59.  Defendants have provided the Court

with evidence of this loss of morale sufficient to preclude summary judgment on this

claim.  For example, defendant Robert Capala testified as follows:

> A.     Between 10 of 2007 . . . and between the 12 '08, I find [sic]
>
> out some stuff about the behavior of the plaintiffs, about the connection of
>
> the workers which I didn't know, how it could affect the ability to perform
>
> work.
>
>        I find out that this also included the way that I lost a lot of
>
> jobs because they were threatened, so it is also affect [sic] that a lot of jobs
>
> which I — which I mention in this project, like, in the end of the year of
>
> 2007 and I believe that the position of the — how the connection between
>
> the plaintiffs and other workers who decided to stay with me and don't —
>
> wanted to go with them, how it affect that they were working slower so I
>
> was not able to get the jobs which I was able to take. . . .

Defs.' Opp'n Ex. E (Deposition of Robert Capala on April 22, 2009), at 29-30 (emphasis

added).  Moreover, during the same deposition, Capala also had the following exchange

with plaintiffs' counsel:

> Q.     You are alleging that you lost money because of the lower morale? . . . .
>
> A.     Every aspect which happened at that time [sic] that some kind of result of my losses of the way how my business was going after the plaintiffs left. . . . You can make threats, physical things.  You can make economic threats and everything reflected on the way how the workers worked.

Id. Ex. E at 249.  The implication of this testimony is that the counter-defendants' threats impacted the performance of defendants' employees and thus their relationship with defendants.  The counter-defendants contend that the Court should disregard this testimony because it is self-serving and conclusory, but they have provided the Court with no basis to do so.  Indeed, Capala's testimony is to some extent buttressed by the sworn statements of his brother Piotr, a Capala Brothers foreman, who states as follows:

> I have personal knowledge that [the counter-defendants] had spread damaging information . . . that Capala would be destroyed by the plaintiffs through their legal action commenced in this Court. . . . [S]ince 2007, I have had to supervise incompetent fellow workers who had to be trained on the job, while the remaining former employees did not work to their full potential because of their concerns for the jobs to be [sic] for them available the next day they would show up at Capala.  Jobs that took 30 days to complete, instead therefore took 45 days to their successful satisfactory completion.

Defs.' Opp'n Ex. C (Piotr Capala Decl.) ¶ 5.[5]

---

[5] The close family relationship between Piotr and Robert Capala of course raises issues regarding Piotr Capala's credibility; however, "[c]redibility determinations . . . are

Construing the facts in the light most favorable to defendants and drawing all inferences against the counter-defendants, the Court concludes that there is a triable issue of fact concerning whether the counter-defendants used wrongful means to injure defendants' relationship with their employees and that therefore summary judgment on defendants' third amended counterclaim is inappropriate.[6]  Since the Court concludes that this claim should go to the jury, defendants' arguments concerning the counter-defendants' damages—or apparent lack thereof—are premature.

### 3. Conversion of Company Tools

Plaintiffs also move for summary judgment on the remaining portion of the counterclaim alleging that plaintiffs Gortat, Lapinski, and Bienkowski failed to return tools belonging to Capala Brothers at the end of their employment there.  Answer & Countercl. ¶ 40.  Plaintiffs' motion is denied.

"'The tort of conversion is established when one who owns and has the right to possession of personal property proves that the property is in the unauthorized possession of another who has acted to exclude the rights of the owner.'" Gortat II, 257 F.R.D. at 369 (quoting Republic of Haiti v. Duvalier, 211 A.D.2d 379, 384, 626 N.Y.S.2d 472 (1st Dep't 1995)).

---

jury functions, not those of a judge." Kaytor, 609 F.3d at 545 (citation and internal quotation marks omitted).

[6]  In light of this conclusion, the Court need not consider whether there are triable issues of fact concerning whether the counter-defendants acted with the "sole purpose" of injuring defendants in light of the evidence establishing that they wished to "destroy Capala" because Robert and Pawel Capala were "making excessive profits." See, e.g., Defs.' Opp'n Ex. JJ (Humpolik Aff.) ¶ 30.

