UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
MIROSLAW GORTAT, et al.

                Plaintiffs,

  -v.-

CAPALA BROTHERS, INC., et al.

                Defendants.
-------------------------------------------------x

MEMORANDUM AND ORDER

07 Civ. 3629 (ILG) (SMG)

GLASSER, Senior United States District Judge:

Before the Court is the motion of defendants Capala Brothers, Inc. ("Capala Bros.") and individual defendants Pawel and Robert Capala (collectively "defendants") to decertify the class certified by the Court on April 9, 2010 for lack of numerosity and to obtain entry of judgment for certain attorney's fees and costs. For the reasons set forth below, defendants' motion to decertify the class is hereby DENIED, and their motion for entry of judgment on attorney's fees and costs is hereby DENIED without prejudice to renewal.

## I. BACKGROUND

The factual background and procedural history to this action is set out more fully in a number of the Court's previous decisions, familiarity with which is assumed.[1] In short, plaintiffs are laborers and foremen formerly employed by Capala Bros., a construction services company, who seek to recover on behalf of themselves and others

---

[1] See, e.g., Gortat v. Capala Bros., Inc., No. 07 Civ. 3629 (ILG) (SMG), 2011 WL 6945186, at *1-2 (E.D.N.Y. Dec. 30, 2011) ("Gortat V"); Gortat v. Capala Bros., Inc., No. 07 Civ. 3629 (ILG) (SMG), 2011 WL 2133769, at *1 (E.D.N.Y. Mar. 27, 2011) ("Gortat IV"); Gortat v. Capala Bros., Inc., No. 07 Civ. 3629 (ILG) (SMG), 2010 WL 1423018, at *1 (E.D.N.Y. Apr. 9, 2010) ("Gortat III"); Gortat v. Capala Bros., Inc., 257 F.R.D. 353, 355-57 (E.D.N.Y. 2009) ("Gortat II"); Gortat v. Capala Bros., Inc., 585 F. Supp. 2d 372, 376-77 (E.D.N.Y. 2008) ("Gortat I").

similarly situated unpaid wages arising out of defendants' alleged failure to comply with, among other things, the (1) New York Labor Law, N.Y. Lab. Law § 650 et seq. ("NYLL"); (2) Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"); and (3) Portal-to-Portal Act, 29 U.S.C. § 254(a)(1)-(2).

On January 15, 2009, plaintiffs moved to certify as a class pursuant to Fed. R. Civ. P. 23(b)(3) all laborers and foremen employed by Capala Brothers during the six years preceding August 29, 2007, the date of the initiation of this action. Defendants moved to dismiss the class action, contending that the class was insufficiently numerous and that the representative parties do not adequately protect the interests of the class. Gortat II, 257 F.R.D. at 361. The Court on May 5, 2009 rejected these contentions and denied defendants' motion. Id. at 365.

On April 9, 2010, the Court certified the class, concluding that plaintiffs had satisfied all of Fed. R. Civ. P. 23(a) prerequisites, including numerosity. Gortat III, 2010 WL 1423018, at *2-3.[2] After plaintiffs circulated the notice of pendency, 23 members timely opted-out of the class, and the Court subsequently allowed three others to opt-out after the deadline to do so passed. See Notice of Exclusion filed Aug. 3, 2010 (Dkt. No. 207); Gortat V, 2011 WL 6945186, at *12. On May 27, 2011, the Court, on

---

[2] The class is specifically defined as follows:

> All persons employed by Defendants as roofers, bricklayers, masons, building laborers, drivers, foremen and other manual workers with the same or similar duties during the six years immediately preceding the initiation of this action up to the date of this decision who are asserting claims under the New York State Labor Law for unpaid minimum wages or overtime premium wages.

Gortat III, 2010 WL 1423018, at *8.

2

defendants' motion, also removed 51 members from the class after the members signed forms releasing defendants from liability. Gortat IV, 2011 WL 2133769, at *1-2.

In light of the number of members who had either opted-out or signed releases, defendants on January 19, 2012 moved to decertify the class, contending the class no longer meets the numerosity requirements of Fed. R. Civ. P. 22(a)(1). Declaration of Felipe Orner dated Jan. 19, 2012 at 3-12 ("Defs.' Mem.") (Dkt. No. 263).[3] Plaintiffs filed their submissions in opposition to the motion on February 10, 2012. Declaration of Robert Wisniewski dated Feb. 10, 2012 ("Wisniewski Decl.") (Dkt. No. 264). On February 16, 2012, defendants filed their reply. Reply Memorandum in Support of Motion to Decertify dated Feb. 16, 2012 (Dkt. No. 267). Also on that date, the Court held a final pre-trial conference and set a trial date of May 7, 2012.

