ROBERT WISNIEWSKI, P.C.
Attorneys for Plaintiffs and the Class
225 Broadway, Suite 1020
New York, New York 10007
(212) 267-2101

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

MIROSLAW GORTAT, HENRYK BIENKOWSKI,
MIROSLAW FILIPKOWSKI, ARTUR LAPINSKI,
JAN SWALTEK, EDMUND KISIELEWICZ, ARTUR
KOSIOREK and HENRYK STOKLOSA on behalf of
themselves and on behalf of all others similarly situated

                                Plaintiffs,        **Docket No.:**
                                                   **1:07-cv-03629-ILG-SMG**

    – against –

CAPALA BROTHERS, INC. PAWEL CAPALA and ROBERT
CAPALA,

                                Defendants.

-------------------------------------------------------------------------X

**PLAINTIFFS' PRETRIAL BRIEF**

-1-

**PLAINTIFFS' CASE-IN-CHIEF**

**I. Statement of Facts**

A.     <u>Defendants' Employees' Work</u>

This is an action by Plaintiffs for money damages for unpaid wages and unpaid overtime wages on behalf of themselves and other employees who are similarly situated under the Fair Labor Standards Act, the Portal-to-Portal Act, the New York Minimum Wage Act, The New York Labor Law and the relevant wage orders promulgated thereunder. Plaintiffs are workers and tradesmen who were employed by Capala Brothers, Inc. (the "<u>Corporate Defendant</u>") as roofers, bricklayers, masons, building laborers, drivers, foremen and other manual workers with the same or similar duties, who regularly worked over forty (40) hours per week, but were not compensated properly for all the hours they worked and for overtime hours.

The Corporate Defendant provides construction services in the City of New York and its environs. The Individual Defendants, Pawel Capala and Robert Capala, are the officers, shareholders, managers and/or majority owners of the Corporate Defendant and are being sued as "employers" of Plaintiffs within the meaning of the FLSA and New York Labor Law. This Court has already found that the Individual Defendants are joint and severally liable to Plaintiffs. (Docket Entry 131).

In April 2010, this Court certified the following class: "All persons employed by Defendants as roofers, bricklayers, masons, building laborers, drivers, foremen and other manual workers with the same or similar duties during the six years immediately preceding the initiation of this action until April 9, 2012 who are asserting claims under the New York State Labor Law for unpaid minimum wages or overtime premium wages." (DE 196).

Plaintiffs have alleged through their declarations, deposition testimony, and pleadings and will allege at trial that they and the class were not paid for all the hours they worked either at their regular rate or at the proper overtime rate of 150% of their regular rate of pay. Plaintiffs Lapinski, Gortat, Bienkowski and Filipkowski were, at various times during their employment, foremen and Plaintiffs Kosiorek, Stoklosa, Kisielewicz, and Truszkowski were regular workers. Each of the Plaintiffs, as well as the class, agreed to work for a specific hourly rate at the beginning of their employment in exchange for working for Defendants and periodically received raises.

Defendants required Plaintiffs and the class to appear, ready for work, at Defendants' company shop in Greenpoint, Brooklyn each day at 7:00 am. That these were the requirements was confirmed by "rules and regulations" issued by Defendants to their employees in Polish. ***See***, **Plaintiffs' Exhibit 13**. Plaintiffs and the class then loaded the company vans with tools and materials and received instructions from either Robert Capala or Pawel Capala regarding their work that day. Plaintiffs and the class then left to go work on the job site, and on the way stopped at supply stores such as Extech where they purchased supplies, often before 7:30 am. ***See***, **Defendants' Exhibit 49**, showing purchases of supplies from ExTech before 7:30 am. Plaintiffs and the class then worked until 4:00 pm, with a thirty (30) minute unpaid lunch break.

At 4:00 pm the regular workers were allowed to go home either on their own or by riding the company vans or finding their own means of transportation. Defendants required their foremen, however, to return to the company shop after finishing work on the job site to return the vans and to issue reports regarding the day's work. As confirmed by sworn statements prepared by Robert Capala and signed by Plaintiffs Bienkowski and Filipkowski during their employment

and prior to this lawsuit, these meetings were daily and mandatory for each foreman. *See*, Plaintiffs' **Exhibit 12**.

Aside from the foremen, Plaintiffs and the class each worked Monday through Friday from 7:00 am until 4:00 pm with a half an hour lunch break. These employees worked eight (8) and a half hours a day or forty-two and a half (42.5) hours a week. Foremen, however, worked from 7:00 am until 5:30 pm with the same half an hour lunch break, or ten (10) hours a day and fifty (50) hours a week. Nevertheless, Defendants never paid any of their employees for the work they performed in excess of forty (40) hours a week and certainly never paid their employees 150% of their regular rate for their overtime hours.

