**ROBERT WISNIEWSKI P.C.**
ATTORNEYS-AT-LAW

225 BROADWAY, SUITE 1020 • NEW YORK, NY 10007
TEL: (212) 267-2101 • FAX: (212) 587-8115
WEBSITE: www.rwapc.com

April 22, 2013

Hon. I. Leo Glasser
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201
    *VIA ECF*

Re: Gortat et al. v. Capala Brothers, Inc., et al.
<u>EDNY Docket No.: 07 cv 3629(ILG)(SMG)</u>

Dear Judge Glasser,

    I represent Plaintiffs in the above-captioned matter. Please allow this letter to constitute Plaintiffs' briefing on the issue of admissibility of statements drafted by Defendant Robert Capala and signed by two Plaintiffs as agents of Defendants and submitted in an unemployment insurance matter of another employee, as well as the application of New York Labor Law Section 537 to those statements. Plaintiffs argue that the statements should be admitted in their entirety, but have redacted them to address any lingering concerns the Court may have regarding any privacy issues. We attach the proposed redacted versions of the statements for the Court's review as Exhibit 1.

**1.**    **Statement of Relevant Facts:**

    In 2005, two years prior to the commencement of this action, Defendant Robert Capala caused two statements to be prepared on their company letterhead for signature by two of their employees, Messrs. Bienkowski and Filipkowski (who are now Plaintiffs in this action). The statements were submitted by Defendants to dispute an application for unemployment insurance benefits by another employee, who is not a plaintiff in this action but is a member of the class. The employee, Mr. Golak, was discharged by Defendants for allegedly being under the influence of alcohol on the job, and the Capala brothers sought to deny him unemployment benefits on that basis.

    The importance of the statements for this case is that they refer to the "**meeting that is held every working day in the company's office after work and is obligatory for every supervisor.**" These are precisely the daily meetings that several of the Plaintiff foremen claim they attended but were not paid for. As Your Honor has pointed out several times, this is one of the primary factual issues in this case for unpaid wages.

Defendants have testified that such meetings never took place regularly, nor that they were required. But the statements prepared by Defendants themselves, or, at a minimum, submitted on their behalf, demonstrate precisely the opposite. Thus, admission of these statements is crucial to the fact finder's ability to "utiliz[e] all rational means for ascertaining truth." *Trammel v. U.S.*, 445 U.S. 40, 50 (1980).

These statements actually surfaced in this litigation when *Defendants* used them during the deposition of Mr. Golak, the dismissed employee.

As their counsel explained at a hearing before Magistrate Judge Gold on January 29, 2009, Defendants obtained these statements pursuant to subpoenas on the Unemployment Division concerning three employees, including Mr. Golak. (*See* the Transcript of Proceedings before Magistrate Judge Gold on January 29, 2009, pp. 11-17, attached as Exhibit 2). Defense counsel stated on the record that Defendants served a subpoena *with their consent to the release of the information*, pursuant to their statutory right to obtain such records with the employer's (i.e. Defendants') consent under NYLL Section 537(1)(d)(i). *Id*. at 12 ("So we served the subpoenas with the consent."). With that consent, they obtained "the submissions of my clients as the employer for each [of] the individuals . . ." *Id*. at p. 12-13.

In other words, Defendants *consented* to the disclosure of the statements by the Unemployment Division as provided for by the statute and then used them in this action for their own purposes. There could be no clearer demonstration that Defendants have affirmatively waived any privilege in these statements.

**2.     Legal Argument:**

The Rules of Evidence and the case law compel the conclusion that the statements should be admissible in evidence as part of Plaintiffs' case-in-chief.

There are three major bases for this conclusion: (A) pursuant to NYLL §537, Defendants have actually consented, *as expressly permitted by the statute*, to the use of the statements *in this very action* by serving a subpoena on the New York State Unemployment Insurance Division with an authorization for release of the records, and by using the records in a deposition in this case; alternatively, Defendants impliedly waived any privilege in these statements and principles of fairness mandate that Plaintiffs use these statements at trial; (B) per ***United States v. Chiarella***, 588 F.2d 1358, 1372 (2d Cir. 1978), which also involved a statement against interest by a party, the Second Circuit has not recognized a privilege under the federal common law based on Section 537; and (C) the purposes of the statute, and any privacy or other privilege concerns raised by the statements, can be addressed by redacting the statements to leave out any reference to Mr. Golak.

