UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
MIROSLAW GORTAT, et al.,

                       Plaintiffs,

      -against-                              MEMORANDUM AND ORDER
                                            07 CV 3629 (ILG)

CAPALA BROS., et al.,

                      Defendants.
--------------------------------------------------------x
GLASSER, United States District Judge:

        Plaintiffs are laborers and foremen formerly employed by Capala Brothers, Inc.

("Capala Bros."), a construction services company, Robert Capala, and Pawel Capala

(collectively "defendants") who seek to recover on behalf of themselves and others

similarly situated unpaid wages and overtime arising out of defendants' alleged failure

to comply with the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), and New

York Labor Law, N.Y. Lab. Law § 650 et seq. ("NYLL").[1]  After extensive pretrial

litigation, the Court bifurcated the trial into liability and damages phases.  Dkt. No. 292.

On May 10, 2013, a jury returned a verdict finding defendants liable for violating both

the FLSA and NYLL, and finding for the plaintiffs on defendants' counterclaims.  On

May 13, 2013, the jury found that defendants' violations were willful.

---

[1] The factual background and procedural history to this action are set out more
fully in a number of the Court's previous decisions, familiarity with which is assumed.
See, e.g., Gortat v. Capala Bros., Inc., No. 07 Civ. 3629 (ILG) (SMG), 2012 WL 1116495,
at *1 (E.D.N.Y. Apr. 3, 2012) ("Gortat VI"); Gortat v. Capala Bros., Inc., No. 07 Civ. 3629
(ILG) (SMG), 2011 WL 6945186, at *1-2 (E.D.N.Y. Dec. 30, 2011) ("Gortat V"); Gortat v.
Capala Bros., Inc., No. 07 Civ. 3629 (ILG) (SMG), 2011 WL 2133769, at *1 (E.D.N.Y.
Mar. 27, 2011) ("Gortat IV"); Gortat v. Capala Bros., Inc., No. 07 Civ. 3629 (ILG) (SMG),
2010 WL 1423018, at *1 (E.D.N.Y. Apr. 9, 2010) ("Gortat III"); Gortat v. Capala Bros.,
Inc., 257 F.R.D. 353, 355-57 (E.D.N.Y. 2009) ("Gortat II"); Gortat v. Capala Bros., Inc.,
585 F. Supp. 2d 372, 376-77 (E.D.N.Y. 2008) ("Gortat I").

The jury verdict prompted a flurry of motions.  In what is described as a "letter brief" dated May 16, 2013, plaintiffs moved to request (1) "service awards" for named plaintiffs, (2) "stacked liquidated damages under both the FLSA and New York Labor Law," and (3) prejudgment interest.  Pls.' Letter Br. (Dkt. No. 358).  On May 22, 2013, defendants moved to decertify the class pursuant to Rule 23(c)(1)(C) of the Federal Rules of Civil Procedure and for judgment as a matter of law notwithstanding the verdict pursuant to Rule 50(b).  Memorandum of Law In Support of Decertification of Class Action after Trial ("Defs.' Mem.") (Dkt. No. 361-8).  Finally, on June 5, 2013, plaintiffs moved for entry of judgment.  Dkt. No. 374.  For the reasons set forth below, plaintiffs' motions are GRANTED in part and DENIED in part, and defendants' motions are DENIED.

## Discussion

### I.   Plaintiffs' Motions

Plaintiffs make three motions; I turn to a consideration of each.

### A. Service Awards

Plaintiffs' advocacy for those awards begins with a string citation of cases ending with Rodriguez v. West Publ'g Corp., 563 F.3d 948, 959 (2009) (noting that such awards "are generally sought after a settlement or a verdict has been achieved").  Not mentioned, however, is the observation that "[s]uch awards are discretionary," and, more notably, that the district court denied incentive awards in their entirety because, among other reasons, the amounts requested were unreasonable; the circuit court affirmed.  Id. at 958-60, aff'g, 2007 WL 2827379, at *14-22 (C.D. Cal. Sept. 10, 2007).

