UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------x

| | | |
|---|---|---|
| MIROSLAW GORTAT, *et al* | : | |
| Plaintiff, | : | Case No. 07-cv3629 (ILG) |
| v . | : | |
| CAPALA BROTHER$S, INC., et al | : | |

-----------------------------------------------------x

| | | |
|---|---|---|
| JOHN S. PEREIRA, *Chapter 7 Trustee for the bankruptcy estate of Pawel Capala,* | : | |
| Plaintiff, | : | Case No 17-CV-3434 (ILG) |
| v. | : | |
| CAPALA, *et al* | : | |

-----------------------------------------------------x

INTERESTED-PARTY 269 WITHERS STREET LLC'S
OBJECTIONS TO THE REPORT AND RECOMMENDATION OF
THE HON. STEVEN M. GOLD DATED NOVEMBER 6, 2018.

Of counsel,
Paul S. Hugel, Esq.

CLAYMAN & ROSENBERG LLP
ATTORNEYS FOR INTERESTED PARTY WITHERS STREET LLC

305 Madison Ave. Ste 1301
New York, New York 10165
(212) 922-1080

## TABLE OF CONTENTS


**BACKGROUND .......................................................................................... 1**

THE APPRAISALS OF 269 WITHERS STREET .................................................. 3

THE EVIDENTIARY HEARING ................................................................... 5

**OBJECTIONS TO THE REPORT AND RECOMMENDATION ........................ 8**

269 WITHERS STREET LLC PAID FAIR CONSIDERATION FOR THE PROPERTY ................................................ 14

THE REMEDY ........................................................................................ 16

**CONCLUSION** .......................................................................................... 21

**TABLE OF AUTHORITIES**

Cases Page(s)


*Chen v. New Trend Apparel, Inc.*,
8 F. Supp. 3d 406 (S.D.N.Y. 2014) ..... 17

*Gitlin v. Chirinkin*,
98 A.D.3d 561 (2nd Dept 2012) ..... 20

*HBE Leasing Corp. v. Frank*,
48 F.3d 623 (2d Cir. 1995) ..... 17, 18

*Kramer v. Mahia* (In re Khan),
Nos. 10-46901-ess, 11-01520-ess, 2014 Bankr. LEXIS 4205,
(Bankr. E.D.N.Y. 2014) ..... 18

*Lippe v. Bairnco Corporation*,
249 F. Supp. 2d 357 (S.D.N.Y. 2003) ..... 14

*Mendelsohn v. Kovalchuk (In re APCO Merch. Servs.)*,
585 B.R. 306 (Bankr. E.D.N.Y. 2018) ..... 14

*Pergament v. Marina Dist. Dev. Co.*,
14 CV 2602 (RJD), 2018 U.S. Dist. LEXIS 177765
(E.D.N.Y. Oct. 11, 2018) ..... 16

*U.S. v. McCombs-Ellison*,
826 F. Supp. 1479, 1497 (W.D.N.Y. 1993) ..... 14

*U.S. v. McCombs*,
30 F.3d 310, 326 (2d Cir. 1994) ..... 14, 15

*U.S. v. McCombs*,
928 F. Supp. 261, 274 (W.D.N.Y. 1995) ..... 15

*Util. Audit Grp. v. Capital One, N.A.*,
No. 14-CV-0097 (SJF)(GRB), 2015 U.S. Dist. LEXIS 40816
(E.D.N.Y. Mar. 26, 2015) ..... 13


Statutes


New York Debtor and Creditor Law §273 ..... *passim*

New York Debtor and Creditor §276 ..... *passim*


Treatises


Garrard Glenn, *Fraudulent Conveyances and Preferences* ..... 17

Pursuant to Fed. R. Civ. Proc 72(b)(2), Interested-Party 269 Withers Street, LLC ("Withers Street LLC") hereby objects to the Report and Recommendation of the Hon. Steven M. Gold dated November 6, 2018. (Dkt. # 657). This Court's review of the portions of the Report and Recommendation objected to is *de novo*. Fed R. Civ Proc. 72(b)(3).

**BACKGROUND**

Withers Street LLC is owned by Mieczyslaw and Franciszka Cielepek. Mieczyslaw is a retired building contractor and real estate investor who owns several properties in Brooklyn. In February 2013, Withers Street LLC purchased a parcel of property at 269 Withers Street in East Williamsburg, Brooklyn from Capala Brothers, Inc. for $450,000. At the time, Capala Brothers and its principals, Pawel and Robert Capala, were defendants in a long-running lawsuit alleging violations of the Fair Labor Standards Act. According to the docket sheet, when the contract for the sale of 269 Withers Street was executed (January 10, 2013) the Capalas and Plaintiffs (a group of former Capala employees) were engaged in settlement discussions and no trial date had been set. (Dkt. # 295, 303). After buying the property, Withers Street LLC demolished the existing garage on the site and built a three story, six-unit apartment building.

