Case 1:07-cv-03629-ILG-RCG Document 672-2 Filed 05/10/23 Page 1 of 25 PageID #: 20570

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
MIROSLAW GORTAT, HENRYK BIENKOWSKI,            :
MIROSLAW FILIPKOWSKI, ARTUR LAPINSKI,         :
JAN SWALTEK, ARTUR KOSIOREK, and HENRYK       :        REPORT &
STOKLOSA, on behalf of themselves and on behalf of  :   RECOMMENDATION
all others similarly situated                 :        07-cv-3629 (ILG) (SMG)
                                              :
            Plaintiffs,                       :
                                              :
     -against-                                :
                                              :
CAPALA BROTHERS, INC., PAWEL CAPALA, and     :
ROBERT CAPALA,                                :
                                              :
            Defendants,                       :
                                              :
     -and-                                    :
                                              :
JENNIFER CAPALA, PIOTR CAPALA, FILIP          :
CAPALA, ELWIRA CAPALA, MIECZYSLAW             :
CIELEPAK, ROBERT CAPALA TRUST, PIOTR          :
CAPALA AND ELWIRA CAPALA TRUST, 269           :
WITHERS STREET, LLC, FIRE HILL HOLDINGS,      :
LLC, FROST 214, LLC, and CP GREEN CORP.,      :
                                              :
            Related Parties.                  :
---------------------------------------------------------------------x
GOLD, STEVEN M., U.S.M.J.:


## INTRODUCTION

Plaintiffs in this case assert claims for violations of the Fair Labor Standards Act

("FLSA") and New York Labor Law ("NYLL"). Plaintiffs prevailed at trial, and two judgments

were entered against Pawel Capala, Robert Capala, and Capala Brothers, Inc., jointly and

severally, in the amounts of $293,212.41 (entered on June 19, 2013), and $566,423.50 (entered

on February 8, 2017). Docket Entries 383 and 600. The judgments remain unpaid.

Plaintiffs have moved for sanctions and other relief in the course of attempting to enforce these judgments.  Senior United States District Judge I. Leo Glasser has referred the pending motions to me for Report and Recommendation.  *See* Orders dated Aug. 7, 2018.

### PROCEDURAL HISTORY

This case has a long and involved procedural history.  Only a brief summary of relevant events, intended to help place the pending motions in context, is provided here.

A jury returned a verdict in plaintiffs' favor on May 13, 2013.  Docket Entry 357.  The Court then entered a final judgment against defendants Pawel Capala, Robert Capala, and Capala Brothers, Inc., jointly and severally, in the total amount of $293,212.42.  Docket Entry 383.  The Court subsequently entered a second judgment awarding attorney's fees and costs in the amount of $566,423.50.  Docket Entry 600.  The judgments remain unsatisfied despite plaintiffs' efforts to enforce them.

While these collection efforts were proceeding, counsel for defendants Robert and Pawel Capala and Capala Brothers, Inc., moved to withdraw.  The motion was granted, without objection from defendants, after a telephone conference held on April 21, 2015.  *See* Tr. of Telephone Conference held Apr. 21, 2015 ("Tr. 4/21/15"), Docket Entry 511; Order dated Apr. 21, 2015.  In May 2015, Plaintiffs filed a motion for sanctions.  Pls.' Mot. for Sanctions, Docket Entry 503; Am. Mot. for Sanctions, Docket Entry 510.  Defendant Capala Brothers never appeared through new counsel.  Defendants Robert and Pawel Capala filed for bankruptcy protection in June 2015.  Plaintiffs and the trustees of the bankruptcy estates subsequently entered into a joint prosecution agreement that provides, among other things, for vacating the

bankruptcy stay to the extent necessary to allow this Court to decide the pending motions. Joint Prosecution Agreement ¶ 1, Docket Entry 640-1.

A status conference was held before this Court on December 8, 2016. At that time, an Order was entered referring the case to court-annexed mediation and directing that failure to submit opposition to plaintiffs' pending sanctions motion by January 8, 2017 would be deemed consent to the relief plaintiffs sought. Docket Entry 585.

Plaintiffs' motions were held in abeyance for a considerable period of time while the parties engaged in mediation. The parties' efforts at mediation, though, ultimately proved unsuccessful. By the time it became clear that mediation had failed, voluminous papers had been submitted to the Court in connection with the pending motions. *See* Pls.' Letter dated Jan. 21, 2018, Docket Entry 635 (listing all filings bearing on the pending motions). Certain aspects of the motions, moreover, had been affected by intervening events. Accordingly, a status conference was held on October 1, 2018, to identify those matters raised in the motion papers that were still being pressed. *See* Tr. of Proceedings held Oct. 1, 2018 ("Tr. 10/1/18"), Docket Entry 655.

At that conference, counsel for plaintiffs identified two aspects of plaintiffs' original motion that remain pending and are ripe for decision.[1] The first seeks a declaration that a conveyance of real property located at 269 Withers Street, Brooklyn, New York (the "Withers Street property") by Capala Brothers, Inc. was fraudulent. *See* Am. Notice of Mot. ¶ (1)(iii)(i). The property was sold to 269 Withers Street, LLC (the "LLC"), a limited liability corporation with members named Mieczyslaw Cielepak and Franciszka Cielepak (the "Cielepaks" and,

---

[1] A third aspect—one that concerns transfers by defendant Pawel Capala to his wife, Jennifer Capala—is the subject of anticipated future motion practice. *See* Docket Entry 57 in related action *Pereira v. Pawel Capala*, 17-cv-3434.