Here, factual issues exist as to whether Gortat, Lapinski, and Bienkowski are in unauthorized possession of Capala Brothers' property—the company issued tools. Gortat, Lapinski, and Bienkowski apparently claim to have returned their tools to Capala Brothers at the end of their employment, in accordance with Capala Brothers' policies.  Pls.' Mot. Ex. 38 (Response to Interrogatory 18) at 2;[7] Pls.' 56.1 Statement ¶ 32 ("All Plaintiffs returned their tools at the end of their employment.").  Meanwhile, Robert Capala testified during his deposition on September 22, 2008, that Gortat, Lapinski, and Bienkowski failed to do so.  Defs.' Opp'n Ex. E, at 48-51.  Piotr Capala, who was responsible for administering the property room where Capala Brothers kept all of their tools, corroborated his brother's testimony, stating that "plaintiffs did not return their borrowed tools belonging to Capala" and that he would have noticed had they done so as the number of tools in the room would have "increased by about 150 to 200" tools.  Defs.' Opp'n Ex. D (Piotr Capala Decl.) ¶ 4.[8]  Accordingly, whether Gortat, Lapinski, and Bienkowski returned the tools at issue to Capala Brothers is a disputed material fact that precludes summary judgment on the remaining portion of defendants' first counterclaim.

---

[7] Interrogatory 18 asks plaintiffs, among other things, whether they "received any . . . tools under the employment and whether [they] returned all such tools belonging to the employer defendant" after their termination.  Id.  Plaintiffs do not respond to this interrogatory (or have simply failed to submit their response to the Court); nevertheless, the Court will accept counsel's representation that plaintiffs returned their tools after ending their employment with Capala Brothers.

[8]  The Court finds unpersuasive plaintiffs' contention that Piotr Capala's statement is speculative.  Pls.'  Reply at 12.  As the person who administered the property room at Capala Brothers during the relevant period, Piotr had an ample basis on which to make his statement.

In sum, for the foregoing reasons, the counter-defendants' motion for summary judgment on defendants' first counterclaim and third amended counterclaim is denied.

## B. Motion to Amend Complaint

Plaintiffs next move to be relieved from their previous waiver of claims for liquidated damages under New York Labor Law §§ 198(1-a), 663(1).[9]  Letter to the Court dated Dec. 29, 2010 ("Pls.' Dec. 29 Letter") at 1 (Dkt. No. 227).  Although plaintiffs' amended complaint states that plaintiffs seek "liquidated damages pursuant to . . . Labor Law § 198," Am. Compl. ¶ 57, plaintiffs subsequently waived these damages in a hearing before Magistrate Judge Gold on September 10, 2009, Pls.' Dec. 29 Letter Ex. 3, at 19, and the notice of class action that plaintiffs sent to class members pursuant to Fed. R. Civ. P. 23(c)(2) explicitly provided that "[u]nless you exclude yourself from the class, you will have waived . . . liquidated damages under New York law."  Notice Pursuant to Fed. R. Civ. P. 23(c)(2) ("Class Notice") at 4 (Dkt. No. 227-6).  The Court construes plaintiffs' motion to reinstate their claim for liquidated damages as a motion to amend their complaint governed by Fed. R. Civ. P. 15.

Plaintiffs argue that liquidated damages became available to them after the Supreme Court in <u>Shady Grove Orthopedics Associates, P.A. v. Allstate Insurance Co.</u>, 130 S. Ct. 1431, 176 L. Ed. 2d 311 (2010), concluded that section 901(b) of New York's Civil and Practice Rules ("C.P.L.R.")—which bars class action plaintiffs from seeking

---

[9]  The relevant provision of Sections 198(1-a) and 663(1) are identical; both provisions allow an employee who prevails on a wage claim to recover the full amount of any underpayment, attorney's fees, prejudgment interest, and "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, <u>an additional amount as liquidated damages equal to one hundred percent of the total amount</u>" of the wages found to be due.  <u>Id.</u> (emphasis added).

"penalties" such as liquidated damages—does not apply to state law class actions filed in federal court.  Pls.' Dec. 29 Letter at 2.  Plaintiffs state that they previously waived their claim to these damages because Second Circuit authority prior to <u>Shady Grove</u> required them to do so, and that after learning of the decision, they promptly informed Magistrate Judge Gold and defendants of their desire to revoke their waiver.  <u>Id.</u> at 4-5.