## II. DISCUSSION

### A. Joinder of all Members Remains Impracticable

"[A] district court may decertify a class if it appears that the requirements of Rule 23 are not in fact met." Sirota v. Solitron Devices, Inc., 673 F.2d 566, 572 (2d Cir. 1982). Fed. R. Civ. P. 23(c)(1)(c) explicitly provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment." Accordingly, "[e]ven after a certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation. For such an order . . . is inherently tentative." Gen. Tel. Co. of the S.W. v. Falcon, 457 U.S. 147, 160, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982); see also Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 104, n.9 (2d Cir. 2007) (a district court that has certified a class under Rule

---

[3] The Orner Declaration is replete with legal argument better suited for a memorandum of law, which defendants, in violation of Local Civil Rule 7.1, have not submitted.

3

23 "can always alter, or indeed revoke, class certification at any time before final judgment is entered should a change in circumstances" render a class action no longer appropriate). Even assuming, as defendants contend, that plaintiffs bear the burden of demonstrating that Rule 23's requirements continue to be met,[4] "'the Court may not disturb its prior [certification] findings absent some significant intervening event, or a showing of compelling reasons to reexamine the question.'" Jermyn v. Best Buy Stores, L.P., 276 F.R.D. 167, 169 (S.D.N.Y. 2011) (quoting Doe, 192 F.R.D. at 136-37). "'Compelling reasons' for reexamination 'include an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Doe, 192 F.R.D. at 136-37 (quoting Wilder v. Bernstein, 645 F. Supp. 1292, 1310 (S.D.N.Y. 1988)) (internal quotation marks omitted).

Courts assessing a motion to decertify a previously certified class should also consider the stage of the litigation and whether an "'eve-of-trial decertification could adversely and unfairly prejudice class members, who may be unable to protect their own interests.'" Id. (quoting Langley v. Coughlin, 715 F. Supp. 522, 552 (S.D.N.Y. 1989)); see also Woe v. Cuomo, 729 F.2d 96, 107 (2d Cir. 1984) (finding abuse of discretion where district court decertified the class after granting summary judgment in part and expressing concern about "possible prejudice to members of a class" who, as a result of

---

[4] "[A]t least one district court has concluded that the burden of persuasion remains throughout the litigation with the party desiring to maintain certification." Doe v. Karadzic, 192 F.R.D. 133, 136-137 (S.D.N.Y. 2000) (citing Smith v. Armstrong, 968 F. Supp. 50, 53 (D. Conn. 1997)). However, other courts in this circuit have concluded that where, as here, a defendant moves to decertify a class, the defendant is required to meet the "'heavy burden' of proving the necessity of taking such a 'drastic' step." See, e.g., J.S. v. Attica Central Schools, No. 00 Civ. 513S, 2011 WL 4498369, at *6 (W.D.N.Y. Sept. 27, 2011) (quoting In re Vivendi Universal, S.A. Sec. Litig., No. 02 Civ. 5571 (RJH)(HBP), 2009 WL 855799, at *3 (S.D.N.Y. Mar. 31, 2009)); see also Gordon v. Hunt, 117 F.R.D. 58, 61 (S.D.N.Y. 1987)).

4

decertification, were unable to take steps to protect their rights); Easterling v. Conn. Dept. of Corr., 278 F.R.D. 41, 42 (D. Conn. 2011) ("A court should be wary of revoking a certification order completely at a late stage in the litigation process.").

Defendants appear to argue that the decrease in the number of class members because of opt-outs and the signing of releases constitutes "compelling circumstances" warranting decertification and largely reprise arguments that the Court has previously considered and rejected. Defs.' Mem. at 3-12.[5] Specifically, defendants maintain that decertification is necessary because the size of the class—which they state is 28—is no longer "so numerous that joinder of all members is impracticable" under Fed. R Civ. P. 22(a)(1). Defs.' Mem. at 5-6. The Court disagrees.

Even if the Court accepts defendants' argument that the size of the potential class is 28 members,[6] decertification is nevertheless still unwarranted. Fed. R. Civ. P.