Despite deposition testimony from the Plaintiffs and one non-party foreman, as well as documentary evidence, to the contrary, Defendants have claimed throughout this litigation that their employees began work each day at 7:30 am and did not perform any compensatory work prior to that time. Further ignoring testimony by party and at least one non-party witnesses, Defendants have also denied that they required their foreman to return to the company shop at the end of the day.

B.     Defendants' Record-Keeping

Defendants paid their employees on a weekly basis by check, which the employees received at the company shop on Friday. Defendants also required their foremen to keep track of their workers' hours on the job site and to submit those hours to Defendants via handwritten notes that were allegedly imported into the Quickbooks software in order to create timesheets. Defendants retained records of these paystubs and timesheet (although not the foremen's hand-written notes) but their payroll records never recorded any of the work that Plaintiffs and the

-4-

class performed in the company shop each morning, or, where applicable, after work on the job site.

      C.    <u>Defendants' Knowledge of Their Obligations as Employers</u>

Although the Individual Defendants testified extensively about their policies and practices in running the Corporate Defendants, they never testified that they took any affirmative action to ascertain their legal obligations under the FLSA or New York Labor Law.

## 2. Argument

### A.    *Plaintiffs' Substantive Claims Under the FLSA and New York State Labor Law*

The FLSA provides for mandatory minimum wage as well as overtime pay at time and one-half an employee's regular rate for all hours worked in excess of forty (40) per week, subject to certain exemptions, which are not relevant to this case.  *See*, *29 U.S.C. §§ 206, 207 and 213.* A private right of action to collect unpaid overtime wages is authorized by *29 U.S.C. § 216 (b)*, which also provides for a "collective" action procedure, as opposed to the class action procedure set forth in Federal Rule of Civil Procedure 23. Under a collective action procedure, "similarly situated" employees are entitled to join in the named plaintiffs' wage claims by "opting-in" to the action, or signing and filing a consent to joinder with the court. *See*, *29 U.S.C. § 216 (b).*

The FLSA also provides for liquidated damages of double the amount of any unpaid wages, and reasonable attorney's fees. *Id*. The statute of limitations under the FLSA is two years from accrual of the claim, but three years for willful violations. *See*, *29 U.S.C. § 255 (a).*

The FLSA works in conjunction with state wage laws, and specifically authorizes the promulgation of higher minimum wages by state or municipal laws, and allows for the application of such state and municipal laws, to the extent that they do not contradict the FLSA.

*See*, *29 U.S.C. §218(a)*.

New York State law also provides for mandatory minimum wage and overtime pay. Section 652 of the Labor Law sets forth a minimum wage for employees and authorizes the Commissioner of Labor to promulgate minimum wage orders which are binding upon employers, independent of any employment agreements.  As relevant here, the minimum wage orders issued under *12 NYCRR 142 et seq.* apply. New York employees in the construction industry are covered by the minimum wage rates set forth at *12 NYCRR §142-2.1,* whilst overtime rates of time and one-half of an employee's regular rate are mandated by *12 NYCRR §142-2.2*. Labor Law §663 authorizes a private right of action for unpaid minimum and overtime wages and sets a six-year statute of limitations on such actions. During the time period of this case, between 2001 and 2007, the New York Labor Law also provided for liquidated damages in the amount of twenty-five percent of the unpaid wages if the violations were willful. The statute allows for reasonable attorneys' fees and costs to the prevailing Plaintiff.

Claims for unpaid overtime wages pursuant to the New York minimum wage orders are analogous to overtime wage claims under the FLSA.  *See*, *Zheng v. Liberty Apparel Co. Inc*., 355 F.3d 61, 78 (2d Cir. 2003).  In fact, the pertinent state law provision expressly adopts the same exemptions from mandatory overtime pay as set forth in the FLSA at **29 U.S.C. §§207** and 213.  *See*, *12 NYCRR §142-2.2*. The only significant substantive differences between the federal and state law claims are the liquidated damages provisions (double damages for FLSA, 25% for state during the operative period of this case) and the statutes of limitations (2 or 3 years for FLSA depending on willfulness, 6 years for state).

Unlike FLSA claims, state law unpaid wages and overtime claims are appropriate for a

class action determination and this Court has certified a class (DE 196). After the class was certified a number of class members signed releases or opted-out of the class, which the Court found effectuated their removal from the class. (DE 250). Pursuant to ***Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.***, 130 S.Ct. 1431, 176 L.Ed.2d 311 (2010), this Court permitted Plaintiffs and the class to claim liquidated damages of 25% under the New York Labor Law. (DE 262).