A.  **Defendants Consented to the Disclosure of the Statements When They Authorized Subpoenas for the Unemployment Records, and They Affirmatively Used the Records in Deposition, Thus Waiving Any Privilege.**

Where a party consents to a disclosure of a privileged document pursuant to a statutory provision, that party has affirmatively waived the privilege. Section 537(1)(d)(i) permits the disclosure of unemployment records if the party supplying the information consents: "The department may disclose unemployment insurance information about an individual or an employer to an agent of such individual or employer, or to a third party, on the basis of informed consent received from such individual or employer." NYLL Section 537(1)(d)(i). This is precisely what happened here. Defendants' counsel has acknowledged that *Defendants expressly consented* to the disclosure of the statements in question they submitted to the Unemployment Insurance Division concerning Mr. Golak. Thus, the disclosure of the statements in this action was made with Defendants' consent pursuant to the provision of the statute permitting such disclosure.

Furthermore, it should also be noted that these statements should be introduced at trial because they should have been obtainable as personnel records that employers are required by law to maintain. Defendants should have had copies of these statements in their possession anyway *qua* employers of Mr. Golak, because they are required by wage orders to maintain such personnel records. *See, e.g.*, 29 C.F.R. §1627.3(b). To that extent, these statements would not even fall within the terms of Section 537, which defines "unemployment insurance information" as "information contained in the records of the department pertaining to the administration of this article . . ." NYLL Section 537(1)(a)(i). This interpretation has even been recognized by New York courts. In ***People v. Mackin***, 14 Misc.3d 994, 998 (St. Lawrence Cty. 2007), the court, while constrained by Section 537 to exclude statements contained in an unemployment file, noted that "this order does not address a related issue . . . as to whether or not the People may introduce the content of the statement if it was obtained in some other way that does not trigger the Labor Law provision." *Id.*

Because Defendants at bar affirmatively consented to the disclosure of the statements under NYLL Section 537(1)(d)(i) and, separately, they had to maintain such statements pursuant to the wage orders as personnel records, these statements should be introduced at trial as statements against interest by a party's authorized personnel or agent pursuant to the Rules of Evidence as argued by Plaintiffs in their April 12, 2013, letter brief (Exhibit 3).

Assuming, *arguendo*, that the above are not applicable at bar, Defendants' use of these statements in *this very action* constitutes an implied waiver of any privilege they may have concerning the unemployment insurance records. A party may impliedly waive a privilege by actions inconsistent with claiming the privilege. ***See, e.g., In re Bulow***, 828 F.2d 94, 101 (2d Cir. 1987)(holding district court did not abuse discretion in finding that a client impliedly waived attorney-client privilege); ***Local 851 v. Kuehne & Nagel Air Freight***, 36 F.Supp.2d 127, 129 (E.D.N.Y. 1998); ***Favors v. Cuomo***, 285 F.R.D. 187, 210 (E.D.N.Y. 2012)(concerning waiver of legislative privilege); ***see also William A. Gross Construction Assocs. v. American Mfrs. Mut. Ins. Co.***, 262 F.R.D. 354, 361 (S.D.N.Y. 2009)(noting that the work product protection may be

waived by a party's conduct and that "fairness considerations arise when a party attempts to use a privilege both as a shield and a sword" (citations and internal quotation marks omitted)).

During the deposition of Mr. Golak, Defense counsel used these statements to question the witness, in an obvious effort to dissuade the witness from joining this lawsuit. Defendants were successful. Mr. Golak did not file a consent to joinder under the Fair Labor Standards Act (thus depriving himself of the more generous liquidated damages under the FLSA) and merely remains a member of the class.

Defendants have therefore made offensive use of the statements in this very action. It would be manifestly unfair to permit them to now preclude admission of those statements into evidence, especially when the reason they seek to prevent the fact finder from hearing that they took one position on the afternoon meetings of the foremen in another matter, which is now directly opposite of the position they are taking in this case

That is precisely why "fairness considerations" arise and why these statements must be introduced in order to advance the fact-finding process.