The staggering amount requested as incentive awards for the seven named plaintiffs is breathtaking and were the Court to grant it, would be an exercise of discretion inexcusably abused.  It seeks $30,000 for each of five named plaintiffs and $15,000 each for the remaining two for a total of $180,000, an award that would be 61.74% of the total amount of the award granted to all plaintiffs including the members of the class.[2]  A conclusion that the request is unreasonable is, on the recitation of those numbers, without more, compelled.  An extended discussion of the factors the Court considers in deciding whether to make incentive awards would not be a productive exercise on the facts of this case.  Those factors are reviewed at length by the district court in Rodriguez and by the cases cited by counsel in support of his request.  Each of those is a major class action in which a huge sum was involved and was settled without objection to the incentive awards agreed upon.  Castagna v. Madison Square Garden, L.P., No. 09-cv-10211, 2011 WL 2208614 (S.D.N.Y. June 7, 2011); Willix v. HealthFirst, Inc., No. 07 Civ. 1143, 2010 WL 5509089 (E.D.N.Y. Nov. 29, 2010); Khait v. Whirlpool Corp., No. 06-6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010).

Why a plaintiff in a class action is materially different from a plaintiff in any other civil action and whether the factors generally recited to accept that difference in support of an incentive award can withstand a rigorous analysis pursued against a background of experience and reality has been the subject of considerable discussion in the literature.

---

[2] See Theodore Eisenberg & Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 UCLA L. Rev. 1303, 1303 (2006) ("This study of 374 opinions from 1993 to 2002 finds that [incentive] awards were granted in about 28 percent of settled class actions. . . . When given, incentive awards constituted, on average, 0.16 percent of the class recovery, with a median of 0.02 percent.").

See, e.g., Eisenberg & Miller, supra; Ann K. Wooster, Propriety of Incentive Awards or Incentive Agreements in Class Actions, 60 A.L.R.6th 295 (2010).

In that regard, a case decided more than 130 years ago is informative. Trustees v. Greenough, 105 U.S. 527 (1881). There, one Vose, a large holder of bonds of a Florida Railroad, on behalf of himself and other bondholders sued trustees of a Florida Internal Improvement Fund for wasting assets ostensibly affecting the bonds negatively. He sought to set aside what he claimed were fraudulent conveyances. The litigation succeeded and other bondholders benefitted by it. Vose bore the entire burden of the litigation, advanced most of the expenses, and sought an allowance out of the fund thus created for his expenses and services. The Court allowed compensation for reasonable costs, counsel fees, and expenses incurred in the prosecution of the case, but found an allowance for personal expenses "decidedly objectionable" – those being for the personal services and private expenses of Vose, charges for which, the Court wrote, "we can find no authority whatever." Id. at 537. The Court then went on to write:

> Where an allowance is made to trustees for their personal services, it is made with a view to secure greater activity and diligence in the performance of the trust, and to induce persons of reliable character and business capacity to accept the office of trustee. These considerations have no application to the case of a creditor seeking his rights in a judicial proceeding. It would present too great a temptation to parties to intermeddle in the management of valuable property or funds in which they have only the interest of creditors, and that perhaps only to a small amount, if they could calculate upon the allowance of a salary for their time and of having all their private expenses paid. Such an allowance has neither reason nor authority for its support.

Id. at 537-38.

4

The concern express by the Court was not misplaced.  In <u>Incentive Awards to Class Action Plaintiffs</u>, <u>supra</u>, the authors acknowledge that:

> [It] has long been recognized [that class action] cases tend to be dominated by entrepreneurial attorneys who effectively control all phases of the litigation.  The 'named' or 'representative' plaintiff, who supposedly acts as the champion of the class, is sometimes little more than an eponym.  Yet, despite suggestions that class action procedures should dispense with the named plaintiff as a meaningless figurehead . . . the trend of the law . . . has been to the contrary.

Eisenberg & Miller, <u>supra</u>, at 1304-05.