Twenty-three months after the closing, Withers Street LLC received notice that the Plaintiffs who had sued the Capalas were asking this Court to void their purchase of the property as a fraudulent conveyance. To support their motion, Plaintiffs asserted that immediately after the Capalas lost at trial, they began transferring virtually all of their assets for little or no consideration to family members, to companies controlled by them or to trusts they had created. (Dkt. # 441 at pp 5-6). In their motion papers, Plaintiffs described the pre-trial sale of 269 Withers Street as falling within this same

category. Plaintiffs claimed that the Capalas controlled Withers Street LLC and, without citing to any evidence, they asserted that Mieczyslaw Cielepek was a "relative or close friend" of the Capalas who was acting as their stooge by letting them use his home address to disguise their control of Withers Street LLC. (Dkt. # 441 at 6). Plaintiffs asserted, without citing any evidence, that the Capalas secretly "continue to possess [the Withers Street property] and are making extensive renovations on the property to expand it for further use, despite the purported arm's-length, good-faith sale of the premises to Withers Street LLC." *Id.*

On December 22, 2014, this Court held an evidentiary hearing on Plaintiffs motion for a preliminary injunction. (Dkt. # 648 – Transcript of Hearing). At the hearing, Plaintiffs called only one witness - Mieczyslaw Cielepek. Mr. Cielepek testified that he was real estate investor who had purchased ten buildings in Brooklyn in the last decade, and that he had never met Pawel or Robert Capala and did not know who they were. (Dkt. # 648 at 31-3). Mr. Cielepak testified that he learned of the property from a broker and that he bought it because he thought that if he put up an apartment building there, he could make money. *Id.* Plaintiffs offered no testimony or evidence of any kind in support of their assertions that Mr. Cielepek was a relative or close friend of the Capalas, that the Capalas were still secretly in possession of 269 Withers Street or that the property had been sold in a sham transaction. Immediately at the close of the hearing, the Court, from the bench, denied the Plaintiffs' motion for a preliminary injunction and vacated the *ex-parte* TRO it had issued. (Dkt. # 648 at p. 78-9).

After this Court's ruling on the preliminary injunction, Plaintiff continued their post-judgment proceedings before Magistrate Judge Gold. In June 2015, Plaintiffs moved for sanctions against the Capalas and for a judgment finding that the sale of 269

Withers Street was fraudulent as to Plaintiffs. In their moving papers, Plaintiffs abandoned their narrative about the sale of 269 Withers having been a sham, and instead argued that the Capalas had sold the property to Withers Street LLC for less than half of its fair market value and that the transaction should therefore be declared fraudulent under NY Debtor and Creditor Law §§ 273-a and 276. Plaintiffs offered no theory explaining why the Capalas, months before their trial began, would sell their property to strangers for a fraction of its value.

In support of their motion, Plaintiffs filed an appraisal of 269 Withers Street prepared by Dominick Neglia. ("Neglia Appraisal") (Dkt. #508-2). In his report, Neglia stated that in February 2013, 269 Withers Street was worth $1.1 million. Withers Street LLC submitted a valuation by Michael J. Darling. ("Darling Appraisal") (Dkt. # 575-2). In his report, Darling stated that in February 2013, 269 Withers Street was worth $495,000, approximately what Withers Street LLC paid for it.

**The Appraisals of 269 Withers Street**

The Darling Appraisal was based upon a comparison of 269 Withers Street with ten comparable properties (vacant lots or lots with existing structures that were being demolished) sold between November 2012 and June 3013. Each of the ten comparable properties was located near 269 Withers Street in the East Williamsburg section of Brooklyn (between the Brooklyn-Queens Expressway and Bushwick), an up and coming neighborhood with a mix of residential and industrial sites.[1] (Comparable Map from Darling Appraisal annexed as Exhibit A). In his appraisal Darling calculated the price per buildable square foot ("PBSF") for each of the ten comparable sales, which ranged

[1] https://en.wikipedia.org/wiki/East_Williamsburg,_Brooklyn

from $87 to $261, with an average PBSF of $142. He observed that three of the sales were statistical outliers, (sales for $87, $90 and $261 PBSF) and that the remaining seven fell within a narrow range of $113 to $161 PBSF. Darling opined that because 269 Withers Street was across the street from a housing project and adjacent to a gas station/autobody shop it had a less desirable location than most of the comparables and that it should therefore be valued at the lower end of this range. Based on this analysis, Darling estimated a PBSF of $125 as being the market value for 269 Withers Street in February 2013. When multiplied by the lot's 3,946 buildable square feet, this equated to a market price of $493,250, which he rounded up to $495,000.