3

together with the LLC, the "Cielepaks and their LLC"). Decl. of Robert Wisniewski in Supp. ("Wisniewski Decl.") ¶ 14, Docket Entry 504-4.[2] Plaintiffs caused a notice of pendency to be placed on the Withers Street property, and the Cielepaks and their LLC have moved to vacate it. Docket Entry 567. The second seeks a declaration that an entity known as Trigon, Inc. ("Trigon") is a continuation of, and successor to, Capala Brothers, Inc. *See* Am. Notice of Mot. ¶ (1)(iii)(iv). I address these two aspects of plaintiffs' motion in turn below.[3]

## DISCUSSION

I. **Plaintiffs' Motion to Avoid the Conveyance of the Withers Street Property**

*A. Procedures Applicable to Rule 69 Motions to Enforce Money Judgments*

Motions seeking to enforce money judgments are governed by Fed. R. Civ. P. 69. Rule 69(a)(1) provides that "proceedings supplementary to and in aid of judgment or execution . . . must accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a). New York law provides that:

> Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money . . . .

---

[2] The Wisniewski Declaration cited in the text refers only to Mieczyslaw Cielepak, but plaintiffs' motion to avoid the transfer of the Withers Street property has been opposed by the LLC as well as Mieczyslaw Cielepak and Franciszka Cielepak. *See, e.g.*, Letter dated July 20, 2016, Docket Entry 560.

[3] During the conference held on October 1, 2018, counsel for plaintiffs stated that plaintiffs also sought appointment of a receiver to wind down the affairs of Capala Brothers, Inc. Tr. 10/1/18 at 18:20–19:6. Plaintiffs' amended notice of motion, however, does not identify this as part of the relief plaintiffs seek, and I therefore do not recommend appointment of a receiver.

Case 1:07-cv-03629-ILG-SMG Document 657 Filed 11/06/18 Page 5 of 25 PageID #: 20551

N.Y. C.P.L.R. § 5225(b). This section "enables a judgment creditor to initiate special proceedings against transferees to set aside fraudulent transfers made by the judgment debtor." *State Farm Mut. Auto. Ins. Co. v. Grafman*, 2015 WL 269529, at *2 (E.D.N.Y. Jan. 21, 2015), *report and recommendation adopted*, 2015 WL 9460131 (E.D.N.Y. Dec. 23, 2015); *see also Aaron v. Mattikow*, 225 F.R.D. 407, 412 (E.D.N.Y. 2004) (noting that "[t]he proceedings authorized by C.P.L.R. § 5225(b) may be properly brought by a judgment creditor against a garnishee or a transferee"). Section 5225(b) "creates a *procedural* mechanism by which judgment creditors can enforce a money judgment, rather than a new *substantive* right." *Mitchell v. Garrison Protective Servs. Inc.*, 819 F.3d 636, 640 (2d Cir. 2016) (per curiam) (emphasis in original).

A "special proceeding" is a creature of New York law "with no equivalent under the Federal Rules of Civil Procedure." *CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 469 (2d Cir. 2018). "Because there is no such thing as a 'special proceeding' in federal court, [the Circuit has] afforded district courts in New York some leeway in determining whether to construe a particular fraudulent-transfer suit as a plenary action or a special proceeding," the two procedural vehicles available to a creditor-plaintiff seeking to avoid a fraudulent conveyance. *Garrison*, 819 F.3d at 640; *see also Mitchell v. Lyons Prof'l Servs., Inc.*, 109 F. Supp. 3d 555, 562–66 (E.D.N.Y. 2015) (discussing special proceedings under New York law). A plenary action is a garden-variety lawsuit, meaning it "proceeds in the ordinary course—summons and complaint, answer, or motion to dismiss, discovery, and summary judgment or trial." *Lyons*, 109 F. Supp. 3d at 562. In contrast, a special proceeding substitutes "a motion in lieu of a plenary action" and "is commenced by a notice of petition and supporting affidavits and other documentary proof." *Id.* at 563.

5

The Second Circuit has recently held that, at least in the context of a garnishee, "a party seeking a money judgment against a non-party garnishee may proceed by motion and need not commence a special proceeding, as long as the court has personal jurisdiction over the garnishee." *CSX Transp.*, 879 F.3d at 469. In doing so, the Circuit confirmed the understanding of courts in this Circuit that Rule 69 "does not require strict adherence to state procedural law, and that [a] judgment creditor may seek the relief provided under state law through a motion made in the original federal action." *Mitchell v. Lyons Prof'l Servs., Inc.*, 727 F. Supp. 2d 120, 121 (E.D.N.Y. 2010); *see also N. Mariana Islands v. Millard*, 845 F. Supp. 2d 579, 581–82 (S.D.N.Y. 2012) (noting that "[n]early every court in this Circuit to consider the issue has held that parties can bring a motion under FRCP 69(a), rather than instituting a special proceeding under the New York state law" and citing cases).

In short, federal courts enjoy substantial flexibility with respect to the procedures they employ to hear and determine applications by judgment-creditors seeking to avoid transfers of assets. Here, plaintiffs' motion is styled as one for sanctions brought pursuant to Fed. R. Civ. P. 37 for defendants' failure to comply with the Court's orders. Am. Notice of Mot. The motion, however, invokes Rules 69, and seeks relief pursuant to sections 273-a and 276 of the New York Debtor and Creditor Law. Pls.' Mem. of Law in Supp. of Mot. for Sanctions at 11, 24, Docket Entry 515. Plaintiffs' motion is, for all the reasons stated above, an appropriate procedural vehicle for seeking to avoid the transfer of the Withers Street property from the defendants to the Cielepaks and their LLC.