Defendants oppose plaintiffs' motion on several grounds:  that (1) Fed. R. Civ. P. 23 is inapplicable to the factual circumstances here; (2) plaintiffs unnecessarily delayed in making the motion to amend, waiting until eight months after the Supreme Court decided <u>Shady Grove</u> and until after the Court had certified the class and authorized the class notice to be sent to class members; and (3) defendants will be prejudiced if the Court grants the motion as class members who previously opted out of the class may subsequently seek to rejoin it.  Opposition to Plaintiffs' Motion to Amend dated Jan. 17, 2011 ("Defs.' Mot.") (Dkt. No. 231).

## 1.  Legal Standard

Rule 15 of the Federal Rules of Civil Procedure states that after one amendment to which it is entitled as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Supreme Court and this Circuit have repeatedly stressed that whether to permit a party to amend its pleading is committed to the district court's discretion.  <u>See, e.g.</u>, <u>Zenith Radio Corp. v. Hazeltine Res., Inc.</u>, 401 U.S. 321, 330, 91 S. Ct. 795, 28 L. Ed. 2d 77 (1971) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182, 83 S. Ct. 227 (1962)); <u>Gurary v. Winehouse</u>, 235 F.3d 792, 801 (2d Cir.

2000); Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel, 145 F.3d

85, 89 (2d Cir. 1998); Guzman v. Bevona, 90 F.3d 641, 649 (2d Cir. 1996).

Generally, the court may deny a motion to amend for good reason, including

futility, bad faith, undue delay, or undue prejudice to the opposing party.  Holmes v.

Grubman, 568 F.3d 329, 334 (2d Cir. 2009).  In determining whether leave to amend

should be granted, among the "most important" issues to consider is prejudice to the

opposing party.  AEP Energy Services Gas Holding Co. v. Bank of Am., N.A., 626 F.3d

699, 725 (2d Cir. 2010) (internal quotations omitted).  "Amendment may be prejudicial

when, among other things, it would 'require the opponent to expend significant

additional resources to conduct discovery and prepare for trial' or 'significantly delay the

resolution of the dispute.'"  Id. at 725-26 (quoting State Teachers Ret. Bd. v. Fluor Corp.,

654 F.2d 843, 856 (2d Cir. 1981)).

### 2.  Application of Standard

Plaintiffs' motion to amend the complaint to reinstate their claim for liquidated

damages pursuant to N.Y. Lab. L. §§ 198(1-a), 663(1) is granted.  As a threshold matter,

plaintiffs' interpretation of Shady Grove is correct.  In Shady Grove, the Supreme Court

considered whether C.P.L.R. Section 901(b)—which bars class action plaintiffs from

seeking "penalties" such as liquidated damages—conflicted with Fed. R. Civ. P. 23, a

valid rule under the Rules Enabling Act.  Shady Grove, 130 S. Ct. 1437.[10]  The district

court had concluded that there was no such conflict as Section 901(b) was substantive

and therefore applied to class actions brought under New York state law that were filed

---

[10]  Section 901(b) provides, in relevant part, that "an action to recover a penalty,
or minimum measure of recovery created or imposed by statute may not be maintained
as a class action."

in federal court and certified pursuant to Fed. R. Civ. P. 23.  Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 466 F. Supp. 2d 467, 473 (E.D.N.Y. 2006).  The Second Circuit affirmed on appeal.  549 F.3d 137, 143 (2d Cir. 2008) ("Rule 23, fairly construed, is not sufficiently broad to cause a direct collision with CPLR 901(b).").  But the Supreme Court reversed, concluding that Section 901(b) does not apply to state law class actions filed in federal court and that instead Fed. R. Civ. P. 23 governs.  Shady Grove, 130 S. Ct. 1436-42; id. at 1442-44 (plurality opinion); id. at 1455-60 (Stevens, J., concurring in part and concurring in judgment).[11]

Since Rule 23, unlike Section 901(b), contains no limitation regarding "penalties" such as liquidated damages, post-Shady Grove, plaintiffs alleging claims under sections 198 and 663 of New York Labor Law may now seek liquidated damages in federal court.[12]  Courts applying this principle consistently allow plaintiffs to amend their