---

[5] Defendants cite no authority for this proposition; it appears, however, that if a sufficiently large number of members opt-out of a class, the class may be subject to decertification. See, e.g., Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd., 246 F.R.D. 293, 307 n.15 (D.D.C. 2007) ("The Court notes that if a significant number of direct purchasers opt out of the proposed class or it becomes apparent that the class is, in fact, substantially smaller than thirty, the Court may alter, amend, or decertify the class pursuant to Rule 23(c)(1)(C)." (citing Alvarado Partners, L.P. v. Mehta, 130 F.R.D. 673, 675 (D. Colo. 1990)); Lubin v. Sybedon Corp., 688 F. Supp. 1425, 1460 (S.D. Cal. 1988) (noting, in dicta, that "if too many class members exercised their opt-out right, the court could decertify the class at that time"); see also 1 Herbert B. Newberg, Newberg on Class Actions: A Manual for Group Litigation at Federal and State Levels § 3.12 ("[A] court always has the option to decertify the class if it is later found that the class does not in fact meet the numerosity requirement.").

[6] The parties cavil over the size of the class; plaintiffs state that 43 members remain in the class, see Wisniewski Decl. ¶ 8, while defendants state that "the class . . . members remaining aggregate only 28," Defs.' Mem. ¶ 12. Defendants also appear to contend that the number of class members is actually only 5, id., but defendants' calculation leaves out the named plaintiffs and members who have neither opted-out of the class nor signed releases but instead who merely elected not to join the FLSA collective action.

23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." The Court has broad discretion to determine whether joinder of all members is impracticable, and in making its determination, must take into account more than simply the number of members. See, e.g., Gen. Tel. Co. of the N.W. v. Equal Emp't Opportunity Comm'n, 446 U.S. 318, 330, 100 S. Ct. 1698, 64 L. Ed. 2d 319 (1980) (numerosity requirement "imposes no absolute limitations," but instead "requires examination of the specific facts of each case" and noting in dicta that "[w]hen judged by the size of the putative class in various cases in which certification has been denied, [15 class members] would be too small to meet the numerosity requirement"). It is true that courts will generally find that the "'numerosity' requirement has been satisfied when the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer." Ansari v. N.Y. Univ., 179 F.R.D. 112, 114 (S.D.N.Y. 1998) (citations omitted); see also Newberg § 3.12.[7]

---

Defendants have no legal or factual basis on which to omit these individuals from the class. The named plaintiffs—the class representatives—are obviously members of the class. Fed. R. Civ. P. 23(a) ("One or more members of a class may sue or be sued as representative parties on behalf of all members if . . . ."); Falcon, 457 U.S. 147 at 156 ("[W]e have repeatedly held that a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." (internal quotation marks and citations omitted)). So too are the members who elected not to join the FLSA collective action. The Court cannot assume that because these individuals chose not to opt-in to the FLSA collective action, they also desired to opt-out of the class action. Indeed, some of these individuals may not have opted-in to the collective action simply because they worked for Capala Bros. before January 15, 2006 and thus had no FLSA claim. See Notice of Class Action at 2 ("[I]f you worked for Defendants during any time between January 15, 2006 and the present, federal law provides that you may be able to collect an additional 100% of your damages, . . . .").

[7] In this Circuit, numerosity is generally presumed when the proposed class would have at least 40 members. Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).

6

This Circuit has stressed, however, that "[d]etermination of practicability depends on all the circumstances surrounding a case, not on mere numbers." Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993). Accordingly, the relevant considerations a court may consider include: (1) judicial economy arising from the avoidance of a multiplicity of actions; (2) geographic dispersion of class members; (3) financial resources of class members; (4) the ability of claimants to institute individual suits; and (5) requests for prospective injunctive relief which would involve future class members. Id. at 936 (citations omitted); see also Odom v. Hazen Transport, Inc., 275 F.R.D. 400, 407 (W.D.N.Y. 2011) (certifying class of 16 truckers in FLSA action where members lacked financial resources to bring suit and, in light of the small recoveries that many of them could reasonably expect, it was unlikely that they would choose to bear the costs of individual lawsuits); Frank v. Eastman Kodak Co., 228 F.R.D. 174, 181 (W.D.N.Y. 2005) (certifying class of 28 employees in FLSA action where small potential recoveries by plaintiffs made individual suits unlikely); Meyer v. Stevenson, Bishop, McCredie, Inc., No. 74 Civ. 5274, 1976 WL 788, at *2-3 (S.D.N.Y. May 11, 1976) (certifying class of 30).