B.     Defendants are Liable to Plaintiffs for Breach of Contract

Plaintiffs may recover for breach of contract for each regular hour worked but for which they were not paid. In order to recover for breach of contract, Plaintiffs must establish "(1) the existence of a contract between itself and [the] defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by [the] defendant; and (4) damages to the plaintiff caused by [the] defendant's breach." ***Wilk v. VIP Health Care Services, Inc.***, 2012 WL 560738 at *3 (E.D.N.Y. February 21, 2012). Plaintiffs easily satisfy each element.

Plaintiffs can easily show, and Defendants will not likely dispute, that Plaintiffs performed under the contract. In addition, if Plaintiffs show that they performed work for which they were not paid, they have shown that Defendants breached the contract and that they were damaged.

Plaintiffs also had a contract with Defendants. "The existence of a contract requires an offer, acceptance, consideration, mutual assent and intent to be bound." ***Wilk***, *supra*, 2012 WL 560738 at *3 *citing* ***Register.com, Inc. v. Verio, Inc.***, 356 F.3d 393, 427 (2d Cir. 2004). Plaintiffs will testify, and Defendants will not likely challenge, that they were offered a job by Defendants, that they accepted the job, and that both parties had the intent to be bound. In

-7-

addition, Plaintiffs' agreement to perform work in exchange for pay is adequate consideration. *Wilk*, *supra*, 2012 WL 560738 at *3 (finding that a contract by an employee to perform work in exchange for an hourly wage was supported by consideration).  As such, Plaintiffs will be able to establish a breach of contract.

      C.      <u>Defendants are Liable Under the FLSA</u>[1]

      1.      **Defendants were Plaintiffs and the Class' Employers**

Defendants have stipulated that they were Plaintiffs' employer and the Court has already held that Defendants Robert and Pawel Capala were Plaintiffs' employers.

      2.      **Defendants Are an Enterprise That Earned $500,000.00 in Annual Revenue and Had Employees That Handled Goods That Had Been or Produced Through Interstate Commerce**

The FLSA covers any "employee" who "in any work-week is engaged in commerce or in the production of goods for commerce." ***29 U.S.C. §§ 206(a), 207(a)***. An employee  is "engaged in commerce" under the meaning of the statute if "the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." ***Mitchell v. C.W. Vollmer & Co.,*** 349 U.S. 427, 429 (1955). Even if an employee is not personally "engaged in commerce" under the meaning of the FLSA, the employee may still be covered by the statute if his employer is an "enterprise engaged in commerce or in the production of goods for commerce" and has an "annual gross volume of sales made or business done [that] is not less than $500,000." ***29 U.S.C. § 203(s)(l)(A)***.

---

[1] The Court only certified a class under the New York Labor Law, so only the Plaintiffs are entitled to recover under the FLSA.

In order for Plaintiffs to succeed under the FLSA, they must show that (1) Defendants were an enterprise (2) that earned $500,000.00 in business done annually and (3) that was engaged in commerce. The Corporate Defendant qualified as an enterprise under the FLSA. The FLSA defines an enterprise as "the related activities performed by any person or persons are for a common business purpose." There is no dispute, nor can there be, that the Corporate Defendant operated as a business and that it was controlled by the Individual Defendants. As such, the Corporate Defendant is an enterprise under the FLSA. *Solis v. Cindy's Total Care, Inc.*, 2012 WL 28141 at *16 (S.D.N.Y. January 5, 2012).

Defendants have stipulated that they earned $500,000.00 in business done annually during the operative period of this lawsuit.

Defendants were also engaged in commerce. Defendants' employees handled goods that had gone through, or were produced in, interstate commerce. Plaintiff and Defendants' other employees were construction workers who performed roofing at various job sites. It is beyond cavil that the tools and materials used in performing such tasks, including hammers, nails, wrenches, and other similar tools and materials, went through interstate commerce at some point in their production. *Shim v. Millennium Group*, 2009 WL 211367 at *3 (E.D.N.Y. January 28, 2009)(Block, J.)(finding that "it is simply inconceivable that none of the . . . supplies used [by the defendant] originated outside of New York" and holding that "virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA."); *Huerta v. Victoria Bakery*, 2012 WL 1107655 at *2 (E.D.N.Y. March 30, 2012)(finding it inconceivable

that at least some of materials used by plaintiffs did not originate out of state). Plaintiffs request

that the Court take judicial notice that the tools and materials used by Defendants' employees

passed through, or originated in, interstate commerce. *Shim*, *supra*, 2009 WL 211367 at *3, n.5

(taking judicial notice that needles used by acupuncturists were not entirely manufactured within

the state of New York and passed through interstate commerce). Plaintiffs will also call Ryszard

Szczypczyk, a manager at ExTech, one of the supply stores at which Defendants' employees

purchased materials, that the materials Defendants' employees used were not entirely

manufactured in the state of New York.