In addition, Plaintiffs are only asserting waiver as to the very limited evidence of the statements concerning the daily meetings of foremen, so the waiver would be limited to evidence as to which any privilege has actually been waived, even though a waiver theoretically extends to all "undisclosed communications about the same subject matter." **Lonegan v. Hasty**, 2008 U.S. Dist. LEXIS 158, at *16 (E.D.N.Y., January 1, 2008)(discussing case involving waiver of journalist's qualified privilege).

### B.    The Federal Law of Privilege Applies, and Federal Law Has Not Recognized a Privilege Pursuant to Labor Law Section 537.

The foregoing discussion has assumed for the purpose of argument that Defendants can claim a privilege with respect to the unemployment records. But the Second Circuit has not recognized any such privilege.

The case law on New York Labor Law Section 537 is relatively sparse, especially federal court cases. However, in the only federal case of which Plaintiffs are aware addressing the statute in similar circumstances, the Second Circuit approved the use of admissions made by a party in an unemployment application, and noted that any privilege based on Section 537 is "unknown to the common law." **United States v. Chiarella**, 588 F.2d 1358, 1372 (2d Cir. 1978), *reversed on other grounds in* **Chiarella v. United States**, 445 U.S. 222 (1979).

In **Chiarella**, the Second Circuit considered a motion to suppress evidence obtained from an unemployment insurance file in a criminal case for insider trading. The defendant had admitted that "the allegation is true" in the unemployment application. *Id*. at 1372. The record was admitted and the defendant sought reversal on the ground that NYLL Section 537 should have barred the record, but the Second Circuit disagreed.

The court first noted that "[s]tate-created privileges are not controlling in federal criminal cases except to the extent they reflect the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." *Id*. (citing Fed.R.Evid. 501)(internal quotation marks omitted).

The Second Circuit went on to disclaim any holding as to whether Section 537 creates a privilege under New York law, but noted that any such privilege, if it does exist, "is one unknown to the common law," and held that the statement was properly admitted. *Id*. at 1372.

Although *Chiarella* was a criminal case, Fed.R.Evid. 501 applies with equal force in this case, because Plaintiffs' claims arise under federal law (i.e., the FLSA).

It is well-settled that, in cases pending in the federal courts on federal questions, federal law governs any questions of privilege, even when there are also pendent state law claims, and *even when state law privilege conflicts with federal privilege law*. **See, e.g., Von Bulow v. Von Bulow**, 811 F.2d 136, 141 (2d Cir. 1986); **Torres v. Toback, Bernstein & Reiss, LLP**, 278 F.R.D. 321, 322 n. 1 (E.D.N.Y. 2012); *see also* **Agster v. Maricopa County**, 422 F.3d 836, 839 (9th Cir. 2005); **Guzman Memorial Hermann Hospital System**, 2009 U.S. Dist. LEXIS 13336, at *7-9 (S.D. Tex., February 20, 2009) (collecting cases from different circuit courts holding that federal law of privilege applies in cases involving federal law even when in conflict with state law).

As noted in *Chiarella*, the Second Circuit has not recognized a privilege under Section 537. Nor should this Court do so now. Because privileges are contrary to "the normally predominant principle of utilizing all rational means for ascertaining truth" (**Trammel v. U.S.**, 445 U.S. 40, 50 (1980)), any privilege under Section 537 should not be viewed as binding in this case.

Even assuming, *arguendo*, that *Chiarella* is not binding on this Court, Plaintiffs note that, in interpreting Rule 501 in the context of an employment discrimination case, the Supreme Court of the United States has made it clear that evidentiary privileges are to be interpreted narrowly:

> "We do not create and apply an evidentiary privilege unless it promotes sufficiently important interests to outweigh the need for probative evidence. Inasmuch as testimonial exclusionary rules and privileges contravene the fundamental principle that the public has a right to every man's evidence, any such privilege must be strictly construed."
> **University of Pa. v. EEOC**, 493 U.S. 182, 189 (1990)(citations and internal quotation marks and punctuation omitted).