The exaggerated amount of the required service awards, if granted, would be akin to a winning lottery ticket charged to the defendants in addition to the doubled overtime pay, back wages, and prejudgment interest these plaintiffs are already entitled to receive and the defendants will be obligated to pay.  Were the Court to examine the reasons advanced by plaintiffs for granting incentive awards, Pls.' Letter Br. at 2-3, they would be found wanting.  Among them are (1) that plaintiffs rendered a substantial service to the public.  The Court would look askance at a suggestion that they were motivated by public service rather than their own individual interests; (2) that they were instrumental in causing the defendants to raise the wages of their current employees.  The sudden departure of the named plaintiffs from defendants' employ because they found better jobs elsewhere left defendants with a diminished and less experienced workforce upon whom they had to rely to complete projects in progress, and increased wages were warranted for increased responsibilities assumed by those who remained and as incentives to stay; (3) by bringing this action plaintiffs brought the defendants into compliance with the law; (4) plaintiffs caused other Polish-owned construction firms in

their area to comply with the law. None of those reasons can reasonably be believed to have incentivized these named plaintiffs to commence this lawsuit. A passing reference to a risk of adverse action by the employer is dispelled by the fact that plaintiffs voluntarily left their jobs before commencing this action, and by the statute that makes it unlawful to discriminate against an employee because he instituted such an action. 29 U.S.C. § 215(a)(3).

The litany of "hardships" recited as having been endured as plaintiffs does not move the Court to reward them for it. They include being deposed, "submitting" to direct and cross-examination, signing affidavits, and attending the trial, which was voluntary and not compelled. Those are "hardships" every plaintiff endures when he assumes that status. "Although it is laudable that plaintiff[s] undertook to prosecute this litigation, the court perceives no circumstance warranting a special award." Weseley v. Spear, Leeds & Kellogg, 711 F. Supp. 713, 720 (E.D.N.Y. 1989). See also Silverberg v. People's Bank, 23 Fed. App'x 46, 48 (2d Cir. 2001); Ayers v. SGS Control Servs., Inc., No. 03 Civ. 9078, 2008 WL 4185813, at *5-7 (S.D.N.Y. Sept. 9, 2008), aff'd, 353 Fed. App'x 466 (2d Cir. 2009); Gulino v. Symbol Techs., Inc., No. 06 CV 2810, 2007 WL 3036890, at *3 (E.D.N.Y. Oct. 17, 2007). The motion for such awards is denied.

## B. Liquidated Damages

### i.    Under the FLSA

The FLSA provides for "the payment of wages lost and an additional equal amount as liquidated damages," unless "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that [his

belief was] reasonable." 29 U.S.C. §§ 216(b), 260.  "The employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception."  Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999).  Where a jury has returned a finding of willful violations of the FLSA, courts typically do not exercise their discretion to reduce an award of liquidated damages under the FLSA.  See Pineda-Herrera v. Dar-Ar-Da, Inc., No. 09-CV-5140, 2011 WL 2133825, at *5 (E.D.N.Y. May 26, 2011).

The jury returned a verdict of willfulness and plaintiffs are, therefore, entitled to liquidated damages in an amount equal to the amount of unpaid wages and overtime for the three years prior to August 29, 2007 when this action was commenced.  Accordingly, plaintiffs are entitled to liquidated damages in the amount of 100% of their unpaid wages and overtime, as the case may be, for the statutory period.  29 U.S.C. §§ 216(b), 255(a), 260.

### ii.    Under the NYLL

During the relevant time periods of this litigation, NYLL provided that "upon a finding that the employer's failure to pay the wage required . . . was willful," the employer must pay "an additional amount as liquidated damages equal to twenty-five percent of the total amount of wages found to be due."  N.Y. Labor Law §§ 198(1-a), 663(1).[4]  Under the FLSA, "[l]iquidated damages are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA."  Herman, 172 F.3d at 142 (citing

---

[4] The liquidated damages provisions of the NYLL were amended in 2009 and 2010 and now track the FLSA.  These amendments have resolved the disagreement among district courts discussed infra.  The amendment also bespeaks an acknowledgment that the compensatory/punitive dichotomy is a semantic one.

Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 583-84 (1942)).  Conversely, "liquidated damages under the Labor Law 'constitute a penalty' to deter an employer's willful withholding of wages due."  Reilly v. Natwest Markets Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999) (quoting Carter v. Frito-Lay, Inc., 425 N.Y.S.2d 115, 116 (1st Dep't 1980), aff'd, 419 N.E.2d 1079 (N.Y. 1981)).  Also, unlike the FLSA, "the burden is on the plaintiff to prove willfulness in order to obtain liquidated damages under New York law."  Bauin v. Feinberg, 800 N.Y.S.2d 342, 2005 WL 636700, at *6 (N.Y.C. Civ. Ct. Mar. 18, 2005) (citing Epelbaum v. Nefesh Achath b' Yisrael, Inc., 654 N.Y.S.2d 812, 814 (2d Dep't 1997)).