The Neglia Appraisal was based upon a comparison of 269 Withers Street with just four other vacant lots sold between November 2012 and May 2013. As indicated on the map attached to the Neglia Appraisal (annexed hereto as Exhibit B), two of the comparables (numbers 1 on Lorimer Street and 3 on Kingsland Avenue) are located near 269 Withers Street (west of the BQE in East Williamsburg). However, the other two (number 2 and 4) are located more than a mile away, near the Brooklyn waterfront in heavily gentrified Williamsburg proper. The PBSF for these four properties ranged from $229 to $390 (with the two East Williamsburg properties at the low end and the two waterfront properties at the high end, and nothing in between). Neglia then applied various "adjustments" to the PBSF of the vacant lots, which he opined were needed to compare those lots to 269 Withers Street, narrowing the PBSF range to $284 - $322. Neglia then stated that to determine the value of 269 Withers Street, the most weight should be placed on comparable number 1 (Lorimer Street), the property at the bottom of his range, as it was "most similar [in] location and zoning compared to the subject." (Dkt. #508-2 at p 52). He opined that 269 Withers should be valued slightly higher than

Lorimer Street, which he calculated had been sold for a PBSF of $284. Based on this analysis he opined that 269 Withers Street had a PBSF of $290. By multiplying $290 by Wither Street's 3,946 buildable square feet (and subtracting $59,000 for removal of the existing structure) Neglia arrived at a valuation for 269 Withers Street of approximately $1.1 million.

**The Evidentiary Hearing**

On January 31, 2017, Magistrate Judge Gold held an evidentiary hearing on the fair market value of 269 Withers Street to try to understand the discrepancy between the two appraisers' valuations. Neglia testified first. When Neglia took the stand, Plaintiffs' counsel handed the Court and opposing counsel three untitled pages and stated that they were amendments to the Neglia Appraisal (Dkt. # 641 p. 30) When asked by opposing counsel when these amendments were created, Plaintiff's counsel stated that he "learned about it yesterday" and that "Mr. Neglia compiled it when we were preparing for the hearing testimony today." *Id.* The amendments were entered into evidence and put on ECF by Magistrate Gold's chambers as Dkt. # 647.

The three pages of amendments, paginated as 43, 45 and 52, were modified versions of the respective pages of the Neglia Appraisal. These three pages in the Neglia Appraisal contained the sales data for the two East Williamsburg comparables (Lorimer Street and Kingsland Avenue) and Neglia's opinion on the valuation of 269 Withers Street. The amendments corrected factual errors in the original appraisal about the Lorimer Street and the Kingsland Avenue sales — but without any highlighting, redlining or other notations identifying the changes. The changes were, to say the least, non-trivial. Neglia's appraisal had originally stated that Lorimer Street and Kingsland Avenue were sold for a PBSF of $282 and $229, respectively. (Dkt. # 508-2 at 42,45).

The amendments showed that these two properties had in fact sold for a PBSF of $172 and $160, respectively. (Dkt. #647). Despite the fact that the amendments dramatically changed the data upon which Neglia had based his valuation of 269 Withers Street, including a 40% reduction in the value of Lorimer Street (the comparable on which Neglia said he placed the most weight), the third page of the amendments did not make any change in Neglia's valuation for 269 Wither Street. Instead, it deleted the statements that Lorimer Street should be accorded the most weight and that it was the most similar comparable, and it kept the conclusion that 269 Withers Street was worth $1.1 million. For the Court's ease of reference, copies of the three original and the three revised pages of Neglia's appraisal are attached as Exhibit C.

Clearly not wishing to call attention to the amendments, Plaintiffs' counsel asked Neglia only one question about them - whether they changed his $1.1 million valuation of 269 Withers Street, to which Neglia replied "The amendments did not falter (*sic*) the valuation. They just had indicated different information that I uncovered after I initially submitted my report to you." *Id.* at 48.

About midway through Neglia's cross examination, Magistrate Judge Gold, on his own, discovered the significance of the amendments. When Magistrate Judge Gold made a reference to page 52 of the appraisal, Neglia drew a distinction between the original page 52 and the amended page 52. (Dkt. # 641 at 120). Upon comparing the two Magistrate Judge Gold realized that the amendments had dramatically lowered the price per buildable square foot for Lorimer Street and Kingsland Avenue. Magistrate Judge Gold then repeatedly asked Neglia how he could not have changed his valuation of Withers Street in light of this.

THE COURT: So in other words, you're telling me that you would have valued [269 Withers Street] the same way, whether the comparable from Lorimer Street had an adjusted price per buildable square foot of $174 of $284.

THE WITNESS: Yes

THE COURT: And whether the Kingsland Avenue site had an adjust[ed] price per buildable square foot of $217 or $287.