6

B. *Procedural Challenges Raised by the Cielepaks and their LLC*

The Cielepaks and their LLC raise two procedural challenges to plaintiffs' motion. First, they argue that this Court lacks jurisdiction over them because plaintiffs never served them with a summons. Cielepaks and their LLC Reply Mem. ("Cielepaks' Reply") at 2–3, Docket Entry 575. The Cielepaks and their LLC acknowledge, however, that they were served with an order to show cause. *Id.* Moreover, and as discussed in more detail below, they have actively participated in this litigation, including by appearing at evidentiary hearings and calling witnesses. In any event, as discussed above, a judgment creditor may commence a special proceeding by motion, rather than a plenary action, when seeking to avoid a transfer, and the Cielepaks and their LLC point to no authority requiring service of a summons with a motion to commence a special proceeding. Finally, United States District Judge Glasser, when the Cielepaks and their LLC challenged jurisdiction on the same basis in connection with plaintiffs' application for a temporary restraining order, held that "it's enough to serve notice on these related parties, these transferees and bring them into this proceeding for the purpose of determining whether or not there has been a fraudulent transfer." Tr. of Hr'g held Dec. 22, 2014 ("Tr. 12/22/14") at 17:2–5, Docket Entry 648. Accordingly, the challenge to jurisdiction raised by the Cielepaks and their LLC lacks merit.

Second, the Cielepaks and their LLC argue that a mortgagee, ConnectOne Bank (the "Bank"), is a necessary party that has neither been served nor appeared in this action. Cielepaks' Reply at 1–2; Cielepaks and their LLC's Letter dated Feb. 8, 2017, Docket Entry 602. It is undisputed that the Bank holds a mortgage on the property. Federal Rule of Civil Procedure 19 defines a party as "necessary" if

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or

7

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) . . . impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. Rule Civ. P. 19 (a)(1)(A)–(B).

Although it has not formally appeared in these proceedings, the Bank has submitted numerous letters to the Court. Docket Entries 594, 608, 628, 643, 652 and 654. In its letter dated September 25, 2018, the Bank points out that plaintiffs have agreed that any relief they obtain with respect to the Withers Street property should be subject to the Bank's mortgage. Docket Entry 652 at 1. The Bank further states that, to the extent their mortgage lien remains intact regardless of the outcome of plaintiffs' motion, the Bank "does not need to be involved in this action." *Id.* at 2. Counsel for the Bank participated in the conference held by this Court on October 1, 2018, at which counsel for plaintiffs reiterated their understanding and agreement that any relief they might obtain would be subject to the Bank's mortgage, and counsel for the Bank confirmed that this agreement was sufficient to protect the Bank's interests. Tr. 10/1/18 at 7:17–21, 8:21–9:6. Accordingly, the relief sought by plaintiffs may be accorded without the participation of the Bank, and the Bank does not claim any interest in the subject matter of this action so long as its mortgage lien remains undisturbed—a condition to which plaintiffs have agreed. The Bank, therefore, is not a necessary party, and this procedural objection lacks merit as well.

8

*C. The Conveyance of the Withers Street Property and New York Debtor and Creditor Law*

Plaintiffs invoke two provisions of the New York Debtor and Creditor Law. First, plaintiffs claim constructive fraud pursuant to section 273-a. Second, and in the alternative, plaintiffs claim actual fraud pursuant to section 276. Each of these claims is addressed in turn below.

1. Plaintiffs' Claim under Section 273-a for Constructive Fraud

*a) Elements Required Under Section 273-a*

Section 273-a of the New York Debtor and Creditor Law provides that

> [e]very conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

N.Y. Debt. & Cred. Law § 273-a. "To prevail under that section, 'a plaintiff must establish (1) that the conveyance was made without fair consideration; (2) that the conveyor is a defendant in an action for money damages or that a judgment in such action has been docketed against him; and (3) that the defendant has failed to satisfy the judgment.'" *Garrison*, 819 F.3d at 641 (quoting *Mitchell v. Garrison Protective Servs., Inc.*, 579 F. App'x 18, 21 (2d Cir. 2014)).

Here, it is undisputed that defendant Capala Brothers, Inc. transferred the Withers Street property to the LLC on February 20, 2013. Decl. of Robert Wisniewski in Supp. of Mot. for TRO ("Wisniewski TRO Decl.") Ex. 1, Docket Entry 362-2. Capala Brothers, Inc. was a defendant in this action at that time; indeed, a trial date had been scheduled just two weeks prior to the transfer. Min. Entry dated Feb. 8, 2013 Docket Entry 303. It is also undisputed that defendants have failed to satisfy the judgments entered against them. The second and third showings required to prevail under section 273-a have thus been established.

9

The only issue remaining with respect to plaintiffs' section 273-a claim, then, is whether the Withers Street property was conveyed without fair consideration. "Fair consideration" is given for property

(a) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

(b) When such property, or obligation, is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

N.Y. Debt. & Cred. Law § 272. "Fair consideration is comprised of two elements—good faith and the payment of a fair equivalent value for the property interest conveyed." *Allstate Ins. Co. v. Mirvis*, 2017 WL 3981157, at *4 (E.D.N.Y. July 31, 2017), *report and recommendation adopted*, 2017 WL 6029128 (E.D.N.Y. Dec. 5, 2017) (internal quotation marks and citation omitted). "[T]he recipient of the debtor's property[] must . . . convey property in exchange . . . and . . . such exchange must be a 'fair equivalent' of the property received" and must be in "good faith." *In re Sharp Int'l Corp.*, 403 F.3d 43, 53 (2d Cir. 2005) (internal quotation marks omitted) (quoting *HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1058–89 (2d Cir. 1995)). The burden of proving the absence of fair consideration rests with the party challenging the conveyance. *United States v. McCombs*, 30 F.3d 310, 324 (2d Cir. 1994).