---

[11] Defendants' contention that Fed. R. Civ. P. 23 is inapplicable to the factual circumstances here is meritless and not worthy of lengthy discussion.  Indeed, Justice Scalia, the author of the plurality opinion, and Justice Stevens, the author of a concurring opinion, each explicitly conclude that Fed. R. Civ. 23 applies to state law class actions filed in federal court such as the one in this case.  Shady Grove, 130 S. Ct. 1437-38 (plurality opinion) (holding that Rule 23 controls unless Congress has "carved out federal claims . . . from Rule 23's reach"); id. at 1448 (Stevens, J., concurring in part and concurring in judgment) ("The New York law at issue, § 901(b), is a procedural rule that is not part of New York's substantive law.  Accordingly, I agree with Justice SCALIA that Federal Rule of Civil Procedure 23 must apply in this case." (internal citation omitted)); see also Holster v. Gatco, Inc., 130 S. Ct. 1575, 1575, 176 L. Ed. 2d 716 (2010) (Scalia, J., concurring) ("Shady Grove . . . held that, irrespective of Erie, § 901(b) does not apply to state-law claims in federal court because it is validly pre-empted by Rule 23.").

[12] Contrary to defendants' argument, the liquidated damages provisions of N.Y. Lab. L. §§ 198(1-a), 663(1) clearly constitute "penalties" within the meaning of Section 901(b).  See, e.g., Cohen v. Gerson Lehrman Grp., Inc., 686 F. Supp. 2d 317, 322-23 (S.D.N.Y. 2010) (liquidated damages provision of Section 198(1-a) constitutes penalty

pleadings to include claims for damages that were previously barred under section 901(b).  See Gardner v. W. Beef Props., Inc., No. 07 Civ. 2345 (RJD)(JMA), 2011 WL 6140518, at *7 (E.D.N.Y Sept. 26, 2011), adopted by 2011 WL 6140512, at *7 (E.D.N.Y. Dec. 9, 2011) (motion to amend complaint waiving right to punitive damages under New York Labor Law granted in light of Shady Grove); Coultrip v. Pfizer, Inc., No. 06 Civ. 9952 (JCF), 2011 WL 1219365, at *4 (S.D.N.Y. Mar. 24, 2011) (motion to amend complaint to add claim for liquidated damages granted in light of Shady Grove); Spicer v. Pier Sixty LLC, No. 08 Civ. 10240 (LBS), 2011 WL 446144, at *3 (S.D.N.Y. Feb. 7, 2011) (same); Pefanis v. Westway Diner, Inc., No. 08 Civ. 002 (DLC), 2010 WL 3564426, at *6-7 (S.D.N.Y. Sept. 7, 2010) (same); McBeth v. Gabrielli Truck Sales, Ltd., 731 F. Supp. 2d 316, 320-21 (2010) (same).

The Court will reach the same conclusion here.  Plaintiffs waived their right to liquidated damages under New York Labor Law because they were previously required to do so under the then-prevailing law.  See, e.g., Spicer v. Pier Sixty LLC, 269 F.R.D. 321, 338 n.15 (S.D.N.Y. 2010) (noting that a "waiver of liquidated damages . . . is a prerequisite to the bringing of a class action under the applicable provisions of New York Labor Law" (citation and internal quotation marks omitted)).  On November 24, 2010, roughly two months after learning of Shady Grove's change of the law—and nearly eight months after the Supreme Court issued the decision—plaintiffs alerted both Magistrate Judge Gold and defendants of their desire to seek liquidated damages under

under Section 901(b)); Niemiec v. Ann Bendick Realty, No. 04 Civ. 00897 (ENV) (KAM), 2007 WL 5157027, at *3 n.2 (E.D.N.Y. Apr. 23, 2007) ("[Section] 663, which provides for a penalty in the form of liquidated damages, but does not provide for recovery through a class action, is limited by [Section] 901(b) . . . .").