The Court previously considered a number of these factors in its May 5, 2009 decision and concluded that notwithstanding the "class members are not dispersed across a wide geographic area, these factors on balance suggest that joinder would be impracticable." Gortat II, 257 F.R.D. at 363. The same is true today. "[T]he Court infers, as it may, that many if not most of the purported class members are persons with inadequate resources to exercise their rights by prosecuting their own claims." Id. (citing Cortigiano v. Oceanview Manor Home for Adults, 227 F.R.D. 194, 203 (E.D.N.Y.

7

2005).[8]  Indeed, the class members are immigrant laborers who speak little English.  These individuals lack not only the financial resources to individually bring actions in federal court but also the incentive to do so in light of the relatively small recoveries many of them can reasonably expect to receive.[9]  See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 617, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." (citation and internal quotation marks omitted)); In re Am. Exp. Merchants' Litig., 667 F.3d 204, 214 (2d Cir. 2012) ("Supreme Court precedent recognizes that the class action device is the only economically rational alternative when a large group of individuals or entities has suffered an alleged wrong, but the damages due to any single individual or entity are too small to justify bringing an individual action.").  Without the benefit of class representation, it is thus unlikely they would be willing or able to incur the costs and hardships involved with initiating separate litigations.  See Odom, 275 F.R.D. at 407 (certifying class of 16 truckers in FLSA action and noting that "[t]he small recoveries that many of the class members could reasonably expect to recover even if they prevailed on the merits makes it unlikely that, absent the benefit of class representation,

---

[8] In Cortigiano, this Court concluded on a motion for class certification that joinder was impracticable, among other reasons, because the class members were disabled, and had no "means to exercise their rights because of inadequate resources to prosecute their own claims." Cortigiano, 227 F.R.D. at 204-05.

[9] Indeed, many of the class members only worked for Capala Bros. for a relatively short period of time.  See Defs.' Mem. Ex. A (listing certain Capala Bros.' employees, their hire dates and the dates of their last checks).

8

they would choose to bear the costs of individual lawsuits"). Judicial economy also continues to counsel against decertification. See Frank, 228 F.R.D. at 181 ("'While 25 is a small number . . . , it is a large number when compared to a single unit. I see no necessity for encumbering the judicial process with 25 lawsuits, if one will do.'" (quoting Phil. Elec. Co. v. Anaconda Am. Brass Co., 43 F.R.D. 452, 463 (E.D. Pa. 1968)).

One additional factor weighs against decertification: the stage of the litigation. The information giving rise to defendants' motion—the opt-outs and signing of releases by class members—has been in defendants' possession for well over a year. It was nevertheless only until after the Court scheduled its final pre-trial conference and shortly before the Court set a trial date of May 7, 2012, that defendants on January 19, 2012 made their motion for class decertification. Such an 11th hour motion is of the sort that, if granted, would prejudice members of the class who have not taken independent steps to protect their rights precisely because they were members of the class. See Woe, 729 F.2d at 107 (abuse of discretion for district court to decertify class at late juncture in light of possible prejudice to class members); cf. Doe, 192 F.R.D. at 137 (decertification motion granted, among other reasons, where litigation remained in "early stages" before class notification sent and "any resulting prejudice to the parties arising from decertification would be minimal").

Defendants' motion to decertify the class is thus denied.

## B. Judgment for Attorney's Fees is Denied Without Prejudice

On June 15, 2011 Judge Gold ordered plaintiffs' counsel to "compensate defendants for attorney's fees and time incurred attending [a] conference" before Judge Gold on that date after plaintiffs' counsel failed to appear. Defendants now seek to have

the Court enter judgment against plaintiffs and their counsel for these fees.[10] Defendants' application is denied without prejudice to renewal as defendants have failed to provide the Court with an adequate basis to determine the reasonableness of the requested fees. Any future request must contain documentation in support of the fees claimed, including contemporaneous time records. See N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983).

### III.  CONCLUSION

For all of the foregoing reasons, defendants' motion to decertify the class is hereby DENIED and their motion for entry of judgment on attorney's fees and costs is hereby DENIED without prejudice to renewal.

Dated:      Brooklyn, New York
            April 3, 2012

                                         /s/
                                    I. Leo Glasser
                                    Senior United States District Judge

---

[10] Defendants do not state the total amount they seek. They include a bill sent to plaintiffs' counsel for $891.00, Defs.' Mem. Ex. F, but also appear to contend that they are entitled to additional compensation for having to research "cases referred to by plaintiff's [sic] legal counsel in the dispute of such costs and sanctions, for an additional hour." Defs.' Mem. at 14. Defendants provide no legal or factual basis for this additional compensation.