> 3.      **In the Event the Court Dismisses Plaintiffs' FLSA Claim, the Court Should Exercise Jurisdiction Over Their Remaining State Law Claims**

Even if the Court were to dismiss Plaintiffs and the class' FLSA claims, Plaintiffs

respectfully request that the Court retain jurisdiction over their state law claims. This case is

ready for trial and the parties have expended significant resources preparing for trial on

Plaintiffs' claims. As such, the Court should retain jurisdiction. *Yong Kui Chen v. Wai? Cafe*

*Inc.*, 2012 WL 997004 at *1 (S.D.N.Y. March 26, 2012)(retaining jurisdiction over state law

claims).

> 4.      **Defendants Failed to Pay Plaintiffs and the Class for Each Regular and Overtime Hour They Worked at The Proper Rate**

> > i.      *Overtime Claims*

Defendants failed to Plaintiffs properly each of their hours worked. The Plaintiffs, along

with a non-party witness, each testified and will testify at trial that they worked more than forty

(40) hours a week, but were not paid for all of the hours they worked, nor at the proper overtime

rate. Plaintiffs are, therefore, entitled to recover for their unpaid overtime hours at a rate of 150%

of their regular rate. *See*, 29 U.S.C. § 207(a)(1). *See also Rodriguez v. Queens Convenience Deli Corp.*, 2011 WL 4962397 at *3 (E.D.N.Y. October 18, 2011)(Matsumoto, J.)("[p]ursuant to the FLSA, employees must be paid a minimum of one and one-half times the regular rate they are normally paid for any hours worked in excess of forty hours in a given week."). Because Defendants agreed to pay each of the Plaintiffs a specific hourly rate, their regular rate is their agreed-upon hourly rate. *Blue v. Finest Guard Services, Inc.*, 2010 WL 2927398 at *10-11 (E.D.N.Y. June 24, 2010) citing (M.J. Pollak)(holding that the contractually agreed-upon rate is the regular rate); see also, *Sobczak v. AWL Industries, Inc.*, 540 F.Supp.2d 354 (E.D.N.Y. 2007)(Cogan, J.).

    In determining whether Plaintiffs were improperly compensated under the FLSA, a court must first consider the number of compensable hours each Plaintiff worked each week. The statutory terms "hours worked" has been interpreted to include "[a]ll time during which an employee is required to be on duty or to be in the employers premises or at a prescribed workplace []" *29 C.F.R. § 778.223*. In order for a court to determine whether an employee received adequate compensation under the FLSA, a court must first determine the "regular rate" of pay that the employee received, which has been defined as "the hourly rate actually paid the employee for the normal, non-overtime work-week for which he is employed." *29 C.F.R. §778.108*. And "[o]nce the parties have decided upon the amount of wages and the mode of payment the determination of the regular rate becomes a matter of mathematical computation." *Id. see also  Walling v. Youngerman- Reynolds Hardwood Co.*, 325 U.S. 419, 424-25, 65 S.Ct. 1242, 1245, 89 L.Ed. 1705. (1945)

ii.       *Shop and Travel Time*

The crux of Plaintiffs and the Class' claims for unpaid hours and overtime hours are the hours they spent working at the company shop each morning and then traveling to the job site. For the Plaintiff foremen, their overtime hours include the time they spent returning to the job site in order to return the company vans and to report to the Individual Defendants. This Court has already found that Plaintiffs are entitled to recover for this time assuming they can convince a trier of fact that their workday began at the company shop in the morning and not at the jobsite because Defendants required them to appear at the shop to perform work. DE 131 at pp. 8-11 citing 29 C.F.R. § 785.38.