The Supreme Court also noted that Rule 501 manifests an intent to provide "flexibility to develop rules of privilege on a case-by-case basis." *Id*. The Court thereafter declined to create a common law privilege for peer-review materials sought by a professor who was denied tenure. *Id*.

In another context, the Supreme Court had previously expanded on the rationale behind

Page 5 of 7

the above principle:

> "[Privileges] must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Trammel, supra*, 445 U.S. 40, 50 (1980).

First, there is no public good that will come of excluding from evidence statements by Defendants concerning the "obligatory" daily meetings. Any privacy concerns related to the statements can be resolved by redaction of all references to the named applicant for unemployment insurance benefits, as discussed more below.

On the other hand, excluding the admissions against interest of the Defendants from evidence would contravene the mandate of the courts to ascertain the truth and determine proceedings justly, as set forth in Fed.R.Evid. 102.

This reasoning is especially applicable in light of the fact that, as noted above, the evidence at issue has already been disclosed in these proceedings, *with Defendants' consent*.

The court considered a somewhat similar issue in *City of New York v. Beretta U.S.A. Corp.*, 429 F.Supp.2d 517 (E.D.N.Y. 2006). In that case, "trace data" gathered by the ATF that formed the basis for a lawsuit by the City against gun manufacturers was initially made available to the parties, but a subsequent congressional appropriation limited the use of funds for disclosure of such information. The gun manufacturers argued that this created a statutory non-disclosure requirement. *Id*. at 519-22.

In *Beretta*, the court concluded that barring disclosure of the information "would inhibit the truth-seeking process for no rational reason and interfere with the fair determination of this action. Because the data has already been disclosed, there can be no concern about expenditure of funds or of effort on the part of ATF or others." *Id*. at 527. This was based on the mandate of Rule 102 that the evidence rules "be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth an development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." *Id*.; Fed.R.Evid. 102.

    C.    **Precluding the Statements from Evidence Would Not Serve the Purposes of Section 537, Which Can Be Achieved By Redacting the Statements.**

Finally, any lingering doubts the Court may have about the privilege issues involved can be resolved by redacting the statements to remove any references to the non-party employee, as the example attached to this letter suggests.

This would conform with the twin purposes of Section 537, while construing any privilege under the statute narrowly, as the federal courts are constrained to do.

The New York courts have interpreted the purposes of the statute to be twofold: (1) to protect the employee seeking benefits (*see, e.g., Andrews v. Cacchio*, 265 A.D. 791 (2nd Dep't 1942)); and (2) to protect an employer against claims for defamation. ***Coyne v. O'Connor***, 204 Misc. 465 (Sup.Ct. 1953); *see also **Clegg v. Bon Temps, Ltd.***, 114 Misc.2d 805 (N.Y.Civ.Ct. 1982).

Redacting the name of the non-party employee will more than adequately serve the purpose of protecting the applicant for unemployment benefits.

The second purpose is not at issue in this matter. This is not an action by the discharged employee for defamation, and the confidentiality provision of Section 537 has been held to constitute a defense to such an action in any event. ***See, Clegg, supra***, at 808-809. Thus, there is no danger that Defendants will be exposed to liability in a defamation action, so the purpose of the statute is not relevant in this context. Even if the employee did bring a defamation action, it was *Defendants' own conduct* that brought the statements into these proceedings.

Again, Defendants have consented to the use of the statements in these proceedings by their subpoena and authorization. Now they are trying to prevent admission of the statements because the statements contradict Defendants' testimony. That is in direct opposition to the search for truth that a trial is supposed to be.

Thus, for the reasons stated above, Plaintiffs respectfully request that the Court permit introduction of the statements as admissions of a party under Fed.R.Evid. 801(d)(2). My previous letter set forth all the grounds on which the statements meet the requirements of that Rule, and I would respectfully refer the Court to that letter, dated April 12, 2013 (Document No. 309), which is attached as Exhibit 3 for the Court's ease of reference.

Thank you for your attention to the foregoing.

Respectfully submitted,
_____/s/_____
Robert Wisniewski (RW-5308)

cc: Felipe Orner, Esq., counsel for Defendants (via ECF)