　　"District courts in this circuit have disagreed as to whether a plaintiff may secure cumulative awards of liquidated damage[s] under both [the FLSA and NYLL]."  Gunawan v. Saki Sushi Rest., 897 F. Supp. 2d 76, 91 (E.D.N.Y. 2012) (citing cases).  Some courts hold that plaintiffs may obtain liquidated damages under both statutes because, as was indicated, FLSA liquidated damages are compensatory, while NYLL liquidated damages are punitive.  See, e.g., Gunawan, 897 F. Supp. 2d at 91; Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 261-62 (S.D.N.Y. 2008).  "Other cases have found that distinction unpersuasive in light of the similar predicates for an award of liquidated damages under each statute."  Pineda-Herrera, 2011 WL 2133825, at *4-5 (citing Chun Jie Yin v. Kim, 07 CV 1236, 2008 WL 906736, at *7 (E.D.N.Y. Apr. 1, 2008)); see also Chan v. Sung Yue Tung Corp., No. 03 Civ. 6048, 2007 WL 313483, at *28-29 (S.D.N.Y. Feb. 1, 2007).

　　I find the distinction between compensatory and punitive for characterizing liquidated damages under the FLSA and NYLL as semantic, exalting form over

8

substance, and also not persuasive.  See Chung Jie Yin, 2008 WL 906736, at *7 (holding

that FLSA and NYLL liquidated damages "compensate the exact same harm").  The jury

has returned a verdict of willfulness under the NYLL, therefore, named plaintiffs are

entitled to 25% liquidated damages for August 29, 2001 through August 29, 2004,

because plaintiffs will not receive FLSA liquidated damages for that period; unlike the

FLSA, the statute of limitations under the NYLL is 6 years.  N.Y. Labor Law § 663(3).

The non-appearing class members are entitled to 25% liquidated damages for the entire

period of their employment between August 29, 2001 and August 29, 2007, since they

brought no claims under the FLSA.

In support of "stacked" liquidated damages under both the FLSA and NYLL,

plaintiffs rely strenuously on Callier v. Superior Bldg. Servs., Inc., No. 09 CV 4590, 2011

WL 222458 (E.D.N.Y. Jan. 21, 2011), which is plainly distinguishable.  There, a default

judgment was entered against the defendants and the damages issue was referred to

Magistrate Judge Azrack to Report and Recommend.  Her Report recommended

"stacking" liquidated damages.  2010 WL 5625906, at *3-4.  No objection was taken to

her Report by defendants and it was accordingly adopted by the Court in its entirety.

2011 WL 222458.  Defendants' here do object to stacking the liquidated damages.

Plaintiffs' motion in that regard is denied.

### C. Prejudgment Interest

"It is well settled that in an action for violations of the Fair Labor Standards Act

prejudgment interest may not be awarded in addition to liquidated damages."  Brock v.

Superior Care, Inc., 840 F.2d 1054, 1064 (2d Cir. 1988) (citing Brooklyn Sav. Bank v.

O'Neil, 324 U.S. 697, 715 (1945)).  However, plaintiffs can receive both liquidated

damages and prejudgment interest under the NYLL, "because liquidated damages under the Labor Law and pre-judgment interest serve fundamentally different purposes." Reilly, 181 F.3d at 265.  Therefore, plaintiffs are entitled to prejudgment interest only "for that portion of unpaid wages for which [they are] being compensated under state law." Jin v. Pacific Buffet House, Inc., No. CV-06-579, 2009 WL 2601995, at *9 (E.D.N.Y. Aug. 24, 2009) (citing Reilly, 181 F.3d at 265).  Also, "[p]rejudgment interest applies only to the amount of compensatory damages, and excludes the amount of liquidated damages." Maldonado v. La Nueva Rampa, Inc., No. 10 Civ. 8195, 2012 WL 1669341, at *11 (S.D.N.Y. May 14, 2012).  Accordingly, named plaintiffs are entitled to prejudgment interest at the statutory rate of 9% per year for unpaid wages from August 29, 2001 through August 29, 2004, and the non-appearing plaintiffs are entitled to prejudgment interest for unpaid wages from August 29, 2001 through August 29, 2007. N.Y. C.P.L.R. §§ 5001, 5004.