THE WITNESS: Yes, because the thought process was even at those numbers, even if it were 200, it would still be – lets see, the value still would be in the excess of $600,000 but I could not discard the influence of the other two comparable sales ---

(Dkt. # 641 at 121-2)

After Neglia left the stand Magistrate Gold commented that "It's inexplicable to me, frankly. I don't understand how he can start with a set of comparables valued at one price, and come up with a value and then change the comparables and stick with the same values. It makes no sense to me. It was either an oversight or it's – he's got a result oriented bit of testimony" (Dkt. # 641 at p 237).

An equally inexplicable fact about the amendments, however, appears to have escaped Magistrate Judge Gold's notice. When Plaintiffs' counsel gave the amendments to the Court and to Wither Street LLC's counsel after Neglia took the stand, he said they had just been created by Neglia the day before in preparing for the hearing. (Dkt. #641 at 30). But during cross-examination, Neglia testified that this was not true.

Q. Well you amended your report today, is that correct?

A. No.

Q. You didn't amend it by adding further information about some of the comparables?

A. You mean the revisions that I submitted?

Q. Yes.

> A. No, that was done right after I submitted the appraisal report to [Plaintiffs' counsel] last year.
>
> Q. Okay
>
> A. Those amendments were a long time ago and they were the result of our double-checking the veracity of the information that we had in the initial because one of those revisions was difficult to uncover when I did the initial research.

(Dkt. # 641 at 99-100).

Neglia's appraisal was sent to Plaintiffs' counsel on January 26, **2015** (Dkt. # 508-2 p. 2). According to Neglia, he made the amendments shortly thereafter. Nevertheless, in May 2015, Plaintiffs filed the original appraisal with the Court in support of the present motion. (Dkt. #508-2). For the next 19 months, Plaintiffs did not provide the corrections to the Court or to opposing counsel and took no steps to inform them of the errors in the appraisal that had been served and filed. Only on the day of the hearing, January 31, **2017**, after Neglia was on the stand, did Plaintiffs' counsel surface with the amendments – and then without offering any explanation of what they contained or any hint of their importance.

## OBJECTIONS TO THE REPORT AND RECOMMENDATION

The Report and Recommendation finds that the Capala Brothers' conveyance of 269 Withers Street to Withers Street LLC was a fraudulent conveyance under New York Debtor and Creditor Law §§ 273-a and 276. It recommends that the Court enter a judgment against Withers Street LLC for $350,000 representing the amount that it "underpaid" for the property. This recommendation is driven almost entirely by the court's finding that 269 Withers Street was worth $800,000 at the time of the sale. $800,000 is the average of the (uncorrected) $1.1 million Neglia Appraisal and the

$500,000 Darling Appraisal. This Solomonic valuation is not warranted by the evidence presented to the Court.

There can be no dispute that Neglia's valuation for 269 Withers Street in his original appraisal was fundamentally flawed. Neglia identified two comparables in the same neighborhood as 269 Wither Street and two near the far pricier Williamsburg waterfront. He explicitly stated that valuation of Withers Street should be determined primarily by looking at the PBSF of Lorimer Street because this property was most similar in location and zoning to 269 Withers Street. Based on this reasoning, he set a value for Withers Street at about 2% above the PBSF of Lorimer Street. But, in doing so, he used the erroneous valuation for Lorimer Street contained in his original appraisal. [2]

After learning that Lorimer Street had sold for 40% less than stated in his original report Neglia did not adjust his valuation of 269 Withers Street. This is not a picayune flaw. Neglia certified in his original appraisal filed with the Court that Lorimer Street was the most similar property to Wither Street and that its PBSF should be given the most weight in determining the value of Withers Street.[3] Although Neglia had calculated the wrong BPSF for Lorimer Street nothing had changed about Lorimer Street that would make it any less similar to Withers Street. It still had the same

[2] In his questioning of Neglia, Magistrate Judge Gold viewed Neglia as having engaged in a process of weighing the four comparable to come up with a valuation for Withers Street. Neglia's report contains no such calculation, and Neglia seemed to have not considered his valuation as being based upon a weighed averaging process until this was proposed by Magistrate Gold. (Dkt #641 at 122). His approach was similar to Darling's in that he established a range of comparables (albeit a flawed one) and set a price based upon which of those comparables he believed best matched 269 Withers Street.

[3] After Neglia corrected the PBSF for the two East Williamsburg properties it is clear that the two comparable lots near the Williamsburg waterfront had sold for well more than double the PBSF of properties in East Williamsburg – making them of little value as comparables.

location, the same zoning and was sold on the same date as Neglia originally thought. Logic dictates that Neglia had to either adjust his estimate of Withers Street's value to reflect the corrected data, or state that the premise underlying his valuation was flawed. He could not continue asserting the validity of his approach while simultaneously rejecting the outcome that approach dictates.

Since the $1.1 million valuation in Neglia's appraisal cannot be supported by his own methodology (and, by his own admission, was based on erroneous data), this leaves only two options about how to use Neglia's valuation– either it should be discarded entirely, or it should be adjusted to reflect the correct data.