Fair consideration is determined on a case-by-case basis and "does not require dollar-for-dollar equivalence." *Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 377 (S.D.N.Y. 2003). Consideration may be fair even if the amount paid is less than the value of the transferred property, provided that amount is not "disproportionately small" when compared to the transferred property's value. *Id.*

b)  *The Value of the Withers Street Property*

The parties have submitted competing appraisals of the Withers Street property: an appraisal by plaintiffs' expert, Domenick Neglia ("Neglia Appraisal"), Docket Entry 508-2, and an appraisal by an expert retained by the Cielepaks and their LLC, Michael J. Darling ("Darling Appraisal"), Docket Entry 575-2.[4]  Plaintiffs have also submitted an appraisal prepared for Valley National Bank ("VNB") in connection with its consideration of a construction loan application to be secured by the Withers Street property. Valley National Bank Appraisal, Docket Entries 508-3 and -4 (together "VNB Appraisal").[5]  In addition to reviewing the appraisals themselves, the Court held an evidentiary hearing on January 31, 2017, at which Neglia, Darling, and Mieczyslaw Cielepak testified.  *See* Tr. of Proceedings held Jan. 31, 2017 ("Tr. 1/31/17"), Docket Entry 641.

The property is approximately 1,970 square feet, has an approved buildable area of approximately 3,946 square feet, and is zoned "R6B with C2-4 commercial overlay."  Neglia Appraisal at 6, 38; Darling Appraisal at 25; VNB Appraisal at 6, 153.  At the time of the transaction, the property was improved with a single-story building described as either a garage or a warehouse.  Darling Appraisal at 6; VNB Appraisal at 6.  The property was previously listed for sale at a price of approximately $700,000 in 2007.  Darling Appraisal at 10.

Capala Brothers, Inc. sold the property to the LLC for $450,000 on February 20, 2013. Neglia Appraisal at 11; Darling Appraisal at 10.  Plaintiffs' expert estimates that the value of the Withers Street property on the date of sale was $1,100,000.  Neglia Appraisal at 6; Decl. of

---

[4] Because the Darling Appraisal contains multiple documents that are paginated separately, this Report uses the page numbers assigned by the Court's Electronic Case Filing system.

[5] Due to its size, the VNB Appraisal occupies two docket entries.  This Report uses the VNB Appraisal's internal pagination.

Domenick Neglia ("Neglia Decl.") ¶ 8, Docket Entry 508. Plaintiffs contend that this valuation is supported by the VNB Appraisal, which valued the property at $1,030,000 as of July 21, 2014. VNB Appraisal at 6, 153, 157. The VNB Appraisal allocates $1,000,000 of the value to the land, as opposed to the warehouse garage that was then located on it. VNB Appraisal at 6.

Neglia, plaintiffs' expert, determined the value he ascribed to the Withers Street property by using what he termed the "Direct Sales Comparison Approach to Value," which "uses actual arm's length transactions of similar properties as the basis for an indication of market value of the subject property." Neglia Appraisal at 42. Neglia considered four different properties located in the Williamsburg neighborhood of Brooklyn and calculated their price per buildable square foot ("PBSF"). *Id.* at 42, 48. Neglia made various adjustments to account for differences between these four comparable sales and the Withers Street property. *Id.* at 50. Most notably, Neglia determined that two of the four comparable sales were of buildings in a "higher market area" and adjusted their PBSF downward by 10% and 20%, respectively. *Id.* Neglia further adjusted one of these comparable sales to account for the cost of demolishing an existing structure on that property. *Id.* at 51. After adjustments, the PBSF of the comparable sales fell in a range between $284.42 and $322.33, and averaged $302.30. *Id.* at 52. In his report, Neglia took what he called the most similar property, 632 Lorimer Street (comparable sale #1), and after weighting its PBSF of $284.42 most heavily, decided to apply a PBSF of $290 to the Withers Street property, leading to a total value of $1,142,600 ($290 PBSF x 3,940 square feet). *Id.* Neglia then subtracted the estimated cost of demolishing the building on the property— $59,100—to arrive at an appraised value of $1,083,500. *Id.* Finally, he rounded that number to arrive at his appraisal of $1,100,000. *Id.*

At the hearing, plaintiffs introduced amendments to Neglia's report. Tr. 1/31/17 at 46:25–47:24. Most notably, Neglia discovered that one the comparable sales he relied upon—632 Lorimer Street, the property Neglia considered most similar to Withers Street and the one he weighted most heavily in reaching his appraised value—was in fact the sale of two properties. *Id.* at 99:24–100:18. Though Neglia testified, inexplicably, that this new information did not alter his valuation, *id.* at 48:7–8, the amendments reflect new PBSF values for Lorimer Street and for another comparable sale, that of a building at 127 Kingsland Avenue. While Neglia's original appraisal report attributes PBSF values of $284.42 and $287.34, respectively, to these properties, Neglia's amendments revise these values to $174.53 and $217.78. *Compare* Neglia Appraisal at 52 *with* Pls.' Ex. 1 at 43, 45, 52, Docket Entry 647. Thus, the amended range of Neglia's PBSF values is reduced as a result of the amendments from between $284.42 and $322.33 to between $174.53 and $322.33, and the average PBSF value is reduced by virtue of the amendments from $302.30 to $257.44. Neglia Appraisal at 52. If Neglia's appraised value were reduced by a similar percentage, it would total $936,765.[6] As noted above, the property Neglia originally considered most comparable to Withers Street was the Lorimer Street building; Neglia's original appraisal calculated a PBSF of $284.42 for Lorimer Street and attributed a PBSF of $290 to Withers Street. If the amended PBSF for Lorimer Street of $174.53 were similarly rounded up to $180 and applied to square footage of the Withers Street property, the resulting appraised value would be $650,100.[7]

As noted above, the VNB Appraisal valued the land at $1,000,000 and the total value of the property, with the existing improvements, at $1,030,000. VNB Appraisal at 153. The VNB

---

[6] $1,100,000 × (257.44/302.30) = $936,765.