the New York Labor Law.  See Pls.' Dec. 29 Letter at 4-5; Letter dated November 24, 2010 at 6-7 (Dkt. No. 216).  Under such circumstances, plaintiffs did not unduly delay in seeking leave to amend their complaint.  See Coultrip, 2011 WL 1219365, at *4 (six month delay in filing motion to amend in light of Shady Grove not undue); Pefanis, 2010 WL 3564426, at *7 (two month delay in filing motion to amend after learning of Shady Grove not undue).  In any event, delay alone, without evidence of bad faith or prejudice, does not warrant denial of a motion to amend.  See, e.g., Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) ("Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend." (citation and internal quotation marks omitted)).  And defendants have failed to identify any actual prejudice to them as a result of plaintiffs' delay.[13]  Indeed, they do not contend that the amendment would require them to expend significant additional resources to conduct additional discovery or to prepare for trial or that it would delay the resolution of their dispute—two of the key factors in determining whether prejudice exists.  See, e.g., Bank of Am., 626 F.3d 725-26.  Accordingly, plaintiffs' motion to amend their complaint to reinstate their claim for liquidated damages under New York Labor Law is granted.

_____

[13] Defendants argue instead that they could potentially be prejudiced if any of the class members who exercised their right to opt out of the class attempted to revoke their waiver after learning that the class may now seek liquidated damages.  Defs.' Mot. at 7.  The Court finds this contention unpersuasive.  As Magistrate Judge Gold noted during the November 29, 2010 hearing, since no class member opted-in to the FLSA claim (which allows for liquidated damages) and opted out of the New York Labor Law claim (that waived liquidated damages), "it's very difficult to draw the inference that anyone was encouraged to opt-out by the liquidated damages waiver from the Rule 23 action because if they were really thinking at that level, they would have joined the [FLSA] collective action."  Transcript of Hearing Held November 29, 2010 (Dkt. No. 217).

### C.  Motion to Amend Notice of Exclusion

One additional matter requires resolution:  plaintiffs' motion to amend the notice of exclusion to include additional class members who wish to opt out of the class.  By Memorandum and Order dated April 9, 2010, the Court granted plaintiffs' motion for class certification under New York state law and overruled defendants' objections to Magistrate Judge Gold's Order certifying this case as a collective action under the FLSA.  See Gortat v. Capala Bros., Inc., No. 07 Civ. 3629 (ILG), 2010 WL 1423018 (E.D.N.Y. Apr. 9, 2010).  All class members wishing to opt out of the class were to provide written notice to plaintiffs' counsel by August 2, 2010.  Class Notice at 4; Transcript of Hearing Held May 5, 2010 at 20 (Dkt. No. 199).  Plaintiffs received such opt out requests from 23 class members and on August 3, 2010 filed a notice of exclusion listing the members' names.  Notice of Exclusion filed Aug. 3, 2010 (Dkt. No. 207).  Defendants now move to amend the notice to include three additional people:  Andrzej Mazur, Przemyslaw Szulc, and Juan Carlos Ramirez.  Letter to the Magistrate Judge Gold dated November 2, 2010 ("Nov. 2 Letter") (Dkt. No. 211).

Having received signed copies of opt out requests from Mazur and Szulc after their original requests were apparently lost in the mail, plaintiffs have consented to the amendment of the notice of exclusion as to Mazur and Szulc.  Id. at 1 & Ex. 8.  Plaintiffs do not appear to have taken a position on the amendment as to Ramirez whose original opt out request plaintiffs' counsel apparently never received.  Defendants represent that Ramirez mailed the original sworn opt out statement on or about May 26, 2010 and have provided the Court with a copy of the statement that is also dated May 26, 2010. Nov. 2 Letter Ex. 1.

22

Defendants' motion to amend the notice of exclusion to include Mazur, Szulc, and Ramirez is granted.  Fed. R. Civ. P. 23(c)(2) provides that a judgment shall bind class members who have not requested exclusion from the action.  It further provides that a court must direct to the class "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Id.  The class action notice must include, among other information, the fact "that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded."  Fed. R. Civ. P. 23(c)(2)(B).  The notice here did so, providing that all members wishing to opt out of the class were to notify plaintiffs' counsel in writing by August 2, 2010.