Because, as is argued infra at p. 15, Plaintiffs and the class worked off-the-clock at Defendants' behest and with their knowledge, Plaintiffs and the class would be entitled to the lesser burden of proof enunciated in ***Anderson v. Mt. Clemens Pottery Co.***, 328 U.S. 680, 686–87, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). ***Kuebel v. Black & Decker Inc.***, 643 F.3d 352, 361-65 (2nd Cir. 2011)(holding that an employee alleging "off-the-clock" work is entitled to the lower standard under ***Anderson*** if he can establish that he worked off-the-clock without pay); ***Robinson v. Food Service of Belton, Inc.***, 415 F.Supp.2d 1232, 1234-35 (D.Kan. 2005). This burden, which is not onerous, merely requires the employee to give an approximation of his hours worked and the amounts he was paid, which can be based entirely on his own recollection. ***Id.*** at 362, 364. While the class representatives would need to convince the jury that they worked overtime off-the-clock, the evidence in this case of such work is practically overwhelming.

iii.       *Gap Time*

Although Plaintiffs regularly worked forty (40) hours on the job site, on some occasions,

-12-

due to inclement weather or the need to take a sick or personal day, Plaintiffs worked less than forty (40) hours on the job site in a given week, but still worked more than forty (40) hours once their shop and travel time are included. Plaintiffs are entitled to recover for the hours they worked before they reached forty (40) hours at their regular rate. *See*, 29 C.F.R. § 778.315 ("...overtime work under the Act cannot be said to have been paid to an employee unless all the straight time compensation due him for the nonovertime hours under his contract (express or implied) or under any applicable statute has been paid"), *Yourman v. Dinkins*, 865 F.Supp.154, 165-66 (S.D.N.Y.1994).

### iv.    *Compensable Breaks*

It was conceded by Plaintiffs during their depositions that they sometimes took breaks aside from their lunch break. This Court has already decided that a short break that lasts from five (5) to twenty (20) minutes does not constitute a meal period and is compensable under the FLSA. DE 131, at pp. 12 n. 5 relying on *29 C.F.R. § 785.19*.

### 5.    Employment Records

Although Defendants kept records, they failed to keep proper records of Plaintiffs' off-the-clock work and Plaintiffs are entitled to a lower standard under *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). Under Anderson, when an employer fails to keep proper records, "an employee need only present sufficient evidence to show the amount and extent of the uncompensated work as a matter of just and reasonable inference." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) *citing Anderson*, *supra*, 328 U.S. 687-88. This standard is not high and the employee may meet his burden simply based on estimates from his recollection. *Id.* at 362. At bar, because Defendants failed to record

Plaintiffs' shop and travel time in their records, Plaintiffs are entitled to a lower standard of proof under *Anderson*. *Id.* This is true even though the foremen Plaintiffs themselves filled out the time records. *Id.* at 363 (holding that the fact that plaintiff himself failed to include the off-the-clock work in his time records is irrelevant).

As a result, employees need only "submit sufficient evidence from which violations of the Act and the amount of an award may be reasonably inferred." *Reich v. Southern New Eng. Telcoms. Corp.*, 121 F.3d 58,66 (2d Cir. 1997) (*quoting* *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1296-97 (3d Cir. 1991)). They "need not present testimony from each underpaid employee; rather, it is well-established that [they] may present the testimony of a representative sample of employees as part of [their] proof of the prima facie case under the FLSA." *Reich*, *supra*, 121 F.3d at 67; *see also Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 331-34 (S.D.N.Y 2005); *Moon v. Kwon,* 248 F. Supp. 2d 201, 219 (S.D.N.Y. 2002). The plaintiff is able to meet this lower burden under the statute "by relying on his recollection alone." *Doo Nam Yang,* 427 F. Supp.2d at 335-36 (citing cases). Similar to the FLSA, "in absence of adequate records ," New York law also "placed the burden on the employer to show the employee was properly compensated." *Id.* at 337 n.156 (*citing N.Y. Lab. L. § 196-a*).

### 6.    Compensatory and Liquidated Damages

Since Defendants failed to pay Plaintiffs for each overtime hours they worked, Plaintiffs are entitled to recover their compensatory damages. As stated above, that essentially means that Plaintiffs can recover for each overtime hour they worked at a rate of 150% of their regular rate.

In addition, under the FLSA, an employee who recovers under the FLSA is entitled to liquidated damages of 100% unless the Defendants can show they acted in good faith. *Gurung v.*

*Malhotra*, 2012 WL 983520 at *7 (S.D.N.Y. March 16, 2012). The FLSA is a remedial statute

that provides for liquidated damages in order to compensate employees for the often obscure and

hard-to-prove consequences of having been wrongfully denied pay, rather than to punish

employers. ***Reich v. So. New England Telecomms. Corp.***, 121 F.3d 58, 71 (2d Cir. 1997)

Although the award of liquidated damages is within the discretion of the courts, the employer

bears a "difficult" burden of defending against an award, "with double damages [under the

FLSA] being the norm and single damages the exception." ***Herman v. RSR Sec. Servcs. Ltd.***,

172 F.3d 132, 142 (2d Cir. 1999) (*quotin*g *Reich*, 121 F.3d at 71). In order to show good faith, an

employer must have undertaken steps to learn his obligations under the FLSA and to comply

with them. ***Barfield v. New York City Health and Hospitals Corp.***, 537 F.3d 132, 150 (2d Cir.