### D. Attorneys' Fees

A motion for an award of attorneys' fees is required to be made by Rules 54(d)(2) and 23(h) of the Federal Rules of Civil Procedure.  When that motion is made, the Court will refer the motion to Magistrate Judge Steven Gold as if it were a dispositive pretrial matter in accordance with Rule 54(d)(2)(D).

## II.  Defendants' Motions

Defendants move to decertify the class pursuant to Rule 23(c)(1)(C) of the Federal Rules of Civil Procedure, and for judgment as a matter of law notwithstanding the jury verdict pursuant to Rule 50(b).  Both motions are meritless and denied.

### A. Decertification

Defendants have spent the better part of the past six years unsuccessfully attempting to prevent class certification. Gortat VI, 2012 WL 1116495, at *1. In this latest salvo, defendants argue that a class of 17 members fails to satisfy the numerosity requirement of Rule 23(a). They also point to a number of minor inconsistencies in trial testimony that they claim disprove commonality and typicality. Defs.' Mem. at 8-12.

Under Rule 23(c)(1)(C), "[a]n order that grants or denies class certification may be altered or amended before final judgment." Accordingly, "[a] district court may decertify a class if it appears that the requirements of Rule 23 are not in fact met." Gortat VI, 2012 WL 1116495, at *2 (quoting Sirota v. Solitron Devices, Inc., 673 F.2d 566, 572 (2d Cir. 1982)). However, "the Court may not disturb its prior certification findings absent some significant intervening event, or a showing of compelling reasons to reexamine the question." Id. (quoting Jermyn v. Best Buy Stores, L.P., 276 F.R.D. 167, 169 (S.D.N.Y. 2011)). Moreover, "[a] court should be wary of revoking a certification order completely at a late stage in the litigation process." Id. (quoting Easterling v. Conn. Dep't of Corr., 278 F.R.D. 41, 42 (D. Conn. 2011)).

Defendants have made no showing of any significant intervening event or any compelling reason to revisit the issue. This motion to decertify the class comes not merely "at a late stage" of this litigation, it comes post-trial after previous denials of defendants' motions to decertify and after a jury returned a verdict in favor of the class. Research has failed to reveal a single decided case or a single sentence in the legal literature to which a similar post-verdict motion has been addressed. The lateness of that motion counsel a determination that at this stage the door to that motion has been firmly shut.

To the extent defendants' motion requires consideration, Rule 23(a) states that the class must be "so numerous that joinder of all members is impracticable." In this circuit, courts generally presume that numerosity is satisfied where the class consists of forty or more members, while "numbers under twenty-one have generally been held to be too few." Town of New Castle v. Yonkers Contracting Co., Inc., 131 F.R.D. 38, 40 (S.D.N.Y. 1990) (quoting 3B James Wm. Moore et al., Moore's Federal Practice ¶ 23.05 (2d ed. 1987)). "However, no magic minimum number establishes numerosity," Deen v. New School Univ., No. 05 Civ. 7174, 2008 WL 331366, at *2 (S.D.N.Y. Feb. 4, 2008) (quotation omitted), and "[n]umbers between twenty-one and forty have evoked mixed responses." New Castle, 131 F.R.D. at 40-41 (citing cases and certifying class of 36 members). In determining numerosity, "the relevant considerations a court may consider include: (1) judicial economy arising from the avoidance of multiplicity of actions; (2) geographic dispersion of class members; (3) financial resources of class members; (4) the ability of claimants to institute individual suits; and (5) requests for prospective injunctive relief which would involve future class members." Gortat VI, 2012 WL 1116495, at *3 (citing Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993)).

As an initial matter, the class consists of 24 members, not 17. As the Court previously observed, "[t]he named plaintiffs—the class representatives—are obviously members of the class," and "[d]efendants have no legal or factual basis on which to omit these individuals from the class." Id. at *3 n.6. Furthermore, the decision of some class members to opt-out of the FLSA collective action has no bearing on the class action under the NYLL. Id.