If the Neglia Appraisal is disregarded, the only probative admissible evidence before the Court as to the value of 269 Withers Street in February 2013 is the Darling Appraisal, which estimated the value of the property at $495,000. Although the Report and Recommendation mentions two other pieces of evidence, as discussed below, neither has significant, if any, probative value concerning the question at hand.

If the valuation in the Neglia Appraisal is revised to reflect the correct PBSF of the East Williamsburg properties, the valuation of 269 Withers Street would be significantly lower than Neglia has opined. According to Neglia, the correct PBSF for Lorimer Street is $173, which he adjusted upward to $175. As noted in the Report and Recommendation, if, as Neglia originally opined, the PBSF of Withers Street is slightly above the PBSF of Lorimer, this would result in a valuation of Withers Street of approximately $650,000.[4] (R&R at 13).

---

4 A PBSF of $180 times 3,940 BSF = $709,190. After subtracting $59,100 for demolition (as per Neglia's appraisal), the resulting valuation of 269 Withers Street would be $650,090.

The Report and Recommendation notes two other factors considered by the Magistrate Judge. The first is an appraisal prepared for Valley National Bank in mid-2014 in connection with a construction loan application by Withers Street LLC submitted to the Court by Plaintiffs. (Dkt. # 508-3 and 4). Plaintiffs have not stated where they obtained the document. It was never authenticated, and no foundation was ever established to treat it as a business record or to bring it within any other exception to the hearsay rule. Since the author of the report (an outside appraiser hired by the bank), did not testify in court, Withers Street LLC has never had an opportunity to cross-examine him. The main focus of the bank's appraisal was to determine what value the property would have after an apartment building was constructed on it. It does make an effort to value the site as it existed in July 2014 and concludes that the value is just over $1 million. [5] Most importantly, the bank appraisal sought to set a value for the property as of July 2014 — 18 after months Withers Street LLC contracted to buy the property and 17 months after it actually closed on the property. There was testimony that property values in the area were increasing "dramatically" during this period (Dkt. # 641 at 65), but no testimony or other evidence was received as to what this equated to in percentage terms.[6] Moreover, as noted by Judge Gold, the bank may have been eager

---

[5] Since Withers Street LLC needed to demolish the garage that was on the property, the garage reduced that value of the property to Withers Street LLC. The bank appraisal, however, treats the garage as an asset. As observed by the Magistrate Judge Gold, correcting for this lowers the bank valuation for July 2104 to $900,000 (R&R at 14).

[6] According to a publicly available source, the median price per square foot for newly developed properties in Williamsburg rose by close to 50% between the first quarter of 2013 and the second quarter of 2014. MNS Real Estate Brooklyn New Development Market Report. Available online at https://tinyurl.com/yclpfwuk at p. 27. It would be reasonable to assume that changes in the price of newly developed properties in a neighborhood would positively and strongly corelate with changes in the price of vacant lots in the same area.

to make this loan and therefore "the appraiser may have had an incentive to appraise the property at a high value to support approval of a requested loan" (R&R at 15). In short, the bank appraisal does not constitute admissible evidence and, in any event, has little probative value with respect to value of 269 Wither Street LLC in February 2013.

The only other evidence concerning the valuation of 269 Withers Street noted in the Report and Recommendation is the fact that the property had been listed for sale in 2007 (the year before the real estate market collapsed) for $700,000. As noted in the Report and Recommendation, none of the appraisers considered this fact significant. (R&R at 15). The reason for this was cogently explained by Darling during his testimony — the listing resulted in no sale and no offers. (Dkt. # 641 at 190-91). The price was dropped multiple times, and the property still received no offers. *Id.* The fact that the property was listed for a certain price says nothing about its actual fair market value. Magistrate Judge Gold speculated that the listing price was "presumably intended to be sufficiently reasonable to attract offers." (R&R at 15). However, since the evidence indicated that the listing did not attract any offers, this should lead to the equally valid counter-presumption that the listing price was not reasonable. It could just as readily be presumed that the listing was set at an unreasonably high price to test the market, to gain negotiating leverage or because the owner or broker had a misguided belief of the property's value. In summary, the fact that 269 Withers Street was listed for $700,000 in 2007 says little about its value in 2007, and nothing about its value in February 2013.

The only admissible and relevant evidence concerning the valuation of 269 Withers Street in February 2013 are the valuations by Neglia and Darling. Given the aforementioned issues with Neglia's appraisal, the bias evident in his not adjusting his valuation after discovering error in his data, and Plaintiffs' untimely and incomplete

disclosure about these errors, the Court would be justified in disregarding Neglia's valuation altogether. If the Court elects to give any weight to Neglia's appraisal, his valuation should be adjusted to $650,000 to make it consistent with his stated reasoning and methodology. The evidence supports a valuation for 269 Withers Street between $495,000 and $650,000. If the Court concludes that it is necessary to determine a particular price within this range, the issue becomes the relative weight to accord each of the two appraisals.