[7] 3,940 square feet × $180 PBSF = $709,200, less demolition costs of $59,100, equals $650,100.

Appraisal also used the sales comparison method and examined the sales of four similar properties, including the Lorimer Street sale relied upon by Neglia. *Id.* at 144, 149. Unadjusted, the comparable sales the VNB Appraisal used ranged from $173 to $274 per square foot, with an average of $227. *Id.* at 147. After making adjustments for size and location, the VNB Appraisal calculated a range of PBSF from $190 to $301, with an average of $244 PBSF. For reasons not immediately apparent from the appraisal report, the VNB appraiser applied a value of $253 per square foot to reach an appraised value of $998,338, and then rounded the estimated value of the land up to $1,000,000. *Id.* at 153. If the VNB appraiser had applied the calculated value of $244 PBSF, and reduced this value by the cost of demolishing the building on the Withers Street property, as Neglia did, rather than attributing a positive value to the building, the resulting appraised value would be $902,260.[8]

The expert for the Cielepaks and their LLC, Darling, valued the property at $495,000. Darling Appraisal at 6. Like the other two appraisers, Darling utilized the sales comparison approach, but looked at the sale of ten, as opposed to four, similar properties. *Id.* at 29. Two of the properties Darling used were the Kingsland Avenue and Lorimer Street properties used by Neglia. *Id.* at 35, 38. The comparable properties identified by Darling ranged in value from $86.90 to $260.83 PBSF, with an average value of $141.67 PBSF.[9] *Id.* at 41. Darling ultimately attributed $125 PBSF to the Withers Street property and rounded his resulting total up to an appraised value of $495,000. *Id.* at 42.

---

[8] 3,940 square feet × $244 PBSF = $961,360, less demolition costs of $59,100, equals $902,260. I note that the VNB Appraisal attributes 3,946 buildable square feet to the Withers Street property, whereas Neglia attributes 3,940 buildable square feet. Neglia's calculation of 3,940 square feet is used to adjust the amount of the VNB Appraisal.

[9] Darling's valuation uses the term "P/FAR" or "price per FAR," which stands for price per floor area ratio, a designation equivalent to PBSF. Tr. 1/31/17 at 176:6–14. For the sake of consistency between the appraisals, where Darling uses P/FAR, this Report uses PBSF.

The Court hesitates to rely too heavily on any of the three appraisals before it. With respect to the appraisal prepared for VNB, the appraiser may have had an incentive to appraise the property at a high value to support approval of a requested loan. Tr. 1/31/17 at 235:19–236:3. Moreover, the VNB Appraisal valued the property as of July 21, 2014, fourteen months after the sale of the Withers Street property. VNB Appraisal at 153. This fourteen-month discrepancy is likely significant because the relevant market was improving at the time. Neglia Appraisal at 27–29; VNB Appraisal at 31–34; Tr. 1/31/17 at 189:7–190:1 (Darling). Although Darling attempted to suggest that his appraisal was the most reliable because he did not make subjective adjustments to the comparable sales he used, he also acknowledged at the hearing that the "slotting" approach he employed was similarly subjective. Tr. 1/31/17 at 208:2–211:21. Neglia failed to explain why, even after correcting his report to reflect significantly lower PBSF values for comparable sales, he declined to adjust the value he attributed to the Withers Street property. Only when pressed did Neglia acknowledge that the comparable sales he relied upon could have supported an appraised value as low as $900,000. *Id.* at 123:14–124:22. Neglia also relied on sales that were not, at least according to Darling, in the same neighborhood as the Withers Street property. *Id.* at 157:4–159:4, 169:8–20.

I also consider a fact that none of the appraisers appear to have accorded any weight: the Withers Street property was listed for sale in 2007 for $700,000 with the assistance of a real estate broker. Darling Appraisal at 10. Although the listing did not result in a sale, it was made through a broker known to Darling as knowledgeable and experienced with respect to property values in the relevant area. *Id.* at 162:12–23. The price set was presumably intended to be sufficiently reasonable to attract offers. As noted above, property values in the surrounding area

15

increased significantly from 2007 to the date the Withers Street property was sold; indeed, Darling testified that a 25% increase could reasonably be assumed.  Tr. 1/31/17 at 189:20–22.

After carefully considering all of the evidence described above, the Court attributes a value of $800,000 to the Withers Street property as of February 20, 2013.  Among other things, this value represents an approximate mid-point between the value Neglia attributed if reduced by the percentage reduction reflected in his amended analyses of the Lorimer Street and Kingsland Avenue properties, or $936,765, and the value that would be attributed if Neglia's revised analysis of the Lorimer Street property—the one Neglia weighted most heavily—were rounded up slightly and applied to Withers Street, or $650,100.