A class action notice's opt out deadline, however, is not absolute, and "Rule 23 gives a court the power to prescribe the procedures a class member must follow to opt out of a class action."  In re WorldCom, Inc. Sec. Litig., No. 02 Civ. 3288 (DLC), 2005 WL 1048073, at *4 (S.D.N.Y. May 5, 2005).  Accordingly, if there is a dispute about whether a class member has followed the appropriate opt out procedures, the class member bears the burden of establishing that "he or she made a sufficient effort to communicate an intent to opt out through the appropriate channels. . . . Because flexibility in making this determination is appropriate, 'any written evidence' containing a 'reasonable indication of a desire to opt out ought to be sufficient.'"  Id. (quoting In re Four Seasons Sec. Laws Litig., 493 F.2d 1288, 1291 (10th Cir. 1974)) (denying class members' request to be excluded from class where members had no copy of exclusion form they purportedly sent to claims administrator and members failed to send form by overnight or certified mail as required by the notice of class action); see also Plummer v.

Chemical Bank, 668 F.2d 654, 657 n.2 (2d Cir. 1982) (noting in the context of an opt out for a 23(b)(2) class action that "[a]ny reasonable indication of a desire to opt out should suffice"); 7A C. Wright, et al., Federal Practice and Procedure § 1787 (3d ed. 2005) ("[C]onsiderable flexibility is desirable in determining what constitutes an effective expression of a class member's desire to be excluded and any written evidence of that desire should suffice.").  This flexible standard is necessary to give effect to the Due Process right to opt out identified by the Supreme Court in Phillips Petroleum v. Shutts, 472 U.S. 797, 812, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985) see also McLaughlin on Class Actions § 5:78 (6th ed. 2008) ("The right to opt out is an individual one that must knowingly be exercised on a class-member-by-class-member basis.").

The Tenth Circuit's ruling in Four Seasons is instructive.  There, the court concluded that a class member who filed an opt out notice after the deadline, but had made various previous inquiries and statements during the exclusion period in an attempt to comply with the deadline, had indicated a desire to opt out and should be permitted to do so.  Four Seasons, 493 F.2d at 1291.  The court explicitly rejected "a rule that in order to opt out, the request must be explicit," and stressed instead that "flexibility is desirable in determining what constitutes an expression of a class member's desire to exclude himself."  Id.  The Court noted, moreover, that the purpose of Rule 23(c)(2), which provides for binding effect of a judgment on members of a class who had not opted out of it, "was to eliminate the practice of waiting to see if the adjudication was favorable to the class before deciding whether to enter it."  Id.  Such a situation was not presented in Four Seasons; nor is it presented here.

Plaintiffs are satisfied that Mazur and Szulc through their letters to plaintiffs'
counsel and previous attempts to opt out of the class have manifested a reasonable
indication of their desire to opt out as plaintiffs have consented to the amendment of the
Notice of Exclusion to include Mazur and Szulc.  See Nov. 2 Letter Ex. 8 ("Now that we
have received signed letters from both of them, which both indicate that they made
serious attempts to opt-out from their class before the August 2, 2010 deadline, we join
your request to permit their late exclusion from the class.").  Applying the standard of
flexibility set forth above, the Court is also satisfied that Mazur's and Szulc's letters
sufficiently establish their desire to be excluded from the class.  See id. Ex. 5, at 2 ("I was
not [previously] removed from the case so I ask [sic] to remove me from the case against
Capala Brothers."); id. Ex. 6, at 2 ("I once again ask, request to withdraw [sic] me from
the case regarding Capala Brothers.").  The same is true of the notarized letter dated
May 26, 2010 from Ramirez in which he states that "I don't want to be part of the group
that are suing [Pawel and Robert Capala]."  This letter—signed well before the August 2,
2010 deadline for class members to opt out—provides a reasonable indication of
Ramirez's desire to be excluded from the class, and plaintiffs have articulated no reason
why the Court should upset this desire.  Accordingly, defendants' motion to amend the
notice of exclusion to include Mazur, Szulc, and Ramirez is hereby granted.  Plaintiffs
shall file an amended notice of exclusion forthwith.

## III.   CONCLUSION

For the foregoing reasons, it is hereby ordered that (1) the counter-defendants'
motion for summary judgment is DENIED; (2) plaintiffs' motion for leave to amend the

complaint is GRANTED; and (3) defendants' motion to amend the notice of exclusion is

GRANTED.

      SO ORDERED.

Dated:      Brooklyn, New York
              December 30, 2011

                        /s/
                    I. Leo Glasser
                    Senior United States District Judge