2008). At bar, Defendants cannot show that they acted in good faith as there is no evidence in the

record that Defendants attempted to learn their obligations under the FLSA.

### 7. Willfulness and the Extended Statute of Limitations under the FLSA and Award of Liquidated Damages under the New York Labor Law

Defendants willfully did not pay Plaintiffs properly for their overtime hours. Under the

FLSA, an employer is deemed to have willfully violated the FLSA when he "either knew or

showed reckless disregard for the matter of whether its conduct was prohibited by the Act."

***Wong v. Hunda Glass Corp.***, 2010 WL 2541698 at *2 (S.D.N.Y. June 23, 2010).

A finding that an employer's violations were willful extends the statute of limitations

under the FLSA from two to three years and allows an employee to recover liquidated damages

of 25% under the New York Labor Law. A violation is "willful" if the employer "knows *or has*

*reason to know* that his business is subject to provisions of [the FLSA], and his practice does not

-15-

conform to requirements of [the] Act." *Soler v. G & U, Inc.*, 628 F.Supp. 720 (S.D.N.Y. 1986) (emphasis added); *Dingwell v. Friedman Fisher Assoc., P.C.*, 3 F. Supp. 2d 215, 223 (N.D.N.Y. 1998) (awarding employee liquidated damages where employer failed to take "active steps to ensure compliance with FLSA").

> **C.**     **Plaintiffs and the Class May Recover Under the New York Labor Law**
>
> **1.**     ***Differences Between the FLSA and New York Labor Law***

In order for Plaintiffs and the class to recover under the New York Labor Law, they must establish each of the elements as under the FLSA, except that they do not need to establish that the Defendants are an enterprise operating in commerce. *See*, *Yong*, *supra*, 2012 WL 997004 at *1. Indeed, the FLSA and New York Labor Law are interpreted coextensively, such that the foregoing analysis applies to Plaintiffs and the class' claims under the New York Labor Law. *Lewis v. Alert Ambulette Serv. Corp.*, 2012 WL 170049 (E.D.N.Y. Jan.19, 2012)(Weinstein, J.)("New York State labor regulations substantially incorporate and adopt the FLSA's overtime regulations. As such, the same elements are required to prove plaintiffs' claim under New York labor law as under federal law."); *Khan v. IBI Armored Servs., Inc.*, 474 F.Supp.2d 448, 451 n. 1 (E.D.N.Y.2007)(Vitaliano, J.)("New York's overtime law incorporates most of the FLSA's substantive provisions and exemptions, and a court's analysis under federal and state law will, in this and most cases, be the same.") Nevertheless, there are some relevant differences that must be addressed.

First, unlike the FLSA, the New York Labor Law allows employees to recover for each regular hour worked at their regular rate, even for non-gap time hours. *Wolman v. Catholic Health System of Long Island, Inc.*, 2012 WL 566255 at *14, n. 9 (E.D.N.Y. February 16,

2012)(Seybert, J.)(holding that under the New York Labor Law an employee must get paid for each hour he worked at his regular rate) *citing* ***Hintergerger v. Catholic Health System***, 2012 WL 125152 at *5 (W.D.N.Y. January 17, 2012). Under the New York Labor Law, then, Plaintiffs and the class may recover for each hour they worked at their regular rate and for each overtime hour they worked at their overtime rate.

Second, during the operative period of the complaint, the New York Labor Law allowed liquidated damages of 25% if the employer acted "willfully." Under the New York Labor Law, "an employer acts 'willfully' if it 'knowingly, deliberately, or voluntarily disregards its obligation to pay wages." ***Moon v. Kwon et al.***, 248 F.Supp.2d 201, 235 (S.D.N.Y. Sept. 9, 2002). The Second Circuit has recognized "that the NYLL's willfulness standard does not appreciably differ from the FLSA's willfulness standard." ***Kuebel***, *supra*, 643 F.3d at 366 (2d Cir. 2011). At least one court has found that a failure to show a good faith attempt to comply with the New York Labor Law renders the employer's conduct willful. ***Benavidez v. Plaza Mexico Inc.***, 2012 WL 500428 at *8 (S.D.N.Y. February 18, 2012). The record is bare of any attempts by the Defendants to ascertain their legal obligations under the FLSA or New York Labor Law and, as such, Plaintiffs and the class can recover liquidated damages under the New York Labor Law.