The class of 24 members satisfies numerosity for the same reasons that the potential class of 28 members the Court considered in defendants' prior decertification motion satisfied numerosity: (1) "the class members are immigrant laborers who speak little English," and their entire testimony on direct and cross examination was through a Polish interpreter; (2) "[t]hese individuals lack not only the financial resources to individually bring actions in federal court but also the incentive to do so in light of the relatively small recoveries many of them [were] reasonabl[y] expect[ed] to receive"; (3) "[j]udicial economy also continues to counsel against decertification"; and (4) "[s]uch an 11th hour motion is of the sort that, if granted, would prejudice members of the class who have not taken independent steps to protect their rights precisely because they were members of the class." Id. at *3-4 (citations omitted).

Rule 23(a) also requires that "there are questions of law or fact common to the class" and that the representative plaintiffs' claims "are typical of the claims . . . of the class." Defendants argue that testifying plaintiffs' inability to recall the names of all 17 non-appearing class members combined with minor inconsistencies in reporting times demonstrate a lack of typicality and commonality across the class. Dkt. No. 361-1. However, typicality and commonality merely require that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Gortat III, 2010 WL 1423018, at *4 (quoting In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 35 (2d Cir. 2009)). Indeed, "the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." Id. (quoting Robidoux, 987 F.2d at 936-37). Accordingly, defendants' motion to decertify the class is denied.

### B.  Judgment as a Matter of Law Notwithstanding the Jury Verdict

Defendants claim that the jury erred by finding that their FLSA and NYLL violations were willful, and seek relief under Rule 50(b).[5]  They argue that the jury's request for further instruction on "minimal working activities" combined with testimony presented by neighbors on this issue render the jury's finding of willfulness unreasonable.  Defs.' Mem. at 16-18.  This motion is meritless.

Plaintiffs' urging that this motion must be denied for the reason that it was not made prior to the submission of the case to the jury is correct.  "A post-trial Rule 50(b) motion for judgment as a matter of law is properly made only if a Rule 50(a) motion for judgment as a matter of law has been made before submission of the case to the jury.  Though a procedural requirement, it may not be waived by the parties or excused by the district court."  Bracey v. Bd. of Educ. of City of Bridgeport, 368 F.3d 108, 117 (2d Cir. 2004) (citations omitted).  Notwithstanding that procedural impediment, the motion is fatally flawed in every other respect.  See Hicks v. Vane Line Bunkering, Inc., No. 11 Civ. 8158, 2013 WL 1747806, at *8 (S.D.N.Y. Apr. 16, 2013) ("[T]he Court's review is severely limited where the Rule 50(b) motion is made after the jury returns a verdict, but no companion Rule 50(a) motion has been made prior to the verdict.").

"In entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record.  In doing so, the court must draw all reasonable inferences in favor of the non-moving party, and it may not make credibility determinations or weigh the evidence."  Gottlieb v. Carnival Corp., No. 04 CV 4202,

---

[5] In their reply brief, defendants also raise issues under Rules 51, 59, and 60. Dkt. No. 375.  The Court declines to consider these new theories since "new arguments may not be made in a reply brief."  Ernst Hass Studio, Inc. v. Palm Press, Inc., 164 F.3d 110, 112 (2d Cir. 1999).

2011 WL 7046904, at *1 (E.D.N.Y. Feb. 1, 2011) (quoting <u>Reeves v. Sanderson Plumbing</u> <u>Prods., Inc.</u>, 530 U.S. 113, 150 (2000)). The Court "may set aside the verdict only where there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him." <u>Id.</u> at *2 (quoting <u>Harris v.</u> <u>Niagara Mohawk Power Corp.</u>, 242 F.3d 592 (2d Cir. 2001)).