There has been one significant development since Magistrate Judge Gold's hearing which might be of value to the Court in making this determination. When Magistrate Judge Gold held the hearing in January 2015, there was no way to compare the rental prices for apartments in 269 Withers Street with apartments in Lorimer Street since Lorimer Street was still under construction. Since 2017, both properties have been actively rented out and their historical rental prices are publicly available. A comparison of these rental prices shows that rents received for Lorimer Street are significantly higher per square foot than for 269 Withers Street.[7] For instance, a one bedroom, one bath 550 square foot apartment at Lorimer Street recently rented for $2,750 per month ($60 sq. ft per yr.). A one bedroom, one bath 750 square foot apartment at 269 Withers Street recently rented for $2,500 per month ($40 sq. ft per year).[8] While it may not be proof positive, the fact that apartments at Lorimer Street

---

[7] A district court judge reviewing a report and recommendation is permitted to consider new evidence. F.R.C.P. 72(b)(3). While there are good policy reasons to decline to do so *Util. Audit Grp. v. Capital One, N.A.*, No. 14-CV-0097, 2015 U.S. Dist. LEXIS 40816, at *7 (E.D.N.Y. Mar. 26, 2015), they have no application where, as here, the new evidence did not exist at the time of the Magistrate Judge's hearing.

[8] Historical rental data for 630 Lorimer Street and 269 Withers Street, is available at https://tinyurl.com/yccdknxb, and https://tinyurl.com/ydyh2mpb.

rent out for 50% more per square foot than apartments at 269 Withers Street runs against Neglia's assertion that the two locations are directly comparable or that Withers Street is slightly more valuable per square foot than Lorimer Street. It supports Darling's assertion that Withers Street's is in an inferior location that warrants valuing it at the lower end of the spectrum among comparable East Williamsburg sales.

**269 Withers Street LLC Paid Fair Consideration for the Property**

The Second Circuit has observed "despite New York's attempt to codify when 'fair' consideration is given . . . the concept can be an elusive one that defies any one precise formula. Indeed, what constitutes fair consideration under [DCL 272] must be determined upon the facts and circumstances of each particular case." *U.S. v. McCombs*, 30 F.3d 310, 326 (2d Cir. 1994) (internal citations and quotation marks omitted). What is clear, however, is that "fair consideration does not require dollar-for-dollar equivalence" *Lippe v. Bairnco Corporation*, 249 F. Supp. 2d 357, 377 (S.D.N.Y. 2003). Fair consideration is given "so long as the consideration is not disproportionately small as compared to the value of the transferred property." *Mendelsohn v. Kovalchuk* 585 B.R. 306, 317 (Bankr. E.D.N.Y. 2018) (internal quotation marks omitted).

The application of this concept is demonstrated in *United States v. McCombs*. The district court in that case had voided a conveyance of property from a mother to her daughters under the DCL §§ 273 and 276 upon finding that the daughters had not paid "fair consideration" for the property. The district court's decision was based on its finding that the property had a fair market value of $39,328 and that the daughters had provided only $10,469 in consideration. *United States v. McCombs-Ellison,* 826 F. Supp. 1479, 1497 (W.D.N.Y. 1993). On appeal, the Second Circuit discovered an error

that had infected the district court's calculations of the value of the property and the consideration received for it. *United States v. McCombs*, 30 F.3d 310, 327 (2d Cir. 1994). After correcting these errors, the Second Circuit determined that the property had a fair market value of $85,657 and that the daughters had provided consideration worth $57,797. *Id.* The Second Circuit observed that the plaintiff's fraudulent conveyance claims rose or fell on the issue of fair consideration. *Id.* It then vacated the district court's decision and remanded the case to the district court to determine whether consideration valued at $ 57,797.94 given for property with a fair market value of $ 85,657 was fair consideration "as considered in the context of a forced foreclosure proceeding." *Id. United States v. McCombs*, 30 F.3d 310, 327 (2d Cir. 1994) *Id.*

On remand, the district court determined that the value of the property in the context of a forced foreclosure proceeding was $68,525.[9]

> Hence, the determination of fair consideration becomes whether $57,797.94 is disproportionately small to the $ 68,525.60 forced sale value of the Property. **This consideration is 84% of the appropriate value of the Property. This consideration value does not appear to be disproportionately small to the value of the Property.** Therefore, the government has not upheld its burden of proof on this issue.

*United States v. McCombs*, 928 F. Supp. 261, 274 (W.D.N.Y. 1995).