In light of this valuation, the Court finds that Capala Brothers, Inc. conveyed the Withers Street property to the LLC without receiving fair consideration in return.  The sales price of $450,000 is approximately 56% of $800,000.  While an amount paid may constitute fair consideration even if it is less than the actual market value of the conveyed property, the amount cannot be, as it is here, "'disproportionately small' as compared to the value of the transferred property."  *Lippe*, 249 F. Supp. 2d at 377.

Having concluded that the conveyance was not made for fair consideration, the Court need not determine whether the parties to the transaction acted in good faith; a lack of fair consideration is sufficient to establish a claim under section 273-a.  *See, e.g.*, *Mirvis*, 2017 WL 3981157, at *7; *Lippe*, 249 F. Supp. 2d at 376–77.  Accordingly, because it was not made for fair consideration, the conveyance of the Withers Street property was constructively fraudulent pursuant to section 273-a of the New York Debtor and Creditor Law.

2. Plaintiffs' Claim under Section 276 for Actual Fraud.

In the alternative, plaintiffs claim that the Withers Street property was conveyed with actual intent to defraud pursuant to section 276 of the New York Debtor and Creditor Law. Section 276 provides that "[e]very conveyance made and every obligation incurred with actual intent . . . to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." N.Y. Debt. & Cred. Law § 276. To prevail on a claim under section 276, a plaintiff "must establish that (1) the thing transferred has value out of which the creditor could have realized a portion of its claim; (2) that this thing was transferred or disposed of by debtor; and (3) that the transfer was done with actual intent to defraud." *In re Khan*, 2014 WL 10474969, at *21 (Bankr. E.D.N.Y. Dec. 24, 2004) (quoting *Kittay v. Flutie N.Y. Corp.*, 310 B.R. 31, 56 (Bankr. S.D.N.Y. 2004)); *see also In re LaForte*, 2017 WL 1240198, at *7 (E.D.N.Y. Mar. 30, 2017).

Here, there is no dispute that the first two elements are met. The only question is whether the transfer was done with actual intent to defraud. The plaintiff has the burden to prove actual fraudulent intent by clear and convincing evidence. *See, e.g.*, *Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 438 (S.D.N.Y. 2014).

As discussed above, defendant Capala Brothers, Inc. has failed to appear through counsel, and none of the defendants have submitted opposition to plaintiffs' motion with respect to the Withers Street property. Accordingly, plaintiffs' allegations of fraudulent intent stand undisputed.

Even if defendants' failure to oppose plaintiffs' motion did not provide a sufficient basis for a finding of actual intent to defraud, the underlying facts would. A plaintiff alleging fraud may satisfy his burden by relying on "badges of fraud." *In re Sharp*, 403 F.3d at 56. These

17

"badges of fraud" are "circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." *Id.* Common badges of fraud include "a close relationship between the parties to the alleged fraudulent transaction; a questionable transfer not in the usual course of business; inadequacy of the consideration; . . . and retention of control of the property by the transferor after the conveyance." *Id.* (internal quotation marks and citation omitted). Courts have also considered whether the transaction at issue "was a secret and hasty transfer not in the usual course of business, the degree of the transferor's knowledge of the creditor's claim and the transferor's inability to pay it, and the use of dummies or fictitious parties in the transfer." *Kim v. Ji Sung Yoo*, 311 F. Supp. 3d 598, 612–13 (S.D.N.Y. 2018) (internal quotation marks and citation omitted).

Here, there are compelling badges of fraud. As discussed above, defendants conveyed the property for far less than fair market value. They did so within two weeks of the setting of a trial date, when they knew the possibility they would be subject to a substantial judgment loomed large and was imminent.[10] Although a substantial judgment was entered against the defendants in 2013, Docket Entry 383, it remains unpaid. Finally, although the Cielepaks deny it, the VNB Appraisal states that, "[a]ccording to the current owner [Cielepak], the property was not listed but was owned by a friend who needed to sell quickly" and characterizes the conveyance as a "distressed sale." VNB Appraisal at 12.

The Cielepaks contend that they acquired the Withers Street property in an arms-length transaction and in good faith. Mieczyslaw Cielepak testified at the hearing that he had never met either Robert or Pawel prior to purchasing the Withers Street property. Tr. 1/31/17 at 232:2–8;

---

[10] The trial of plaintiffs' claims against the defendants was set for April 29, 2013 during a conference held on February 6, 2013. Min. Entry dated Feb. 8, 2013. The Withers Street property was sold on February 20, 2013. Neglia Appraisal at 11.

18

Decl. of Mieczyslaw Cielepak ("Cielepak Decl.") ¶¶ 3–4, Docket Entry 575-1. He also testified that neither his wife, who was at the closing, nor his son had ever met Robert or Pawel. Tr. 1/31/17 at 232:23–233:1. However, "[i]t is the Debtor's actual intent to defraud [its] creditors that is relevant to this inquiry, not the [transferee's]." *LaForte*, 2017 WL 1240198, at *7 (citing *Schneider v. Barnard*, 508 B.R. 533, 546 (E.D.N.Y. 2014)); *see also Chen,* 8 F. Supp. 3d at 438 ("To prove actual fraud under § 276, a [plaintiff] must show intent to defraud on the part of the *transferor*" (emphasis in original) (quoting *In re Sharp*, 403 F.3d at 56)). Accordingly, whether the Cielepaks acted in good faith and without fraudulent intent does not bear on plaintiffs' claim under section 276. Accordingly, I respectfully recommend that the Court find that the Withers Street property was conveyed with actual intent to defraud pursuant to section 276 of the New York Debtor and Creditor Law.

### D. Remedy

As discussed above, plaintiffs have demonstrated their entitlement to relief on two separate and independent grounds. The question I now address is the nature of the relief to be afforded.