Further, some courts, including this one, have allowed Plaintiffs to recover liquidated damages under the FLSA and New York Labor Law for the same periods, Plaintiffs only are requesting such an award and are seeking liquidated damages under the FLSA and New York Labor Law for those periods. ***See***, ***Callier v. Superior Bldg. Services, Inc.***, 2011 WL 222458 at *1 (E.D.N.Y. January 21, 2011)(Glasser, J.) *adopting R&R in* ***Callier v. Superior Bldg. Services, Inc.***, 2010 WL 5625906 at *4 (E.D.N.Y. December 22, 2010)(Azrack, J.)

2.      ***Plaintiffs Bienkowski, Swaltek, Gortat and Lapinski Can Recover Their Wages Not Paid***

Plaintiffs Bienkowski, Swaltek, and Gortat can recover for their last two weeks of pay and Plaintiff Lapinski can recover for his last week of pay under New York Labor Law §191. Under New York Labor Law, a "clerical and other worker shall be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer." New York Labor Law §191 allows an employee to sue for wages not timely paid. ***Urtubia v. B.A. Victory Corp.***, 2012 WL 753760 at *4 (S.D.N.Y. March 8, 2012). It is undisputed that Defendants failed to pay these wages, although they claim that they will make these payments if these Plaintiffs return the tools they allegedly stole. As such, these Plaintiffs are entitled to these wages.

*3.      Attorneys' Fees and Costs*

Both the FLSA (***Section 216(b)***) and the New York Labor law (***Section 198.1-a***) allow successful plaintiffs to recover reasonable attorneys' fees and costs. Thus, Plaintiffs respectfully request that, upon being the prevailing party, this Court allow Plaintiffs to submit a fee application.

## II. DEFENDANTS' COUNTERCLAIMS

### 1. Statement of Facts

For the facts underlying the Defendants' counterclaims, the Court is respectfully directed to Plaintiffs' memorandum of law in support of their motion for summary judgment on Defendants' remaining counterclaims. (DE 243). A very brief history will be provided here.

Defendants allege two distinct counterclaims. Their first counterclaim alleges that

Filipkowski, Lapinski and Gortat failed to return tools that they allegedly borrowed when they started employment. These Plaintiffs have denied this claim throughout this litigation and will deny it at trial. Robert Capala and Piotr Capala, the Individual Defendants' brother and a foreman, claim that these Plaintiffs never returned their tools. Robert Capala based his testimony entirely on the fact that he did not make a notation on a document that these Plaintiffs signed when they started working for Defendants, which he testified he usually does when an employee returns his tools.

The second counterclaim is for tortious inference with at-will employees. Defendants allege that Plaintiffs Swaltek, Gortat, Lapinski, Filipkowski, and Bienkowski engaged in a conspiracy to harm Defendants. First, they claim that these Plaintiffs threatened Defendants' employees with physical harm if they testify in this case. Second, they claim that these Plaintiffs imposed economic pressure on Defendants by calling their employees and persuading them to quit. Third, they claim that these Plaintiffs acted with the sole motivation to harm Defendants.

Defendants claim that these actions caused Defendants harm. They did so by causing Defendants' employees to fear for their job, which lowered morale and caused Defendants' employees to work more slowly. That, accordingly to Defendants, prevented Defendants from taking on new work.

As damages, Defendants produced a spreadsheet that is Plaintiffs' Exhibit 36. This spreadsheet lists three categories of damages. The first category is a list of thirteen projects, later reduced to nine projects, from which Defendants claim they received offers to perform work, but had to turn down the work. The second category reflects damage they incurred by having to hire new employees to replace Plaintiffs, employees who they claim were poor workers. The third

category is for the time Robert or Pawel Capala had to spend driving their employees to the job sites, a need that arose because Plaintiffs no longer worked for Defendants. Defendants also stipulated, through their counsel, that their damages were limited to the year 2007 only.

## 2. Argument

### A.    *Defendants Will Not be Able to Establish Conversion*

Defendants will not be able to establish that Plaintiffs Gortat, Lapinski and Bienkowski converted Defendants' tools. As this Court has noted, "the tort of conversion is established when one who owns and has the right to possession of personal property proves that the property is in the unauthorized possession of another who has acted to exclude the rights of the owner." DE 67, at pp. . Defendants have the burden of proof here and these Plaintiffs will each testify that they returned their tools to Defendants. Defendants self-serving and conclusory testimony will not satisfy their burden of proof.