The testimony of the plaintiffs' witnesses the jury obviously found credible, buttressed by exhibits which endorsed their credibility led naturally to a verdict reasonable and fair minded men would readily reach. The jury's request for further instruction has no bearing on the validity of its verdict. <u>See</u> <u>Pierrelouis ex rel.</u> <u>Pierrelouis v. Pekritsky</u>, No. 08 Civ. 123, 2012 WL 6700217, at *2-4 (S.D.N.Y. Dec. 21, 2012) (rejecting Rule 50(b) motion where jury requested additional instruction); <u>Green</u> <u>v. Groneman</u>, 634 F. Supp. 2d 274, 276 (E.D.N.Y. 2009) (denying Rule 50(b) motion where jury requested a written copy of instructions but reached a verdict before receiving it); <u>see</u> <u>also</u> <u>United States v. Thomas</u>, 116 F.3d 606, 620 (2d Cir. 1997) ("The mental processes of a deliberating juror with respect to the merits of the case at hand must remain largely beyond examination and second-guessing, shielded from scrutiny by the court as much as from the eyes and ears of the parties and the public."). Accordingly, defendants' Rule 50(b) motion is denied.

### III.    Damages Calculations

Defendants represent that the parties have agreed, in essence, to a determination of liquidated damages as follows, except for plaintiffs Kosiorek and Stoklosa:

| Plaintiff | Jury Damages | FLSA Liquidated Damages | NYLL Liquidated Damages | Subtotal |
|---|---|---|---|---|
| Bienkowski | $ 37,026.00 | $ 17,740.00 | $ 4,826.00 | $ 59,592.00 |
| Filipkowski | $ 36,487.00 | $ 16,998.00 | $ 4,629.00 | $ 58,114.00 |
| Gortat | $ 18,291.00 | $ 8,825.00 | $ 954.00 | $ 28,070.00 |
| Lapinski | $ 7,175.00 | $ 7,175.00 | $ - | $ 14,350.00 |
| Swaltek | $ 14,004.00 | $ 6,973.00 | $ 1,758.00 | $ 22,735.00 |
| Kosiorek | $ 435.00 | $ 435.00 | $ - | $ 870.00 |
| Stoklosa | $ 1,880.00 | $ 1,880.00 | $ - | $ 3,760.00 |
| Class (17 members) | $ 20,450.00 | $ - | $ 5,113.00 | $25,563.00 |

Dkt. Nos. 359, 374.  I find these amounts reasonable, consistent with the above rulings, and, therefore, adopt them.  However, I do not adopt the parties' determination of liquidated damages for plaintiffs Kosiorek and Stoklosa because they began working for defendants in 2005 and, therefore, are only entitled to liquidated damages under the FLSA.

The jury also awarded some plaintiffs unpaid wages for their final week or two weeks of employment, and these plaintiffs are entitled to 100% liquidated damages on these awards under the FLSA.  They are as follows:

| Plaintiff | Jury Damages | FLSA Liquidated Damages |
|---|---|---|
| Bienkowski | $ 1,600.00 | $ 1,600.00 |
| Gortat | $ 1,200.00 | $ 1,200.00 |
| Lapinski | $ 760.00 | $ 760.00 |
| Swaltek | $ 1,640.00 | $ 1,640.00 |

Finally, plaintiffs are entitled to 9% annual prejudgment interest on their NYLL claims only.  "When unpaid wages 'were incurred at various times,' . . . [s]imple prejudgment interest is calculated from a singular, midpoint date. . . through the date judgment is entered."  Maldonado, 2012 WL 1669341, at *11 (quoting C.P.L.R. § 5001(b)).  The relevant time periods for prejudgment interest are calculated as follows:

16

| Plaintiff | Start Date | End Date | Midpoint Date | Years to Judgment Date |
|---|---|---|---|---|
| Bienkowski | May 11, 1998 | Apr. 1, 2007 | Oct. 20, 2002 | 10.64 |
| Filipkowski | Oct. 20, 1997 | Jan. 14, 2007 | June 2, 2002 | 11.03 |
| Gortat | Mar. 5, 2000 | Apr. 1, 2007 | Sept. 17, 2003 | 9.73 |
| Swaltek | Mar. 4, 2001 | Apr. 8, 2007 | Mar. 21, 2004 | 9.22 |
| Class (17 members) | Aug. 29, 2001 | Aug. 29, 2007 | Aug. 28, 2004 | 8.79 |