The consideration paid by Withers Street LLC was 91% of Darlings appraised value for the property. If the Court determines that the Neglia Appraisal should be given any weight in determining the value of the property, even if it was given equal

---

9 The district court, pursuant to the Second Circuit's instructions requiring it to compare the consideration paid not against the property's fair market value, but against its fair market value, *in the context of a forced foreclosure sale*, found that the property's forced sale price would be 80% of the fair market price, and hence used a valuation of $68,525 as its point of reference in determining whether the consideration was disproportionately small.

value with Darlings (which it should not be for the reasons discussed above) the average of the two appraisals (using $650,000 for Neglia) would be $572,500. Withers Street LLC paid 79% of this value. Using either Darling's valuation or the average of the two valuations, the amount paid by Wither Street LLC would not be "disproportionately small" as compared to the fair market value of the property.

**<u>The Remedy</u>**

If the Court determines that Withers Street LLC paid fair consideration for the property, both of Plaintiffs' fraudulent conveyance claims must be dismissed.

Under DCL § 273-a, the Plaintiffs were required to show a lack of "fair consideration" as defined by DCL § 272. This is an element of the claim, and the burden of proving the absence of fair consideration therefore rests with the Plaintiffs. *McCombs*, 30 F.3d at 324. As recently observed by Judge Dearie, to show the lack of "fair consideration" the party asserting a constructive fraudulent conveyance must establish either a) "the lack of fair equivalent value" *or* b) "the lack of good faith on the part of the *transferee*." *Pergament v. Marina Dist. Dev. Co.*, No. 14 CV 2602 (RJD), 2018 U.S. Dist. LEXIS 177765, at *35 n.20 (E.D.N.Y. Oct. 11, 2018). "[G]ood faith in a constructive fraudulent conveyance claim is the good faith of the transferee." *Id.* Plaintiffs have not even attempted to offer evidence of bad faith on the part of Withers Street LLC or its owners. Thus, Plaintiffs' DCL § 273-a claim must fail if the Court finds that Plaintiffs have not carried their burden of showing the lack of fair equivalent value.

Plaintiffs claim of actual fraudulent intent under § 276 is also contingent upon them showing that the sale was for less than fair equivalent value. Plaintiffs have the burden of proving the Capalas actual fraudulent intent by clear and convincing evidence.

*See, e.g., Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 438 (S.D.N.Y. 2014). While Plaintiffs had initially claimed that the sale to 269 Wither Street was a sham and that the Capalas still controlled the property, they have abandoned this baseless contention. The only argument now raised by Plaintiffs as to why the Capala Brothers had fraudulent intent in connection with the sale of 269 Withers Street is their claim that the Capalas sold it for less than fair equivalent value. If the Court finds that the sale was in fact for fair equivalent value, there would be no basis to infer fraudulent intent on the part of the sellers as required under DCL § 276.[10] Moreover, if the Capala Brothers sold the property for a reasonably equivalent value, there would be no appreciable diminution in their assets available to satisfy a judgment by reason of the conveyance. "Where a transfer for value . . . is put forward as a fraudulent conveyance, the test is whether, as a result of the transaction, the debtor's estate was unfairly diminished." *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 635 (2d Cir. 1995) *quoting* 1 Garrard Glenn, *Fraudulent Conveyances and Preferences* § 275 at 471.

In any event, New York law provides a statutory defense against fraudulent conveyance claims to "purchasers for fair consideration without knowledge of fraud at the time of the purchase." NY DCL § 287(1). "An appropriate creditor may void or disregard a fraudulent conveyance to any person *except a purchaser for fair*

---

[10] The fact that the Capala Brothers sold this property during litigation is hardly indicative that they had an intent to defraud the Plaintiffs. From the fact that the Capala Brothers expended legal fees for six years rather than default, and (according to Plaintiffs) held most of their assets in their own names until after a verdict was rendered against them, one could fairly presume that they believed that they would prevail at trial. One could also logically assume that the Capala Brothers sold 269 Withers Street months before the trial began not as part of some bizarre scheme to give away assets to strangers to frustrate Plaintiffs' ability to collect a putative future judgment, but rather to raise funds to pay for the trial.

*consideration without knowledge of the fraud at the time of the purchase*." *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 636 (2d Cir. 1995) (emphasis added). "Where a transferee has given equivalent value in exchange for the debtor's property, the statutory requirement of 'good faith' is satisfied if the transferee acted without either actual or constructive knowledge of any fraudulent scheme." *Id.*; *see Kramer v. Mahia* (In re Khan), Nos. 10-46901-ess, 11-01520-ess, 2014 Bankr. LEXIS 4205, at *20 (Bankr. E.D.N.Y. Sep. 30, 2014). If the Court finds that Withers Street LLC paid fair equivalent value, the only other issue that would need to be determined with respect to this defense would be whether Withers Street LLC "had knowledge of fraud at the time of the purchase."