Plaintiffs have submitted a proposed order that invokes section 279 of the New York Debtor and Creditor Law. Proposed Order ¶ 10, Docket Entry 625-1. Section 279, though, applies to the rights of creditors whose claims have not yet matured. The remedy for creditors with matured claims is found in section 278. *See, e.g.*, *Mirvis*, 2017 WL 3981157, at *7. Once a conveyance has been found to have been fraudulent, section 278 provides that a creditor may "(a) [h]ave the conveyance set aside . . . to the extent necessary to satisfy his claim or (b) [d]isregard the conveyance and attach or levy exaction upon the property conveyed." N.Y. Debt.

& Cred. Law § 278; *see also Mirvis*, 2017 WL 3981157, at *7; *Howland v. Resteiner*, 2008 WL 1740531, at *4 (E.D.N.Y. Apr. 10, 2008).

In determining an appropriate remedy, this Court takes into account that "[t]he setting-aside of a fraudulent conveyance is a form of equitable relief." *Dong v. Miller*, 2018 WL 1445573, at *9 (E.D.N.Y. Mar. 23, 2018). "The purpose of New York's fraudulent conveyance laws is to return properties to the status quo ante . . . ." *Kim*, 311 F. Supp. 3d at 621. Therefore, "[a]s a general rule, the creditor's remedy in a fraudulent conveyance action is limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance." *Id.* (quoting *Cadle Co. v. Newhouse*, 20 F. App'x 69, 73 (2d Cir. 2001)). "[T]he defrauded creditor is not entitled to an enhancement of position beyond what it was before the fraud . . . ." *Id.* (quoting *Marine Midland Bank v. Murkoff*, 120 A.D.2d 122, 133 (2d Dep't 1986)). Put simply, "a judgment creditor's right to satisfy a judgment cannot be enhanced by virtue of a fraudulent transfer." *Newhouse*, 20 F. App'x at 73. Thus, when equitable considerations warrant, a court may enter a money judgment against a grantee rather than avoid a transfer. *Id.* (citing *Murkoff*, 120 A.D.2d at 132–33). For example, "money judgments are available where assets have been sold and commingled with a transferee's assets." *Paradigm BioDevices, Inc. v. Viscogliosi Bros. LLC*, 2014 WL 516695, at * 2 (S.D.N.Y. Feb. 10, 2014).

Since the transaction, a substantial mortgage has been secured on the Withers Street property and an apartment building has been erected there. Cielepaks' Reply at 1; Tr. 1/31/17 at 231:18–232:1; Darling Appraisal at 10 (noting that the Withers Street property had been approved in 2013 for the construction of a mixed-use commercial and six-family building). The property has therefore undoubtedly increased significantly in value since it was sold by Capala

20

Brothers, Inc. Indeed, the VNB Appraisal values the property as improved at $4,385,000.[11] VNB Appraisal at 143. Moreover, although plaintiffs sought a temporary restraining order with respect to the Withers Street property, their application was denied. Tr. 12/22/14 at 77:5–78:11, 80:4–9. The Cielepaks were as a result free to make improvements on the property, and it would be inequitable for those improvements to benefit plaintiffs. The equitable considerations here therefore warrant a money judgment rather than avoidance of the conveyance of the Withers Street property.

For all these reasons, this Court respectfully recommends that plaintiffs be awarded a judgment in the amount of $350,000 against the Cielepaks and their LLC, representing the difference between the fair market value of the property on the date of sale as determined by the Court, or $800,000, and the consideration paid of $450,000. I further recommend that the Court's Order provide that the judgment may be recorded as a lien on the Withers Street property, but shall not have priority over the existing mortgage of ConnectOne Bank recorded on June 23, 2016. *See* Letter of ConnectOne Bank dated Oct. 4, 2018, Docket Entry 654.

## II. Motion to Vacate Notice of Pendency

As noted above, plaintiffs filed a notice of pendency regarding 269 Withers Street. Section 6501 of the New York Civil Practice Law and Rules provides that a "notice of pendency may be filed in any action in a court of the State or of the United States in which the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property." N.Y. C.P.L.R. § 6501. "The purpose of a notice of pendency is to provide constructive notice to a

---

[11] The VNB Appraisal notes that Cielepak intended to construct a mixed-use building, composed of a restaurant on the ground floor and apartments in the upper stories. VNB Appraisal at 4. It is unclear exactly how the building is being used today. However, it is clear that Cielepak demolished the original warehouse building and constructed a larger, multi-story building. Neglia Appraisal at 38; *see also* Darling Appraisal at 2 (noting completion of a new foundation and structural steel work as of March 2015).

21

Case 1:07-cv-03629-ILG-SMG Document 657 Filed 11/06/19 Page 22 of 25 PageID #: 20568

purchaser from any defendant named in the notice and bind a purchaser by all proceedings taken in the action after such filing." *5316 Church Ave. LLC v. Yhun*, 2017 WL 4233022, at *2 (E.D.N.Y. Sept. 22, 2017).

The Cielepaks and their LLC have moved to vacate the notice of pendency. The motion rests largely on the argument that plaintiffs failed to serve these parties with summonses. Mem. in Supp. of Mot. to Vacate the *Lis Pendens* at 3–5, Docket Entry 567-2. As discussed above, though, plaintiffs properly proceeded by motion rather than plenary action, and no summons was required. In any event, if the District Court accepts the recommendations made in this Report, the matter will be moot, as plaintiffs will be permitted to record a lien on the Withers Street property. Accordingly, the motion to vacate the *lis pendens* should be denied.