### B.    Defendants Will not be Able to Establish that Plaintiffs' Interfered with their employees

The jury will likely find for Plaintiffs Gortat, Bienkowski, Swaltek, Filipkowski, and Bienkowski on Defendants' third counterclaim as well. To succeed on this claim, Defendants must show (a) that they had a business relationship with a third party ( i.e., their employees); (b) that these Plaintiffs interfered with the relationship; (c) these Plaintiffs acted for a wrongful purpose or used dishonest, unfair, or improper means; (d) the interference caused injury to the relationship; and (e) damages to Defendants. DE 262, at pp. 7-8.

As this Court has noted,

"Using wrongful or improper means generally amounts to conduct that amount[s] to a crime or an independent tort, including physical violence, fraud or

misrepresentation, civil suits and criminal prosecutions, and some degrees of
economic pressure. Threats also constitute wrongful or improper means.
Moreover, as the parties recognize, Carvel intimates that "extreme and unfair"
economic pressure may constitute "wrongful means" satisfying the third element
of tortious interference, but such pressure would only suffice here if its "sole
purpose" was to injure defendants.

Similarly, acting with a wrongful purpose means engaging in conduct for the sole
purpose of inflicting intentional harm on the defendants. Actions motivated by
economic self-interest are not actions taken with a wrongful purpose."
DE 262 p. 8

Defendants concededly will be able to show that they had a business relationship with
their employees. They will not be able to show any of the other elements. First, each of these
Plaintiffs have denied threatening Defendants' employees in any way, or pressuring them to quit
their jobs. If the jury believes the Plaintiffs, then Defendants cannot satisfy the second or third
element because Plaintiffs did not interfere with Defendants' at-will employees and certainly did
not do so with wrongful purpose or via wrongful means. Defendants will also have difficult
showing that their employees' morale was lower and that, as a result, their employees worked
more slowly.

But most importantly, Defendants will have significant difficulties showing that they
were damaged by any of these Plaintiffs' alleged actions. Their damages are limited entirely to
projects they were unable to work on, reimbursement for wages paid to inadequate workers and
their supervisors, and the time Robert and Pawel Capala spent driving to the job site.

Each category will be taken in turn.[2] As explained in Plaintiffs' memorandum of
law in support of summary judgment on Defendants' counterclaims, most of the project
managers and project owners admitted that they either never offered any job to Defendants or the

---

[2] In its order on Plaintiffs' motion, the Court explicitly did not address damages.

project never went forward irrespective of Defendants' alleged refusal to take on the job. DE 243, at pp. 11-13. But even leaving that aside, Defendants must show that they were harmed by Plaintiffs' actions.

Defendants cannot do so. All of Defendants' alleged damage most likely arose from Plaintiffs' having quit Defendants' employ or having been fired, rather than as a result of any interference. In dismissing Defendants' counterclaim for Loss of Revenue Due to Unexpected Cessation of Employment Contracts, this Court found that Defendants were not entitled to damages for Plaintiffs' quitting. Of the five (5) relevant Plaintiffs, four of them were Defendants' foremen (Bienkowski, Filipkowski, Lapinski and Gortat) and one was a long-tenured worker (Swaltek). The Plaintiff foremen essentially made up all of Defendants' foremen. It is obvious that if four foremen cease work for small construction company at around the same time, the company is going to have difficulty taking on new work or completing old work on time. As such, it is much more likely that Defendants' allegedly inability to take on these new projects was a result of their inability to find qualified workers.

Defendants' second category, which are their wages to unqualified workers and their supervisors, and their third category, which is Robert Capala and Pawel Capala's need to travel to the job site to transport workers, are obviously the direct result of the foremen Plaintiffs no longer working for them. Indeed, the mere fact that these foremen no longer worked for Defendants required Defendants to hire new employees, which necessitated a trial-and-error period, and to transport their employees to the job site, since none of Defendants' remaining employees had driver's licenses. Plaintiffs' alleged interference had nothing to do with this.

Accordingly, the jury will likely find in Plaintiffs' favor on this counterclaim.

## III.    CONCLUSION

For this Court's convenience, Plaintiffs respectfully submit the foregoing memorandum

of law in support of Plaintiffs' claims.

Dated: New York, NY
      April 23, 2012

                                      Respectfully submitted,

                                       By:_____/s/_____
                                         Robert Wisniewski (RW- 5308)
                                       Attorneys for Plaintiffs and the Class
                                       225 Broadway - Suite 1020
                                       New York, New York 10007