Applying these time periods to plaintiffs' NYLL damages, prejudgment interest is

awarded as follows:

| Plaintiff | NYLL Damages | Interest Rate | Time Period | Prejudgment Interest |
|---|---|---|---|---|
| Bienkowski | $ 19,286.00 | 9% | 10.64 | $ 18,471.17 |
| Filipkowski | $ 19,489.00 | 9% | 11.03 | $ 19,337.96 |
| Gortat | $ 9,466.00 | 9% | 9.73 | $ 8,292.22 |
| Swaltek | $ 7,031.00 | 9% | 9.22 | $ 5,835.73 |
| Class (17 members) | $ 20,450.00 | 9% | 8.79 | $ 16,170.84 |

Summing the jury awards, liquidated damages, and prejudgment interest, I

award plaintiffs the following:

| Plaintiff | Total Damages |
|---|---|
| Bienkowski | $ 81,263.17 |
| Filipkowski | $ 77,451.96 |
| Gortat | $ 38,762.22 |
| Lapinski | $ 15,870.00 |
| Swaltek | $ 31,850.73 |
| Kosiorek | $ 870.00 |
| Stoklosa | $ 3,760.00 |
| Class (17 members) | $ 41,733.84 |

The total damages awarded for all plaintiffs are $291,561.91, exclusive of

attorneys' fees. Defendants Capala Bros., Robert Capala, and Pawel Capala are jointly

and severally liable for the judgment, since each defendant acted as plaintiffs' joint

17

employer and is responsible both individually and jointly for defendants' federal and state law violations.  Gortat II, 257 F.R.D. at 368.

## IV.    Final Judgment

Rule 54(b) of the Federal Rules of Civil Procedure permits the Court to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties."  "Rule 54(b) contains three prerequisites for concluding that a decision or order is a final judgment: (1) multiple claims or multiple parties must be present, (2) at least one claim, or the rights and liabilities of at least one party, must be finally decided within the meaning of 28 U.S.C. § 1291, and (3) the district court must make an express determination that there is no just reason for delay and expressly direct the clerk to enter judgment."  In re Air Crash at Belle Harbor, 960 F.3d 99, 108-09 (2d Cir. 2007) (quotations omitted).  "Generally, a final order is an order of the district court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  Rabbi Jacob Joseph Sch. v. Province of Mendoza, 424 F.3d 207, 210 (2d Cir. 2005) (quotation omitted).

The first factor is plainly satisfied.  Regarding the second factor, the Supreme Court adopted a "bright-line rule . . . that a decision on the merits is a 'final decision' for purposes of § 1291 whether or not there remains for adjudication a request for attorneys' fees attributable to the case."  Budinich v. Becton Dickinson & Co., 486 U.S. 196, 202-03 (1988).  Finally, in light of plaintiffs' accusations that defendants are hiding assets, Dkt. No. 362, the Court finds "that there is no just reason [to] delay" entry of a judgment that would permit the plaintiffs to proceed to enforce it.  Fed. R. Civ. P. 54(b).  Accordingly, this opinion constitutes a final judgment for all issues excluding attorneys' fees.  See

18

Petrello v. White, No. 01-CV-3082, 2008 WL 5432230, at *2-5 (E.D.N.Y. Dec. 30, 2008)

(granting Rule 54(b) motion to enter final judgment despite "unresolved issues of

attorneys' fees").

## CONCLUSION

For all of the foregoing reasons, plaintiffs' motions are hereby GRANTED in part

and DENIED in part, and defendants' motions are hereby DENIED.

Pursuant to Rule 54 of the Federal Rules of Civil Procedure, the Clerk of the

Court is directed to enter judgment against defendants Capala Brothers, Inc., Robert

Capala, and Pawel Capala, jointly and severally, and in favor of (1) Henryk Bienkowski

in the amount of $81,263.17; (2) Miroslaw Filipkowski in the amount of $77,451.96; (3)

Miroslaw Gortat in the amount of $38,762.22; (4) Artur Lapinski in the amount of

$15,870.00; (5) Jan Swaltek in the amount of $31,850.73; (6) Artur Kosiorek in the

amount of $870.00; (7) Henryk Stoklosa in the amount of $3,760.00; and (8) to the

members of the class common fund in the amount of $41,733.84.

SO ORDERED.

Dated:      Brooklyn, New York
            June 12, 2013


                                  _____/s/ ILG_____
                                  I. Leo Glasser
                                  Senior United States District Judge