The owner of Withers Street LLC testified that he does not know Robert or Pawel Capala and that he bought the property from their company through a broker. (Dkt. # 648 at 33-36). He testified that he had never heard the names Robert or Pawel Capala before this proceeding, that the first time he ever met either of them was in a mediation session held in this case and that he has had no other dealings with them. (Dkt. # 641 at p. 232-3). An attorney for Withers Street LLC testified that he represented Withers Street LLC in this transaction and that he had represented its owner in real estate transactions for over 10 years. (Dkt. # 648 p. 59, 65). He testified that he reviewed and helped negotiate the contract for the sale for 269 Withers Street. *Id.* at 60-62. He testified that a broker introduced the buyer and the seller and that he did not believe that the parties previously knew each other. *Id.* at 64-5. He stated that there was nothing about the transaction that caused him concern or led him believe that it was anything other than an arm's length transaction. *Id.* 65-6.

Faced with testimony that Wither Street LLC entered into an arm's-length transaction to buy a property without any pertinent knowledge about the Capala Brothers, the Plaintiffs were required to rebut this testimony with evidence that Withers Street LLC in fact knew or had reason to know that the Capala Brothers were making this sale with fraudulent intent. Plaintiffs have offered no such evidence. Indeed, the very notion put forth by Plaintiffs, that in February 2013 the Capalas give away valuable property to strangers – the equivalent of setting a pile of money on fire – just to spite Plaintiffs, who who may or may not obtain a judgment against them in the future, seems bizarre. The annals of fraudulent conveyance cases (and we suspect this Court's own considerable experience in adjudicating such cases) show that the transferee of a fraudulent conveyance is virtually always a relative of the transferor or an entity related to the transferor, and the conveyance is made to allow the debtor, or someone close to him, to continue to enjoy the benefit of the transferred property. The Plaintiffs' hypothesis about the Capalas irrevocably giving away their property to strangers in order to defraud future potential creditors is so unusual and so contrary to ordinary experience, that Plaintiffs should have to offer convincing proof to establish that this scheme in fact existed. And even this would not suffice: Plaintiffs would also have to prove that Withers Street LLC's owners, who never had any contact with the Capalas or knew anything of their circumstances, nonetheless knew of this supposed scheme. Plaintiffs offered no proof on this issue whatsoever.

The evidence shows that Withers Street LLC provided a fair exchange of value for 269 Withers Street, and that it bought the property without knowledge of a supposed scheme by the Capala Brothers to impoverish themselves to spite potential future creditors. If the Court concludes that Withers Street LLC paid fair consideration,

pursuant to DCL § 287(1) Withers Street is protected from Plaintiffs' fraudulent conveyance claims as a buyer in good faith for fair value. *Gitlin v. Chirinkin*, 98 A.D.3d 561, 562, (2nd Dept 2012) (Dismissing DCL §§ 273 and 276 claims where defendant submitted unrebutted evidence that "he was a good faith purchaser for fair consideration . . . without knowledge of any fraud.").

Finally, if the Court concludes that Withers Street LLC did not pay fair consideration to the Capala Brothers for this property, for the reasons stated in the Report and Recommendation, the appropriate remedy would be to enter a money judgment against 269 Withers Street LLC for the difference between $450,000 and what the Court determines is the fair value of the property. As set forth above, the valuation of $800,000 contained in the Report and Recommendation has no basis in the record. The evidence supports a valuation between $495,000 (the valuation in Darlin's appraisal) and $650,000 (the valuation in Neglia's appraisal as adjusted for the correct data). For the reasons previously stated, the Darling Appraisal should be deemed more reliable, and little or no weight should be accorded to Neglia's valuation.

Since Withers Street LLC would need to borrow against the equity in its property to pay any significant money judgment, if the Court enters such a judgment, we request that it allow Withers Street LLC time to arrange such financing and that it direct that Plaintiffs take reasonable and necessary steps to facilitate Wither Street LLC's ability to obtain such funds, rather than immediately seeking to put the property into foreclosure.

## CONCLUSION

For the reasons set forth herein, 269 Withers Street LLC respectfully requests that the Court decline to adopt the portions of Magistrate Judge Gold's Report and Recommendation of November 6, 2018, concerning the claims against 269 Withers Street LLC, and that the Court deny Plaintiffs' motion to have the conveyance of 269 Withers Street to 269 Withers Street LLC be declared as fraudulent under New York Debtor and Creditor Law.

Dated: New York, New York
December 4, 2018

CLAYMAN & ROSENBERG LLP
ATTORNEYS FOR INTERESTED-PARTY
269 WITHERS STREET LLC

By: Paul Hugel
Paul S. Hugel (PH4749)
305 Madison Avenue - Suite 1301
New York, New York 10165
(212) 922-1080 phone
(212) 949-8255 facsimile