## III.    Successor Liability of Trigon

Plaintiffs seek a declaration that Trigon, Inc. is a continuation of, and a successor to, Capala Brothers, Inc. Notice of Mot. for Sanctions ¶ 1(iii)(iv); Am. Notice of Mot. for Sanctions ¶ 1(iii)(iv). In support of their request, plaintiffs allege that defendants created Trigon in June 2014, the same month that Capala Brothers stopped conducting business. Decl. of Robert Wisniewski dated May 28, 2015, ¶ 18, Docket Entry 509. Plaintiffs further allege that Trigon now employs some of Capala Brothers' former employees and performs work on behalf of Capala Brothers' former clients. *Id.* They also contend that Robert and Pawel used credit cards issued to Capala Brothers to make purchases on behalf of Trigon. *Id.* Finally, plaintiffs allege that Trigon paid invoices issued for work performed on defendants' behalf by their former counsel, Mr. Orner. *Id.* ¶ 21.

As noted above, defendants Robert and Pawel Capala and Capala Brothers, Inc. have not submitted any opposition to plaintiffs' motion. It appears, however, that plaintiffs never served

Trigon, Inc. with their motion.  Trigon is not listed in the caption of the motion papers, and does not appear in the distribution list on plaintiffs' notice of motion or amended notice of motion. Nor has Trigon submitted any response to plaintiffs' motion or otherwise participated in these judgment enforcement proceedings.[12]

Even if Trigon, Inc. had been served, there would be a serious question as to whether subject matter jurisdiction could be exercised over plaintiffs' claim against it.  "Lack of subject matter jurisdiction may be raised at any time by a party or by the Court *sua sponte*."  *Adames v. Taju*, 80 F. Supp. 3d 465, 467 (E.D.N.Y. 2015).  The burden of establishing subject matter jurisdiction is on plaintiffs.  *Bd. of Trs. v. Allure Metal Works, Inc.*, 2017 WL 372051, at *2 (E.D.N.Y. Jan. 25, 2017).

In *Peacock v. Thomas*, the Supreme Court held that federal courts do not "possess ancillary jurisdiction over new actions in which a federal judgment creditor seeks to impose liability for a money judgment on a person not otherwise liable for the judgment."  516 U.S. 349, 351 (1996).  The Court "approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments—including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances."  *Id.* at 356.  The Second Circuit has noted that, "[s]ince *Peacock*, most courts have continued to draw a distinction between post-judgment proceedings to collect an existing judgment and proceedings, such as claims of alter ego liability and veil-piercing, that raise an independent controversy with a new party in an effort to shift liability." *Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 106 (2d Cir. 2001).  These courts have permitted

---

[12] As noted above, United States District Judge Glasser, when considering plaintiffs' motion for a temporary restraining order, stated that certain related parties had properly been brought before the Court.  Trigon, Inc. was not among the parties who appeared at that time.  Tr. 12/22/14 at 3:11–17, 16:11–17:9.

Case 1:07-cv-03629-LG-SMG Document 657 Filed 11/06/19 Page 24 of 25 PageID #: 20570

judgment creditors to pursue the judgment debtor's assets under their ancillary jurisdiction, even when those assets are in the hands of a third party. *Id.* But "[w]here a new substantive theory— here, successor liability—is advanced to establish liability as to a new party, some independent ground is necessary to assume federal jurisdiction over the claim." *De Ping Song v. Inhae Corp.*, 578 F. App'x 22, 23 (2d Cir. 2014) (dismissing appeal and ordering that the district court dismiss the underlying judgment in which plaintiff sought to enforce judgment against defendant under a theory of alter-ego/successor liability); *see also Kim v. Yoo*, 2016 WL 258642, at *4 (S.D.N.Y. Jan. 20, 2016) (discussing the distinction between fraudulent conveyance actions and actions against third parties to satisfy an underlying judgment and noting that, absent a jurisdictional basis, "the Court [did] not have the ability to make [the third-party] liable for [the debtor's] debts").

Plaintiffs are not here seeking defendants' assets from Trigon, Inc.; rather, they seek a declaration by this Court that Trigon is the successor to and a continuation of Capala Brothers, Inc., presumably so that they may reach Trigon's assets to satisfy their judgment against Capala Brothers. But plaintiffs have neither asserted nor established a basis for subject matter jurisdiction over this aspect of their motion. I therefore respectfully recommend that the Court deny the aspect of plaintiffs' motion that seeks a judgment declaring Trigon, Inc. to be the successor to and a continuation of Capala Brothers, Inc.

## CONCLUSION

For the reasons stated above, I respectfully recommend that the Court (1) award plaintiffs judgment in the amount of $350,000 against 269 Withers Street, LLC and allow that judgment to be recorded as a lien on the Withers Street property, but only as one without priority over the

24

existing mortgage lien of ConnectOne Bank recorded on June 23, 2016; (2) deny the motion of the 269 Withers Street, LLC and Mieczyslaw and Franciszka Cielepak to vacate the *lis pendens* on the Withers Street property; and (3) deny that aspect of plaintiffs' motion that seeks a judgment declaring Trigon, Inc. to be the successor to and a continuation of Capala Brothers, Inc.

Any objections to the recommendations made in this Report must be made within fourteen days after filing of this Report and Recommendation and, in any event, on or before November 20, 2018. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

_____/s/_____

Steven M. Gold
United States Magistrate Judge

Brooklyn, New York
November 6, 2018

U:\#VAR 2017-2018\Gortat\Gortat_v_Capala_MotionforSanctions - FINAL.docx

25